1  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
2  CHAD V. HAES, #267221
   chaes@marshackhays.com
3  MARSHACK HAYS LLP
   870 Roosevelt
4  Irvine, California 92620
   Telephone: (949) 333-7777
5  Facsimile: (949) 333-7778

6  Attorneys for Chapter 7 Trustee,
   DAVID M. GOODRICH

7

8              UNITED STATES BANKRUPTCY COURT

9        CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

10 | In re | Case No. 2:17-bk-23812-BR |
11 | BENJAMIN W. GONZALES, | Chapter 7 |
12 | Debtor. | TRUSTEE'S APPLICATION TO RETAIN (1) BK GLOBAL REAL ESTATE SERVICES; AND (2) KELLER WILLIAMS DOWNEY TO PROCURE CONSENTED PUBLIC SALE PURSUANT TO 11 U.S.C. §§ 327, 328 AND 330; DECLARATIONS OF DAVID M. GOODRICH, ROGELIO SANCHEZ AND PATRICK BUTLER IN SUPPORT |

Date:   December 18, 2018
Time:   2:00 p.m.
Ctrm:   1668

19  TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY COURT JUDGE,

20  THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTOR, AND ALL INTERESTED

21  PARTIES:

22          David M. Goodrich, in his capacity as Chapter 7 Trustee ("Trustee") for the bankruptcy estate

23  ("Estate") of Benjamin W. Gonzales ("Debtor"), submits this application ("Application") for entry of

24  an order substantially in the form attached hereto as **Exhibit 1**, authorizing retention of (1) BK Global

25  Real Estate Services ("BKRES") and (2) Keller Williams Downey ("Listing Agent") under the terms of

26  the agreements ("Listing Agreements") attached as **Exhibit 2** is the Declaration of Rogelio Sanchez

27  ("Listing Agent Affidavit") and **Exhibit 3** to the Declaration of Patrick Butler.

28  / / /

In support thereof, the Trustee respectfully states as follows:

## 1. Summary of Application

Trustee requests approval to retain BKRES and Listing Agent (individually and collectively referred to as "Broker" or Brokers"), at no cost to the estate, to negotiate with the first lienholder on certain real property in which the estate has no equity to: (1) allow Trustee to sell such property at the highest price that the market will bear; (2) waive any resulting deficiency claim; and (3) pay an 11 U.S.C. § 506 surcharge to provide a carveout for the benefit of the estate and pay all other sale expenses, including a 6% brokerage commission that will be shared equally by BKRES and Listing Agent only upon the closing of a sale that is approved by this Court. Trustee respectfully requests that an order be entered approving the employment of BKRES and Listing Agent.

## 2. Procedural Background and the Mar Vista Property

On November 7, 2017, the Debtor commenced this case by filing a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. Thereafter, the Trustee was appointed as the Chapter 7 trustee in this case.

In his Schedule A/B, Debtor lists an ownership interest in 14930 Mar Vista St. Whittier, California 90605 with a scheduled vale of $1,900,000 ("Property").

Trustee believes the Property is currently worth $1,800,000-$2,000,000 but is subject to, at minimum, the following liens[1]:

| | |
|---|---|
| Estimated Value of Property | $1,800,000 |
| Bank of America ("BofA") First Priority Lien | ($ 455,802)[2] |
| Bank of America Second Priority Lien | ($ 715,745)[3] |
| Law Offices of Frank Fox Lien ("FLARPLs") | ($ 840,000)[4] |
| **Total to Left to Pay Other Liens** | **- 211,547.00** |

[1] A true and correct copy of the Preliminary Title Report for the Property is attached Declaration of David M. Goodrich as **Exhibit 5**.

[2] The amount provided was obtained during discussions with Bank of America by BKRES. The preliminary title report reflects $550,750.

[3] The amount provided was obtained during discussions with Bank of America by BKRES. The preliminary title report reflects $719,500.

[4] The amount provided was obtained during discussions with The Law Firm of Fox and Fox ("Firm") in the Trustee's investigation of the Firm's claim.

APPLICATION TO EMPLOY BK GLOBAL REAL ESTATE SERVICES AND KELLER WILLIAMS REALTY
4850-2773-8995, v. 2/1239-013

Collectively, the liens against the Property exceed the value of the Property. As such, Trustee requires the services of BKRES to reach an agreement with BofA to ensure funds for the Estate will be available from the sale of the Property from which distributions can be made to administrative and unsecured creditors.[5] Importantly, Brokers **will not** be entitled to any compensation from the Estate whatsoever under any circumstances. Brokers will only receive and share a brokerage commission that will be paid by secured creditor BofA as an 11 U.S.C. § 506 surcharge approved by this Court.

### 3.    Services to be Performed

The Trustee: (1) believes that hiring BKRES and Listing Agent to pursue a consented sale will likely result in BofA paying a carveout for the benefit of the estate with proceeds from the public sale of an asset in which the estate has no equity; and (2) expects to obtain secured creditor's agreement to a consented sale, and bring a separate motion seeking this Court's approval of the procedures, terms and conditions by which the Property will be sold, within the coming months.

The Trustee, after reviewing certain materials, including (without limitation) the sales analysis report and opinion of value for the Property provided by BKRES and Listing Agent, has determined it to be in the best interest of the Debtor's estate and all creditors to negotiate to obtain BofA's agreement and consent ("Consent") to do the following:[6]

a.    Sell the Property under 11 U.S.C. § 363(b) to whichever third party is determined to have made the best qualified offer during a public sale approved by the Court;

b.    Release the liens of BofA and otherwise have BofA waive all of its claims against the estate with respect to the Property (including any deficiency claims resulting from the proposed sale); and

c.    Agree to a Section 506 surcharge to pay all of the customary expenses associated with a sale, including payment of a 6% real estate brokerage commission to Brokers and reimbursement of their out-of-pocket expenses, on condition that a meaningful carveout for the benefit of allowed unsecured creditors of the Estate is obtained.

---

[5] A true and correct copy of BKRES' expertise and services are attached to the Declaration of Patrick Butler as **Exhibit 4**.
[6] BKRES and Local Agent, shall not participate in the sale and purchase of any estate property except as hired Brokers.

APPLICATION TO EMPLOY BK GLOBAL REAL ESTATE SERVICES AND KELLER WILLIAMS REALTY
4850-2773-8995, v. 2/1239-013

Trustee expects BKRES and Listing Agent to obtain BofA's full, final and unconditional

Consent and bring separate motions seeking an order approving the negotiated carve-out and the sale of

the Property ("Sale Motion").

## 4. Compensation Procedure

By this Application, the Trustee requests authority pursuant to §§ 327, 328(a) and 330 of the

Bankruptcy Code to:

(a) retain BKRES and Listing Agent to provide the necessary professional assistance and representation required by the Trustee to fulfill the Trustee's duties pursuant to 11 U.S.C. § 704 in order to procure BofA's Consent;

(b) engage Brokers BKRES and Listing Agent to provide reasonable and necessary property preservation, maintenance, and upkeep services to the subject estate Property to facilitate the sale of the Property;

(c) reimburse Brokers in the maximum amount not to exceed $500 for any approved, out-of-pocket costs incurred by Brokers associated with property preservation, maintenance, and upkeep of the subject Property in connection with a potential sale, upon the availability of funds from the estate, without the need for further Order; and

(d) approve BofA's payment of the fees described herein, of a 6% brokerage commission that will be shared equally by BKRES and Listing Agent, if and when the Consent and Motion to Approve Sale are granted and only at closing of the sale of the Property.

Again, BKRES and Listing Agent will not be entitled to any compensation from the estate

whatsoever under any circumstances. They will only receive and share a customary brokerage

commission that is paid by BofA as an Section 506[7] surcharge approved by this Court.

Section 328(a) provides, a debtor "with the court's approval, may employ or authorize the

employment of a professional person under section 327...on any reasonable terms and conditions of

employment, including on a retainer, on an hourly basis, on a fixed percentage or fee basis, or on a

contingent fee basis." 11 U.S.C. § 328(a). Section 330 permits the Court to "award to a trustee… or a

professional person employed under section 327…(A) reasonable compensation for actual, necessary

services rendered [by such party] … and (B) reimbursement for actual, necessary expenses."[8]

As further described in the materials attached to their affidavits, BKRES and Listing Agent have

extensive experience obtaining the consent and agreement of mortgage lenders and servicers to the sale

---

[7] Unless otherwise indicated, all Chapter and Section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. All references to "Rule" refer to the Federal Rules of Bankruptcy Procedure.
[8] 11 U.S.C. § 330(a)(1).

APPLICATION TO EMPLOY BK GLOBAL REAL ESTATE SERVICES AND KELLER WILLIAMS REALTY
4850-2773-8995, v. 2/1239-013

Case 2:17-bk-23812-BR    Doc 107    Filed 11/21/18    Entered 11/21/18 13:40:48    Desc
Main Document    Page 5 of 58


of their collateral and resolution of any resulting unsecured claims to produce a recovery for estates from

over-encumbered assets in which the estate has no equity. A consented sale of the Property pursuant to

Section 363 will enhance the bankruptcy relief sought by the Debtor, provide a recovery of value for the

Estate that will result in a meaningful distribution to unsecured creditors, and provide direct equitable

benefits to BofA in the following ways:

> a.    in exchange for a free and clear sale and realization of the current fair market value of the Property by the BofA, the Debtor's estate will be released from the liens held by BofA and any deficiency claims resulting from the sale;

> b.    a free and clear sale of the Property will provide a loss mitigation option that enables BofA and Debtors to avoid the substantial expense of foreclosure proceedings and the damaging impact of foreclosure on the financial recovery of the Debtor and his ability to obtain future credit;

> c.    a free and clear sale of the Property will provide a negotiated cash payment as a meaningful recovery of value for the bankruptcy estate and the unsecured creditors;

> d.    a free and clear sale of the Property will eliminate the need for a foreclosure sale and enable the Secured Creditor to limit its expenses to legal costs, property preservation costs, insurance, and taxes; and

> e.    the Debtor's voluntary surrender of the Property to the administration of the Trustee and BofA's consent to the sale of the Property will enable the Trustee to use the forces of a free market to establish the true fair market value of the Property for the benefit of all interested and affected parties.

The Trustee believes that the highest and best value for the Property will be generated

through a sale in which the Property is widely marketed to the public and offered at the highest price

that the market will bear. The Trustee further believes that such a sale is in the best interest of the Estate

but can only be achieved if BofA's Consent is first obtained. That is why the Trustee believes that

retaining BKRES and Listing Agent to obtain BofA's Consent is in the best interests of the Estate.

In no event will the Estate have any obligation to pay BKRES or Listing Agent for their services,

or to pay for customary title and closing services. The terms of the BKRES Agreement and Listing

Agreement and this Application provide that BKRES and Listing Agent are only entitled to payment if

and when: (a) Secured Creditor grants its Consent; (b) the Motion to Approve Sale is granted; and (c)

the Property is sold, in which event BKRES and Listing Agent will receive and share a 6% real estate

brokerage commission and obtain reimbursement of any out-of-pocket expenses and payment for all

/ / /

5

APPLICATION TO EMPLOY BK GLOBAL REAL ESTATE SERVICES AND KELLER WILLIAMS REALTY
4850-2773-8995, v. 2/1239-013

1   other expenses associated with the sale of the Property from the sale proceeds at closing in accordance

2   with the order approving the sale. BKRES and Listing Agent will not be entitled to any fees if BofA

3   does not consent or the Court does not grant the Sale Motion.

4       The Trustee submits that the terms of employment and compensation as set out in the

5   Application is reasonable in light of the extensive experience of Brokers and services they provide.

6   ## A.    LBR 2014 - DISINTERESTEDNESS OF PROPOSED

7   ##       APPLICANTS

8       BKRES attested that it is a disinterested person within the meaning of § 101(14) of the

9   Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016(a). *See* Declaration of

10  Patrick Butler, ¶10. BKRES also attests, pursuant to Bankruptcy Rule 2016, that it shall not split or share

11  its fee with any individual or entity other than Listing Agent, or a buyer's agent, if applicable.

12      Listing Agent attested that it is a disinterested person within the meaning of § 101(14) of the

13  Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016(a). *See* Listing Agent's

14  Affidavit, ¶ 9. Listing Agent also attests, pursuant to Bankruptcy Rule 2016, that it shall not split or share

15  its fee with any individual or entity other than BKRES, or a buyer's agent, if applicable.

