1  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
2  CHAD V. HAES, #267221
   chaes@marshackhays.com
3  MARSHACK HAYS LLP
   870 Roosevelt
4  Irvine, California 92620
   Telephone: (949) 333-7777
5  Facsimile: (949) 333-7778

6  Attorneys for Chapter 7 Trustee,
   DAVID M. GOODRICH

7

8              UNITED STATES BANKRUPTCY COURT

9         CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

10

| 11 In re | Case No. 2:17-bk-23812-BR |
|---|---|
| 12 BENJAMIN W. GONZALES, | Chapter 7 |
| 13     Debtor. | TRUSTEE'S MOTION TO APPROVE:<br>  1. CARVE-OUT AGREEMENT;<br>  2. COMPROMISE BETWEEN TRUSTEE AND COMERICA BANK; AND<br>  3. ABANDONMENT OF PROPERTY OF THE ESTATE;<br>MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATIONS OF DAVID M. GOODRICH AND GRETEL GONZALES IN SUPPORT<br><br>Date:  February 12, 2019<br>Time:  10:00 a.m.<br>Ctrm:  1668 |

21  TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY COURT JUDGE,

22  THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTOR, AND ALL INTERESTED

23  PARTIES:

24        David M. Goodrich, in his capacity as Chapter 7 Trustee ("Trustee") for the bankruptcy estate

25  ("Estate") of Benjamin W. Gonzales ("Debtor") respectfully files this motion seeking approval of a

26  carve-out agreement and compromise ("Motion") with Comerica Bank ("Comerica"). Comerica holds

27  liens against property of the Estate. Under the terms of the agreement, Comerica is carving-out funds

28  for the benefit of creditors.

1. **Summary of Argument**

Carve-outs should be approved if there is benefit to the estate. In this case, the Trustee and Comerica have jointly executed an agreement by which Comerica agrees to carve-out $150,000 from Comerica's liens against real property ("Comerica Liens") for the benefit of the Estate. For the reasons set forth below, the Trustee believes that the approximate $150,000 in carve-out funds will provide a significant benefit to the Estate and should be approved.

2. **Factual Background**

A. **The Fox Liens and Resulting Lawsuit**

On or about February 24, 2015, Debtor's ex-spouse, Gretel Gonzales ("Ms. Gonzales"), retained The Law Firm of Fox and Fox ("Fox Firm") as her family law counsel to commence a dissolution action against Debtor in the Los Angeles Superior Court ("State Court").

On February 27, 2015, the Fox Firm commenced State Court Case No. BD616423 ("Divorce Case") on Ms. Gonzales' behalf.

Between February 24, 2015, and October 26, 2017, Ms. Gonzales incurred alleged attorneys' fees related to the Divorce Case.

On June 30, 2015, the Fox Firm recorded a deed of trust ("First DoT") against the real property located at 14930 Mar Vista Street, Whittier, California 90605 ("Mar Vista Property") at the Los Angeles County Recorder's Office as instrument no.15-0779609 to secure an alleged debt of Ms. Gonzales in the amount of $150,000. On August 10, 2015, the Fox Firm recorded the deed of trust ("Second DoT") against the real property located at 14663 Carnell Street, Whittier, California 90603 ("Carnell Property") at the Los Angeles County Recorder's Office as instrument no. 15-973660. Collectively, the First DoT and Second DoT are referred to herein as the "First FLARPL."

On February 19, 2016, the Fox Firm, on behalf Ms. Gonzales, filed an abstract of judgment at the Los Angeles County Recorder's Office as instrument no. 16-0183748 reflecting a spousal support judgment against Debtor entered on January 12, 2016 ("Gretel Abstract").

On August 9, 2016, the Fox Firm recorded a deed of trust against the Mar Vista Property at the Los Angeles County Recorder's Office as instrument no. 16-940681 to secure an alleged debt of Ms. Gonzales in the amount of $250,000 ("Second FLARPL").

On February 27, 2017, the Fox Firm recorded a deed of trust against the Carnell Property at the Los Angeles County Recorder's Office as instrument no. 17-0231102 to secure an alleged debt of Ms. Gonzales in the amount of $250,000 ("Third FLARPL").

The First FLARPL, Second FLARPL, and Third FLARPL are collectively referred to herein as the "Fox Liens."

On November 9, 2017, the Fox Firm filed a civil lawsuit against Ms. Gonzales commencing Civil Case No. BC682953 ("Fox Case"). The complaint commencing the Fox Case asserts claims for breach of contract arising from Ms. Gonzales' alleged failure to pay attorneys' fees in the Divorce Case and seeks damages in the amount of $763,330.48 ("Fox Damages").

On January 5, 2018, Ms. Gonzales filed an answer disputing the Fox Damages and a cross-complaint against the Fox Firm ("Cross-Claims"). The trial in the Fox Case is currently set for March 2019.

As of October 9, 2018, the Fox Firm alleges that it is owed attorneys' fees and interest in the total amount of $837,783.23 ("Fox Claim"). The Fox Claim is allegedly secured by the Properties pursuant to the Fox Liens.

## B.      Comerica Claim

On November 14, 2016, Comerica filed a complaint against Debtor, Ms. Gonzales, The Gonzales Family Trust of July 26, 1999 ("Trust"), and Debtor's affiliated business entities, commencing State Court case entitled *Comerica Bank v. C-Pak Sea Foods et al.*, Case No. BC640599 ("Comerica Case"). The complaint demanded $1,458,573.49 and alleged causes of action for breach of contract and breach of guaranty.

On April 11, 2017, the State Court issued a prejudgment writ of attachment ("Writ") against all defendants.

On September 28, 2018, Comerica secured a judgment against Debtor, Ms. Gonzales and the Trust in the amount of $1,120,658.30 ("Comerica Claim"). The judgment relates back to the date of the Writ. The recording of an abstract of judgment against the Properties in the amount of the Comerica Claim will result in a lien against the Properties in the amount of the Comerica Claim ("Comerica Liens").

MOTION TO APPROVE COMPROMISE/CARVE OUT WITH COMERICA BANK AND ABANDONMENT
4836-5905-7285v1/1239-013

## C.    Bankruptcy Case

On November 8, 2017, Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code in the Central District of California, commencing Bankruptcy Case No. 2:17-bk-23812-BR. David M. Goodrich, was appointed the Chapter 7 Trustee of the Estate.

In his Schedule A/B, Debtor lists an ownership interest in: (1) the Mar Vista Property with a scheduled value of $1,900,000; and (2) the Carnell Property with a scheduled value of $700,000. According to Ms. Gonzales, a Schafer & Sons piano was located at the Mar Vista Property ("Piano") when she moved out. Recently, police reported that the Piano was stolen from the Mar Vista Property. The Piano holds substantial sentimental value to the Gonzales family. The approximate fair market value of the Piano is $3,000.

Title to the Mar Vista Property and the Carnell Property is held in the name of the Trust. Debtor and Ms. Gonzales are the sole trustees of the Trust.

The Trustee seeks to sell the Properties for the benefit of creditors. To that end, the Trustee has negotiated a $100,000 carve-out from Bank of America ("BofA"), the first and second priority lienholder on the Mar Vista Property. Pursuant to the carve-out ("BofA Agreement"), BofA has also agreed to pay the 6% broker commission and all standard costs of sale, including title and escrow fees, related to the sale of the Mar Vista Property. The Trustee has obtained Court-approval of the BofA Agreement.