16  ## 5.    Conclusion

17      For the foregoing and all other necessary and proper purposes, the Trustee seeks the Court's

18  authority to retain BKRES and Listing Agent in this case, and requests that the Court approve the

19  compensation arrangements set forth in the BKRES Agreement and Listing Agreement and this

20  Application pursuant to §§ 327, 328(a) and 330 of the Bankruptcy Code.

21  Dated: November 21, 2018          Respectfully submitted,

22                                    By:_____
                                        DAVID M. GOODRICH
23                                      Chapter 7 Trustee for the Bankruptcy Estate
                                        of Benjamin W. Gonzales
24
    Dated: November 21, 2018          MARSHACK HAYS LLP
25
                                      By: */s/ Chad V. Haes*_____
26                                      CHAD V. HAES
                                        Attorneys for Chapter 7 Trustee,
27                                      DAVID M. GOODRICH

28

APPLICATION TO EMPLOY BK GLOBAL REAL ESTATE SERVICES AND KELLER WILLIAMS REALTY
4850-2773-8995, v. 2/1239-013

# Declaration of Rogelio Sanchez

I, Rogelio Sanchez, say and declare as follows:

1.      I am a licensed real estate agent ("Listing Agent") and employed with Keller Williams Realty Downey ("Keller Williams"), 8255 Firestone Blvd. Ste 100 Downey, CA 90241; telephone 323-329-0483.

2.      I am familiar with the foregoing Application to Retain BK Global Real Estate Services and Keller Williams Downey to Procure Consented Public Sale Pursuant to 11 U.S.C. §§ 327, 328 AND 330 ("Application") and the property described as 14930 Mar Vista St, Whittier, CA 90605 (the "Property"), and believe that I am qualified to represent the Trustee and the Estate in connection with the marketing of the Property. I am very familiar with the market for its sale.

3.      I have agreed to accept employment on the terms and conditions set forth in the Application and the Listing Agreement for the sale of the Property. A true and correct copy of the Listing Agreement is attached hereto as **Exhibit 2**.

4.      The Firm has extensive experience in residential and commercial real estate transactions.

5.      The Firm has performed services for other Chapter 7 trustees in the Central District of California and the Firm is familiar with the rules and processes employed in the bankruptcy courts for the Central District of California.

6.      In my experience, 8% is a reasonable projection of the costs of sale, taking into account a 6% sales commission and 2% escrow, title and incidental costs.

7.      I have agreed and understand, notwithstanding the terms and conditions of employment set forth herein, that the Court may allow compensation different if such terms and conditions prove to have been improvident in light of developments unanticipated at the time of fixing such terms and conditions.

8.      I have agreed and understand that the Trustee may decide not to sell the Property if, after further analysis, the Trustee determines that such a sale will provide no measurable benefit to the Estate.

7

9.      I am a "disinterested person" within the meaning of Bankruptcy Code § 101(14). BKRES does not have an interest adverse to the Debtor or the Estate. As of the Petition Date, BKRES was not a creditor of the Estate and was not owed any funds by the Debtor.

10.     I have no pre-petition claim against Debtor's Estate.

11.     To the best of my knowledge, I have has no connections with the Debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States Trustee.

12.     To the best of my knowledge, I have no relation to any judge of the United States Bankruptcy Court for the Central District of California, the United States Trustee, or any person currently employed in the Office of the United States Trustee.

13.     I have not received a retainer for the services to be performed herein.

14.     I understand that my compensation in this case is subject to approval of this Court pursuant to 11 U.S.C. § 328.

15.     To the best of my knowledge, I represent no interest which would be adverse to this Estate or its creditors or any party in interest in this proceeding and I am a "disinterested person" as the term is defined in Bankruptcy Code § 101(14).

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 10/17, 2018, at Downey, California.

ROGELIO SANCHEZ

APPLICATION BY TRUSTEE TO EMPLOY BK GLOBAL REAL ESTATE SERVICES AND KELLER WILLIAMS REALTY

4850-2773-8995v1/1239-013
4850-2773-8995_v.2

### Declaration of Patrick Butler

I, Patrick Butler, say and declare as follows:

1.      I am a broker network referral manager and employed with BK Global Real Estate Services ("BKRES"), 1095 Broken Sound Parkway Suite 200 Boca Raton, Florida, 33487; telephone 561-206-0065.

2.      I am familiar with the foregoing Application to Retain BK Global Real Estate Services and Keller Williams Downey to Procure Consented Public Sale Pursuant to 11 U.S.C. §§ 327, 328 AND 330 ("Application") and the property described as 14930 Mar Vista St, Whittier, CA 90605 (the "Property"), and believe that I am qualified to represent the Trustee and the Estate in connection with the marketing of the Property. I am very familiar with the market for its sale.

3.      BKRES has agreed to accept employment on the terms and conditions set forth in the Application and the Listing Agreement for the sale of the Property. A true and correct copy of the BKRES Agreement is attached hereto as **Exhibit 3**.

4.      BKRES has extensive experience in residential and commercial real estate transactions. A true and correct copy of the services we provide and BKRES expertise is attached at **Exhibit 4**.

5.      BKRES has performed services for other Chapter 7 trustees in the Central District of California and the Firm is familiar with the rules and processes employed in the bankruptcy courts for the Central District of California.

6.      BKRES has agreed to accept employment on the terms and conditions set forth in the Application.

7.      In my experience, 8% is a reasonable projection of the costs of sale, taking into account a 6% sales commission and 2% escrow, title and incidental costs.

8.      I have agreed and understand, notwithstanding the terms and conditions of employment set forth herein, that the Court may allow compensation different if such terms and conditions prove to have been improvident in light of developments unanticipated at the time of fixing such terms and conditions.

9.   I have agreed and understand that the Trustee may decide not to sell the Property if, after further analysis, the Trustee determines that such a sale will provide no measurable benefit to the Estate.

10.   BKRES is a "disinterested person" within the meaning of Bankruptcy Code § 101(14). BKRES does not have an interest adverse to the Debtor or the Estate. As of the Petition Date, BKRES was not a creditor of the Estate and was not owed any funds by the Debtor.

11.   BKRES has no pre-petition claim against Debtor's Estate.

12.   To the best of my knowledge, BKRES has no connections with the Debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States Trustee.

13.   To the best of my knowledge, BKRES has no relation to any judge of the United States Bankruptcy Court for the Central District of California, the United States Trustee, or any person currently employed in the Office of the United States Trustee.

14.   BKRES has not received a retainer for the services to be performed herein.

15.   BKRES understands that its compensation in this case is subject to approval of this Court pursuant to 11 U.S.C. § 328.

16.   To the best of my knowledge, BKRES represents no interest which would be adverse to this Estate or its creditors or any party in interest in this proceeding and I am a "disinterested person" as the term is defined in Bankruptcy Code § 101(14).

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 17, 2018, at *Boca Raton Florida*.

_____
PATRICK BUTLER

APPLICATION BY TRUSTEE TO EMPLOY BK GLOBAL REAL ESTATE SERVICES AND KELLER WILLIAMS REALTY
4850-2773-8995v1/1239-013
4850-2773-8995_v_2

# Declaration of David M. Goodrich

I, DAVID M. GOODRICH, declare as follows:

1.      I am an individual over 18 years of age and competent to make this Declaration.

2.      If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.      The facts set forth below are true of my personal knowledge.

4.      I am the duly appointed and acting chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of Benjamin Gonzales ("Debtor").

5.      I make this Declaration in support of my application to employ (1) BK Global Real Estate Services ("BKRES") and (2) Kelley Williams Realty Downey ("Application"). I have reviewed the qualifications and the agreements attached to the Application.

6.      On November 7, 2017, the Debtor commenced this case by filing a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.

7.      In his Schedule A/B, Debtor lists an ownership interest in 14930 Mar Vista St. Whittier, California 90605 with a scheduled vale of $1,900,000 ("Property").

8.      I believe the Property is currently worth $1,800,000-$2,000,000 but is subject to, at minimum, the following liens:

| Estimated Value of Property | $1,800,000 |
|---|---|
| Bank of America ("BofA") First Priority Lien | ($ 455,802)[9] |
| Bank of America Second Priority Lien | ($ 715,745)[10] |
| Law Offices of Frank Fox Lien ("FLARPLs") | ($ 840,000)[11] |
| **Total to Left to Pay Other Liens** | **- 211,547.00** |

9.      A true and correct copy of the preliminary title report for the Mar Vista Property is attached as **Exhibit 5**.

---

[9] The amount provided was obtained during discussions with Bank of America by BKRES. The preliminary title report reflects $550,750.00.

[10] The amount provided was obtained during discussions with Bank of America by BKRES. The preliminary title report reflects $719,500.00.

[11] The amount provided was obtained during discussions with The Law Firm of Fox and Fox ("Firm") in my investigation of the Firm's claim.

APPLICATION TO EMPLOY BK GLOBAL REAL ESTATE SERVICES AND KELLER WILLIAMS REALTY

10.     Collectively, the liens against the Property exceed the value of the Property. As such, I require the services of BKRES to reach an agreement with Secured Creditor Bank of America to ensure funds for the Estate will be available from the sale of the Property from which distributions can be made to administrative and unsecured creditors.

11.     As outlined in the BKRES Agreement, the Listing Agreement and the Application, neither BKRES nor Keller Williams Realty Downey, including listing agent Rogelio Sanchez, will be compensated from the Estate for their services. Compensation will be paid by secured creditor Bank of America. I am solely seeking approval to employ the Brokers and allowance by the Court for them to be a paid as a surcharge under 11 U.S.C. § 506.

12.     In the event an agreement can be reached with Bank of America, BKRES and Keller Williams Realty and its agent Rogelio Sanchez will be paid by Bank of America a six percent commission to be shared amongst them and any buyer's agent.

13.     I believe it is in the best interests of the Estate to hire BKRES and Keller Williams Realty Downey, including listing agent Rogelio Sanchez, as brokers to attempt to negotiate with Bank of America in efforts to ultimately sell the Property for the benefit of the Estate.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 21, 2018 at Costa Mesa, California.

DAVID M. GOODRICH

Exhibit "1"

# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:17-bk-23812-BR |
| BENJAMIN W. GONZALES, | Chapter 7 |
| Debtor. | ORDER GRANTING TRUSTEE'S APPLICATION TO RETAIN BK GLOBAL REAL ESTATE SERVICES AND KELLER WILLIAMS DOWNEY TO PROCURE CONSENTED PUBLIC SALE PURSUANT TO 11 U.S.C. §§327, 328 AND 330 |
| | [APPLICATION – DOCKET NO. _____] |
| | [No Hearing Required] |

The Court has read and considered the Application to Retain BK Global Real Estate Services and Keller Williams Downey to Procure Consented Public Sale Pursuant to 11 U.S.C. §§327, 328 and 330; and Declaration of Keller Williams Downey in Support ("Application"), filed by David M. Goodrich, in his capacity as Chapter 7 Trustee ("Trustee") for the bankruptcy estate ("Estate") of Benjamin W. Gonzales ("Debtor"), filed on November 21, 2018, as Docket No. ____. The Court finds, based upon the proof of service of the Notice of Application filed on November 21, 2018, as Docket No. ____, and the Declaration That No Party Requested a Hearing on Application, filed by Chad V. Haes on _____, 2018, as Docket No. ____, that proper notice of the Application has been given. Accordingly, The Court finds good to grant the Application and the Court enters its Order as follows.

4821-0647-2819, v. 1/1239-013

IT IS ORDERED:

1.    The Application is granted in its entirety;

2.    Defined terms not otherwise defined herein have the meanings given to them in the Application and the Affidavit.

3.    The Trustee is authorized to retain and compensate BKRES and local licensed Listing Agent to provide the necessary professional assistance and representation required by the Trustee to fulfill the Trustee's duties pursuant to 11 U.S.C. § 704 in order to procure Secured Creditor's Consent, and otherwise market and sell the Property, in Debtor's Chapter 7 case pursuant to Sections 327, 328(a) and 330 of the Bankruptcy Code, and Bankruptcy Rules 2014 and 2016, in accordance with the terms and conditions set forth in the BKRES Agreement, the Listing Agreement and this Order.  BKRES and Listing Agent shall not split or otherwise share their fees with any other person or entity.

4.    BKRES and Listing Agent are disinterested persons within the meaning of Bankruptcy Code Section 101(14).

5.    BKRES and Listing Agent shall be compensated in accordance with the BKRES Agreement and Listing Agreement, respectively, and such compensation shall not hereafter be subject to challenge except under the standard of review set forth in Section 330 of the Bankruptcy Code.