On September 4, 2018, the Trustee and Ms. Gonzales entered into a settlement agreement whereby Ms. Gonzales agreed to subordinate her priority domestic support obligation to allowed administrative expenses of the Estate pursuant to 11 U.S.C. §507(a)(1)(C) in exchange for the release of certain claims of the Estate ("Subordination Agreement"). On November 16, 2018, the Court entered an order granting the Subordination Agreement.

The Trustee recently retained Clarence Yoshikane of Pacific / Sotheby's International Realty ("Mr. Yoshikane") as real estate broker to market and sell the Carnell Property. Mr. Yoshikane has agreed to a reduced broker commission of 5%.

The Trustee believes the fair market value of the Mar Vista Property is approximately $1,800,000. The Trustee believes the fair market value of the Carnell Property is approximately $600,000. The following charts reflect that the proceeds available to the various junior lienholders do not change as a

4

result of issues of cross-collateralization. As such, there are no marshaling issues that arise based on which property sells first. Based on the above facts, the equity available to pay the Fox Firm Claim and the other secured claims are as follows:

| Total Sales Proceeds | |
|---|---|
| Mar Vista Property value | $1,800,000 |
| Carnell Property value | $  600,000 |
| **Total** | **$2,400,000** |

| Total Equity to Pay Other Liens | |
|---|---|
| Total Sales Proceeds | $2,400,000 |
| BofA First Priority Lien on Mar Vista | ($ 455,802) |
| BofA Second Priority Lien on Mar Vista | ($ 715,745) |
| PHH First Priority Lien on Carnell | ($ 126,813) |
| Costs of Sale related to Mar Vista | ($        0) – To be paid by BofA |
| 5% Commission to Carnell Broker | ($   30,000) |
| 1% Costs of Carnell Sale | ($     6,000) |
| **Total to Left to Pay Other Liens** | **$1,065,640** |

To facilitate the sale of the Properties, and to ensure the Estate receives a benefit from such sales, Comerica agrees to carve-out $150,000 from the Comerica Liens for the benefit of the Estate.

Comerica disputes the validity, priority, and extent of the Fox Liens. As such, Comerica has agreed to challenge, litigate, and attempt to fully liquidate the Fox Claim and alleged Fox Liens resulting therefrom. The Trustee will retain settlement authority with respect to such litigation, but the litigation must result in dismissal or resolution of Fox Case (which may include some payment on the Fox Claim) that does not result in any monetary obligations of Ms. Gonzales to the Fox Firm.

Taking into account the carveout set forth in the BofA Agreement, the Estate will net $250,000 from the sale of the Properties.

To ensure that the Estate receives funds from sales of the Properties, the Parties enter into this global settlement providing for, inter alia: (1) allowance of the Comerica Claim; (2) a carve-out and assignment to the Estate of funds otherwise subject to the Comerica Liens; (3) full liquidation of the Fox Claim; (4) waiver of the Gretel Abstract; (5) consent to sales free and clear of alleged liens and

encumbrances; (6) revocation of the Trust; and (7) Debtor's and Ms. Gonzales' waiver and release of their right, if any, to claim an exemption in the Properties and/or the proceeds from the sales of the Properties.

## 3.    Details of the Compromises

### A.    Comerica Agreement

The following is a brief summary of the terms set forth in the Agreement between the Trustee and Comerica. The Trustee and Comerica are collectively referred to as the "Parties."[1] Subject to Bankruptcy Court approval, the Parties agree as follows:

1.    <u>Trust Revocation</u>. With respect to the Properties, the Trust is revoked and all real properties owned or held by the Trust constitute property of the Estate.

2.    <u>Carve-Out by Comerica</u>. Comerica has agreed to a carve-out and assignment to the Estate of funds otherwise subject to its Liens as follows:

a.    The carve-out is only for the benefit of allowed administrative claims and unsecured creditors of the Estate; and

b.    Comerica agrees to a $150,000 carve-out for the benefit of creditors of the Estate. From the carved-out funds, the Trustee will pay claims according to the priorities set forth in 11 U.S.C. § 726 and pursuant to the Subordination Agreement.

3.    <u>Allowance of Comerica Claim</u>. For purposes of the Agreement, the Comerica Claim shall be deemed allowed and the Comerica Liens deemed valid.

4.    <u>Sale Free and Clear of Comerica Liens</u>. Comerica consents to the sale of the Properties free and clear of the Comerica Liens, with such liens to attach to the sales proceeds to the extent applicable and as set forth in the Agreement.

5.    <u>Sale Free and Clear of Disputed Liens</u>. To the extent the Fox Liens and FH Abstract (collectively, the "Disputed Liens") are not fully liquidated and/or resolved prior to the sale of the Properties, the Trustee shall seek a sale free and clear of the Disputed Liens, with such liens to attach to the sales proceeds to the extent applicable.

---

1 All interested parties are advised to consult the Agreement for all terms and conditions. A true and correct copy of the Agreement is attached as **Exhibit 1**. The description of the settlement terms are a summary only.

6.     <u>Abandonment of Piano</u>. The Trustee, on behalf of the Estate, abandons the Estate's interest, if any, in the Piano pursuant to 11 U.S.C. § 554(a).

7.     <u>Waiver and Release of Gretel Abstract and any Resulting Lien</u>. Ms. Gonzales waives and releases any and all liens in her favor against the Properties including, but not limited to, any liens resulting from the Gretel Abstract. Concurrent with execution of this Agreement, Ms. Gonzales shall sign and notarize the Withdrawal of Abstract of Judgment and Release of Lien ("Release"). The Trustee is authorized to cause the Release to be recorded upon both: (a) entry of an order granting this Agreement; *and* (b) dismissal or resolution of the Fox Case that results in no out of pocket costs to Ms. Gonzales.

8.     <u>Defense of Fox Case and Liquidation of Fox Claim</u>. Comerica shall challenge, litigate, and attempt to fully liquidate the Fox Claim and the Fox Liens allegedly resulting therefrom ("Comerica/Fox Litigation"). Comerica shall either intervene in the Fox Case as a party in interest or have its counsel associate into the Fox Case as counsel for Ms. Gonzales. The Comerica/Fox Litigation will occur in any forum required to fully liquidate the Fox Claim and Fox Liens, including the State Court. The Comerica/Fox Litigation must result in dismissal or a complete resolution of the Fox Case that does not result in any monetary obligations owed to the Fox Firm by Ms. Gonzales. The Fox Claim must be fully liquidated, which may include some payment on the Fox Claim.

9.     <u>Trustee Cooperation</u>. The Trustee will cooperate and provide strategic assistance to Comerica in furtherance of the Comerica/Fox Litigation. To the extent necessary or substantially beneficial, the Trustee will join Comerica's pleadings and appear at hearings related to the Comerica/Fox Litigation.

10.     <u>Settlement Authority</u>. The Trustee shall retain all settlement authority with respect to the Comerica/Fox Litigation. If the Trustee and Comerica reach an impasse regarding settlement, then the Trustee may file a compromise motion and Comerica may oppose the motion.

11.     <u>Consent to Sale and Waiver of Claim of Exemption</u>. Debtor and Ms. Gonzales, in their individual capacities and as trustees of the Trust (collectively, the Gonzales Parties"),

MOTION TO APPROVE COMPROMISE/CARVE OUT WITH COMERICA BANK AND ABANDONMENT
4836-5905-7285v1/1239-013

1 consent to the sale of the Properties under the terms set forth herein. The Gonzales Parties

2 waive and release their respective rights, if any, to claim exemptions in the Properties, the

3 proceeds from the sales of the Properties, or the carve-outs.

4       The Trustee seeks approval of the settlement set forth in the Agreement pursuant to Rule 9019

5 of the Federal Rules of Bankruptcy Procedure ("FRBP").