6.    BKRES and Listing Agent shall be authorized to receive and retain their fees from Secured Creditor at the successful closing of the sale of the Property without necessity of further order of the Court.  The Estate shall, in no circumstance, be obligated to compensate BKRES or Listing Agent in such event and BKRES and Listing Agent shall not have a claim against the Estate for any unpaid amounts.  BKRES and Listing Agent, and anyone claiming by, through or under either of them, shall only have recourse for recovering its fee to Secured Creditor.  The Estate shall have no liability for any such claim.

7.    Trustee is hereby authorized to engage Brokers BKRES and Listing Agent to provide reasonable and necessary property preservation, maintenance, and upkeep services to the subject Estate Property to facilitate the sale of the Property for the benefit of the Secured Creditor(s) and

4821-0647-2819, v. 1/1239-013

1  bankruptcy Estate, and to reimburse the Brokers in a maximum amount not to exceed $500 for the

2  approved reasonable, necessary costs and expenses of preserving, or disposing of, the subject

3  Property, without the need for further Order.

4          8.      Notice of the Application was adequate and proper.

5          9.      This Court shall retain jurisdiction to hear and determine all matters arising from or

6  related to the implementation of this Order.

7                                              ###

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

Exhibit "2"



**DISCLOSURE REGARDING
REAL ESTATE AGENCY RELATIONSHIP**
(Listing Firm to Seller)
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/14)

CALIFORNIA
ASSOCIATION
OF REALTORS®

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(k) and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**
A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
(a)Diligent exercise of reasonable skill and care in performance of the agent's duties.
(b)A duty of honest and fair dealing and good faith.
(c)A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**
A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
(a)Diligent exercise of reasonable skill and care in performance of the agent's duties.
(b)A duty of honest and fair dealing and good faith.
(c)A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.
An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**
A real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
(a)A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
(b)Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, the agent may not, without the express permission of the respective party, disclose to the other party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered.
The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.
Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).**

☐Buyer ☒Seller ☐Landlord ☐Tenant _____ Date 10/4/18
_David Goodrich, BK Trustee for the estate of Benjamin Gonzalez_

☐Buyer ☐Seller ☐Landlord ☐Tenant _____ Date _____

Agent   _Keller Williams Realty Downey_   BRE Lic. # _01978349_
Real Estate Broker (Firm)
By _____   BRE Lic. # _01817403_   Date 10/9/18
(Salesperson or Broker-Associate)   _Rogelio Sanchez_

Agency Disclosure Compliance (Civil Code §2079.14):
• When the listing brokerage company also represents Buyer/Tenant: The Listing Agent shall have one AD form signed by Seller/Landlord and a different AD form signed by Buyer/Tenant.
• When Seller/Landlord and Buyer/Tenant are represented by different brokerage companies: (i) the Listing Agent shall have one AD form signed by Seller/Landlord and (ii) the Buyer's/Tenant's Agent shall have one AD form signed by Buyer/Tenant and either that same or a different AD form presented to Seller/Landlord for signature prior to presentation of the offer. If the same form is used, Seller may sign here:
(SELLER/LANDLORD: DO NOT SIGN HERE)     (SELLER/LANDLORD: DO NOT SIGN HERE)
Seller/Landlord ____ Date ____   Seller/Landlord ____ Date ____

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
AD REVISED 12/14 (PAGE 1 OF 2)

Reviewed by ____ Date ____

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

Keller Williams Downey Market Ctr., 8255 Firestone Blvd., Suite #100 Downey , CA 90241   Phone: 323.329.0483   Fax: 562.862.8801   14930 Mar Vista
Rogelio Sanchez   Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

## CIVIL CODE SECTIONS 2079.24 (2079.16 APPEARS ON THE FRONT)

**2079.13** As used in Sections 2079.14 to 2079.24, inclusive, the following terms have the following meanings: (a) "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. (b) "Associate licensee" means a person who is licensed as a real estate broker or salesperson under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code and who is either licensed under a broker or has entered into a written contract with a broker to act as the broker's agent in connection with acts requiring a real estate license and to function under the broker's supervision in the capacity of an associate licensee. The agent in the real property transaction bears responsibility for his or her associate licensees who perform as agents of the agent. When an associate licensee owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the associate licensee functions. (c) "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee. (d) "Commercial real property" means all real property in the state, except single-family residential real property, dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, mobilehomes, as defined in Section 798.3, or recreational vehicles, as defined in Section 799.29. (e) "Dual agent" means an agent acting, either directly or through an associate licensee, as agent for both the seller and the buyer in a real property transaction. (f) "Listing agreement" means a contract between an owner of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer. (g) "Listing agent" means a person who has obtained a listing of real property to act as an agent for compensation. (h) "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the listing agent. (i) "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. (j) "Offer to purchase" means a written contract executed by a buyer acting through a selling agent that becomes the contract for the sale of the real property upon acceptance by the seller. (k) "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property that constitutes or is improved with one to four dwelling units, any commercial real property, any leasehold in these types of property exceeding one year's duration, and mobilehomes, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. (l) "Real property transaction" means a transaction for the sale of real property in which an agent is employed by one or more of the principals to act in that transaction, and includes a listing or an offer to purchase. (m) "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer, and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. (n) "Seller" means the transferor in a real property transaction, and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor. (o) "Selling agent" means a listing agent who acts alone, or an agent who acts in cooperation with a listing agent, and who sells or finds and obtains a buyer for the real property, or an agent who locates property for a buyer or who finds a buyer for a property for which no listing exists and presents an offer to purchase to the seller. (p) "Subagent" means a person to whom an agent delegates agency powers as provided in Article 5 (commencing with Section 2349) of Chapter 1 of Title 9. However, "subagent" does not include an associate licensee who is acting under the supervision of an agent in a real property transaction.

**2079.14** Listing agents and selling agents shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and, except as provided in subdivision (c), shall obtain a signed acknowledgement of receipt from the seller or buyer, except as provided in this section or Section 2079.15, as follows: (a) The listing agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. (b) The selling agent shall provide the disclosure form to the seller as soon as practicable prior to presenting the seller with an offer to purchase, unless the selling agent previously provided the seller with a copy of the disclosure form pursuant to subdivision (a). (c) Where the selling agent does not deal on a face-to-face basis with the seller, the disclosure form prepared by the selling agent may be furnished to the seller (and acknowledgement of receipt obtained for the selling agent from the seller) by the listing agent, or the selling agent may deliver the disclosure form by certified mail addressed to the seller at his or her last known address, in which case no signed acknowledgement of receipt is required. (d) The selling agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase, except that if the offer to purchase is not prepared by the selling agent, the selling agent shall present the disclosure form to the buyer not later than the next business day after the selling agent receives the offer to purchase from the buyer.

**2079.15** In any circumstance in which the seller or buyer refuses to sign an acknowledgement of receipt pursuant to Section 2079.14, the agent, or an associate licensee acting for an agent, shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16** Reproduced on Page 1 of this AD form.

**2079.17** (a) As soon as practicable, the selling agent shall disclose to the buyer and seller whether the selling agent is acting in the real property transaction exclusively as the buyer's agent, exclusively as the seller's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the selling agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. (b) As soon as practicable, the listing agent shall disclose to the seller whether the listing agent is acting in the real property transaction exclusively as the seller's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the listing agent prior to or coincident with the execution of that contract by the seller.
(c)  The confirmation required by subdivisions (a) and (b) shall be in the following form.

_____(DO NOT COMPLETE. SAMPLE ONLY)_____ is the agent of (check one): ☐ the seller exclusively; or ☐ both the buyer and seller.
(Name of Listing Agent)

_____(DO NOT COMPLETE. SAMPLE ONLY)_____ is the agent of (check one): ☐ the buyer exclusively; or ☐ the seller exclusively; or
(Name of Selling Agent if not the same as the Listing Agent)                                               ☐ both the buyer and seller.

(d)  The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14.

**2079.18** No selling agent in a real property transaction may act as an agent for the buyer only, when the selling agent is also acting as the listing agent in the transaction.

**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

**2079.21** A dual agent shall not disclose to the buyer that the seller is willing to sell the property at a price less than the listing price, without the express written consent of the seller. A dual agent shall not disclose to the seller that the buyer is willing to pay a price greater than the offering price, without the express written consent of the buyer. This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22** Nothing in this article precludes a listing agent from also being a selling agent, and the combination of these functions in one agent does not, of itself, make that agent a dual agent.

**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
• 525 South Virgil Avenue, Los Angeles, California 90020
AD REVISED 12/14 (PAGE 2 OF 2)

Reviewed by _____  Date _____



**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com              14930 Mar Vista



**CALIFORNIA ASSOCIATION OF REALTORS®**

## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER - DISCLOSURE AND CONSENT
(C.A.R. Form PRBS, 11/14)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: **(a)** Broker, without the prior written consent of the Buyer, will not disclose to seller that the Buyer is willing to pay a price greater than the offered price; **(b)** Broker, without the prior written consent of the seller, will not disclose to the buyer that seller is willing to sell at a price less than the listing price; and **(c)** other than as set forth in (a) and (b) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller Disclosure and Consent and agrees to the agency possibilities disclosed.

Seller _____ David Goodrich, BK Trustee for the estate of  Date 10/4/18
Seller _____  Date _____

Buyer _____  Date _____
Buyer _____  Date _____

Real Estate Broker (Firm) Keller Williams Realty Downey  CalBRE Lic # 01978349  Date _____
By _____  CalBRE Lic # 01817403  Date 10/9/18
Rogelio Sanchez

Real Estate Broker (Firm) _____  CalBRE Lic # _____  Date _____
By _____  CalBRE Lic # _____  Date _____

© 2014, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

PRBS 11/14 (PAGE 1 OF 1)
**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)**

Keller Williams Downey Market Ctr., 8255 Firestone Blvd., Suite #100 Downey  , CA 90241  Phone: 323.329.0483  Fax: 562.862.8891  14930 Mar Vista
Rogelio Sanchez  Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com



**CALIFORNIA**
**ASSOCIATION**
**OF REALTORS®**

**WIRE FRAUD AND ELECTRONIC FUNDS**
**TRANSFER ADVISORY**
(C.A.R. Form WFA, Revised 12/17)

Property Address: _14930 MAR VISTA ST, WHITTIER, CA  90605_____ ("Property").

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

## ACCORDINGLY, YOU ARE ADVISED:

1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Landlords at the beginning of the transaction.**
2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY.** Do not use any different phone number or account number included in any emailed transfer instructions.
3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4. **Avoid sending personal information in emails or texts.** Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Landlord.
5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Landlord, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks.**
**By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory.**

| | |
|---|---|
| Buyer/Tenant _____ | Date _____ |
| Buyer/Tenant _____ | Date _____ |
| Seller/Landlord **X** ~~signature~~ | _David Goodrich, BK Trustee for the estate of Benjamin_ Date  1 0 / 4 / 1 8 |
| Seller/Landlord _____ | Date _____ |

©2016-2017, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**WFA REVISED 12/17 (PAGE 1 OF 1)**

WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY (WFA PAGE 1 OF 1)

Keller Williams Downey Market Ctr., 8255 Firestone Blvd., Suite #103  Downey      , CA 90241          Phone: 323.329.0483          Fax: 562.862.8801          14930 Mar Vista
Rogelio Sanchez                                     Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

CALIFORNIA
ASSOCIATION
OF REALTORS®

**RESIDENTIAL LISTING AGREEMENT**
(Exclusive Authorization and Right to Sell)
(C.A.R. Form RLA, Revised 6/17)

Date Prepared: _____

1. **EXCLUSIVE RIGHT TO SELL:** _____ *David Goodrich, BK Trustee for the estate of Benjamin Gonzalez* _____ ("Seller")
   hereby employs and grants _____ *Keller Williams Realty Downey* _____ ("Broker")
   beginning (date) _____ and ending at 11:59 P.M. on (date) _____ ("Listing Period")
   the exclusive and irrevocable right to sell or exchange the real property described as *14930 MAR VISTA ST*
   _____, situated in _____ *WHITTIER* _____ (City),
   _____ *Los Angeles* _____ (County), California, _____ *90605* _____ (Zip Code), Assessor's Parcel No. _____ *8149-030-005* _____ ("Property").
   ☐ This Property is a manufactured (mobile) home. See addendum for additional terms.
   ☐ This Property is being sold as part of a probate, conservatorship or guardianship. See addendum for additional terms.
2. **LISTING PRICE AND TERMS:**
   A. The listing price shall be: _____ *Two Million Dollars*
      _____ Dollars ($ _____ *2,000,000* _____ ).
   B. Listing Terms: _____

3. **COMPENSATION TO BROKER:**
   **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker (real estate commissions include all compensation and fees to Broker).**
   A. Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☐ _____ *6.000* _____ percent of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ $ _____, AND _____, as follows:
      (1) If during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a ready, willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the Buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
      OR (2) If within _____ *180* _____ calendar days (a) after the end of the Listing Period or any extension; or (b) after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity: (i) who physically entered and was shown the Property during the Listing Period or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any cooperating broker submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller, however, shall have no obligation to Broker under paragraph 3A(2) unless, not later than the end of the Listing Period or any extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.
      OR (3) If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.
   B. If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have been earned under paragraph 3A shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection, if any.
   C. In addition, Seller agrees to pay Broker: *N/A*
   D. Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
      (1) Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS") by offering to MLS brokers out of Broker's compensation specified in 3A, either ☐ _____ *2.000* _____ percent of the purchase price, or ☐ $ _____.
      (2) Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
   E. Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to paragraph 3A, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee.
   F. (1) Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified as follows: *N/A* _____.
      (2) Seller warrants that Seller has no obligation to pay compensation to any other broker unless the Property is transferred to any of the following individuals or entities: *N/A* _____.
      (3) If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: (i) Broker is not entitled to compensation under this Agreement; and (ii) Broker is not obligated to represent Seller in such transaction.