6 **4.**    **Legal Authority**

7      **A.**     **The proposed Agreement will enable the Properties to be sold for the**

8              **benefit of creditors.**

9       "[T]he sale of a fully encumbered asset is generally prohibited." *In re KVN Corp.*, 514 B.R. 1, 5

10 (B.A.P. 9th Cir. 2014). However, such a sale may nevertheless be justified through a negotiated carve-

11 out agreement with the secured creditor. *Id.* at 6.

12       In determining whether to approve a sale subject to a carve-out agreement, the trustee must

13 present evidence addressing the following questions: "Has the trustee fulfilled his or her basic duties?

14 Is there a benefit to the estate; i.e. prospects for a meaningful distribution to unsecured creditors? Have

15 the terms of the carve-out agreement been fully disclosed to the bankruptcy court?" *KVN Corp*,

16 514 B.R. at 8. If the answer to these questions demonstrates that the estate will be benefitted, then the

17 proposed carve-out can be approved. While the Trustee is not requesting approval of a sale at this time,

18 the reality remains that the Properties cannot be sold absent approval of the carve-outs.

19           **i.**      **Has the Trustee fulfilled his basic duties?**

20       The Trustee has a duty to administer the assets of the estate for the benefit of creditors.

21 11 U.S.C. § 704. In negotiating and obtaining the proposed carve-out, the Trustee was able to obtain the

22 Comerica's agreement to carve-out $150,000 from the Comerica Liens for the benefit of the Estate. By

23 obtaining the Agreement, the Trustee has done all that is possible to ensure that a sale of the Properties

24 can provide benefit to creditors.

25 / / /

26 / / /

27 / / /

28 / / /

### ii.    Is there a benefit to the Estate?

Benefit to the estate is typically measured by a "meaningful distribution to unsecured claims." *In re Scoggins*, 517 B.R. 206, 222 (Bankr. E.D. Cal. 2014). For example, there is a meaningful distribution to unsecured claims if the distribution to be made is greater than the trustee's fees. *Id.* at 223.

In this case, Trustee estimates that his statutory fee for the sale of the Mar Vista Property will be approximately $77,000. The attorneys' fees incurred by the Estate negotiating and documenting the Agreement and in seeking court approval are not substantial. The benefit to the Estate from the instant carveout (approximately $150,000), along with the benefit from the BofA Carve-Out ($100,000), will result in a substantial influx of unencumbered funds for the benefit of creditors. As such, the carve-out will benefit unsecured creditors and not just administrative creditors.

### iii.    Have the terms of the Agreement been fully disclosed to the Court?

The written agreement memorializing the carve-out between the Trustee and Comerica is attached as **Exhibit 1** to this Motion. Thus, the terms of the Agreement have been fully disclosed to the Court.

## B.    The Court may approve settlements of Estate claims.

The Court has the authority to decide whether to approve a settlement of claims held by and/or asserted against a bankruptcy estate. Notice must be given to all creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct. *See* Rule 9019(a) of the Federal Rules of Bankruptcy Procedure.

It is well-established that a compromise should be approved if it is "in the best interest of the estate … and is fair and equitable for the creditors." *Schmitt v. Ulrich (In re Schmitt)*, 215 B.R. 417, 424 (9th Cir. BAP 1997); *ATKN Company v. Guy F. Atkinson Company of California (In re Guy F. Atkinson Company)*, 242 B.R 497, 502 (9th Cir. BAP 1999) ("At its base, the approval of a settlement turns on the question of whether the compromise is in the best interest of the estate.")

The standards to be applied to the approval of a settlement include:

1.    the probability of success of the litigation on its merits;

MOTION TO APPROVE COMPROMISE/CARVE OUT WITH COMERICA BANK AND ABANDONMENT
4836-5905-7285v1/1239-013

2.      the difficulties in collection on a judgment;

3.      the complexity of the litigation involved; and

4.      the expense, inconvenience or delay occasioned by the litigation, and the interest of
creditors.

*In re A & C Properties*, 784 F.2d 1377, 1380-81 (9th Cir. 1986), cert. den., *Martin v. Robinson*, 479 U.S. 854, 107 S.Ct. 189 (1989).

Although the Court is to consider the range of results in the litigation, "the court's assessment does not require resolution of the issues, but only their identification, so that the ***reasonableness*** of the settlement may be evaluated" (emphasis added). *In re Hermitage Inn, Inc*., 66 Bankr. 71, 72 (Bankr. D. Colo. 1986). Moreover, it is ***not*** the bankruptcy court's responsibility to decide the numerous questions of law and fact with respect to the merits of the litigation, but rather to "canvass the issues and see whether the settlement falls below the lowest point of the range of reasonableness." *In re Heissinger Resources Ltd.,* 67 Bankr. 378, 383 (C.D. Ill. 1986).

### i.      The probability of success.

The Trustee is waiving the right to challenge the Comerica Claim. The Trustee has investigated the Comerica Claim, has participated in the underlying state court action that resulted in a judgment which forms that basis for the Comerica Claim, and has concluded that litigation to determine the extent and/or validity of the Comerica Claim is costly, highly speculative, and uncertain. In entering into an agreement with Comerica, Trustee will avoid the expense of litigating an uncertain claim, thus guaranteeing recovery for creditors.

### ii.      Difficulties in Collection

If Trustee were to prevail in litigation reducing or limiting the Comerica Liens, there would be little difficulty in "collecting" such a judgment. However, the real difficulty lies in prevailing in such litigation, as explained above. As such, Trustee believes that approval of the compromises is in the best interest of the Estate.

### iii.      Complexity of Litigation

Should litigation be necessary to avoid any portion of the Comerica Liens, the Trustee believes that the legal issues will be complex, will require substantial time and expense, and will unreasonably

10

delay administration of the case when weighed against the potential benefit. As such, the Trustee believes litigation to determine what portion of the Comerica Liens may be subject to challenge or avoidance is not in the interest of the Estate.

### iv.    Expense, Inconvenience, and Delay

Absent approval of the Agreement, unsecured creditors will not receive any recovery from the sale of the Properties and the sales will likely be conducted outside of bankruptcy. If the Trustee pursues litigation to avoid or reduce the Comerica Liens on the Properties, he anticipates that the cost of such litigation may exceed the potential recovery. Moreover, it will cause unnecessary inconvenience and delay in the administration of the Estate and the sale of the Properties. In Trustee's role as a fiduciary of the Estate, he has determined that approval of the carve-out will realistically offer the best potential result for unsecured creditors.

### C.    The Carve-Out and proposed compromise are fair and equitable.

The Trustee believes that the Agreement is fair and equitable and in the best interest of the Estate for the following reasons:

1.    The Agreement resolves issues, thereby reducing litigation expenses;

2.    The Agreement avoids the risk of an unfavorable outcomes and no benefit to the Estate from the Mar Vista Property;

3.    Resolving this dispute in the proposed manner will result in the Estate maximizing limited resources for the benefit of creditors by avoiding unnecessary litigation costs; and

4.    Providing a recovery for unsecured creditors where there would otherwise be none.

The Trustee has therefore determined, in his sound business judgment, the proposed Agreement falls well within the range of reasonableness and should be approved by the Court.

### D.    The Trustee may abandon property of the Estate that is burdensome or of inconsequential value and benefit to the Estate.

Pursuant to §554(a) of Title 11 of the United States Code, a trustee may abandon property of the estate as follows:

> After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

MOTION TO APPROVE COMPROMISE/CARVE OUT WITH COMERICA BANK AND ABANDONMENT
4836-5905-7285v1/1239-013

1    To meet the requirements set forth in Section 554(a), the trustee must determine the potential

2    benefit to the estate from administering the subject asset, as well as the burden. A trustee's decision to

3    abandon an asset only needs to have a reasonable basis. *In re Cult Awareness Network, Inc.*, 205 B.R.