© 2017, California Association of REALTORS®, Inc
**RLA REVISED 6/17 (PAGE 1 OF 5)**

Seller's Initials X( _____ ) ( _____ )

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 5)**

Keller Williams Downey Market Ctr., 8255 Firestone Blvd., Suite #100  Downey          , CA 90241          Phone: 323.329.0483       Fax: 562.862.8801        14930 Mar Vista
Rogelio Sanchez                        Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Property Address: __14930 MAR VISTA ST, WHITTIER, CA  90605_____ Date: _____

**4. A. ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
**ADDITIONAL ITEMS EXCLUDED:** _N/A_____.
**ADDITIONAL ITEMS INCLUDED:** _N/A_____.
Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: (i) the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the sale; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

**B. (1) Leased Or Not Owned Items:** The following items are leased or not owned by Seller:
☐ Solar power system    ☐ Alarm system    ☐ Propane tank    ☐ Water Softener
☐ Other _N/A_____
**(2) Liened Items:** The following items have been financed and a lien has been placed on the Property to secure payment:
☐ Solar power system    ☐ Windows or doors    ☐ Heating/Ventilation/Air conditioning system
☐ Other _N/A_____
Seller will provide to Buyer, as part of the sales agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

**5. MULTIPLE LISTING SERVICE:**
**A.** Broker is a participant/subscriber to _____**CRMLS**_____ Multiple Listing Service (MLS) and possibly others. Unless otherwise instructed in writing the Property will be listed with the MLS(s) specified above. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. All terms of the transaction, including sales price and financing, if applicable, (i) will be provided to the MLS in which the property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS and (ii) may be provided to the MLS even if the Property was not listed with the MLS.

---

**BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS; PRESENTING ALL OFFERS**

**WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit listing information to Internet sites that post property listings online.

**EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS.

**CLOSED/PRIVATE LISTING CLUBS OR GROUPS:** Closed or private listing clubs or groups are not the same as the MLS. The MLS referred to above is accessible to all eligible real estate licensees and provides broad exposure for a listed property. Private or closed listing clubs or groups of licensees may have been formed outside the MLS. Private or closed listing clubs or groups are accessible to a more limited number of licensees and generally offer less exposure for listed property. Whether listing property through a closed, private network - and excluding it from the MLS - is advantageous or disadvantageous to a seller, and why, should be discussed with the agent taking the Seller's listing.

**NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

**OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: (a) real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; (b) Information about Seller's Property will not be transmitted from the MLS to various real estate Internet sites that are used by the public to search for property listings; (c) real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.

**REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.

**PRESENTING ALL OFFERS:** Seller understands that Broker must present all offers received for Seller's Property unless Seller gives Broker written instructions to the contrary.

Seller's Initials ( _✗_ )( _____ )          Broker's/Agent's Initials ( _✗_ )( _____ )

---

Seller's Initials  X( _✗_ )  ( _____ )

RLA REVISED 6/17 (PAGE 2 OF 5)

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 2 OF 5)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com
14930 Mar Vista

Property Address: _14930 MAR VISTA ST, WHITTIER, CA  90605_ _____ Date: _____

**B.** MLS rules generally provide that residential real property and vacant lot listings be submitted to the MLS within 2 days or some other period of time after all necessary signatures have been obtained on the listing agreement. Broker will not have to submit this listing to the MLS if, within that time, Broker submits to the MLS an appropriate form signed by Seller.
☐ Seller elects to exclude the Property from the MLS as provided by C.A.R. Form SELM or the local equivalent form.

**C.** MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary. Broker acknowledges that for any of the below opt-out instructions to be effective, Seller must make them on a separate instruction to Broker signed by Seller. Specific information that can be excluded from the Internet as permitted by (or in accordance with) the MLS is as follows:

(1) **Property Availability On The MLS; Address On the MLS:** Seller can instruct Broker to have the MLS not display the Property or the Property address on the Internet. Seller understands that either of these opt-outs would mean consumers searching for listings on the Internet may not see the Property or Property's address in response to their search.

(2) **Feature Opt-Outs:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below. Seller understands (i) that these opt-outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; (ii) that other Internet sites may or may not have the features set forth herein; and (iii) that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.

(a) **Comments And Reviews:** The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.

(b) **Automated Estimate of Value:** The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display. ☐ Seller elects to opt-out of certain Internet features as provided by C.A.R. Form SELI or the local equivalent form.

**6.** **SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: (i) any Notice of Default recorded against the Property; (ii) any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; (iii) any bankruptcy, insolvency or similar proceeding affecting the Property; (iv) any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and (v) any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

**7.** **BROKER'S AND SELLER'S DUTIES:**

**A.** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to (i) order reports and disclosures including those specified in 7C as necessary, (ii) advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and (iii) disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.

**B.** Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to paragraph 3F, referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.

**C.** Investigations and Reports: Seller agrees, within 5 (or ____) Days of the beginning date of this Agreement, to pay for the following pre-sale reports: ☐ Structural Pest Control ☐ General Property Inspection ☐ Homeowners' Association Documents ☐ Other _N/A_ _____.

**D.** Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments attorney fees and costs arising from any incorrect or incomplete information supplied by Seller, or from any material facts that Seller knows but fails to disclose including dangerous or hidden conditions on the Property..

**8.** **DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

**9.** **AGENCY RELATIONSHIPS:**

**A.** **Disclosure:** The Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).

**B.** **Seller Representation:** Broker shall represent Seller in any resulting transaction, except as specified in paragraph 3F.

**C.** **Possible Dual Agency With Buyer:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: (i) Broker, without the prior written consent of Seller, will not disclose to Buyer that Seller is willing to sell the Property at a price less than the listing price; (ii) Broker, without the prior written consent of Buyer, will not disclose to Seller that Buyer is willing to pay a price greater than the offered price; and (iii) except for (i) and (ii) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**D.** **Confirmation:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

Seller's Initials X(_____) (_____)

RLA REVISED 6/17 (PAGE 3 OF 5)

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 3 OF 5)**
Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          14930 Mar Vista

Exhibit "2"
Page 22

Property Address: <u>14930 MAR VISTA ST, WHITTIER, CA 90605</u> _____ Date: _____

**E.  Potentially Competing Sellers and Buyers:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a [X] "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

10. **SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property.  Seller agrees: (i) to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; and (ii) to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as "nanny cams" and hidden security cameras). Seller is advised to post notice disclosing the existence of security devices.

11. **PHOTOGRAPHS AND INTERNET ADVERTISING:**

**A.**  In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Seller agrees (or [ ] if checked, does not agree) that Broker may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others  for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that once Images are placed on the Internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet. Seller further assigns any rights in all Images to the Broker and agrees that such Images are the property of Broker and that Broker may use such Images for advertising, including post sale and for Broker's business in the future.

**B.**  Seller acknowledges that prospective buyers and/or other persons coming onto the property may take photographs, videos or other images of the property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. (If checked ) [ ] Seller instructs Broker to publish in the MLS that taking of Images is limited to those persons preparing Appraisal or Inspection reports. Seller acknowledges that unauthorized persons may take images who do not have access to or have not read any limiting instruction in the MLS or who take images regardless of any limiting instruction in the MLS. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

12. **KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox. Seller does (or if checked [ ] does not) authorize Broker to install a keysafe/lockbox. If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

13. **SIGN:** Seller does (or if checked [ ] does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

14. **EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

15. **ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker to enforce the compensation  provisions of this Agreement, the prevailing Seller or Broker shall be entitled to reasonable attorney fees and costs from the non-prevailing Seller or Broker, except as provided in paragraph 19A.

16. **ADDITIONAL TERMS:** [ ] REO Advisory Listing (C.A.R. Form REOL) [ ] Short Sale Information and Advisory (C.A.R. Form SSIA) [ ] Trust Advisory (C.A.R. Form TA) *This Listing Agreement and any sale of the property is subject to and conditioned upon approval by the United States Bankruptcy Court.*

_____

_____

_____

_____

_____

17. **MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within **5 Days** After its execution.

18. **SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

19. **DISPUTE RESOLUTION:**

**A.**  **MEDIATION:** Seller and Broker agree to mediate any dispute or claim arising between them regarding the obligation to pay compensation under this Agreement, before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. **Exclusions from this mediation agreement are specified in paragraph 19B.**

Seller's Initials X(  ) (  )

RLA REVISED 6/17 (PAGE 4 OF 5)

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 4 OF 5)**

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com
14930 Mar Vista

Property Address: <u>14930 MAR VISTA ST, WHITTIER, CA  90605</u>                              Date: _____

**B. ADDITIONAL MEDIATION TERMS:** The following matters shall be excluded from mediation: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985, (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.

**C. ADVISORY:** If Seller and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).

**20. ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

**21. OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: (i) Seller is the owner of the Property; (ii) no other persons or entities have title to the Property; and (iii) Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows: <u>Gonzales Benjamin W (Te)</u>
_____

☐ **REPRESENTATIVE CAPACITY:** This Listing Agreement is being signed for Seller by an individual acting in a Representative Capacity as specified in the attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. Seller (i) represents that the entity for which the individual is signing already exists and (ii) shall Deliver to Broker, within 3 Days After Execution of this Agreement, evidence of authority to act (such as but not limited to: applicable trust document, or portion thereof, letters testamentary, court order, power of attorney, resolution, or formation documents of the business entity).

**By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.**

Seller X _____                          Date ___10/7/18___
     *David Goodrich, BK Trustee for the estate of Benjamin*
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

Seller _____                          Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

Real Estate Broker (Firm) <u>Keller Williams Realty Downey</u>                          CalBRE Lic. # <u>01978349</u>
Address <u>8255 Firestone Blvd Ste 100</u> _____ City <u>Downey</u> _____ State <u>CA</u> Zip <u>90241</u>
By _____ Tel. <u>(323)329-0483</u> _____ E-mail rogeliosanchez.kw@gmail.co  CalBRE Lic.#<u>01817403</u> Date 10/9/18
    *Rogelio Sanchez*
By _____ Tel. _____ E-mail _____ CalBRE Lic.# _____ Date _____

☐ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 1991-2017, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

RLA REVISED 6/17 (PAGE 5 OF 5)

**RESIDENTIAL LISTING AGREEMENT -EXCLUSIVE (RLA PAGE 5 OF 5)**

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                  14930 Mar Vista

**CALIFORNIA ASSOCIATION OF REALTORS®**

**SELLER'S ADVISORY**
(C.A.R. Form SA, Revised 12/15)

Property Address: <u>14930 MAR VISTA ST, WHITTIER, CA  90605</u> ("Property")

1. **INTRODUCTION:** Selling property in California is a process that involves many steps. From start to finish, it could take anywhere from a few weeks to many months, depending upon the condition of your Property, local market conditions and other factors. You have already taken an important first step by listing your Property for sale with a licensed real estate broker. Your broker will help guide you through the process and may refer you to other professionals, as needed. This advisory addresses many things you may need to think about and do as you market your Property. Some of these things are requirements imposed upon you, either by law or by the listing or sale contract. Others are simply practical matters that may arise during the process. Please read this document carefully and, if you have any questions, ask your broker or appropriate legal or tax advisor for help.