4    575 (Bankr. N.D. Ill. 1997) (trustee's decision to abandon an asset worth $75,000 upheld as economic

5    cost to trustee outweighed benefit to bankruptcy estate). The trustee only needs to demonstrate that he

6    has exercised sound business judgment in making the determination to abandon the asset. *Id.*

7    In the instant case, the Trustee has determined that the Piano is burdensome to the Estate

8    because it is worth approximately $3,000, it has been stolen and is no longer located at the Mar Vista

9    Property, and the sale of the Piano will not result in a recovery in excess or proportionate to the likely

10   fees and costs associated with such sale. In sum, the Piano is burdensome and of little or no value or

11   benefit to the Estate and its creditors.

12   ## 5.    Conclusion

13   Based on the foregoing, the Trustee respectfully requests an order be entered:

14   1.    Granting the Motion;

15   2.    Authorizing the Trustee to take steps necessary to enter into and consummate the

16   Agreement;

17   3.    Authorizing the Trustee's proposed abandonment of the Piano; and

18   3.    For such further relief as the Court deems just and proper.

19

20   Dated: January 18, 2019                    MARSHACK HAYS LLP

21

22                                     By:  */s/ Chad V. Haes*
                                           _____
23                                         D. EDWARD HAYS
                                           CHAD V. HAES
24                                         Attorneys for Chapter 7 Trustee,
                                           DAVID M. GOODRICH

25

26

27

28

MOTION TO APPROVE COMPROMISE/CARVE OUT WITH COMERICA BANK AND ABANDONMENT
4836-5905-7285v1/1239-013

# Declaration of David M. Goodrich

I, DAVID M. GOODRICH, declare and state as follows:

1.    I am the Chapter 7 trustee ("Trustee") for bankruptcy estate of Debtor Benjamin W. Gonzales ("Debtor"). Except as otherwise stated, I know each of the following facts from my own personal knowledge, and, if called to testify, I would and could testify competently with respect thereto. I make this Declaration in support of Motion to Approve Compromise Between Trustee and Comerica Bank ("Motion").

2.    On November 14, 2016, Comerica Bank ("Comerica") filed a complaint against Debtor, Gretel Gonzales ("Ms. Gonzales"), The Gonzales Family Trust of July 26, 1999 ("Trust"), and Debtor's affiliated business entities, commencing State Court case entitled *Comerica Bank v. C-Pak Sea Foods et al.*, Case No. BC640599 ("Comerica Case"). The complaint demanded $1,458,573.49 and alleged causes of action for breach of contract and breach of guaranty.

3.    On April 11, 2017, the State Court issued a prejudgment writ of attachment ("Writ") against all defendants.

4.    On November 8, 2017, Debtor filed a voluntary petition for relief under Chapter 7 of the United States Code, commencing the instant bankruptcy case. I was appointed Chapter 7 trustee.

5.    On January 22, 2018, Debtor filed Amended Schedules and Statements ("Amended Schedules"). In his Schedule A/B, Debtor lists an ownership interest in: (1) the Mar Vista Property with a scheduled value of $1,900,000; and (2) the Carnell Property with a scheduled value of $700,000. According to Ms. Gonzales, a Schafer & Sons piano was located at the Mar Vista Property ("Piano") when she moved out. I am informed that the approximate fair market value of the Piano is $3,000.

6.    Title to the Mar Vista Property and the Carnell Property is held in the name of the Trust. Debtor and Ms. Gonzales are the sole trustees of the Trust.

7.    I seek to sell the Properties for the benefit of creditors. To that end, I have negotiated a $100,000 carve-out from Bank of America ("BofA"), the first and second priority lienholder on the Mar Vista Property. Pursuant to the carve-out ("BofA Agreement"), BofA has also agreed to pay the 6% broker commission and all standard costs of sale, including title and escrow fees, related to the sale of the Mar Vista Property. The Court has approved the BofA Agreement.

MOTION TO APPROVE COMPROMISE/CARVE OUT WITH COMERICA BANK AND ABANDONMENT
4836-5905-7285v1/1239-013

8.      On September 4, 2018, Ms. Gonzales and I entered into a settlement agreement whereby Ms. Gonzales agreed to subordinate her priority domestic support obligation to allowed administrative expenses of the Estate pursuant to 11 U.S.C. §507(a)(1)(C) in exchange for the release of certain claims of the Estate ("Subordination Agreement"). On November 16, 2018, the Court entered an order granting the Subordination Agreement.

9.      I retained Clarence Yoshikane of Pacific / Sotheby's International Realty ("Mr. Yoshikane") as real estate broker to market and sell the Carnell Property. Mr. Yoshikane has agreed to a reduced broker commission of 5%.

10.     I believe the fair market value of the Mar Vista Property is approximately $1,800,000 and the fair market value of the Carnell Property is approximately $600,000.

11.     I seek to eliminate the need for costly and protracted administration of the bankruptcy case and believe the best interests of the Estate are served by the proposed carve-out and compromise set forth in the Agreement. The cost of litigation associated with the extent and validity of Comerica's secured claim could be substantial and would unnecessarily dilute any recovery obtained for the benefit of the Estate. Moreover, there is no certainty that the result from such efforts would be better than the Agreement achieved.

12.     In evaluating the Agreement, I have taken into account the probability of success of litigation, the complexity of the litigation involved and the expenses, inconvenience, and delay necessarily resulting from such litigation, as well as the interests of creditors of the Estate. I have determined that the fees and costs associated with further litigation would be extensive and could outweigh any additional benefit that the Estate might achieve.

13.     I have evaluated the Agreement and, in my business judgment and experience as a Trustee, I believe that the Agreement is fair and equitable and in the best interests of the Estate.

14.     The carve-out and release set forth in the Agreement is a sound business decision because it will avoid litigation and the possibility that the Estate does not recover any funds from the sale of the Properties.

15.     For these reasons, it is my business judgment that the proposed carve-out is reasonable and represents a fair and equitable resolution of the various claims between the parties.

MOTION TO APPROVE COMPROMISE/CARVE OUT WITH COMERICA BANK AND ABANDONMENT
4836-5905-7285v1/1239-013

16.    I have determined that the Piano is burdensome to the Estate because it is worth approximately $3,000, it has been stolen and is no longer located at the Mar Vista Property, and the sale of the Piano will not result in a recovery in excess or proportionate to the likely fees and costs associated with such sale.

17.    I seek the Court's approval of the Agreement and authority to abandon the Estate's interest, if any, in the Piano.

I declare that the foregoing is true and correct under the penalty of perjury. Executed on January 18, 2019, in Costa Mesa, California.

DAVID M. GOODRICH

MOTION TO APPROVE COMPROMISE/CARVE OUT WITH COMERICA BANK AND ABANDONMENT

4836-5905-7285v1/1239-013

# Declaration of Gretel Gonzales

I, GRETEL GONZALES, declare as follows:

1.      I am an individual over 18 years of age and competent to make this Declaration.

2.      If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.      The facts set forth below are true of my personal knowledge.

4.      I am the former spouse of Debtor, Benjamin Gonzales ("Debtor").

5.      I make this Declaration in support of the Trustee's Motion to Approve Compromise, Carve-Out, and Abandonment ("Motion").

6.      On or about February 24, 2015, I retained The Law Firm of Fox and Fox ("Fox Firm") as my family law counsel to commence a dissolution action against Debtor in the Los Angeles Superior Court ("State Court").