2. **DISCLOSURES:**
   A. **General Disclosure Duties:** You must affirmatively disclose to the buyer, in writing, any and all known facts that materially affect the value or desirability of your Property. You must disclose these facts whether or not asked about such matters by the buyer, any broker, or anyone else. This duty to disclose applies even if the buyer agrees to purchase your Property in its present condition without requiring you to make any repairs. If you do not know what or how to disclose, you should consult a real estate attorney in California of your choosing. Broker cannot advise you on the legal sufficiency of any disclosures you make. If the Property you are selling is a residence with one to four units except for certain subdivisions, your broker also has a duty to conduct a reasonably competent and diligent visual inspection of the accessible areas and to disclose to a buyer all adverse material facts that the inspection reveals. If your broker discovers something that could indicate a problem, your broker must advise the buyer.
   B. **Statutory Duties:** (For one-to-four Residential Units):
      (1) You must timely prepare and deliver to the buyer, among other things, a Real Estate Transfer Disclosure Statement ("TDS"), and a Natural Hazard Disclosure Statement ("NHD"). You have a legal obligation to honestly and completely fill out the TDS form in its entirety. (Many local entities or organizations have their own supplement to the TDS that you may also be asked to complete.) The NHD is a statement indicating whether your Property is in certain designated flood, fire or earthquake/seismic hazard zones. Third-party professional companies can help you with this task.
      (2) Depending upon the age and type of construction of your Property, you may also be required to provide and, in certain cases you can receive limited legal protection by providing, the buyer with booklets entitled "The Homeowner's Guide to Earthquake Safety," "The Commercial Property Owner's Guide to Earthquake Safety," "Protect Your Family From Lead in Your Home" and "Environmental Hazards: A Guide For Homeowners and Buyers." Some of these booklets may be packaged together for your convenience. The earthquake guides ask you to answer specific questions about your Property's structure and preparedness for an earthquake. If you are required to supply the booklet about lead, you will also be required to disclose to the buyer any known lead-based paint and lead-based paint hazards on a separate form. The environmental hazards guide informs the buyer of common environmental hazards that may be found in properties.
      (3) If you know that your property is: (i) located within one mile of a former military ordnance location; or (ii) in or affected by a zone or district allowing manufacturing, commercial or airport use, you must disclose this to the buyer. You are also required to make a good faith effort to obtain and deliver to the buyer a disclosure notice from the appropriate local agency(ies) about any special tax levied on your Property pursuant to the Mello-Roos Community Facilities Act, the Improvement Bond Act of 1915, and a notice concerning the contractual assessment provided by section 5898.24 of the Streets And Highways Code (collectively, "Special Tax Disclosures").
      (4) If the TDS, NHD, or lead, military ordnance, commercial zone or Special Tax Disclosures are provided to a buyer after you accept that buyer's offer, the buyer will have 3 days after delivery (or 5 days if mailed) to terminate the offer, which is why it is extremely important to complete these disclosures as soon as possible. There are certain exemptions from these statutory requirements; however, if you have actual knowledge of any of these items, you may still be required to make a disclosure as the items can be considered material facts.
   C. **Death and Other Disclosures:** Many buyers consider death on real property to be a material fact in the purchase of property. In some situations, it is advisable to disclose that a death occurred or the manner of death; however, California Civil Code Section 1710.2 provides that <u>you have no disclosure duty</u> "where the death has occurred more than three years prior to the date the transferee offers to purchase, lease, or rent the real property, or [regardless of the date of occurrence] that an occupant of the property was afflicted with, or died from, Human T-Lymphotropic Virus Type III/Lymphadenopathy-Associated Virus." This law does not "immunize an owner or his or her agent from making an intentional misrepresentation in response to a direct inquiry from a transferee or a prospective transferee of real property, concerning deaths on the real property."
   D. **Condominiums and Other Common Interest Subdivisions:** If the Property is a condominium, townhouse, or other property in a common interest subdivision, you must provide to the buyer copies of the governing documents, the most recent financial statements distributed, and other documents required by law or contract. If you do not have a current version of these documents, you can request them from the management of your homeowner's association. To avoid delays, you are encouraged to obtain these documents as soon as possible, even if you have not yet entered into a purchase agreement to sell your Property.

3. **CONTRACT TERMS AND LEGAL REQUIREMENTS:**
   A. **Contract Terms and Conditions:** A buyer may request, as part of the contract for the sale of your Property, that you pay for repairs to the Property and other items. Your decision on whether or not to comply with a buyer's requests may affect your ability to sell your Property at a specified price.

© 1991-2015, California Association of REALTORS®, Inc.
SA REVISED 12/15 (PAGE 1 OF 2)                    Seller's Initials ( X _____ ) ( _____ )

**SELLER'S ADVISORY (SA PAGE 1 OF 2)**

Keller Williams Downey Market Ctr., 8255 Firestone Blvd., Suite #100  Downey          , CA 90241        Phone: 323.329.0493      Fax: 562.862.8801      14930 Mar Vista
Rogelio Sanchez        Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Property Address: **14930 MAR VISTA ST, WHITTIER, CA 90605** _____ Date: _____

   **B. Withholding Taxes:** Under federal and California tax laws, a buyer is required to withhold a portion of the purchase price from your sale proceeds for tax purposes unless you sign an affidavit of non-foreign status and California residency, or some other exemption applies and is documented.

   **C. Prohibition Against Discrimination:** Discriminatory conduct in the sale of real property against individuals belonging to legally protected classes is a violation of the law.

   **D. Government Required Repairs, Replacements and Alterations:** Under State law, Property owners with limited exceptions, are required to: (1) Install operable smoke alarms and brace water heaters and provide a Buyer with a statement of compliance. Existing operable smoke alarms, that met compliance standards when installed, do not have to be removed even if not up to current legal requirements. Smoke alarms that are added or that replace older versions must comply with current law; and (2) install carbon monoxide detection devices. Some city and county governments may impose additional requirements, including, but not limited to, installing low-flow toilets and showerheads, gas shut-off valves, tempered glass, and barriers around swimming pools and spas. You should consult with the appropriate governmental agencies, inspectors, and other professionals to determine which requirements apply to your Property, the extent to which your Property complies with such requirements, and the costs, if any, of compliance.

   **E. EPA's LEAD-BASED PAINT RENOVATION, REPAIR AND PAINTING RULE:** The new rule requires that contractors and maintenance professionals working in pre-1978 housing, child care facilities, and schools with lead-based paint be certified; that their employees be trained; and that they follow protective work practice standards. The rule applies to renovation, repair, or painting activities affecting more than six square feet of lead-based paint in a room or more than 20 square feet of lead-based paint on the exterior. Enforcement of the rule begins October 1, 2010. See the EPA website at www.epa.gov/lead for more information.

   **F. Legal, Tax and Other Implications:** Selling your Property may have legal, tax, insurance, title or other implications. You should consult an appropriate professional for advice on these matters.

**4. MARKETING CONSIDERATIONS:**

   **A. Pre-Sale Inspections and Considerations:** You should consider doing what you can to prepare your Property for sale, such as correcting any defects or other problems, making cosmetic improvements, and staging. Many people are not aware of defects in or problems with their own Property. One way to make yourself aware is to obtain professional inspections prior to sale. Pre-sale inspections may include a general property inspection; an inspection for wood destroying pest and organisms (Structural Pest Control Report) and an inspection of the septic or well systems, if any, among others. By doing this, you then have an opportunity to make repairs before your Property is sold, which may enhance its marketability. Keep in mind, however, that any problems revealed by such inspection reports or repairs that have been made, whether or not disclosed in a report, should be disclosed to the buyer (see "Disclosures" in paragraph 2 above). This is true even if the buyer gets his/her own inspections covering the same area. Obtaining inspection reports may also assist you during contract negotiations with the buyer. For example, if a Structural Pest Control Report has both a primary and secondary recommendation for clearance, you may want to specify in the purchase agreement those recommendations, if any, for which you are going to pay.

   **B. Post-Sale Protections:** It is often helpful to provide the buyer with, among other things, a home protection/warranty plan for the Property. These plans will generally cover problems, not deemed to be pre-existing, that occur after your sale is completed. In the event something does go wrong after the sale, and it is covered by the plan, the buyer may be able to resolve the concern by contacting the home protection company.

   **C. Safety Precautions:** Advertising and marketing your Property for sale, including, but not limited to, holding open houses, placing a keysafe/lockbox, erecting FOR SALE signs, and disseminating photographs, video tapes, and virtual tours of the premises, may jeopardize your personal safety and that of your Property. You are strongly encouraged to maintain insurance, and to take any and all possible precautions and safeguards to protect yourself, other occupants, visitors, your Property, and your belongings, including cash, jewelry, drugs, firearms and other valuables located on the Property, against injury, theft, loss, vandalism, damage, and other harm.

   **D. Expenses:** You are advised that you, not the Broker, are responsible for the fees and costs, if any, to comply with your duties and obligations to the buyer of your Property.

**5. OTHER ITEMS:** _____
_____

Seller has read and understands this Advisory. By signing below, Seller acknowledges receipt of a copy of this document.

Seller _____

Print Name **David Goodrich, BK Trustee for the estate of Benjamin Gonzalez**     Date **10/4/18**

Seller _____

Print Name _____ Date _____

Real Estate Broker **Keller Williams Realty Downey**        CalBRELic.#: **01978349**

By _____ **Rogelio Sanchez** CalBRE Lic.# **01817403** Date **10/9/18**

By _____ CalBRE Lic.# _____ Date _____

Address **8255 Firestone Blvd Ste 100**    City **Downey**    State **CA**    Zip **90241**

Telephone **(323)329-0483**    Fax _____ E-mail **rogeliosanchez.kw@gmail.com**

© 1991-2015, California Association of REALTORS®, Inc. Copyright claimed in Form SA, exclusive of language required by California Civil Code §1710.2. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

SA REVISED 12/15 (PAGE 2 OF 2)

SELLER'S ADVISORY (SA PAGE 2 OF 2)

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com     14930 Mar Vista

## ADDENDUM TO EXCLUSIVE AUTHORIZATION AND RIGHT TO SALE

David M. Goodrich, the duly appointed and acting Chapter 7 Trustee ("Trustee") of the bankruptcy estate ("Estate") of Benjamin W. Gonzales ("Debtor"), the debtor in the bankruptcy case pending in the United States Bankruptcy Court for the Central District of California, Case No. 2:17-bk-23812-BR, and Rogelio Sanchez and Keller Williams Realty Downey ("Broker"), enter into this Addendum to the Exclusive Authorization and Right to Sell ("Listing Agreement"), who will have the exclusive right to negotiate a sale of the real property located at 14930 Mar Vista, Whittler, CA 90605 (APN: 8149-030-005) ("Property").

1.    Addendum.  This Addendum amends certain terms and conditions in the Listing Agreement.  Notwithstanding any contrary terms and conditions in the Listing Agreement, the terms and conditions set forth in this Addendum shall apply.

2.    Bankruptcy Court Approval.  The Trustee shall not be under any obligation to perform under the Listing Agreement or this Addendum until and unless the Bankruptcy Court has approved the employment of the Broker and the terms of the Listing Agreement and the Addendum.

3.    Commission.  The total commission paid to the Broker and the successful buyer's broker shall be 6%.

4.    No Liability.  The Trustee is listing the Property for sale with the Broker in his capacity as the Chapter 7 Trustee of the Estate, and not in his personal capacity, and no liability or obligations shall accrue to him personally as a result of such listing.

5.    Termination.  The Trustee may terminate the Listing Agreement at his option and upon written notice to the Broker at any time, and no liability or obligations shall accrue to the estate or to the Trustee, either personally or in his capacity as Trustee, as a result of any such termination.

6.    Abandonment.  The Trustee reserves the right, in his sole discretion, to determine not to sell the Property and to abandon the Property.  In the event of any such abandonment, the Listing Agreement and this Addendum shall terminate and no liability or obligations shall accrue to the Estate or to the Trustee, either personally or in his capacity as Trustee, as a result of any such abandonment and termination.