7.      On February 27, 2015, the Fox Firm commenced State Court Case No. BD616423 ("Divorce Case") on my behalf.

8.      Between February 24, 2015, and October 26, 2017, I incurred alleged attorneys' fees related to the Divorce Case.

9.      On June 30, 2015, the Fox Firm recorded a deed of trust against the real property located at 14930 Mar Vista Street, Whittier, California 90605 ("Mar Vista Property") at the Los Angeles County Recorder's Office as instrument no.15-0779609 to secure an alleged debt in the amount of $150,000.

10.      On August 10, 2015, the Fox Firm recorded the deed of trust against the real property located at 14663 Carnell Street, Whittier, California 90603 ("Carnell Property") at the Los Angeles County Recorder's Office as instrument no. 15-973660.

11.      On February 19, 2016, the Fox Firm filed an abstract of judgment at the Los Angeles County Recorder's Office as instrument no. 16-0183748 reflecting a spousal support judgment against Debtor entered on January 12, 2016.

/ / /

/ / /

/ / /

MOTION TO APPROVE COMPROMISE/CARVE OUT WITH COMERICA BANK AND ABANDONMENT

4836-5905-7285v1/1239-013

12.     On August 9, 2016, the Fox Firm recorded a deed of trust against the Mar Vista Property at the Los Angeles County Recorder's Office as instrument no. 16-940681 to secure an alleged debt in the amount of $250,000.

13.     On February 27, 2017, the Fox Firm recorded a deed of trust against the Carnell Property at the Los Angeles County Recorder's Office as instrument no. 17-0231102 to secure an alleged debt of Ms. Gonzales in the amount of $250,000.

14.     On November 9, 2017, the Fox Firm filed a civil lawsuit against me commencing Civil Case No. BC682953 ("Fox Case"). The complaint commencing the Fox Case seeks damages in the amount of $763,330.48 ("Fox Damages").

15.     On January 5, 2018, I filed an answer disputing the Fox Damages and a cross-complaint against the Fox Firm. The trial in the Fox Case is currently set for March 2019.

16.     As of October 9, 2018, the Fox Firm alleges that it is owed attorneys' fees and interest in the total amount of $837,783.23 ("Fox Claim"). The Fox Claim is allegedly secured by the Properties pursuant to the Fox Liens.

17.     A Schafer & Sons piano was located at the Mar Vista Property ("Piano") when I moved out. Recently, police reported that the Piano was stolen from the Mar Vista Property. The Piano holds substantial sentimental value to my family. The approximate fair market value of the Piano is $3,000.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 17, 2019   .

GRETEL GONZALES

MOTION TO APPROVE COMPROMISE/CARVE OUT WITH COMERICA BANK AND ABANDONMENT
4836-5905-7285v1/1239-013

Exhibit "1"

# Carve-Out Agreement and Release

THIS CARVE-OUT AGREEMENT AND RELEASE ("Agreement") is entered into on January __8__, 2019, ("Effective Date") by and between David M. Goodrich ("Trustee"), solely in his capacity as Chapter 7 trustee for the bankruptcy estate of Benjamin W. Gonzales ("Estate"), Comerica Bank ("Comerica"), Benjamin W. Gonzales ("Debtor"), and Gretel Gonzales ("Ms. Gonzales"), Debtor's ex-spouse. The Trustee, Comerica, the Debtor, and Ms. Gonzales are collectively referred to as the "Parties."

# I. Recitals

## The Fox Liens and Resulting Lawsuit

A.       On or about February 24, 2015, Ms. Gonzales retained The Law Firm of Fox and Fox ("Fox Firm") as her family law counsel to commence a dissolution action against Debtor in the Los Angeles Superior Court ("State Court").

B.       On February 27, 2015, the Fox Firm commenced State Court Case No. BD616423 ("Divorce Case") on Ms. Gonzales' behalf.

C.       Between February 24, 2015, and October 26, 2017, Ms. Gonzales incurred alleged attorneys' fees related to the Divorce Case.

D.       On June 30, 2015, the Fox Firm recorded a deed of trust ("First DoT") against the real property located at 14930 Mar Vista Street, Whittier, California 90605 ("Mar Vista Property") at the Los Angeles County Recorder's Office as instrument no.15-0779609 to secure an alleged debt of Ms. Gonzales in the amount of $150,000. On August 10, 2015, the Fox Firm recorded the deed of trust ("Second DoT") against the real property located at 14663 Carnell Street, Whittier, California 90603 ("Carnell Property") at the Los Angeles County Recorder's Office as instrument no. 15-973660. Collectively, the First DoT and Second DoT are referred to herein as the "First FLARPL."

E.       On February 19, 2016, the Fox Firm, on behalf Ms. Gonzales, filed an abstract of judgment at the Los Angeles County Recorder's Office as instrument no. 16-0183748 reflecting a spousal support judgment against Debtor entered on January 12, 2016 ("Gretel Abstract").

F.       On August 9, 2016, the Fox Firm recorded a deed of trust against the Mar Vista Property at the Los Angeles County Recorder's Office as instrument no. 16-940681 to secure an alleged debt of Ms. Gonzales in the amount of $250,000 ("Second FLARPL").

G.       On February 27, 2017, the Fox Firm recorded a deed of trust against the Carnell Property at the Los Angeles County Recorder's Office as instrument no. 17-0231102 to secure an alleged debt of Ms. Gonzales in the amount of $250,000 ("Third FLARPL").

H.       The First FLARPL, Second FLARPL, and Third FLARPL are collectively referred to herein as the "Fox Liens."

I.       On November 9, 2017, the Fox Firm filed a civil lawsuit against Ms. Gonzales commencing Civil Case No. BC682953 ("Fox Case"). The complaint commencing the Fox Case asserts claims for breach of contract arising from Ms. Gonzales' alleged failure to pay attorneys' fees in the Divorce Case and seeks damages in the amount of $763,330.48 ("Fox Damages").

J.        On January 5, 2018, Ms. Gonzales filed an answer disputing the Fox Damages and a cross-complaint against the Fox Firm ("Cross-Claims"). The trial in the Fox Case is currently set for March 2019.

K.        As of October 9, 2018, the Fox Firm alleges that it is owed attorneys' fees and interest in the total amount of $837,783.23 ("Fox Claim"). The Fox Claim is allegedly secured by the Properties pursuant to the Fox Liens.

## Comerica Claim

L.        On November 14, 2016, Comerica Bank ("Plaintiff") filed a complaint against Debtor, Ms. Gonzales, The Gonzales Family Trust of July 26, 1999 ("Trust"), and Debtor's affiliated business entities, commencing State Court case entitled *Comerica Bank v. C-Pak Sea Foods et al.*, Case No. BC640599 ("Comerica Case"). The complaint demanded $1,458,573.49 and alleged causes of action for breach of contract and breach of guaranty.

M.        On April 11, 2017, the State Court issued a prejudgment writ of attachment ("Writ") against all defendants.

N.        On September 28, 2018, Comerica secured a judgment against Debtor, Ms. Gonzales and the Trust in the amount of $1,120,658.30 ("Comerica Claim"). The judgment relates back to the date of the Writ. The recording of an abstract of judgment against the Properties in the amount of the Comerica Claim will result in a lien against the Properties in the amount of the Comerica Claim ("Comerica Liens").

## Bankruptcy Case

O.        On November 8, 2017, Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code in the Central District of California, commencing Bankruptcy Case No. 2:17-bk-23812-BR. David M. Goodrich, was appointed the Chapter 7 Trustee of the Estate.