7.    Conditions of Sale.  The Broker agrees and understands that any sale of the Property shall be subject to the following terms and conditions:

a.    The Trustee is selling the Property in his capacity, as the Chapter 7 Trustee of the Estate, and not in his personal capacity, and no liability or obligations shall accrue to him personally as a result of any sale.

b.    If for any reason, or no reason whatsoever, the Trustee is unable to deliver possession or title to the Property to any potential purchaser, the purchaser's sole remedy shall be the return of any money that the purchaser has deposited towards the purchase of the Property.

c.    The Trustee is selling the Property on an "AS IS" condition or basis by quitclaim or bankruptcy trustee's deed without any representations or warranties whatsoever, express or implied, including, without limitation, representations or warranties as to title, oil and mineral rights, city or government agency notifications regarding work to be done, marketability of title, ownership, physical condition, compliance with California, city or federal statutes, codes, ordinances, or regulations, geological stability, zoning, suitability for improvement, and fire insurance policies to cover any improvements on the Property, nor any assurances regarding the subdivisibility of the Property.

d.    The sale of the Property is subject to Bankruptcy Court approval after notice to the Debtors, all creditors, the United States Trustee, and other parties in interest, as required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules.

e.    The purchaser shall, at the purchaser's sole expense, acquire any and all insurance policies that the purchaser desires to cover the Property. The Trustee does not agree to acquire or transfer any insurance policies to the purchaser.

f.    The purchaser is to arrange for all financing of the acquisition of the Property before the close of escrow.

g.    All escrow fees shall be paid by Bank of America.

h.    The purchaser shall, at the purchaser's sole expense, install all smoke detectors, if any, as may be required by state or local law. The Trustee is not required to deliver to the purchaser a written statement of compliance with any applicable state and local law.

i.    The purchaser shall, at purchaser's sole expense, obtain all pest control inspections and repairs that purchaser deems appropriate.

j.    If any local ordinance requires that the Property be brought into compliance with minimum energy conservation standards as a condition of sale or transfer, the purchaser shall comply with and pay for these requirements at purchaser's sole expense.

k.    Any sale is subject to the following conditions being satisfied before the close of escrow:

(1)    The Trustee must prevail with respect to any objections to the proposed sale; and

(2)    All sales are subject to overbid unless the Bankruptcy Court orders otherwise, and

(3)    The Trustee reserves the right to reject any and all offers which in his judgment are insufficient; and

(4)    The Bankruptcy Court must approve the sale.

I.     The Property is being sold subject to:

(1)     All general and special taxes that are presently due, or may become due, regarding the Property, other than real property taxes, which shall be prorated as of the close of escrow;

(2)     The lien of supplemental taxes, if any, assessed pursuant to the provisions of Chapter 3.5 (commencing with Section 75) of the California Revenue and Taxation Code; and

(3)     Any and all easements, restrictions, rights and conditions of record and rights of way, against, on or regarding the Property.  Title, however, is to be transferred free and clear of secured claims of record.

8.     <u>Payment of Commission</u>.  The commissions to be paid to the Broker shall only be paid from the proceeds of the sale of the Property.  If a sale is not consummated for any or no reason whatsoever, the Broker shall not be entitled to a commission.  The Broker's commission may only be paid after the Bankruptcy Court approve the payment of the Broker's commission.

9.     <u>Entire Agreement</u>.  This Addendum and the Listing Agreement, to the extent that such Listing Agreement is not contrary to the terms and conditions herein, constitute the entire contract between the parties.  All prior agreements between the parties are incorporated into this contract.  Its terms are intended by the parties as a final expression of their agreement with respect to such terms as are included herein, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement.  The parties further intend that this agreement constitutes the complete, final and exclusive statement of its terms and that no extrinsic evidence whatsoever may be introduced in any judicial or arbitration proceeding, if any, involving this agreement.

10.     <u>Bankruptcy Court Jurisdiction</u>.  The Bankruptcy Court shall have exclusive jurisdiction to resolve any and all disputes relating to the Listing Agreement and this Addendum.

DATED: October 4, 2018

_____
David M. Goodrich
Chapter 7 Trustee of the Bankruptcy Estate of
Benjamin W. Gonzales

DATED: October 4, 2018

_____
Rogelio Sanchez, Agent
Keller Williams Realty Downey

Exhibit "3"



## BK Global Real Estate Brokerage Listing Agreement

This Real Estate Brokerage Listing Agreement ("Agreement") is between

**David Goodrich, Chapter 7 Bankruptcy Trustee for the Estate of Benjamin Gonzales** ("TRUSTEE") and **BK Global Real Estate Services LLC** ("BROKER")

**Authority to Sell Property: Trustee** gives **Broker** the right to be the EXCLUSIVE BROKER in the sale of the real and personal property (collectively "Property") described below:

**14930 Mar Vista St.**
**Whittier, CA 90605**

Upon full execution of a contract for sale and purchase of the Property and court approval, all rights and obligations of this Agreement will automatically extend through the date of the actual closing of the sales contract. **Trustee** and **Broker** acknowledge that this Agreement does not guarantee a sale. This Property will be offered to any person without regard to race, color, religion, sex, handicap, familial status, national origin, or any other factor protected by federal, state, or local law. **Trustee** certifies and represents that she/he/it is legally entitled to convey the Property and all improvements.

**Price:** The starting listing price of the property will be: $2,000,000.

**Brokers Obligations:** Broker will assist the Trustee to make commercially reasonable efforts to procure the consent and agreement of the senior mortgagee ("Secured Creditor") to:

a) Sell the Property under 11 U.S.C. § 363(b) to whichever third party you determine to have made the best qualified offer during a public sale approved by the court or agree to 11 U.S.C. § 363(k) and place a credit bid on the Property from the estate;

b) Release its lien with respect to the Property; and

c) Agree to a 11 U.S.C. § 506 surcharge to (x) pay our fee and expenses, any commission payable to the local real estate broker and all other fees and expenses associated with the sale, and (y) provide a carve-out for the benefit of allowed unsecured creditors of the estate.

**Brokers Duties:** Broker duties will include but will not be limited to the following services;

- Researching the real estate, running title and lien searches to identify creditors for resolution and any title issues.
- Advising the trustee of any issues and discuss potential resolutions.
- Conducting the resolutions under the trustee's direction.
- Assisting the trustee in the collection of documents and information for employment.
- Making and identifying the correct contact with the secured creditors.
- Notifying the secured creditor of the upcoming sale and identifying servicer requirements.
- Assisting the trustee in establishing market value and negotiating with the Servicer an acceptable sales price and establishing a carve-out.
- Development of online marketing, email campaign and full nationwide marketing services.
- Conducting an online sale.
- Use of the BK Global technology platform.
- Assist the trustee in the review of all offers and coordinate the final documentation of the offer accepted by the trustee.
- Managing contract requirements such as inspections, appraisals and HOA applications.
- Coordinating closings and assisting the trustee in the collection of required information for court filing.
- Closing the transaction and ensure the estate has received the appropriate funds.

**Local Listing Brokers Obligations: Broker** will select a **Local Listing Broker** to co-list the property and provide limited services. **Trustee** will retain both **Broker** and the **Local Listing Broker** to market the Property for sale to the public under a separate listing agreement.

**Local Listing Brokers Duties:** Local Listing Brokers duties will include but will not be limited to the following services;

- Inspecting the property and completing a broker's price opinion.
- Listing the property in the multiple listing service (MLS).
- Posting a for sale sign in the yard and coordinating showings.

**Trustee Obligations:** In consideration of **Broker's** obligations, **Trustee** agrees to:

a) Cooperate with **Broker** in carrying out the purpose of this Agreement
b) Provide **Broker** with keys to the Property and make the Property available for **Broker** to show during reasonable times.
c) File all court motions and documents in a timely manner to ensure a successful sale.
d) Advise **Broker** of any special issues our court requirements.

**Compensation: 6% Real Estate Commission** will be paid out of the proceeds off the sale and is due and paid at closing. The commission will cover the costs of the **Broker, Local Listing Broker** and **Buyers Broker**. The commission will be paid as follows:

- 2% Broker
- 2% Local Listing Broker
- 2% Buyers Broker

**Term of Agreement:** The term of this Agreement will commence when signed by the **Trustee** and the court approves it.  This Agreement will automatically terminate upon the closing of the sale of the Property, or it may be terminated by either party for any or no reason after 180 days from commencement. In addition, this Agreement will be terminated if the **Trustee** files a Report of No Distribution, files a Notice of Abandonment of the subject property, or submits a Trustee's Final Report to the Office of the United States Trustee.

**Broker** acknowledges and agrees that (a) the **Trustee** is not executing this Agreement in an individual capacity, but solely as trustee of the estate, (b) **Broker** does not and will not have any right or claim with respect to the estate and (c) **Brokers** sole recourse for payment of real estate commission, fees and expenses will be paid at closing with court approval and under the Consent of the Secured.

This Agreement constitutes our complete agreement on this matter and supersedes all prior agreements and representations concerning the same.  It may not be modified or amended except in a writing signed by both parties.

**The effective date of this agreement is** _November 21, 2018_

**BROKER:**

By:_____    Acknowledged and agreed as of the date set forth above.
    Patrick Butler, Broker-in-Charge

**TRUSTEE:**

_____    Acknowledged and agreed as of the date set forth above.
**David Goodrich, Trustee,** not individually but solely as Trustee in the referenced matter.

# Exhibit "4"

## BK Global's Real Estate Sale Program and its value to Chapter 7 Bankruptcy Trustees

**BK Global's Primary Role:**

BK Global has been providing real estate services to Chapter 7 trustees on a nationwide basis since 2014. One of BK Global's tools is a proprietary technology platform, which is used to manage all aspects of the bankruptcy real estate transaction and makes it easy for all parties of the transaction to collaborate online and conduct a successful sale.

The system gives Chapter 7 trustees, listing brokers and buyer's brokers an interface to manage their portion of the transaction while being updated on progress throughout the entire process. A key attribute of this platform is the ability to manage offers online. This enables buyer's agents to submit offers online in a sealed bid process so the trustee can simply review and approve the best offer for the estate, which has proven to drive purchase prices to highest and best.

This technology provides full transparency to all stakeholders ensuring fairness and compliance are maintained. The trustee maintains oversight and control of the best offers presented on each property.

Just because a trustee is able to sell a property, the bankruptcy code does not prohibit a trustee from using his/her best business judgment to hire a professional so they might be able to achieve a better outcome. In accordance 11 U.S.C. §327, BK Global is considered a disinterested party and benefits the estate in many ways due to the staff's extensive experience working with a nationwide network of real estate professionals trained to handle bankruptcy sales.

Key Benefits of Working with BK Global

- Unbiased, verified, full market valuation of assets to determine true market value in order to maximize the return to the estate versus accepting enough to payoff the creditor
- Expedite information from the creditor (payoff, closing coordination, wire information)
- Manage title and closing to handle title curative issues and ensure closing coordination with bankruptcy court timelines
- Ensure excess funds paid to the creditor are returned to the estate (happens on all cases due to escrow account refunds)
- Transparent

**BK Global's Fiduciary is to the Trustee:**

BK Global is hired by the trustee and works for the trustee as a licensed real estate broker and provides real estate services and technology. BK Global is paid as one of the real estate professionals from a commission that is standard in the real estate industry.

All contract negotiations are conducted transparently through our proprietary system and all final amounts negotiated, including agent compensation, closing costs, carve-outs (for short sales), and sales amount are approved by trustee, not BK Global. All numbers are presented on state-required closing disclosures, signed by all parties, and presented as evidence when the motion to sell is filed.

BK Global is uniquely positioned to list, market, package an offer, and assist the trustee to negotiate a deal working with the local listing broker, buyer's broker and the trustee as seller.

**BK Global's Services and Compensation:**

BK Global, Inc. is a licensed Real Estate Broker registered in the state of Florida and acts in the capacity as a licensed agent/broker. As a member of the real estate professional association, BK Global is permitted to work with local brokers and share fees for work conducted. Section 504(b) of the Bankruptcy Code permits the compensation BK Global receives for work conducted on a case.

BK Global has developed a nationwide network of licensed real estate brokers that are trained in the sale of real estate in bankruptcy. BK Global co-lists the real estate with one of our local trained licensed network brokers. The trustee hires both BK Global and the local broker to perform the required services.  The listing commission is split between BK Global and the local broker.

For these fees both BK Global and the local broker share in the duties that are required to conduct a consented sale in bankruptcy.

BK Global services include but are not limited to:

- Researching the real estate, running title and lien searches to identify creditors for resolution and any title issues
- Advising the trustee of any issues and discuss potential resolutions
- Conducting the resolutions under the trustee's direction

- Assisting the trustee in the collection of documents and information for employment
- Assisting the trustee in establishing market value and validating the local broker's price opinion
- Development of online marketing, email campaign and full nationwide marketing services
- Conducting an online sale
- Use of the technology platform
- Assist the trustee in the review of all offers and coordinate the final documentation of the offer accepted by the trustee
- Managing contract requirements such as inspections, appraisals and HOA applications
- Coordinating closings and assisting the trustee in the collection of required information for court filing
- Closing the transaction and ensure the estate has received the appropriate funds.

Local broker services include but are not limited to, inspecting the property and completing a broker's price opinion, listing the property in the multiple listing service (MLS), posting a for sale sign in the yard and coordinating showings.