P.        In his Schedule A/B, Debtor lists an ownership interest in: (1) the Mar Vista Property with a scheduled value of $1,900,000; and (2) the Carnell Property with a scheduled value of $700,000. According to Ms. Gonzales, a Schafer & Sons piano was located at the Mar Vista Property ("Piano") when she moved out. Recently, police reported that the Piano was stolen from the Mar Vista Property. The Piano holds substantial sentimental value to the Gonzales family. The approximate fair market value of the Piano is $3,000.

Q.        Title to the Mar Vista Property and the Carnell Property is held in the name of the Trust. Debtor and Ms. Gonzales are the sole trustees of the Trust.

R.        The Trustee seeks to sell the Properties for the benefit of creditors. To that end, the Trustee has negotiated a $100,000 carve-out from Bank of America ("BofA"), the first and second priority lienholder on the Mar Vista Property. Pursuant to the carve-out ("BofA Agreement"), BofA has also agreed to pay the 6% broker commission and all standard costs of sale, including title and escrow fees, related to the sale of the Mar Vista Property. The Trustee has sought Court-approval of the BofA Agreement.

S.        On September 4, 2018, the Trustee and Ms. Gonzales entered into a settlement agreement whereby Ms. Gonzales agreed to subordinate her priority domestic support obligation to allowed administrative expenses of the Estate pursuant to 11 U.S.C. §507(a)(1)(C) in exchange for

the release of certain claims of the Estate ("Subordination Agreement"). On November 16, 2018, the Court entered an order granting the Subordination Agreement.

T.      The Trustee recently retained Clarence Yoshikane of Pacific / Sotheby's International Realty ("Mr. Yoshikane") as real estate broker to market and sell the Carnell Property. Mr. Yoshikane has agreed to a reduced broker commission of 5%.

U.      The Trustee believes the fair market value of the Mar Vista Property is approximately $1,800,000. The Trustee believes the fair market value of the Carnell Property is approximately $600,000. The following charts reflect that the proceeds available to the various junior lienholders do not change as a result of issues of cross-collateralization. As such, there are no marshaling issues that arise based on which property sells first. Based on the above facts, the equity available to pay the Fox Firm Claim and the other secured claims are as follows:

| Total Sales Proceeds | |
| --- | --- |
| Mar Vista Property value | $1,800,000 |
| Carnell Property value | $  600,000 |
| **Total** | **$2,400,000** |

| Total Equity to Pay Other Liens | |
| --- | --- |
| Total Sales Proceeds | $2,400,000 |
| BofA First Priority Lien on Mar Vista | ($ 455,802) |
| BofA Second Priority Lien on Mar Vista | ($ 715,745) |
| PHH First Priority Lien on Carnell | ($ 126,813) |
| Costs of Sale related to Mar Vista | ($        0) – To be paid by BofA |
| 5% Commission to Carnell Broker | ($  30,000) |
| 1% Costs of Carnell Sale | ($   6,000) |
| **Total to Left to Pay Other Liens** | **$1,065,640** |

V.      To facilitate the sale of the Properties, and to ensure the Estate receives a benefit from such sales, Comerica agrees to carve-out $150,000 from the Comerica Liens for the benefit of the Estate.

W.      Comerica disputes the validity, priority, and extent of the Fox Liens. As such, Comerica has agreed to challenge, litigate, and attempt to fully liquidate the Fox Claim and alleged Fox Liens resulting therefrom. The Trustee will retain settlement authority with respect to such litigation, but the litigation must result in dismissal or resolution of Fox Case (which may include some payment on the Fox Claim) that does not result in any monetary obligations of Ms. Gonzales to the Fox Firm.

X.    Taking into account the carveout set forth in the BofA Agreement, the Estate will net $250,000 from the sale of the Properties.

Y.    To ensure that the Estate receives funds from sales of the Properties, the Parties enter into this global settlement providing for, *inter alia*: (1) allowance of the Comerica Claim; (2) a carve-out and assignment to the Estate of funds otherwise subject to the Comerica Liens; (3) full liquidation of the Fox Claim; (4) waiver of the Gretel Abstract; (5) consent to sales free and clear of alleged liens and encumbrances; and (6) Debtor's and Ms. Gonzales' waiver and release of their right, if any, to claim an exemption in the Properties and/or the proceeds from the sales of the Properties.

## II. SETTLEMENT TERMS

In consideration of the Recitals above and the mutual promises contained in this Agreement, and for other good and valuable consideration, the receipt and adequacy of which are acknowledged, the Parties agree, covenant, and represent as follows subject to approval by the Bankruptcy Court in Debtor's case:

1.    Incorporation of Recitals. The Parties incorporate the Recitals above as though fully set forth here, and the Recitals are made part of this Agreement.

2.    Trust Revocation. With respect to the Properties, the Trust is revoked and all real properties owned or held by the Trust constitute property of the Estate.

3.    Carve-Out by Comerica. Comerica has agreed to a carve-out and assignment to the Estate of funds otherwise subject to its Liens as follows:

a.    The carve-out is only for the benefit of allowed administrative claims and unsecured creditors of the Estate; and

b.    Comerica agrees to a $150,000 carve-out for the benefit of creditors of the Estate. From the carved-out funds, the Trustee will pay claims according to the priorities set forth in 11 U.S.C. § 726 and pursuant to the Subordination Agreement.

3.    Allowance of Comerica Claim. For purposes of this Agreement, the Comerica Claim shall be deemed allowed and the Comerica Liens deemed valid.

4.    Sale Free and Clear of Comerica Liens. Comerica consents to the sale of the Properties free and clear of the Comerica Liens, with such liens to attach to the sales proceeds to the extent applicable and as set forth in this Agreement.

5.    Sale Free and Clear of Disputed Liens. To the extent the Fox Liens and FH Abstract (collectively, the "Disputed Liens") are not fully liquidated and/or resolved prior to the sale of the Properties, the Trustee shall seek a sale free and clear of the Disputed Liens, with such liens to attach to the sales proceeds to the extent applicable.

6.    Abandonment of Piano. The Trustee, on behalf of the Estate, abandons the Estate's interest, if any, in the Piano pursuant to 11 U.S.C. § 554(a).

7.    Waiver and Release of Gretel Abstract and any Resulting Lien. Ms. Gonzales waives and releases any and all liens in her favor against the Properties including, but not limited to, any liens resulting from the Gretel Abstract. Concurrent with execution of this Agreement, Ms.

Gonzales shall sign and notarize the Withdrawal of Abstract of Judgment and Release of Lien ("Release"). The Trustee is authorized to cause the Release to be recorded upon both: (a) entry of an order granting this Agreement; *and* (b) dismissal or resolution of the Fox Case that results in no out of pocket costs to Ms. Gonzales.

8.      <u>Defense of Fox Case and Liquidation of Fox Claim</u>. Comerica shall challenge, litigate, and attempt to fully liquidate the Fox Claim and the Fox Liens allegedly resulting therefrom ("Comerica/Fox Litigation"). Comerica shall either intervene in the Fox Case as a party in interest or have its counsel associate into the Fox Case as counsel for Ms. Gonzales. The Comerica/Fox Litigation will occur in any forum required to fully liquidate the Fox Claim and Fox Liens, including the State Court. The Comerica/Fox Litigation must result in dismissal or a complete resolution of the Fox Case that does not result in any monetary obligations owed to the Fox Firm by Ms. Gonzales. The Fox Claim must be fully liquidated, which may include some payment on the Fox Claim.

9.      <u>Trustee Cooperation</u>. The Trustee will cooperate and provide strategic assistance to Comerica in furtherance of the Comerica/Fox Litigation. To the extent necessary or substantially beneficial, the Trustee will join Comerica's pleadings and appear at hearings related to the Comerica/Fox Litigation.