**US Bankruptcy Court Districts where BK Global conducted Real Estate Sales**

1. East District of Arkansas
2. Central District of California
3. East District of California
4. South District of California
5. District of Colorado
6. District of Connecticut
7. Middle District of Florida
8. Southern District of Georgia
9. District of Hawaii
10. Northern District of Illinois
11. Northern District of Indiana
12. Southern District of Indiana
13. Western District of Kentucky
14. Eastern District of Louisiana
15. Middle District of Louisiana
16. Western District of Louisiana
17. District of Massachusetts
18. District of Maryland
19. Eastern District of Michigan
20. Eastern District of North Carolina
21. Western District of North Carolina
22. District of New Jersey

23. District of Nevada
24. Eastern District of New York
25. Northern District of Ohio
26. Southern District of Ohio
27. District of Oregon
28. Eastern District of Pennsylvania
29. Middle District of Pennsylvania
30. Western District of Pennsylvania
31. Northern District of Texas
32. Western District of Texas
33. Western District of Washington

Exhibit "5"

**CLTA Preliminary Report Form**        Order Number:  O-SA-5647521
(Rev. 11/06)        Page Number:  1



# First American Title Company

### 4 First American Way
### Santa Ana, CA 92707
California Department of Insurance License No. 151

Order Number:        O-SA-5647521 (dt)

| | |
|---|---|
| Title Officer: | Debbie Tognetti |
| Phone: | (714)250-8579 |
| Fax No.: | (714)481-2956 |
| E-Mail: | FAHQ-RA-octitle3@firstam.com |
| Property: | 14930 Mar Vista Street |
| | Whittier, CA 90605 |

### PRELIMINARY REPORT

In response to the above referenced application for a policy of title insurance, this company hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Exhibit A attached. *The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties.* Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Exhibit A. Copies of the policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit A of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

Order Number: **O-SA-5647521**
Page Number:  2

Dated as of February 14, 2018 at 7:30 A.M.

The form of Policy of title insurance contemplated by this report is:

ALTA/CLTA Homeowner's (EAGLE) Policy of Title Insurance (2013) and ALTA Ext Loan Policy 1056.06 (06-17-06) if the land described is an improved residential lot or condominium unit on which there is located a one-to-four family residence; or ALTA Standard Owner's Policy 2006 (WRE 06-17-06) and the ALTA Loan Policy 2006 (06-17-06) if the land described is an unimproved residential lot or condominium unit

A specific request should be made if another form or additional coverage is desired.

Title to said estate or interest at the date hereof is vested in:

   Benjamin William Gonzales and Gretel Arend Gonzales, Trustees of the Gonzales Family Trust dated July 26, 1999

The estate or interest in the land hereinafter described or referred to covered by this Report is:

   FEE

The Land referred to herein is described as follows:

(See attached Legal Description)

At the date hereof exceptions to coverage in addition to the printed Exceptions and Exclusions in said policy form would be as follows:

1.   General and special taxes and assessments for the fiscal year 2018-2019, a lien not yet due or payable.

2.   General and special taxes and assessments for the fiscal year 2017-2018.
     First Installment:        $6,596.71, PAID
     Penalty:                  $0.00
     Second Installment:       $6,596.70, OPEN
     Penalty:                  $0.00
     Tax Rate Area:            79-03561
     A. P. No.:                8149-030-005

3.   The lien of supplemental taxes, if any, assessed pursuant to Chapter 3.5 commencing with Section 75 of the California Revenue and Taxation Code.

4.   An easement for PIPE LINES and incidental purposes in the document recorded  as BOOK 18483, PAGE 225 of Official Records.

     The location of the easement cannot be determined from record information.

*First American Title*
Page 2 of 15

Order Number: **O-SA-5647521**
Page Number:  3

5.  An easement for public utilities and incidental purposes in the document recorded  as BOOK 19507, PAGE 50 of Official Records.

6.  Covenants, conditions, restrictions and easements in the document recorded June 20, 1941 as BOOK 18491, PAGE 232  of Official Records, which provide that a violation thereof shall not defeat or render invalid the lien of any first mortgage or deed of trust made in good faith and for value, but deleting any covenant, condition, or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, sexual orientation, familial status, disability, handicap, national origin, genetic information, gender, gender identity, gender expression, source of income (as defined in California Government Code § 12955(p)) or ancestry, to the extent such covenants, conditions or restrictions violation 42 U.S.C. § 3604(c) or California Government Code § 12955.  Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

    Document(s) declaring modifications thereof recorded July 30, 1941 as BOOK 18651, PAGE 101; DECEMBER 27, 1965 AS INSTRUMENT NO. 65-910; DECEMBER 31, 1975 AS INSTRUMENT NO. 75-6736; AND DECEMBER 11, 1986 AS INSTRUMENT NO. 86-1721260, ALL of Official Records.

7.  An easement for POWER LINES and incidental purposes in the document recorded  as BOOK 27590, PAGE 343 of Official Records.

8.  An easement for TELEPHONE LINES and incidental purposes in the document recorded  as BOOK 29063, PAGE 68 of Official Records.

9.  A deed of trust to secure an original indebtedness of $550,750.00 recorded January 31, 2013 as INSTRUMENT NO. 13-162626 OF OFFICIAL RECORDS.
    Dated:                          January 25, 2013
    Trustor:                        BENJAMIN WILLIAM GONZALES AND GRETEL AREND GONZALES, INDIVIDUALLY AND AS TRUSTEES OF THE GONZALES FAMILY TRUST DATED JULY 26, 1999
    Trustee:                        FIRST AMERICAN TITLE INSURANCE COMPANY
    Beneficiary:                    BANK OF AMERICA, N.A.

10. A deed of trust to secure an original indebtedness of $719,500.00 recorded November 19, 2013 as INSTRUMENT NO. 13-1640892 OF OFFICIAL RECORDS.
    Dated:                          November 05, 2013
    Trustor:                        BENJAMIN WILLIAM GONZALES AND GRETEL AREND GONZALES, INDIVIDUALLY AND AS TRUSTEES OF THE GONZALES FAMILY TRUST DATED JULY 26, 1999
    Trustee:                        FIRST AMERICAN TITLE INSURANCE COMPANY
    Beneficiary:                    BANK OF AMERICA, N.A.

    The above deed of trust states that it secures an equity line/revolving line of credit. Prior to the payment and suspension of the equity line/revolving line of credit, an instruction to suspend and close the equity line/revolving line of credit pursuant to CA Civil Code Section 2943.1 must be executed by the borrower.

Order Number: **O-SA-5647521**
Page Number:  4

11.    A deed of trust to secure an original indebtedness of $150,000.00 recorded June 30, 2015 as
         INSTRUMENT NO. 15-779609 OF OFFICIAL RECORDS.
         Dated:                          March 09, 2015
         Trustor:                        GRETEL A. GONZALES
         Trustee:                        COMMONWEALTH LAND TITLE CO.
         Beneficiary:                 FRANK O. FOX


         THE ABOVE REFERENCED DEED OF TRUST AFFECTS THE INTEREST OF THE ABOVE TRUSTOR NAME
         ONLY.

         Notes:
         a. If this deed of trust is to be eliminated in the policy or policies contemplated by this
         report/commitment, we will require all of the following prior to the recordation of any documents or
         the issuance of any policy of title insurance:
         i. Original note and deed of trust.
         ii. Payoff demand statement signed by all present beneficiaries.
         iii. Request for reconveyance signed by all present beneficiaries.
         b. If the payoff demand statement or the request for reconveyance is to be signed by a servicer, we
         will also require a full copy of the loan servicing agreement executed by all present beneficiaries.
         c. If any of the beneficial interest is presently held by trustees under a trust agreement, we will
         require a certification pursuant to Section 18100.5 of the California Probate Code in a form
         satisfactory to the Company

12.    A deed of trust to secure an original indebtedness of $250,000.00 recorded August 09, 2016 as
         INSTRUMENT NO. 16-940681 OF OFFICIAL RECORDS.
         Dated:                          July 28, 2016
         Trustor:                        GRETEL A. GONZALES
         Trustee:                        COMMONWEALTH LAND TITLE CO.
         Beneficiary:                 FRANK O. FOX


         THE ABOVE REFERENCED DEED OF TRUST AFFECTS THE INTEREST OF THE ABOVE TRUSTOR NAME
         ONLY.

         Notes:
         a. If this deed of trust is to be eliminated in the policy or policies contemplated by this
         report/commitment, we will require all of the following prior to the recordation of any documents or
         the issuance of any policy of title insurance:
         i. Original note and deed of trust.
         ii. Payoff demand statement signed by all present beneficiaries.
         iii. Request for reconveyance signed by all present beneficiaries.
         b. If the payoff demand statement or the request for reconveyance is to be signed by a servicer, we
         will also require a full copy of the loan servicing agreement executed by all present beneficiaries.
         c. If any of the beneficial interest is presently held by trustees under a trust agreement, we will
         require a certification pursuant to Section 18100.5 of the California Probate Code in a form
         satisfactory to the Company

13.    Any defects, liens, encumbrances or other matters which name parties with the same or similar
         names as GRETEL GONZALES.  The name search necessary to ascertain the existence of such
         matters has not been completed.  In order to complete this preliminary report or commitment, we
         will require a statement of information.

14.  Any defects, liens, encumbrances or other matters which name parties with the same or similar names as BENJAMIN GONZALES.  The name search necessary to ascertain the existence of such matters has not been completed.  In order to complete this preliminary report or commitment, we will require a statement of information.

15.  Water rights, claims or title to water, whether or not shown by the public records.

16.  This transaction may be subject to the FinCEN Geographic Targeting Order affecting residential sale transactions. This company must be provided with information prior to the closing sufficient to determine if IRS/FinCEN Form 8300 must be completed and filed and must be provided information sufficient to meet the records retention requirements of the FinCEN Geographic Targeting Order. This transaction will not be insured, and this company and/or its underwriter will not be involved in a Covered Transaction (as defined by the FinCEN Geographic Targeting Order) until this information is submitted and reviewed by this company.

**Prior to the issuance of any policy of title insurance, the Company will require:**

17.  With respect to the trust referred to in the vesting:
a. A certification pursuant to Section 18100.5 of the California Probate Code in a form satisfactory to the Company.
b. Copies of those excerpts from the original trust documents and amendments thereto which designate the trustee and confer upon the trustee the power to act in the pending transaction.
c. Other requirements which the Company may impose following its review of the material required herein and other information which the Company may require.

Order Number: **O-SA-5647521**
Page Number: 6

---

### INFORMATIONAL NOTES

---

Note: The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than the certain dollar amount set forth in any applicable arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. If you desire to review the terms of the policy, including any arbitration clause that may be included, contact the office that issued this Commitment or Report to obtain a sample of the policy jacket for the policy that is to be issued in connection with your transaction.

1.    This report is preparatory to the issuance of an ALTA Loan Policy. We have no knowledge of any fact which would preclude the issuance of the policy with CLTA endorsement forms 100 and 116 and if applicable, 115 and 116.2 attached.

When issued, the CLTA endorsement form 116 or 116.2, if applicable will reference a(n) Single Family Residence  known as 14930 MAR VISTA STREET, WHITTIER, CA.

2.    According to the public records, there has been no conveyance of the land within a period of twenty-four months prior to the date of this report, except as follows:

None

NOTE to proposed insured lender only: No Private transfer fee covenant, as defined in Federal Housing Finance Agency Final Rule 12 CFR Part 1228, that was created and first appears in the Public Records on or after February 8, 2011, encumbers the Title except as follows: None

The map attached, if any, may or may not be a survey of the land depicted hereon. First American expressly disclaims any liability for loss or damage which may result from reliance on this map except to the extent coverage for such loss or damage is expressly provided by the terms and provisions of the title insurance policy, if any, to which this map is attached.

Order Number: **O-SA-5647521**
Page Number: 7

## LEGAL DESCRIPTION

Real property in the City of Whittier, County of Los Angeles, State of California, described as follows:

THE NORTHWESTERLY 135 FEET OF LOT 13 OF TRACT 11571, IN THE CITY OF WHITTIER, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 243 PAGES 27 TO 29 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM THE SOUTHWESTERLY 185 FEET MEASURED ALONG THE NORTHWESTERLY LINE OF SAID LOT.

APN: 8149-030-005

Order Number: **O-SA-5647521**
Page Number: 8



Order Number: **O-SA-5647521**
Page Number: 9

## *NOTICE*

Section 12413.1 of the California Insurance Code, effective January 1, 1990, requires that any title insurance company, underwritten title company, or controlled escrow company handling funds in an escrow or sub-escrow capacity, wait a specified number of days after depositing funds, before recording any documents in connection with the transaction or disbursing funds. This statute allows for funds deposited by wire transfer to be disbursed the same day as deposit. In the case of cashier's checks or certified checks, funds may be disbursed the next day after deposit. In order to avoid unnecessary delays of three to seven days, or more, please use wire transfer, cashier's checks, or certified checks whenever possible.