10.     <u>Settlement Authority</u>. The Trustee shall retain all settlement authority with respect to the Comerica/Fox Litigation. If the Trustee and Comerica reach an impasse regarding settlement, then the Trustee may file a compromise motion and Comerica may oppose the motion.

11.     <u>Consent to Sale and Waiver of Claim of Exemption</u>. Debtor and Ms. Gonzales, in their individual capacities and as trustees of the Trust (collectively, the Gonzales Parties"), consent to the sale of the Properties under the terms set forth herein. The Gonzales Parties waive and release their respective rights, if any, to claim exemptions in the Properties, the proceeds from the sales of the Properties, or the carve-outs.

12.     <u>Payment from Escrow</u>: The Parties shall provide a copy of this Agreement to the escrow companies assisting with the sales of the Properties and shall instruct each respective escrow to pay all net proceeds to the Trustee directly from the escrow account opened for each respective sale. No funds shall be disbursed on account of the proposed carve-out, the Comerica Claim, or the Disputed Liens until the sales of both Properties close, the Disputed Liens are resolved, and the Trustee determines that sufficient funds are available for the proposed carve-outs to provide a net benefit to the Estate.

13.     <u>Trustee's Capacity</u>. The Trustee is signing this Agreement in his capacity solely as Chapter 7 trustee of the bankruptcy estate of Debtor. Nothing contained in this Agreement shall in any way impute liability to the Trustee, personally or as a member of any professional organization or anyone acting on his behalf.

14.     <u>Admissions</u>. If this Agreement fails to become effective for any reason or is otherwise not fully consummated, nothing in this Agreement shall bind the Parties or constitute an admission by the Parties.

15.     <u>Authority</u>. The signatories to this Agreement acknowledge that they have the authority and have obtained the requisite approval to enter this Agreement and to act on behalf of and bind any

entity on whose behalf they are signing.

16.　　Representation by Counsel. The Parties further represent that they have been represented by legal counsel or have had the opportunity to seek advice of legal counsel during the course of the negotiations leading to the signing of this Agreement and that they have been advised by legal counsel with respect to the meaning of this Agreement and its legal effect.

17.　　No Partnership or Joint Venture: Nothing in this Agreement is intended to be construed as or to create a partnership or joint venture between the parties.

18.　　Brokerage Commissions and Expenses of Sale: The Parties acknowledge that brokerage commissions and costs of sale are administrative expenses subject to allowance by the court and to be paid before distributions are made to unsecured creditors. However, BofA has agreed to pay all brokerage commissions and costs of sale related to the sale of the Mar Vista Property.

19.　　Integration. This Agreement constitutes an integrated written contract expressing the entire agreement of the Parties. Other than this Agreement there is no other agreement, written or oral, express or implied, between the Parties with respect to this subject matter.

20.　　Modification or Amendment. This Agreement cannot be orally modified or amended. This Agreement may be modified or amended only by a written agreement signed by all Parties.

21.　　Counterparts. This Agreement may be executed in counter-parts, including facsimile and email signatures, with the same effect as if all original signatures were placed on one document and all of which together shall be one and the same agreement.

22.　　Binding Agreement. This Agreement is and shall be binding upon and shall inure to the benefit of the heirs, assigns, principals, and successors of all of the Parties.

23.　　Interpretive Law. This Agreement is made and entered into in the State of California and shall, in all respects be interpreted, enforced, and governed by and under the laws of the State of California and the United States Bankruptcy Code as applied in the Ninth Circuit.

24.　　Ambiguities. This Agreement has been reviewed by the Parties and their respective counsel. Further, the Parties have had full opportunity to negotiate the terms and conditions of this Agreement. Accordingly, the Parties expressly waive any common-law or statutory rule of construction that ambiguities should be construed against the drafter, and agree, covenant, and represent that the language in all parts of this Agreement shall be in all cases construed as a whole, according to its fair meaning.

25.　　Miscellaneous Provisions.

a.　　The Parties represent that they have read this Agreement and fully understand all of its terms; that they have conferred with or had the opportunity to confer with their attorneys about this Agreement; that they have executed this Agreement without coercion or duress of any kind; and that they understand any rights that they have or may have and sign this Agreement with full knowledge of any such rights.

b.      The Parties acknowledge that, other than as expressly set forth in this Agreement, no representations, statements or promises made by the other Party, or by their respective agents or attorneys, have been relied on in entering into this Agreement.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

     c.    Each Party understands that the facts with respect to which this Agreement is entered into may be materially different from those the Parties now believe to be true. Each Party accepts and assumes this risk and agrees that this Agreement and the release in it shall remain in full force and effect and legally binding, notwithstanding the discovery or existence of any additional or different facts, or any claims with respect to those facts.

THE UNDERSIGNED HAVE READ THE FOREGOING AND ACCEPT AND AGREE TO THE PROVISIONS CONTAINED HEREIN, AND HEREBY EXECUTE IT, KNOWINGLY, VOLUNTARILY, AND WITH FULL UNDERSTANDING OF ITS CONSEQUENCES.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the dates indicated below.

DATED: January 8, 2019

By: _____
    CHAPTER 7 TRUSTEE,
    DAVID GOODRICH

DATED: January __, 2019

By: _____
    *(See next page for signature)*
    BARRY COHEN, as Senior Vice President
    Of COMERICA BANK

DATED: January __, 2019

By: _____
    *(See next page for signature)*
    BENJAMIN GONZALES, as an
    individual

DATED: January __, 2019

By: _____
    *(See next page for signature)*
    GRETEL GONZALES, as an
    individual

c.    Each Party understands that the facts with respect to which this Agreement is entered into may be materially different from those the Parties now believe to be true. Each Party accepts and assumes this risk and agrees that this Agreement and the release in it shall remain in full force and effect and legally binding, notwithstanding the discovery or existence of any additional or different facts, or any claims with respect to those facts.

THE UNDERSIGNED HAVE READ THE FOREGOING AND ACCEPT AND AGREE TO THE PROVISIONS CONTAINED HEREIN, AND HEREBY EXECUTE IT, KNOWINGLY, VOLUNTARILY, AND WITH FULL UNDERSTANDING OF ITS CONSEQUENCES.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the dates indicated below.

DATED: January ___, 2019

By: _____
*(Please see previous page for signature)*
CHAPTER 7 TRUSTEE,
DAVID GOODRICH

DATED: January 7, 2019

By: _____
BARRY COHEN, as Senior Vice President
Of COMERICA BANK

DATED: January ___, 2019

By: _____
*(Please see next page for signature)*
BENJAMIN GONZALES, as an
individual

DATED: January ___, 2019

By: _____
*(Please see next page for signature)*
GRETEL GONZALES, as an
individual

4822-2707-9810, v. 1

      c.    Each Party understands that the facts with respect to which this Agreement is entered into may be materially different from those the Parties now believe to be true. Each Party accepts and assumes this risk and agrees that this Agreement and the release in it shall remain in full force and effect and legally binding, notwithstanding the discovery or existence of any additional or different facts, or any claims with respect to those facts.

THE UNDERSIGNED HAVE READ THE FOREGOING AND ACCEPT AND AGREE TO THE PROVISIONS CONTAINED HEREIN, AND HEREBY EXECUTE IT, KNOWINGLY, VOLUNTARILY, AND WITH FULL UNDERSTANDING OF ITS CONSEQUENCES.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the dates indicated below.