Order Number: **O-SA-5647521**
Page Number: 10

**EXHIBIT A**
**LIST OF PRINTED EXCEPTIONS AND EXCLUSIONS (BY POLICY TYPE)**

**CLTA STANDARD COVERAGE POLICY – 1990**
EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a)  Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

    (b)  Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3.  Defects, liens, encumbrances, adverse claims or other matters:

    (a)  whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;

    (b)  not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

    (c)  resulting in no loss or damage to the insured claimant;

    (d)  attaching or created subsequent to Date of Policy; or

    (e)  resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6.  Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public, records.

2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6.  Any lien or right to a lien for services, labor or material not shown by the public records.

**CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)**
EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1.  Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:

    a. building;
    b. zoning;
    c. land use;

*First American Title*
Page 10 of 15

     d.  improvements on the Land;
     e.  land division; and
     f.  environmental protection.
     This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.
2.    The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3.    The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.
4.    Risks:
     a.  that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
     b.  that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
     c.  that result in no loss to You; or
     d.  that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5.    Failure to pay value for Your Title.
6.    Lack of a right:
     a.  to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
     b.  in streets, alleys, or waterways that touch the Land.
     This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7.    The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.
8.    Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
9.    Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1% of Policy Amount Shown in Schedule A or $2,500 (whichever is less) | $10,000 |
| Covered Risk 18: | 1% of Policy Amount Shown in Schedule A or $5,000 (whichever is less) | $25,000 |
| Covered Risk 19: | 1% of Policy Amount Shown in Schedule A or $5,000 (whichever is less) | $25,000 |
| Covered Risk 21: | 1% of Policy Amount Shown in Schedule A or $2,500 (whichever is less) | $5,000 |

## 2006 ALTA LOAN POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.    (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

       (i) the occupancy, use, or enjoyment of the Land;
       (ii) the character, dimensions, or location of any improvement erected on the Land;
       (iii) the subdivision of land; or
       (iv) environmental protection;

    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.    Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.    Defects, liens, encumbrances, adverse claims, or other matters
    (a) created, suffered, assumed, or agreed to by the Insured Claimant;
    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

Order Number:  **O-SA-5647521**
Page Number:  12

(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or
(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.   Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

5.   Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.

6.   Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
(a) a fraudulent conveyance or fraudulent transfer, or
(b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.

7.   Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).


The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

[Except as provided in Schedule B - Part II,[ t[or T]his policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

### [PART I

[The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.   (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency  that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.   Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by  persons in possession of the Land.

3.   Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4.   Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5.   (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6.   Any lien or right to a lien for services, labor or material not shown by the public records.


### PART II

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss

or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:]


### 2006 ALTA OWNER'S POLICY (06-17-06)
#### EXCLUSIONS FROM COVERAGE


The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.   (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

(i) the occupancy, use, or enjoyment of the Land;
(ii) the character, dimensions, or location of any improvement erected on the Land;
(iii) the subdivision of land; or
(iv) environmental protection;

or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
(b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.   Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.   Defects, liens, encumbrances, adverse claims, or other matters
(a) created, suffered, assumed, or agreed to by the Insured Claimant;
(b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

Order Number: **O-SA-5647521**
Page Number:  13

(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 or 10); or
(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4.    Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
(a) a fraudulent conveyance or fraudulent transfer, or
(b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5.    Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.


The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:
[The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.    (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency  that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.    Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by  persons in possession of the Land.
3.    Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4.    Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5.    (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.    Any lien or right to a lien for services, labor or material not shown by the Public Records.
7.    [Variable exceptions such as taxes, easements, CC&R's, etc. shown here.]

**ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (07-26-10)**
EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.    (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

(i) the occupancy, use, or enjoyment of the Land;
(ii) the character, dimensions, or location of any improvement erected on the Land;
(iii) the subdivision of land; or
(iv) environmental protection;

or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk  5, 6, 13(c), 13(d), 14 or 16.
(b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
2.    Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.    Defects, liens, encumbrances, adverse claims, or other matters
(a) created, suffered, assumed, or agreed to by the Insured Claimant;
(b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4.    Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5.    Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.
6.    Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the

Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.

7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.

8.  The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes.  This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.

9.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

    (a) a fraudulent conveyance or fraudulent transfer, or

    (b) a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.

10.  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

11.  Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

Order Number:  **O-SA-5647521**
Page Number:  15


First American Title

**Privacy Information**
**We Are Committed to Safeguarding Customer Information**
In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information - particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information you provide to us. Therefore, together with our subsidiaries we have adopted this Privacy Policy to govern the use and handling of your personal information.

**Applicability**
This Privacy Policy governs our use of the information that you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity. First American has also adopted broader guidelines that govern our use of personal information regardless of its source. First American calls these guidelines its Fair Information Values.

**Types of Information**
Depending upon which of our services you are utilizing, the types of nonpublic personal information that we may collect include:
- Information we receive from you on applications, forms and in other communications to us, whether in writing, in person, by telephone or any other means;
- Information about your transactions with us, our affiliated companies, or others; and
- Information we receive from a consumer reporting agency.

**Use of Information**
We request information from you for our own legitimate business purposes and not for the benefit of any nonaffiliated party. Therefore, we will not release your information to nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested of us: or (2) as permitted by law. We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purpose, such as quality control efforts or customer analysis. We may also provide all of the types of nonpublic personal information listed above to one or more of our affiliated companies. Such affiliated companies include financial service providers, such as title insurers, property and casualty insurers, and trust and investment advisory companies, or companies involved in real estate services, such as appraisal companies, home warranty companies and escrow companies. Furthermore, we may also provide all the information we collect, as described above, to companies that perform marketing services on our behalf, on behalf of our affiliated companies or to other financial institutions with whom we or our affiliated companies have joint marketing agreements.

**Former Customers**
Even if you are no longer our customer, our Privacy Policy will continue to apply to you.

**Confidentiality and Security**
We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you. We will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy and First American's Fair Information Values. We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

**Information Obtained Through Our Web Site**
First American Financial Corporation is sensitive to privacy issues on the Internet. We believe it is important you know how we treat the information about you we receive on the Internet.
In general, you can visit First American or its affiliates' Web sites on the World Wide Web without telling us who you are or revealing any information about yourself. Our Web servers collect the domain names, not the e-mail addresses, of visitors. This information is aggregated to measure the number of visits, average time spent on the site, pages viewed and similar information. First American uses this information to measure the use of our site and to develop ideas to improve the content of our site.
There are times, however, when we may need information from you, such as your name and email address. When information is needed, we will use our best efforts to let you know at the time of collection how we will use the personal information. Usually, the personal information we collect is used only by us to respond to your inquiry, process an order or allow you to access specific account/profile information. If you choose to share any personal information with us, we will only use it in accordance with the policies outlined above.

**Business Relationships**
First American Financial Corporation's site and its affiliates' sites may contain links to other Web sites. While we try to link only to sites that share our high standards and respect for privacy, we are not responsible for the content or the privacy practices employed by other sites.

**Cookies**
Some of First American's Web sites may make use of "cookie" technology to measure site activity and to customize information to your personal tastes. A cookie is an element of data that a Web site can send to your browser, which may then store the cookie on your hard drive.
FirstAm.com uses stored cookies. The goal of this technology is to better serve you when visiting our site, save you time when you are here and to provide you with a more meaningful and productive Web site experience.
--------------------------------------------------------------------------------
**Fair Information Values**
**Fairness** We consider consumer expectations about their privacy in all our businesses. We only offer products and services that assure a favorable balance between consumer benefits and consumer privacy.
**Public Record** We believe that an open public record creates significant value for society, enhances consumer choice and creates consumer opportunity. We actively support an open public record and emphasize its importance and contribution to our economy.
**Use** We believe we should behave responsibly when we use information about a consumer in our business. We will obey the laws governing the collection, use and dissemination of data.
**Accuracy** We will take reasonable steps to help assure the accuracy of the data we collect, use and disseminate. Where possible, we will take reasonable steps to correct inaccurate information. When, as with the public record, we cannot correct inaccurate information, we will take all reasonable steps to assist consumers in identifying the source of the erroneous data so that the consumer can secure the required corrections.
**Education** We endeavor to educate the users of our products and services, our employees and others in our industry about the importance of consumer privacy. We will instruct our employees on our fair information values and on the responsible collection and use of data. We will encourage others in our industry to collect and use information in a responsible manner.
**Security** We will maintain appropriate facilities and systems to protect against unauthorized access to and corruption of the data we maintain.

Form 50-PRIVACY (9/1/10)                        Page 1 of 1                        Privacy Information (2001-2010 First American Financial Corporation)

*First American Title*
Page 15 of 15

Exhibit "5"
Page 51

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled **TRUSTEE'S APPLICATION TO RETAIN (1) BK GLOBAL REAL ESTATE SERVICES; AND (2) KELLER WILLIAMS DOWNEY TO PROCURE CONSENTED PUBLIC SALE PURSUANT TO 11 U.S.C. §§ 327, 328 AND 330; DECLARATIONS OF DAVID M. GOODRICH, ROGELIO SANCHEZ AND PATRICK BUTLER IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **November 21, 2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On **November 21, 2018**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **November 21, 2018**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.
**VIA PERSONAL DELIVERY**
PRESIDING JUDGE'S COPY
Bankruptcy Judge Barry Russell
United States Bankruptcy Court, Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 21, 2018 | Chanel Mendoza | */s/ Chanel Mendoza* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                          **F 9013-3.1.PROOF.SERVICE**

4837-1104-3456, v. 1

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:
   - CREDITOR BMW BANK OF NORTH AMERICA, C/O AIS PORTFOLIO SERVICES, LP: Bhagwati Barot    bbarot@aissolution.com
   - CREDITOR COMERICA BANK: Jennifer Witherell Crastz    jcrastz@hrhlaw.com
   - CREDITOR COMERICA BANK: Christopher D Crowell    ccrowell@hrhlaw.com
   - INTERESTED PARTY: Howard M Ehrenberg    hehrenberg@sulmeyerlaw.com, hehrenberg@ecf.inforuptcy.com;mviramontes@ecf.inforuptcy.com
   - INTERESTED PARTY ANDY EPSTEIN: Andy J Epstein    taxcpaesq@gmail.com
   - TRUSTEE: David M Goodrich (TR)    dgoodrich@wgllp.com, c143@ecfcbis.com;dgoodrich11@ecf.epiqsystems.com;lrobles@wgllp.com
   - ATTORNEYS FOR TRUSTEE DAVID M. GOODRICH: Chad V Haes    chaes@marshackhays.com, 8649808420@filings.docketbird.com
   - ATTORNEYS FOR TRUSTEE DAVID M. GOODRICH: D Edward Hays    ehays@marshackhays.com, 8649808420@filings.docketbird.com
   - ATTORNEYS FOR TRUSTEE DAVID M. GOODRICH: Laila Masud    lmasud@marshackhays.com, 8649808420@filings.docketbird.com
   - DEBTOR BENJAMIN W. GONZALES: James R Selth    jim@wsrlaw.net, jselth@yahoo.com;brian@wsrlaw.net;vinnet@ecf.inforuptcy.com
   - INTERESTED PARTY: Valerie Smith    claims@recoverycorp.com
   - U.S. TRUSTEE: United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
   - DEBTOR BENJAMIN W. GONZALES: Daniel J Weintraub    dan@wsrlaw.net, vinnet@ecf.inforuptcy.com;brian@wsrlaw.net

2. **SERVED BY UNITED STATES MAIL**: CON'T

**DEBTOR**
Benjamin W Gonzales
P.O. Box 1530
Los Angeles, CA 90001-0530

**INTERESTED PARTY**
Bank of America, N.A.
Attn: CEO, or Officer, Managing or General Agent, or any Other Agent Authorized to Receive Service of Process
818 West 7th Street, 2nd Floor
Los Angeles, CA 90017

**INTERESTED PARTY**
Bank of America, N.A.
C T Corporation System
Attn: Janice Bergthold, Senior Vice President, or CEO, or Officer, Managing or General Agent, or any Other Agent Authorized to Receive Service of Process
150 N. College St., NC1-028-17-06
Charlotte, NC 28255

**INTERESTED PARTY/BROKER**
Steven Shiller, Esq.
BK GLOBAL REAL ESTATE SERVICES
1095 Broken Sound Pkwy., Suite 100
Boca Raton, FL 33487

**INTERESTED PARTY/BROKER**
Rogelio Sanchez
Keller Williams Realty Downey
8255 Firestone Blvd., Ste. 100
Downey, CA 90241

Office of The United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, California 90017

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

4837-1104-3456, v. 1