DATED: January __, 2019

                               *(See previous page for signature)*
                         By:_____
                             CHAPTER 7 TRUSTEE,
                             DAVID GOODRICH

DATED: January __, 2019

                                 *(See previous page for signature)*
                         By:_____
                             BARRY COHEN, as Senior Vice President
                             Of COMERICA BANK

DATED: January 3, 2019

                         By:_____
                             BENJAMIN GONZALES, as an
                             individual

DATED: January __, 2019

                         By: *(Please see next page for signature)*
                             GRETEL GONZALES, as an
                             individual

c.    Each Party understands that the facts with respect to which this Agreement is entered into may be materially different from those the Parties now believe to be true. Each Party accepts and assumes this risk and agrees that this Agreement and the release in it shall remain in full force and effect and legally binding, notwithstanding the discovery or existence of any additional or different facts, or any claims with respect to those facts.

THE UNDERSIGNED HAVE READ THE FOREGOING AND ACCEPT AND AGREE TO THE PROVISIONS CONTAINED HEREIN, AND HEREBY EXECUTE IT, KNOWINGLY, VOLUNTARILY, AND WITH FULL UNDERSTANDING OF ITS CONSEQUENCES.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the dates indicated below.

DATED:  January __, 2019

By: _*(Please see previous page for signature)*_
    CHAPTER 7 TRUSTEE,
    DAVID GOODRICH

DATED:  January __, 2019

By: _*(Please see previous page for signature)*_
    BARRY COHEN, as Senior Vice President
    Of COMERICA BANK

DATED:  January __, 2019

By: _*(Please see previous page for signature)*_
    BENJAMIN GONZALES, as an
    individual

DATED:  January 3, 2019

By: _(signature)_
    GRETEL GONZALES, as an
    individual

4822-2707-9810, v. 1

DATED:  January 3 , 2019

By: _____
BENJAMIN GONZALES, as Trustee of the The
Gonzales Family Trust of July 26, 1999


DATED:  January __, 2019

By: _____
*(See next page for signature)*
GRETEL GONZALES, as Trustee of the The
Gonzales Family Trust of July 26, 1999


APPROVED AS TO FORM:

MARSHACK HAYS LLP

By: _____
D. EDWARD HAYS
CHAD V. HAES
Attorneys for DAVID GOODRICH,
Chapter 7 Trustee for the bankruptcy estate of Benjamin Gonzales


HEMAR, ROUSSO & HEALD, LLP

By: _____
*(See next page for signature)*
JENNIFER WITHERELL CRASTZ
Attorneys for COMERICA BANK


LEWIS BRISBOIS BISGAARD & SMITH LLP

By: _____
*(See next page for signature)*
JASMIN YANG
Attorney for GRETEL GONZALES


WEINTRAUB & SELTH

By: _____
JAMES R. SELTH
Attorney for BENJAMIN GONZALES


4822-2707-9810, v. 1

DATED: January ___, 2019

By: *(See previous page for signature)*
_____
BENJAMIN GONZALES, as Trustee of the The
Gonzales Family Trust of July 26, 1999

DATED: January 3, 2019

By: _____
GRETEL GONZALES, as Trustee of the The
Gonzales Family Trust of July 26, 1999

APPROVED AS TO FORM:

MARSHACK HAYS LLP

By: *(See previous page for signature)*
_____
D. EDWARD HAYS
CHAD V. HAES
Attorneys for DAVID GOODRICH,
Chapter 7 Trustee for the bankruptcy estate of Benjamin Gonzales

HEMAR, ROUSSO & HEALD, LLP

By: *(See next page for signature)*
_____
JENNIFER WITHERELL CRASTZ
Attorneys for COMERICA BANK

LEWIS BRISBOIS BISGAARD & SMITH LLP

By: _____
JASMIN YANG
Attorney for GRETEL GONZALES

WEINTRAUB & SELTH

By: *(See previous page for signature)*
_____
JAMES R. SELTH
Attorney for BENJAMIN GONZALES

4822-2707-9810, v. 1

Scanned by CamScanner

Exhibit "1"
Page 30

DATED: January __, 2019

By: _(Please see previous page for signature)_
    BENJAMIN GONZALES, as Trustee of the The
    Gonzales Family Trust of July 26, 1999


DATED: January __, 2019

By: _(Please see previous page for signature)_
    GRETEL GONZALES, as Trustee of the The
    Gonzales Family Trust of July 26, 1999


APPROVED AS TO FORM:

MARSHACK HAYS LLP

By: _(Please see previous page for signature)_
    D. EDWARD HAYS
    CHAD V. HAES
    Attorneys for DAVID GOODRICH,
    Chapter 7 Trustee for the bankruptcy estate of Benjamin Gonzales


HEMAR, ROUSSO & HEALD, LLP

By: _____
    JENNIFER WITHERELL CRASTZ
    Attorneys for COMERICA BANK


LEWIS BRISBOIS BISGAARD & SMITH LLP

By: _(Please see previous page for signature)_
    JASMIN YANG
    Attorney for GRETEL GONZALES


WEINTRAUB & SELTH

By: _(Please see previous page for signature)_
    JAMES R. SELTH
    Attorney for BENJAMIN GONZALES


4822-2707-9810, v. 1

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled (*specify*): **TRUSTEE'S MOTION TO APPROVE: 1. CARVE-OUT AGREEMENT; 2. COMPROMISE BETWEEN TRUSTEE AND COMERICA BANK; AND 3. ABANDONMENT OF PROPERTY OF THE ESTATE; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATIONS OF DAVID M. GOODRICH AND GRETEL GONZALES IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **January 18, 2019**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On **January 18, 2019**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**DEBTOR**
BENJAMIN W GONZALES
P.O. BOX 1530
LOS ANGELES, CA 90001-0530

**ATTORNEY FOR GRETEL GONZALES**
JASMIN YANG, ESQ.
LEWIS BRISBOIS BISGAARD & SMITH LLP
633 W. 5TH STREET, SUITE 4000
LOS ANGELES, CA 90071-2074

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **January 18, 2019**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
**VIA PERSONAL DELIVERY**
PRESIDING JUDGE'S COPY
Bankruptcy Judge Barry Russell
United States Bankruptcy Court, Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 18, 2019 | Chanel Mendoza | /s/ Chanel Mendoza |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1.  **<u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**:

- Bhagwati Barot    bbarot@aissolution.com
- **<u>ATTORNEY FOR COMERICA BANK</u>**: Jennifer Witherell Crastz    jcrastz@hrhlaw.com
- Christopher D Crowell    ccrowell@hrhlaw.com
- Howard M Ehrenberg    hehrenberg@sulmeyerlaw.com,
  hehrenberg@ecf.inforuptcy.com;mviramontes@ecf.inforuptcy.com
- Andy J Epstein    taxcpaesq@gmail.com
- David M Goodrich (TR)    dgoodrich@wgllp.com,
  c143@ecfcbis.com;dgoodrich11@ecf.epiqsystems.com;lrobles@wgllp.com
- Chad V Haes    chaes@marshackhays.com, 8649808420@filings.docketbird.com
- D Edward Hays    ehays@marshackhays.com, 8649808420@filings.docketbird.com
- Laila Masud    lmasud@marshackhays.com, 8649808420@filings.docketbird.com
- **<u>ATTORNEY FOR DEBTOR</u>**: James R Selth    jim@wsrlaw.net,
  jselth@yahoo.com;brian@wsrlaw.net;vinnet@ecf.inforuptcy.com
- Valerie Smith    claims@recoverycorp.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Daniel J Weintraub    dan@wsrlaw.net, vinnet@ecf.inforuptcy.com;brian@wsrlaw.net
- Gilbert R Yabes    ecfcacb@aldridgepite.com, GRY@ecf.inforuptcy.com;gyabes@aldridgepite.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.