1   D. EDWARD HAYS, #162507
    ehays@marshackhays.com
2   CHAD V. HAES, #267721
    chaes@marshackhays.com
3   MARSHACK HAYS LLP
    870 Roosevelt
4   Irvine, California 92620
    Telephone: (949) 333-7777
5   Facsimile: (949) 333-7778

6   Attorneys for Chapter 7 Trustee,
    DAVID M. GOODRICH

7
                    UNITED STATES BANKRUPTCY COURT
8
        CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION
9

10  In re                              Case No. 2:17-bk-23812-BR

11  BENJAMIN W. GONZALES,              Chapter 7

12            Debtor.                  TRUSTEE'S MOTION FOR ORDER:
                                         1.  APPROVING SUBORDINATION
13                                           AGREEMENT BETWEEN THE
                                             TRUSTEE AND BANK OF
14                                           AMERICA;
                                         2.  APPROVING COMPROMISE
15                                           BETWEEN TRUSTEE AND
                                             COMERICA BANK; AND
16                                       3.  AUTHORIZING SALE OF REAL
                                             PROPERTY (A) OUTSIDE THE
17                                           ORDINARY COURSE OF
                                             BUSINESS; (B) FREE AND CLEAR
18                                           OF LIENS, CLAIMS, AND
                                             ENCUMBRANCES; (C) SUBJECT TO
19                                           OVERBID; AND (D) FOR
                                             DETERMINATION OF GOOD FAITH
20                                           PURCHASER UNDER 11 U.S.C.
                                             §363(M);
21                                       MEMORANDUM OF POINTS OF
                                         AUTHORITIES; DECLARATIONS OF
22                                       DAVID M. GOODRICH AND ROGELIO
                                         SANCHEZ IN SUPPORT
23
                                       Date:  August 10, 2021
24                                     Time: 2:00 p.m.
                                       Ctrm: 1668
25

26  / / /

27  / / /

28  / / /

# TABLE OF CONTEXTS

1.    Introduction ....................................................................................................................1

2.    Background Information ...................................................................................................2

      A.    Bankruptcy Filing, Schedules, and Statements.....................................................2

      B.    The Property...........................................................................................................3

      C.    Comerica's Prepetition Lawsuit.............................................................................5

      D.    Carve-Out Agreement between the Trustee, Comerica, Debtor, and Ms.
            Gonzales.................................................................................................................5

      E.    Fox Lien Litigation ................................................................................................6

      F.    Ms. Gonzales Lien Litigation ................................................................................7

      G.    Marketing Efforts...................................................................................................8

      H.    The BofA Subordination Agreement .....................................................................8

      I.    The Comerica Settlement Agreement ....................................................................9

      J.    The Proposed Sale................................................................................................10

3.    The Sale .........................................................................................................................11

      A.    Summary of Terms of Sale ..................................................................................11

      B.    Subject to Overbid ...............................................................................................12

      C.    Compliance with U.S. Trustee Guidelines...........................................................14

4.    Legal Authority Regarding Sale ...................................................................................14

      A.    There is a sound business justification for the Sale. ............................................14

      B.    Notice is proper....................................................................................................15

      C.    The proposed sale price is adequate.....................................................................15

      D.    The sale was made in good faith...........................................................................16

      E.    The proposed treatment of liens is authorized under the Code.............................16

            i.    The First DoT and Second DoT.................................................................16

            ii.   The Comerica Lien ....................................................................................17

           iii.    Ms. Gonzales' Abstract..................................................................................17

           iv.    The Fox Liens ........................................................................................19

    F.    The 14-day period for effectiveness of the sale order should be waived....................20

    G.    The Buyers are good faith purchasers..........................................................................20

    H.    Tax consequences should not preclude the sale...........................................................21

5.    Legal Authority Regarding Subordination Agreement............................................................22

    A.    Approval of the BofA Subordination Agreement will generate a substantial return to creditors of the Estate in connection with the sale where no return would otherwise be generated.......................................................................................22

    B.    Approval of the BofA Subordination Agreement is in the best interest of the Estate..........................................................................................................................22

           i.    Probability of Success.....................................................................................23

           ii.    Difficulties in Collection.................................................................................23

           iii.    Complexity.......................................................................................................23

           iv.    Expense, inconvenience, or delay....................................................................23

    C.    Legal Authority Regarding Approval of the Compromise set forth in the Comerica Agreement ...............................................................................................24

           i.    Probability of Success.....................................................................................24

           ii.    Difficulties in Collection.................................................................................24

           iii.    Complexity.......................................................................................................25

            iv.    Expense, inconvenience, or delay....................................................................25

6.    Conclusion ...................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*In re A & C Properties*,

   784 F.2d 1377, 1380-81 (9th Cir. 1986).........................................................................27

*In re Abbotts Dairies of Pennsylvania, Inc.*,

   788 F.2d 143, 147 (3rd Cir. 1986)..................................................................................24

*ATKN Company v. Guy F. Atkinson Company of California (In re Guy F. Atkinson Company)*,

   242 B.R 497, 502 (B.A.P. 9th Cir. 1999) ......................................................................27

*Comerica Bank v. C-Pak Sea Foods et al.*,

   Case No. BC640599 ......................................................................................................... 6

*Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*,

   722 F.2d 1063, 1069 (2d Cir. 1983) ..............................................................................16

*In re Continental Air Lines, Inc.*,

   780 F.2d 1223, 1226 (5th Cir. 1986) .........................................................................16, 17

*EEOC v. Knox-Schillinger (In re Trans World Airlines, Inc.)*,

   322 F.3d 283, 290-91 (3d Cir. 2003)..............................................................................22

*In re Ewell*,

   958 F.2d 276, 281 (9th Cir. 1992) ..................................................................................24

*First Nat 'I Bankv. Shedd*,

   121 U.S. 74, 87 (1887) ...................................................................................................20

*FutureSource, LLC v. Reuters Ltd.*,

   312 F.3d at 285, 286 .......................................................................................................20

*In re Indus. Valley Refrigeration & Air Conditioning Supplies, Inc.*,

   77 B.R. 15, 17 (Bankr. E.D. Pa. 1987) .....................................................................18, 25

*In re Jolan*,

   403 B.R. 866 (Bankr. W.D. WA 2009) ..........................................................................22

*John T Callahan & Sons Inc. v. Dykeman Elec. Co. Inc.*,

   266 F.Supp.2d 208 (D. Mass. 2003)...............................................................................21

iii

*Kham and Nate's Shoes No. 2 v. First Bank*,

    908 F.2d 1351, 1355 (7th Cir. 1990) ........................................................... 25

*In re KVN Corp., Inc.*,

    514 B.R. 1 (9th Cir. BAP 2014) .............................................................. 1, 26

*In re Lahijani*,

    325 B.R. 282, 289 (9th Cir. BAP 2005) ...................................................... 17

*In re Lionel Corp.*,

    722 F.2d 1063, 1070 (2nd Cir. 1983) ........................................................ 16

*Martin v. Robinson*,

    479 U.S. 854, 107 S.Ct. 189 (1989) .......................................................... 27

*In Mellen v. Moline Malleable Iron Works* ................................................. 21

*Miners' Bank of Wilkes-Barre v. Acker*,

    66 F.2d 850 (3rd Cir. 1933) ................................................................... 21

*Pelican Homestead v. Wooten* (*In re Gabel*),

    61 B.R. at 667 ...................................................................................... 20

*Randolph v. Scranton, M & B RCo*,

    4F.Supp. 861, 863 (D.C. PA. 1931) ......................................................... 20

Ruby Valley Nat'l Bank v. Wells Fargo  Delaware Trust Co.,

    2014 MT 16, 373 Mont. 374, 317 P.3d 174, 178 (Mont. 2014) .................... 21

*Schmitt v. Ulrich (In re Schmitt)*,

    215 B.R. 417, 424 (B.A.P. 9th Cir. 1997) .................................................. 27

*In re Slates*,

    2012 WL 5359489 (9th Cir. BAP 2012) .................................................... 16

*Spanish Peaks*,

    872 F.3d at 900 (9th Cir. 2017) .............................................................. 22

*In re Suchy*,

    786 F.2d 900, 902 (9th Cir. 1985) ........................................................... 24

*W Broadway Trust Company v. Dill*,

   17 F.2d 486 (3d Cir. 1927) ................................................................................. 21

*In re Walter*,

   83 B.R. 14, 16 (9th Cir. BAP 1988) .................................................................... 17

*In re Wilde Horse Enterprises, Inc.*,

   136 B.R. 830 (Bankr. C.D. Cal. 1991) ....................................................... 16, 17, 18

*Williard v. Campbell*,

   91 Mont. 493, 11 P.2d 782, 787 (Mont. 1932) ................................................... 22

*In re Yavoobian Enterprises LP*,

   2012 WL 3818194 (Bankr. C.D. Cal. 2012) ........................................................ 20

**Statutes**

§ 363(f)(5) ................................................................................................................ 19

11 U.S.C. §§ 101–1532 ............................................................................................. 2

11 U.S.C. § 102(1) ................................................................................................... 14

11 U.S.C. § 363 ....................................................................................................... 14

11 U.S.C. § 363(b)(1) ......................................................................................... 14, 15

11 U.S.C. § 363(f) .................................................................................. 9, 10, 16, 26

11 U.S.C. § 363(f)(1) ......................................................................................... 18, 19

11 U.S.C. § 363(m) ................................................................... 2, 11, 20, 27, 34

11 U.S.C. § 510(c)(1) ................................................................................................ 9

11 U.S.C. § 510(c)(2) ....................................................................... 1, 8, 9, 22, 31

11 U.S.C. §§ 105 and 503(b) ................................................................................... 10

11 U.S.C. §§ 363(f)(1), (f)(2), (f)(4), and (f)(5) .................................................... 17

11 U.S.C. §507(a)(1)(C) ...................................................................................... 4, 29

131 U.S. 352, 367 (1889) ........................................................................................ 18

Cal. Civ. Code 701.630 ........................................................................................... 18

CCP § 488.510 ..................................................................................................... 4, 28

Section 363(b)(1) .................................................................................................................... 14

Section 363(f)(1) ................................................................................................................ 17, 18

Section 363(f)(2) .................................................................................................................... 19

Section 363(f)(5) ................................................................................................................ 18, 19

Section 363(m) .................................................................................................................. 21, 26

**Rules**

6004(h) .................................................................................................................................. 20

F.R.B.P. 6004(f)(1) ............................................................................................................... 14

Fed. R. Bankr. Proc. 9019 ..................................................................................................... 22

FRBP 6004(h) ........................................................................................................................ 20

Rule 6004(g) ............................................................................................................................ 2

TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY COURT JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

## 1.    Introduction

A Chapter 7 trustee may enter a carveout agreement with a secured creditor with Court approval pursuant to the BAP's holding in *In re KVN Corp., Inc.*, 514 B.R. 1 (9th Cir. BAP 2014). There does not appear to be a similar rule for a subordination agreement voluntarily agreed to by a secured creditor. To provide notice to creditors and parties in interest, however, Trustee asks the Court to approve such an agreement given the benefit to be received by the Estate.

Specifically, Trustee seeks authority to sell the real property commonly known as 14930 Mar Vista St. Whittier, California 90605 ("Property") for $1,522,222 million. The Property is subject to a first-in-priority deed of trust securing a claim in the approximate amount of $675,000, and a second-in-priority deed of trust securing a claim in the approximate amount of $866,000. The total of the liens is approximately $1.541 million (which amount is slightly in excess of the value of the Property). Both deeds of trust are held by Bank of America, N.A. ("BofA").

In order to provide a benefit to the estate from Trustee's sale of the Property, BofA has agreed to subordinate its claim in the amount of $300,000 plus all costs of sale including commissions. The liens securing the subordinated amounts will be transferred to the Estate pursuant to 11 U.S.C. § 510(c)(2). In other words, if approved, the Agreement will result in the Estate holding the benefit of a portion of the liens in an amount sufficient to pay all costs of sale and provide $300,000 to the Estate. The proposed subordination replaces and supersedes a previous carve-out agreement with BofA in the amount of $100,000.

Separately, the proposed agreement supersedes a previous carve-out agreement with a junior lienholder, Comerica Bank ("Comerica"), pursuant to which it would carve-out $150,000 from its attachment/judgment lien in favor of the Estate. Given that BofA's senior liens exceed the value of the Property, and given that Comerica is currently engaged in litigation involving a separate pool of disputed sales proceeds, it is highly uncertain whether the carveout from Comerica would provide

/ / /

MOTION FOR ORDER APPROVING: (1) SUBORDINATION AGREEMENT; (2) COMPROMISE; AND (3) SALE
4832-0355-6848,v.1

1  any benefit to the Estate. Comerica has also agreed to waive its alleged substantial administrative

2  claim against the Estate for litigation that it has funded against other alleged lienholders.

3      In summary, the proposed subordination agreement with BofA will provide a certain

4  $300,000 net benefit to the Estate and replace previous agreements that, based on the value of the

5  Property and amounts secured by senior liens, would only provide the Estate with a guaranteed

6  $100,000 benefit. In Trustee's business judgment, the proposed subordination agreement and

7  compromised modifications to the prior agreements should be approved as being in the best interest

8  of creditors. A true and correct copy of the subordination agreement with BofA is attached to the

9  Declaration of David M. Goodrich ("Goodrich Decl.") as Exhibit "1." A true and correct copy of the

10  compromise agreement with Comerica is attached to the Goodrich Decl as Exhibit "2."

11      Lastly, this Motion seeks authority for Trustee to sell the Property for $1,522,222 to the

12  proposed buyers free and clear of all liens, claims, and interests including the liens of BofA and

13  Comerica. Trustee further seeks an order determining that buyers are good faith purchasers entitled

14  to the protections of 11 U.S.C. § 363(m)[1] and to eliminate the 14-day stay on the effectiveness of

15  any order approving the sale otherwise applicable pursuant to Rule 6004(g). This Court must decide

16  whether to approve the subordination agreement, the compromise agreement, and the proposed sale

17  in order for the Estate to realize $300,000 after payment of all costs of sale including commissions.

18  **2.    Background Information**

19      **A.    Bankruptcy Filing, Schedules, and Statements**

20      On November 8, 2017, Debtor filed a voluntary petition under Chapter 7 of Title 11 the

21  United States Code. On the same day, David M. Goodrich was appointed as the Chapter 7 trustee of

22  the Estate.

23      In his Schedule A/B, Debtor lists a community property interest in the Property. Debtor does

24  not claim, and has agreed not to claim, any exemption in the Property.

25

26

27  _____

[1] Unless otherwise indicated, all Chapter and Section references are to the Bankruptcy Code,
11 U.S.C. §§ 101–1532. All references to "Rule" refer to the Federal Rules of Bankruptcy

28  Procedure.

1    Debtor's Schedule D reflects that the Property is encumbered by the following secured

2  claims:

3      a.    A first-in-priority deed of trust held by BofA ("First DoT"). BofA contends that the

4            amount secured by the First DoT is approximately $675,000;

5      b.    A second-in-priority deed of trust held by BofA ("Second DoT"). BofA contends that

6            the amount secured by the Second DoT is approximately $866,000;

7      c.    Three Family Law Attorney Real Property Liens ("FLARPLs") in favor of Frank O.

8            Fox ("Fox Liens") (executed only be Debtor's non-debtor ex-spouse) securing claims

9            totaling $650,000; and

10     d.    An attachment/judgment lien held by Comerica Bank ("Comerica") securing a claim

11           in the approximate amount of $1,475,000 ("Comerica Lien").

12  True and correct copies of Debtor's Schedules A/B and D are collectively attached to the Goodrich

13  Decl. as Exhibit "3."

14    On December 21, 2018, as Dk. No. 116, the Court entered an order granting the employment

15  of BK Global Real Estate Services and listing agent, Rogelio Sanchez of Keller Williams Downey

16  Realty ("Agent") to facilitate a sale of the Property and carve-outs from BofA.

17  ## B.    The Property

18    Pursuant to a Preliminary Title Report ("PTR"), a true and correct copy of which is attached

19  to the Goodrich Decl. as Exhibit "4," title to the Property is held by Benjamin William Gonzales and

20  Gretel Arend Gonzales, Trustees of The Gonzales Family Trust Dated July 26, 1999 ("Trust").

21    The Property is commonly known as 14930 Mar Vista St. Whittier, California 90605 and is

22  legally described as:

23        Real property in the City of Whittier, County of Los Angeles, State of
24        California, described as follows:

25        THE NORTHWESTERLY 135 FEET OF LOT 13 OF TRACT 11571, IN
          THE CITY OF WHITTIER, COUNTY OF LOS ANGELES, STATE OF
26        CALIFORNIA, AS PER MAP RECORDED IN BOOK 243 PAGES 27 TO
          29 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY
27        RECORDER OF SAID COUNTY.

28

MOTION FOR ORDER APPROVING: (1) SUBORDINATION AGREEMENT; (2) COMPROMISE; AND (3) SALE
4832-0355-6848,v.1

EXCEPT THEREFROM THE SOUTHWESTERLY 185 FEET
MEASURED ALONG THE NORTHWESTERLY LINE OF SAID LOT.
APN: 8149-030-005 and 8149-030-006

Trustee has conducted a search of all known liens, claims, and interests in the Property. The PTR reflects that the Property is encumbered by the following secured claims (collectively, the "Liens"):

- A first-in-priority deed of trust in favor of BofA (doc #13-162626) (previously defined as First DoT);

- A second-in-priority deed of trust in favor of BofA (doc #13-1640892) (previously defined as Second DoT);

- A FLARPL in favor of Frank O. Fox ("Fox") (doc #15-779609) (signed only by Debtor's ex-spouse) to secure an original indebtedness of $150,000 (previously included in the definition of Fox Liens); and

- A FLARPL in favor of Fox (doc #16-940681) (signed only by Debtor's ex-spouse) to secure an original indebtedness of $250,000 (previously included in the definition of Fox Liens).

An abstract of judgment (doc #2019-0095204) was recorded by Comerica to secure the amount of its claim ("Comerica Abstract"). After relief from stay, Comerica obtained entry of judgment liquidating its claim in the amount of $1,120,658.30. Although the PTR does not reflect recordation of the Comerica Abstract, the Trustee has received a recorded copy from Comerica, which contends that the Comerica Abstract and its resulting judgment lien will relate back to the date of the attachment lien pursuant to CCP § 488.510. A true and correct copy of the Comerica Abstract is attached to the Goodrich Decl. as Exhibit "5."

On September 4, 2018, Trustee and Gretel Gonzales ("Ms. Gonzales") entered into a settlement agreement pursuant to which Ms. Gonzales agreed to subordinate her priority domestic support obligation to allowed administrative expenses of the Estate pursuant to 11 U.S.C. §507(a)(1)(C) in exchange for the Estate releasing certain alleged claims against her ("DSO Agreement"). On November 16, 2018 as Dk. No. 102, the Court entered an order granting the DSO Agreement.

/ / /

MOTION FOR ORDER APPROVING: (1) SUBORDINATION AGREEMENT; (2) COMPROMISE; AND (3) SALE
4832-0355-6848,v.1

## C.    Comerica's Prepetition Lawsuit

On November 14, 2016, Comerica filed a complaint against Debtor, Ms. Gonzales, The Gonzales Family Trust of July 26, 1999 ("Trust"), and Debtor's affiliated business entities, commencing State Court case entitled *Comerica Bank v. C-Pak Sea Foods et al.*, Case No. BC640599. *See* Comerica's motion for relief from the automatic stay, request for judicial notice, and supporting exhibits, Dk. No. 15.

On April 11, 2017, the State Court issued a prejudgment writ of attachment ("Writ") in favor of Comerica and against all defendants. *Id.*

On September 28, 2018, Comerica obtained a judgment against Debtor, Ms. Gonzales and the Trust in the principal amount of $1,120,658.30 ("Comerica Claim"). *See* Exhibit "5." Although the PTR does not reflect the recordation of the Comerica Abstract, Comerica contends that it abstract and the resulting judgment lien would relate back to date of the attachment. The lien arising from the attachment and any subsequent judgment lien are collectively referred to as the "Comerica Liens."

## D.    Carve-Out Agreement between the Trustee, Comerica, Debtor, and Ms. Gonzales

On or around January 8, 2019, Trustee entered into a carve-out agreement and release with Comerica, Debtor, and Ms. Gonzales ("Comerica Carve-Out Agreement"). The following is a summary of the substantive terms of the Comerica Carve-Out Agreement that are relevant to this Motion:[2]

a.    Comerica agreed to $150,000 carve-out in favor of the Estate from funds payable on account of its liens;

b.    Comerica consents to the sale of the Property free and clear of the its liens, with such liens to attach to the sales proceeds (after payment of the carve-out);

c.    To the extent the Fox Liens and any related abstracts (collectively, the "Disputed Liens") are not fully liquidated and/or resolved prior to the sale of the Property, Trustee shall seek a

---

[2] All interested parties are advised to consult the Agreement for all terms and conditions. The statements contained herein are a summary of the material terms and conditions only.

MOTION FOR ORDER APPROVING: (1) SUBORDINATION AGREEMENT; (2) COMPROMISE; AND (3) SALE
4832-0355-6848,v.1

sale free and clear of the Disputed Liens, with such liens to attach to the sales proceeds with the same validity, priority, and extent;

      d.     Debtor and Ms. Gonzales, in their individual capacities and as trustees of the Trust (collectively, the "Gonzales Parties"), consent to the sale of the Property. The Gonzales Parties waive and release their respective rights, if any, to claim exemptions in the Property, the proceeds from the sales of the Property, or any carve-outs; and

      e.     With respect to the Property, the Trust is revoked and all real properties owned or held by the Trust constitute property of the Estate. A true and correct copy of the Comerica Carve-Out Agreement is attached to the Goodrich Decl. as Exhibit "6."

On January 18, 2019 as Dk. No. 123, Trustee filed a motion for approval of compromise with Comerica pursuant to FRBP 9019 ("Compromise Motion").

On March 1, 2019 as Dk. No. 138, the Court entered an order granting the Compromise Motion and approving the Comerica Carve-Out Agreement. The order is final and non-appealable.[3]

## E.    Fox Lien Litigation

On March 22, 2019, Comerica filed an adversary complaint against The Law Firm of Fox and Fox ("Fox Firm"), commencing adversary case no. 2:19-ap-01081-BR ("Fox Adversary"), and alleging the following claims for relief:

- Objection to claim no. 10-1;
- Declaratory relief;
- Determination of amount of secured claim; and
- Injunctive relief.

On May 14, 2020, the Court entered summary judgment in favor of Comerica and against the Fox Firm ("Judgement"). The Judgment reflects that the Fox Firm "does not hold and never held a lien against either of the real properties located in Whittier, California, located at 14663 Carnell

---

[3] Trustee acknowledges that the Comerica Carve-Out Agreement is subject to an ongoing dispute between Comerica and Fox, which includes claims for breach of contract and rescission. As discussed in more detail below, Trustee takes the position that the Estate's sale of the Property is not dependent on the enforceability of the Comerica Carve-Out Agreement, and that the Property may be sold free and clear of all liens, claims, and interests regardless whether the agreement is deemed valid and enforceable.

MOTION FOR ORDER APPROVING: (1) SUBORDINATION AGREEMENT; (2) COMPROMISE; AND (3) SALE
4832-0355-6848,v.1

1  Street and 14930 Mar Vista Street" by virtue of the Fox Liens (FLARPLs) or any other document

2  recorded against the Property in favor of the Fox Firm.

3  **F.    Ms. Gonzales Lien Litigation**

4  On June 25, 2019, Trustee and Ms. Gonzales entered into a stipulation re: withdrawal of

5  abstract of judgment and release of lien ("Withdrawal Stipulation") addressing the disposition of a

6  prepetition abstract of judgment recorded by Fox on behalf of Ms. Gonzales ("Abstract"). The

7  Withdrawal Stipulation provides "Gretel's liens, claims, and interests, if any, against the Carnell

8  Property shall attach to the proceeds from the sale of the Carnell Property" and authorizes the

9  Trustee to record the release of Abstract ("Release"). The Withdrawal Stipulation *does not* provide

10  for Ms. Gonzales to retain any lien against the Property following recordation of the Release.

11  On July 2, 2019, the Court entered an order approving the Withdrawal Stipulation.

12  On July 5, 2019, the Trustee recorded the Release. A true and correct copy of the Release is

13  attached to the Goodrich Decl. as Exhibit "7."

14  On or around October 31, 2019, Ms. Gonzales and Fox entered into a settlement, release, and

15  indemnification agreement ("Fox/Gonzales Agreement"). Among other things, the Fox/Gonzales

16  Agreement reflects that Ms. Gonzales assigned to Fox all of her interest and rights in this bankruptcy

17  case including Ms. Gonzales' rights, if any, associated with her released Abstract and subordinated

18  DSO claim. A true and correct copy of the Fox/Gonzales Agreement is attached to the Goodrich

19  Decl. as Exhibit "8."

20  On March 17, 2020, Comerica filed an adversary complaint against the Fox Firm and

21  Ms. Gonzales, commencing adversary case no. 2:20-bk-01065-BR ("Second Fox Adversary"), and

22  alleging the following claims for relief:

23  • Determination of validity of purported liens (challenging the released Abstract);

24  • Objection to Ms. Gonzales' proof of claim; and

25  • Breach of the Comerica Carve-Out Agreement.

26  The Second Fox Adversary remains pending and is set for trial in August 2021.

27  / / /

28  / / /

MOTION FOR ORDER APPROVING: (1) SUBORDINATION AGREEMENT; (2) COMPROMISE; AND (3) SALE
4832-0355-6848,v.1

## G.    Marketing Efforts

The Agent has been marketing the Property since February 9, 2021. The Agent's marketing efforts include listing the Property on the CRMLS Matrix. Declaration of Rogelio Sanchez ("Sanchez Decl."), ¶ 7. To date, Agent has received approximately 55 calls from interested parties and the Property has been shown 17 times. Sanchez Decl., ¶ 8.

Ultimately, the Agent procured an offer to purchase the Property from Raul Ruiz and Blanca Ruiz ("Buyers") for $1,522,222. A true and correct copy of the proposed sale agreement and addendums (collectively, "PSA") is attached to the Goodrich Decl. as Exhibit "9." Buyers provided Trustee with proof of funds and have tendered an earnest money deposit in the amount of $76,112, which escrow is holding in trust pending court approval and closing of the sale. The deposit shall be refundable only if certain conditions to the sale are not satisfied or the Buyers are not the successful bidder in the event overbids are received. Buyers' offer is the highest and best offer received by the Trustee.

## H.    The BofA Subordination Agreement

In November 2018, to facilitate Trustee's sale of the Property, BofA agreed to a $100,000 carve-out in favor of the Estate ("First BofA Agreement"). Pursuant to the First BofA Agreement, BofA also agreed to pay 6% brokerage commissions and all standard costs of sale including title and escrow fees related to the sale of the Property ("Costs of Sale"). On December 21, 2018, the Court entered an order approving the First BofA Agreement.

Between the time that the Trustee initially sought to sell the Property to the present, substantial additional administrative fees have been incurred through no fault of the Trustee. These fees relate to the various litigation and disputes referenced above and to issues related to significant repairs needed to the Property. To address these additional administrative expenses, Trustee has negotiated a new agreement with BofA which amends and supersedes the First BofA Agreement. Specifically, BofA's Claim secured by the Second DoT will be subordinated in the amount of $300,000 plus all Costs of Sale and treated as a general unsecured claim. The lien securing the subordinated amount will be transferred to the Estate pursuant to 11 U.S.C. § 510(c)(2).

/ / /

This Motion seeks approval of the proposed settlement and subordination agreement ("BofA Subordination Agreement") which provides in relevant part that:

1.    BofA consents to the sale of the Property by the Trustee free and clear of its liens, claims, and interests under 11 U.S.C. § 363(f). BofA further acknowledges that all taxes arising out of or related to the sale of the Property including *ad valorem* property taxes and documentary transfer taxes, but not any federal or state income tax owed by Debtor or Debtor's bankruptcy estate, has priority over its First DoT and Second DoT.

2.    BofA's claim secured by the Second DoT will be subordinated in the amount of $300,000 plus all costs of sale including commissions and treated as a general unsecured claim under 11 U.S.C. § 510(c)(1). The lien securing the subordinated amount will be transferred to the Estate pursuant to 11 U.S.C. § 510(c)(2). Except for the lien securing the subordinated amount which will be paid to the Estate prior to any monies being paid to BofA on account of its non-subordinated claims secured by the Second DoT ("Estate Proceeds"), BofA shall retain its liens which shall attach to the proceeds of sale with the same validity, priority, and extent and shall be paid by escrow directly to BofA upon closing. All funds received by BofA upon closing will reduce its claim which shall be deemed allowed.

3.    After applicable property taxes, the First DoT, and Costs of Sale are paid from escrow, the Estate shall receive a total net payment of $300,000 ("Estate Proceeds") from escrow regardless of whether sufficient funds exist to pay the remaining balance due and owing to BofA on account of the Second DoT.

4.    BofA's proof of claim ("BofA Claim") shall be deemed allowed and the First DoT and Second DoT deemed valid and unavoidable. Trustee waives and releases all claims of the Estate, creditors, and other parties to object to the BofA Claim and or avoid its Liens. A true and correct copy of the BofA Subordination Agreement is attached to the Goodrich Decl. as Exhibit "1."

# I.    The Comerica Settlement Agreement

Upon learning of the BofA Subordination Agreement described above, Comerica requested that the Trustee relieve Comerica of its obligation to pay the $150,000 to the Estate ("Comerica Carve-Out Obligation") for the following reasons: (1) Comerica has incurred much higher than

1    expected fees in prosecuting the two adversary cases that it was required to prosecute under the

2    agreement with the Estate; (2) such substantial fees may be recoverable as an administrative claim

3    against the Estate; (3) Comerica believed that BofA would substantially reduce the debt associated

4    with the Second DoT, thus resulting in a payout to Comerica from the sale of the Property, rather than

5    subordinate the debt for the exclusive benefit of the Estate; (4) given the amount owed to BofA and the

6    value of the Property, Comerica's liens are out of the money and there would be no funds from which

7    to pay a carve-out; (5) the Estate may not be able to sell the Property free and clear of Comerica's liens

8    without its consent; and (6) it would be inequitable for the Estate to receive an additional $200,000

9    from BofA while Comerica continues to prosecute adversary cases that will not result in Comerica's

10   liens being paid from the sale of the Property.

11           Further, Comerica has threatened to oppose any motion for approval of the PSA should the

12   Trustee continue to pursue the Comerica Carve-Out Obligation.

13           As such, on July 14, 2021, Comerica and the Trustee entered into a settlement agreement

14   ("Comerica Compromise Agreement") providing in relevant part:

15           1.      Comerica consents to the sale of the Property by the Trustee free and clear of all its

16   liens, claims, and interests under 11 U.S.C. § 363(f);

17           2.      Comerica waives and releases any and all potential administrative expense claims

18   against the Estate under 11 U.S.C. §§ 105 and 503(b); and

19           3.      The Trustee, on behalf of the Estate, waives and releases the Estate's rights in the

20   Comerica Carve-Out Obligation, and Comerica shall be released of any liability arising from the

21   Comerica Carve-Out Obligation. A true and correct copy of the entire Comerica Compromise

22   Agreement is attached to the Goodrich Decl. as Exhibit "2."

23   **J.    The Proposed Sale**

24           Trustee has determined that it is in the best interest of the Estate to proceed with the existing

25   sale of the Property to the Buyers for the sum of $1,522,222. This Motion seeks approval for the

26   Trustee to sell the Property on substantially the terms and conditions set forth in the PSA and reflects

27   the material terms agreed to between the Buyers and the Trustee. The parties may agree on minor,

28   non-material changes to the PSA before the hearing on this Motion. The Motion also seeks an order

1 determining that the Buyers are good faith purchasers entitled to the protections of 11 U.S.C.

2 § 363(m). As discussed more fully below, Buyers do not have any connection or relationship with

3 the Trustee or the Debtor.

4       Trustee proposes to sell the Property free and clear of all liens including the disallowed Fox

5 Liens and distribute the sale proceeds in the following manner:

| Description | Amount |
|---|---|
| Sale Price | $1,522,222 |
| Estimated Real Property Taxes | ($10,000) |
| Brokers' Commissions (6% of sales price) | ($91,333) |
| Title, Escrow, and other Closing Costs (est. 2% of sales price) | ($30,444) |
| First Deed | ($674,365) |
| Second DoT - Subordinated Portion to the Estate | ($300,000) |
| Second DoT – Non-Subordinated Portion to BofA (amount is estimated and could be more or less depending on the tax liability, the exact amounts due to senior lienholders and the precise amount of costs of sale) | ($416,080) |

## 3. The Sale

### A. Summary of Terms of Sale

16       THIS IS A SUMMARY ONLY AND DOES NOT CONSTITUTE PART OF AN

17 AGREEMENT BETWEEN THE PARTIES. THE SALE TO THE BUYERS WILL BE IN

18 ACCORDANCE WITH THE TERMS OF THE SALE AGREEMENT AND OTHER ESCROW

19 INSTRUCTIONS EXECUTED BETWEEN THE PARTIES.

20       The proposed terms of sale include the following:

21       1.    Subject to court approval, Trustee has accepted Buyers' offer to purchase the

22 Property for $1,522,222 free and clear of all liens, claims, and interests. Buyers have tendered an

23 earnest money deposit in the amount of $76,112, which escrow will hold in trust pending court

24 approval of the sale.

25       2.    The proposed sale is subject to overbids as set forth below. The purchase price shall

26 be refundable only if the conditions to the sale are not satisfied or the Buyers are not the successful

27 bidder in the event overbids are received.

28 / / /

MOTION FOR ORDER APPROVING: (1) SUBORDINATION AGREEMENT; (2) COMPROMISE; AND (3) SALE
4832-0355-6848,v.1

3.      The proposed sale shall be "as is," "where is," "with all faults," and with no warranties or warranties. Trustee will transfer title to the Property by grant deed.

## B.    Subject to Overbid

While Trustee has accepted the offer made by Buyers, he also has a duty to obtain the best possible price for the Property.[4] Accordingly, Trustee requests that the Court authorize him to implement an overbid procedure on the following terms.

Any potential overbidder is encouraged to obtain a copy of the Motion and contact Trustee's counsel prior to the hearing. The Property will be sold subject to overbid at an open auction ("Auction") to be conducted during the hearing on this Motion. Trustee has established the following proposed overbid procedures which shall govern any bidding unless otherwise agreed to or ordered by the Court:

1.      Any person or entity that is interested in purchasing the Property ("Bidders") must serve Trustee and his counsel with an initial bid in conformance with these procedures ("Overbid"), such that any Overbid is actually received no later than the commencement of the auction ("Bid Deadline");

2.      Each party (including Buyers) interested in participating as an overbidder must be present either physically or telephonically at the hearing on the Motion or represented by an individual or individuals with the authority to participate in the overbid process;

3.      Any entity that submits a timely, conforming Overbid shall be deemed a "Qualified Bidder" and may bid for the Property at the hearing. Unless otherwise permitted by the Court, any entity that fails to submit a timely, conforming bid shall be disqualified from bidding for the Property;

4.      Trustee, subject to Court review and the rights of a Bidder or party in interest to raise an issue with the Court, shall have sole authority to determine whether a party is a Qualified Bidder;

---

[4] While overbids will not result in a corresponding increase in the subordinated amount to be paid to the Estate, the Trustee nevertheless seeks approval of the sale subject to overbid because an auction may result in additional recoveries for creditors whose debts are secured by the Property.

5.      Any Overbid must remain open until the conclusion of the Auction of the Property to be held at the hearing on this Motion;

6.      Any Overbid must provide for a minimum purchase price of at least $1,530,000;

7.      Any Overbid must be for the Property "as is," "where is," and "with all faults," and shall not contain any financing, due diligence, or any other contingency and shall not include any request for a break-up fee, termination fee, or other expense reimbursement;

8.      Any Overbid must be accompanied by a deposit of at least $76,112 in certified funds, which funds shall be nonrefundable if the bid is determined by the Court to be the highest and best bid for the Property ("Best Bid"), and proof satisfactory to the Trustee that such bidder has sufficient funds to complete the sale;

9.      Any Overbid must be made by a person or entity who has completed its due diligence review of the Property and is satisfied with the results thereof;

10.     If Trustee receives a timely, conforming Overbid for the Property, the Court will conduct an auction of such property during the hearing in which all Qualified Bidders may participate. The Auction shall be governed by the following procedures: (a) all Qualified Bidders shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and to have waived any right to jury trial in connection with any disputes relating to the Auction or the sale of the Property; (b) after the initial overbid, the minimum bidding increment during the Auction shall be $5,000; (c) bidding shall commence at $1,535,000 ($5,000 over any initial qualifying overbid); and (d) the Trustee will determine which of the bids is the best bid subject to the Court's approval ("Successful Bidder");

11.     The Successful Bidder must pay, at the closing, all amounts reflected in the Best Bid in cash and such other consideration as agreed upon; and

12.     Each party (including the Buyers) must pay the full amount of the successful bid to the Trustee within the time period set forth in the PSA or otherwise within 15 days from the date of the order approving the Motion becomes a final order, whichever is earlier. In the event that the Buyers are not the successful bidder for the Property, the successful bidder shall then become the buyer under the same terms and conditions as set forth in the escrow documents. Furthermore, if the

1  successful bidder cannot deliver the balance of the sale price within the above-referenced period, the

2  successful bidder's deposit shall become non-refundable.

3      Trustee believes the foregoing overbid terms are reasonable under the circumstances of this

4  case and will ensure that the price ultimately received for the Property will be the highest and best

5  price. On the basis of the foregoing considerations, the Trustee believes that the proposed sale is fair

6  and reasonable and will ensure that the Estate realizes the highest possible sales price for the

7  Property.

8      ## C.      Compliance with U.S. Trustee Guidelines

9      In compliance with FRBP 6004(f)(1), Trustee will file a copy of the escrow closing statement

10  and serve it on interested parties including the Office of the United States Trustee.

11  ## 4.      Legal Authority Regarding Sale

12      Under Section 363, a trustee is empowered to sell assets of the estate "after notice and a

13  hearing." 11 U.S.C. § 102(1). The standards for approval of a sale pursuant to Section 363(b)(1)

14  require that the proponent of the sale establish that: "(1) a sound business purpose exists for the sale;

15  (2) the sale is in the best interest of the estate, *i.e.*, the sale price is fair and reasonable; (3) notice to

16  creditors was proper; and (4) the sale is made in good faith." *In re Slates*, 2012 WL 5359489 (9th

17  Cir. BAP 2012) (unpublished) (citing *In re Wilde Horse Enters., Inc.*, 136 B.R. 830, 841 (Bankr.

18  C.D. Cal. 1991); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063,

19  1069 (2d Cir. 1983)). As discussed more fully below, the Trustee's proposed sale of the Property

20  meets each of these requirements.

21      ## A.      There is a sound business justification for the Sale.

22      The decision to sell property out of the ordinary course of a debtor's business must be based

23  on the reasonable business judgment of the debtor. *In re Continental Air Lines, Inc.*, 780 F.2d 1223,

24  1226 (5th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2nd Cir. 1983). In determining

25  whether the business purpose is justified under Section 363(b)(1), bankruptcy courts apply a flexible,

26  case-by-case approach. *See In re Walter*, 83 B.R. 14, 19 (9th Cir. BAP 1988) ("the bankruptcy judge

27  should consider all salient factors pertaining to the proceeding and, accordingly, act to further the

28  diverse interests of the debtor, creditors and equity holders, alike.") (quoting *In re Continental Air*

14

1   *Lines, Inc.,* 780 F.2d 1223, 1226 (5th Cir. 1986)). The court should approve a sale of property under

2   Section 363(b)(1) if the trustee has established a sound business purpose for the proposed

3   transaction. *In re Walter*, 83 B.R. 14, 16 (9th Cir. BAP 1988); *In re Wilde Horse Enterprises, Inc.*,

4   136 B.R. 830 (Bankr. C.D. Cal. 1991). The business judgment standard is deferential. *In re Lahijani*,

5   325 B.R. 282, 289 (9th Cir. BAP 2005) ("Ordinarily, the position of the trustee is afforded

6   deference, particularly where business judgment is entailed in the analysis or where there is no

7   objection.").

8        The facts reflect that the Trustee's decision to sell the Property is supported by sound

9   business judgment because the BofA Subordination Agreement, which will net the Estate $300,000,

10  requires the sale. As such, the sale will generate significant cash proceeds for the Estate. Further, the

11  sales price is fair based upon the extensive marketing efforts on the Property, listing prices of

12  comparable parcels of real property, the Agent's inspection of the Property, and the current condition

13  of the Property. Based on all of this information, the Trustee believes the sale of the Property will

14  ultimately facilitate the Estate receiving its agreed-upon $300,000 in subordinated funds.

15       **B.    Notice is proper.**

16       The Trustee must give notice of any sale of property of the estate. *See* 11 U.S.C. § 363(b)(1).

17  In the instant matter, the Trustee will give notice to Debtor, the United States Trustee, all known

18  creditors, and any other prospective buyers. Service of the Motion is proper and constitutes adequate

19  and reasonable notice. Moreover, notice of the sale and bidding procedures will be published on the

20  Website for the U.S. Bankruptcy Court for the Central District of California.

21       **C.    The proposed sale price is adequate.**

22       The price is fair, reasonable, and the Agent believes that it conforms with the current market

23  of comparable sales. The Buyer's offer of $1,522,222 is the highest and best offer on the Property,

24  based upon the marketing efforts of Agent, and it will garner a substantial distribution to the Estate.

25  The proposed overbid procedures will ensure that the Estate realizes the highest possible sales price

26  for the Property. As a result, the price is reasonable and in the best interests of the Estate.

27  / / /

28  / / /

MOTION FOR ORDER APPROVING: (1) SUBORDINATION AGREEMENT; (2) COMPROMISE; AND (3) SALE
4832-0355-6848,v.1

### D.      The sale was made in good faith.

"Good faith encompasses fair value, and further speaks to the integrity of the transaction." *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 842 (Bankr. C.D. Cal. 1991) (internal quotation marks omitted). Bad faith includes collusion between buyer and seller or otherwise taking unfair advantage of other potential purchasers, such as a collusive insider transaction. *Id.*; *see also In re Indus. Valley Refrigeration & Air Conditioning Supplies, Inc.*, 77 B.R. 15, 17 (Bankr. E.D. Pa. 1987). The sale of the Property was negotiated at arms' length. There is no fraud, collusion, or insider transactions present here, and the Buyer has received no special treatment or consideration. Moreover, the Property has been actively marketed, the Auction will be properly publicized on the Court's Website, and the Trustee has accepted the highest and best offer. As a result, the sale is made in good faith.

### E.      The proposed treatment of liens is authorized under the Code.

The Trustee seeks authority to complete the sale free and clear of all liens, claims, and interests with the liens to attach to the proceeds. Section 363(f) allows a trustee to sell property of the bankruptcy estate "free and clear of any interest in such property of an entity," if any one of the following five conditions is met:

> (1) Applicable non-bankruptcy law permits a sale of such property free and clear of such interest;
> (2) Such entity consents;
> (3) Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) Such interest is in bona fide dispute; or
> (5) Such entity could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such interest.

11 U.S.C. § 363(f).

### i.      The First DoT and Second DoT

BofA consents to the proposed sale pursuant to the BofA Subordination Agreement. As such, the sale should be approved free and clear of the First and Second Deeds of BofA under 11 U.S.C. § 363(f)(2).

/ / /

/ / /

### ii.    The Comerica Lien

Comerica consents to the proposed sale pursuant to the Comerica Carve-Out Agreement and the Comerica Compromise Agreement. Therefore, the sale should be approved free and clear of the Abstract under 11 U.S.C. § 363(f)(2).

### iii.    Ms. Gonzales' Abstract

Ms. Gonzales released the Abstract, which Release was recorded by the Trustee nearly two years ago. As such, neither Ms. Gonzales nor Fox (as assignee) possesses any lien against the Property pursuant to the Abstract. In an abundance of caution, however, and if the Court somehow determines that the Abstract attaches to the Property, the sale free and clear should be approved as to the Abstract under 11 U.S.C. §§ 363(f)(1), (f)(2), (f)(4), and (f)(5).

First, although Ms. Gonzales' consent is not required (she released the Abstract and assigned her rights to Fox), Ms. Gonzales has already consented to the proposed sale pursuant to the Comerica Carve-Out Agreement. Further, Ms. Gonzales and Fox will be deemed to have consented to the proposed sale absent an objection. *In re Yavoobian Enterprises LP*, 2012 WL 3818194 (Bankr. C.D. Cal. 2012); *FutureSource, LLC v. Reuters Ltd.*, 312 F.3d at 285, 286; *Pelican Homestead v. Wooten* (*In re Gabel*), 61 B.R. at 667. Therefore, the sale should be approved free and clear of the Abstract under 11 U.S.C. § 363(f)(2).

Second, the sale should be free and clear of the Abstract under 11 U.S.C. § 363(f)(4) because the Abstract is in *bona fide* dispute. Specifically, it is unclear if the Abstract was properly recorded and if it resulted in a duly-perfected lien on the Property, as it does not appear on the PTR. Moreover, the Abstract is subject to direct legal challenge in the Second Fox Adversary. Thus, the Abstract is in *bona fide* dispute.

Third, the sale should be free and clear of the Abstract under section 363(f)(1). The language of Section 363(f)(1) allows a sale to proceed, free and clear of liens, if the power to sell free and clear exists outside of bankruptcy in another body of law. The existence of this power is unquestionable under both federal and state law. It is well established that property can be sold free and clear of liens in a federal receivership action. *See, e.g., First Nat 'I Bankv. Shedd*, 121 U.S. 74, 87 (1887); *Randolph v. Scranton, M & B RCo*, 4F.Supp. 861, 863 (D.C. PA. 1931) *aff'd Miners'*

1    *Bank of Wilkes-Barre v. Acker*, 66 F.2d 850 (3rd Cir. 1933) ("It is clear that this court has the

2    jurisdiction and power to order such a sale."); *W Broadway Trust Company v. Dill*, 17 F.2d 486 (3d

3    Cir. 1927) ("In receivership proceedings, federal court, under general equity authority, has power

4    and jurisdiction to order a public sale of real estate, free and divested of liens, over objection of

5    trustee under mortgage."); *see also, John T Callahan & Sons Inc. v. Dykeman Elec. Co. Inc.,* 266

6    F.Supp.2d 208 (D. Mass. 2003). *In Mellen v. Moline Malleable Iron Works*, the U.S. Supreme Court

7    stated that "the removal of alleged liens or encumbrances upon property, the closing up of affairs of

8    insolvent corporations, and the administration and distribution of trust funds, are subjects over which

9    courts of equity have general jurisdiction." 131 U.S. 352, 367 (1889).

10         The Ninth Circuit Court of Appeals held that where state foreclosure law would eliminate a

11    junior interest, the Trustee may sell property free and clear of such interest.

12        "Second, we emphasize that section 363(f) authorizes free-and-clear sales only in
      certain circumstances. The bankruptcy court did not specify which circumstance

13    justified the sale in this case, stating only that Pinnacle and Opticom 'd[id] not
      dispute that at least one provision of § 363(f) was satisfied.' We, on the other hand,

14    focus on 11 U.S.C. § 363(f)(1), which authorizes a sale if 'applicable nonbankruptcy
      law permits sale of such property free and clear of such interest.' 11 U.S.C.

15    § 363(f)(1).

      …

16    Under Montana law, a foreclosure sale to satisfy a mortgage terminates a subsequent
      lease on the mortgaged property. *See Ruby Valley Nat'l Bank v. Wells Fargo*

17    *Delaware Trust Co.*, 2014 MT 16, 373 Mont. 374, 317 P.3d 174, 178 (Mont. 2014);
      *Williard v. Campbell*, 91 Mont. 493, 11 P.2d 782, 787 (Mont. 1932). SPH's

18    bankruptcy proceeded, practically speaking, like a foreclosure sale—hardly surprising
      since its largest creditor was the holder of the note and mortgage on the property.

19    Indeed, had SPH not declared bankruptcy, we can confidently say that there would
      have been an actual foreclosure sale. Such a sale would have terminated the Pinnacle

20    and Opticom leases. Section 363(f)(1) does not require an actual or anticipated
      foreclosure sale. It is satisfied if such a sale would be legally permissible."

21

22    *See, e.g., Spanish Peaks*, 872 F.3d at 900 (9th Cir. 2017). It is well settled that a property can be sold

23    free and clear of liens pursuant to California's judicial foreclosure laws. Cal. Civ. Code 701.630.

24    Since the power to sell free and clear exists under external sources of law, this power is vested in this

25    Court under Section 363(f)(1).

26         Finally, the sale should be approved free and clear pursuant to Section 363(f)(5) because

27    Ms. Gonzales and Fox could be compelled, in a legal or equitable proceeding, to accept a money

28    satisfaction of her alleged secured interest. *See In re Jolan*, 403 B.R. 866 (Bankr. W.D. WA 2009).

MOTION FOR ORDER APPROVING: (1) SUBORDINATION AGREEMENT; (2) COMPROMISE; AND (3) SALE
4832-0355-6848,v.1

1  Courts have held that Section 363(f)(5) applies whenever an interest in the property to be sold is of a

2  nature that such interest could be satisfied with money (as opposed to specific performance being the

3  only remedy). *See, e.g., EEOC v. Knox-Schillinger (In re Trans World Airlines, Inc.*), 322 F.3d 283,

4  290-91 (3d Cir. 2003) (because employees' claims were "subject to monetary valuation," debtor's

5  assets could be sold free and clear of successor liability for such claims under § 363(f)(5)). Here,

6  Ms. Gonzales and Fox could be compelled to accept payment for the Abstract in return for the

7  release of the Abstract through either a federal receivership proceeding, a California receivership

8  proceeding, a hypothetical foreclosure sale by one of the lienholders, or a cramdown. Therefore, the

9  Trustee seeks approval to sell the Property free and clear of the Abstract pursuant to 11 U.S.C.

10  § 363(f)(5).

11            iv.    **The Fox Liens**

12            The Court has entered a Judgment reflecting that the Fox Firm "does not hold and never held

13  a lien against either of the real properties located in Whittier, California, located at 14663 Carnell

14  Street and 14930 Mar Vista Street" by virtue of the Fox Liens (FLARPLs) or any other document

15  recorded against the Property in favor of the Fox Firm. As such, the Fox Liens are invalid as to the

16  Property and do not need to be addressed here.

17            However, in an abundance of caution, and if the Court somehow determines that Fox or the

18  Fox Firm has an interest in the Property pursuant to the Fox Liens, the sale free and clear should be

19  approved: (1) under 11 U.S.C. § 363(f)(4) because the Trustee and Comerica dispute the validity,

20  priority, and extent of the Fox Liens; (2) under 11 U.S.C. § 363(f)(1) because the power to sell free

21  and clear exists outside of bankruptcy in another body of law; and (3) under 11 U.S.C. § 363(f)(5)

22  because Fox could be compelled, in a legal or equitable proceeding, to accept a money satisfaction

23  of his alleged secured interest. In the absence of any objection, the Trustee also seeks to sell free and

24  clear under Section 363(f)(2).

25  / / /

26  / / /

27  / / /

28  / / /

### F.      The 14-day period for effectiveness of the sale order should be waived.

Rule 6004(h) provides that "An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FRBP 6004(h). The legislative history to Rule 6004 provides:

> The court may, in its discretion, order that Rule 6004(g) [now 6004(h)] is not applicable so that the property may be used, sold, or leased immediately in accordance with the order entered by the court. Alternatively, the court may order that the stay under Rule 6004(g) [now 6004(h)] is for a fixed period less than 10 [now 14] days.

Given the notice and full opportunity to object, respond, or participate in overbid procedures presented by this Motion, the Trustee believes that, unless there are objections to the Motion that are not consensually resolved, it is appropriate and good cause exists for the Court to order that Rule 6004(h) is not applicable, and the Property may be sold immediately. Accordingly, the Trustee requests that the Court authorize the sale to be effectuated immediately upon entry of the order approving this Motion.

### G.      The Buyers are good faith purchasers.

The proposed Buyers are good faith purchasers entitled to the protections of 11 U.S.C. § 363(m). "Though the Bankruptcy Code and Rules do not provide a definition of good faith, courts generally have followed traditional equitable principles in holding that a good faith purchaser is one who buys 'in good faith' and 'for value.'" *In re Ewell*, 958 F.2d 276, 281 (9th Cir. 1992) (citing *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3rd Cir. 1986)). Lack of good faith may be shown by "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Ewell*, 958 F.2d 276, 281 (9th Cir. 1992) (quoting *In re Suchy*, 786 F.2d 900, 902 (9th Cir. 1985)); *see also In re Indus. Valley Refrigeration & Air Conditioning Supplies, Inc.*, 77 B.R. 15, 17 (Bankr. E.D. Pa. 1987) (good faith requirement "focuses principally on the element of special treatment of the debtor's insiders in the sale transaction").

/ / /

MOTION FOR ORDER APPROVING: (1) SUBORDINATION AGREEMENT; (2) COMPROMISE; AND (3) SALE
4832-0355-6848,v.1

1    A good faith purchaser of property is protected from the effects of reversal of the order

2  authorizing a sale as long as the trial court finds that the purchaser acted in good faith and the

3  aggrieved party fails to obtain a stay of the sale order. In essence, the purpose of Section 363(m) is

4  to disable courts from backtracking on promises with respect to bankruptcy sales in the absence of

5  bad faith. *Kham and Nate's Shoes No. 2 v. First Bank*, 908 F.2d 1351, 1355 (7th Cir. 1990).

6    In this case, the proposed sale is not predicated on fraud or collusion, and the sale is not to an

7  insider, nor have any insiders received any special treatment or consideration. The Property was

8  marketed on the Multiple Listing Service and the proposed Buyers presented the highest and best

9  offer. Based upon the foregoing, the Trustee submits that the Motion satisfies the standards for

10 approval of a sale of the Property outside of the ordinary course of business pursuant to Section

11 363(b), and good cause exists to make a finding that the Buyers or any overbidders are purchasing

12 the Property in "good faith" pursuant to Section 363(m).

13    **H.    Tax consequences should not preclude the sale.**

14    Trustee intends to pay real property taxes in full from the sale of the Property.

15    With regard to other taxes which may arise from a sale, there are several potential outcomes

16 and Trustee has not yet determined the exact tax liability that could be incurred by the Estate from a

17 sale. The different outcomes depend primarily on: (1) the timing the sale of the Property; (2) when

18 administrative fees and costs are paid by the Estate; and (3) the extent of such fees and costs. Trustee

19 has retained Sam Leslie, of LEA Accountancy, LLP to provide tax advice and conduct further

20 analysis regarding potential tax implications. Trustee believes that the Estate will have sufficient

21 funds to pay any such taxes.

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

MOTION FOR ORDER APPROVING: (1) SUBORDINATION AGREEMENT; (2) COMPROMISE; AND (3) SALE
4832-0355-6848,v.1

## 5.    Legal Authority Regarding Subordination Agreement

### A.    Approval of the BofA Subordination Agreement will generate a substantial return to creditors of the Estate in connection with the sale where no return would otherwise be generated.

The BofA Subordination Agreement provides that BofA will subordinate[5] a portion of its claim secured by the Second DoT, with the lien otherwise securing the subordinated claim to be trsferred to the Estate pursuant to 11 U.S.C. § 510(c)(2). The amount of the claim to be subordinated is equal to: (1) $300,000; plus (2) all the Costs of Sale. If approved, the BofA Subordination Agreement will allow the Property to be sold with $300,000 of unencumbered funds to be paid to the Estate from escrow after all Costs of Sale have been paid. Because the proposed sale of the Property is anticipated to generate a substantial net benefit for the Estate, the BofA Subordination Agreement should be approved.

### B.    Approval of the BofA Subordination Agreement is in the best interest of the Estate.

Under Rule 9019, the court may approve a compromise or settlement on motion by the trustee. Fed. R. Bankr. Proc. 9019. It is well-established that a compromise should be approved if it is "in the best interest of the estate . . . and is fair and equitable for the creditors." *Schmitt v. Ulrich (In re Schmitt)*, 215 B.R. 417, 424 (9th Cir. BAP 1997); *ATKN Company v. Guy F. Atkinson Company of California (In re Guy F. Atkinson Company)*, 242 B.R 497, 502 (9th Cir. BAP 1999)

---

[5] The Trustee does not believe that the subordination provision set forth in the BofA Subordination Agreement constitutes a "carve-out." However, to the extent the Court determines that proposed subordination constitutes a carve-out, the requirements for approval of a carve-out are satisfied. In *In re KVN Corp., Inc.*, the BAP held that courts should consider the following factors in deciding whether to approve a carve-out agreement between a Chapter 7 trustee and a secured lender: (1) whether the trustee "fulfilled his or her basic duties;" (2) whether there is "a benefit to the estate, i.e., prospects for a meaningful distribution to unsecured creditors;" (3) whether "the terms of the carve-out agreement been fully disclosed to the bankruptcy court." *In re KVN Corp., Inc.*, 514 B.R. 1, 8 (9th Cir. BAP 2014). In sum, courts should scrutinize carve-out agreements to ensure that the agreement provides a benefit to unsecured creditors and is not merely an opportunity for the trustee to receive a commission for making a distribution to a secured creditor who could foreclose on the security interest itself. *Id.* at 7. In this case, Trustee has fulfilled his basic duties by investigating the liens against the Property, listing the Property for sale, and securing a subordination agreement from BofA which will provide a benefit to the Estate three times larger than the original Court-approved carve-out. There is also a significant benefit to the Estate if the compromise is approved in that $300,000 will be available for payment of allowed administrative and unsecured claims. Lastly, Trustee has disclosed the terms of the Agreement to all creditors and seeks approval of the Agreement by this Motion.

MOTION FOR ORDER APPROVING: (1) SUBORDINATION AGREEMENT; (2) COMPROMISE; AND (3) SALE
4832-0355-6848,v.1

1  ("At its base, the approval of a settlement turns on the question of whether the compromise is in the

2  best interest of the estate.") The standards to be applied to the approval of a settlement include:

3      1)      the probability of success of the litigation on its merits;

4      2)      the difficulties in collection on a judgment;

5      3)      the complexity of the litigation involved; and

6      4)      the expense, inconvenience or delay occasioned by the litigation, and the interest of

7              creditors.

8  *In re A & C Properties*, 784 F.2d 1377, 1380-81 (9th Cir. 1986), cert. den., *Martin v. Robinson*,

9  479 U.S. 854, 107 S.Ct. 189 (1989).

10      As explained below, all four *A&C* factors weigh in favor of approving the Subordination

11 Agreement. Trustee is not waiving any claims other than acknowledging the amount and validity of

12 BofA's duly-recorded secured debt.

13                  **i.      Probability of Success**

14      The Trustee has no known factual or legal basis to challenge BofA's claim or lien, and

15 Debtor's schedules list this claim as a noncontingent, liquidated, undisputed claim. This factor

16 weighs in favor of approval of the Subordination Agreement.

17                  **ii.     Difficulties in Collection**

18      If the Trustee were to file suit against BofA to avoid the First DoT or Second DoT, there may

19 not be any difficulty in "collection" other than that which would be necessary to administer the

20 Property in the ordinary course. However, any lawsuit against BofA would be highly unlikely to

21 succeed, and only result in unnecessary administrative expense to the Estate.

22                  **iii.    Complexity**

23      Because the Trustee has no known factual or legal basis to challenge the First or Second

24 Deed, this factor is inapplicable.

25                  **iv.     Expense, inconvenience, or delay**

26      Any litigation regarding the First DoT or Second DoT would only reduce recoveries to

27 unsecured creditors where none is guaranteed at this time. Under the BofA Subordination

28 Agreement, $300,000 will be paid to the Estate as well as all Costs of Sale, which would be expected

1 to be necessary to liquidate the Property. This factor weighs heavily in favor of approval of the BofA

2 Subordination Agreement, which will allow the Trustee to focus on finalizing and closing this

3 bankruptcy case.

### C.   Legal Authority Regarding Approval of the Compromise set forth in the Comerica Agreement

The *A&C* factors also weigh in favor of approving the Comerica Compromise Agreement.

### i.   Probability of Success

8 Comerica argues that it should be relieved of the Comerica Carve-Out Obligation for the

9 following reasons: (1) Comerica has incurred much higher than expected fees in prosecuting the two

10 adversary cases; (2) such fees may be recoverable as an administrative claim against the Estate;

11 (3) Comerica believed that BofA would substantially reduce the debt associated with the Second

12 DoT, thus resulting in a payout to Comerica from the sale of the Property, rather than subordinate

13 the debt for the exclusive benefit of the Estate; (4) the Estate cannot sell the Property free and clear

14 over Comerica's objection; and (5) it would be inequitable for the Estate to receive an additional

15 $200,000 while Comerica continues to prosecute adversary cases that will not result in Comerica

16 being paid from the sale of the Property.

17 Trustee has determined, in his business judgment, that releasing the Comerica Carve-Out

18 Obligation is both equitable and beneficial to the Estate. First, it is unclear if the Estate can sell free

19 and clear of the Comerica Liens since those liens are not presently in dispute. Moreover, absent the

20 release, Comerica intends to: (a) oppose the proposed sale, placing at risk the $300,000 in net

21 proceeds to be received by the Estate under the BofA Subordination Agreement; and (b) assert an

22 administrative claim against the Estate, which may compound the detriment to lower priority

23 unsecured creditors. This factor weighs in favor of approval of the Comerica Compromise

24 Agreement.

### ii.   Difficulties in Collection

26 If Trustee were to pursue the Comerica Carve-Out Obligation, there may not be any

27 difficulty in "collection" other than that which would be necessary to administer the Property in the

28 ordinary course. However, litigation against Comerica would result in substantial additional

1  administrative expense to the Estate. Plus, Comerica's liens are out of the money as to the Property
2  and there is no guarantee that pursuing enforcement of the Carve-Out will benefit creditors.

3  ### iii.    Complexity

4  The legal issues involved in enforcing the Comerica Carve-Out Obligation or seeking a sale
5  free and clear of the Comerica Liens are not overly complex. However, to the extent that litigation
6  would be necessary, litigation expenses will continue to accrue. The settlement will therefore further
7  judicial economy. The Comerica Compromise Agreement will ease the burden on the Court as well
8  as on the parties to the agreement who would otherwise need to expend significant time and expense
9  litigating the various issues resolved under the compromise. As such, this factor weighs in favor of
10 the compromise.

11 ### iv.    Expense, inconvenience, or delay

12 Litigation regarding the Comerica Carve-Out Obligation and the proposed sale free and clear
13 would cost the Estate tens of thousands of dollars with no guarantee of success. Under the BofA
14 Subordination Agreement, $300,000 will be paid to the Estate as well as all Costs of Sale, which is
15 $50,000 more that the Estate was to receive under its original agreements with BofA and Comerica.
16 This factor weighs heavily in favor of approval of the Comerica Compromise Agreement, which will
17 allow the Trustee to focus on finalizing and closing this bankruptcy case.

18 ## 6.    Conclusion

19 Based on the foregoing, Trustee respectfully requests that the Court enter an order that
20 provides that:

21 1.    The Motion is granted;

22 2.    The proposed overbid procedures are approved;

23 3.    Trustee is authorized to sell the Property outside the ordinary course of business and
24 is further authorized to pay, pursuant to demands submitted to escrow, all liens and encumbrances;

25 4.    Trustee is authorized to sign all documents necessary to consummate the sale and
26 close escrow, including, but not limited to, purchase and sale agreement, grant deed and escrow
27 instructions;

28

1    5.    The sale is free and clear of all liens, claims, and interests pursuant to 11 U.S.C.

2  § 363(f);

3    6.    Trustee and/or escrow is authorized to pay all real property taxes apportioned based

4  on the date of closing;

5    7.    Trustee and/or escrow is authorized to pay BofA pursuant to a demand submitted to

6  escrow and subject to the terms set forth in the BofA Subordination Agreement;

7    8.    To pay all costs of sale, including 6% commissions, from the funds otherwise payable

8  to BofA on account of its second-in-priority deed of trust pursuant to the BofA Subordination

9  Agreement; and

10    9.    Buyers are good faith purchasers entitled to the protections set forth in

11  Section 363(m);

12    10.    The 14-day stay regarding the effectiveness of the order shall be waived;

13    11.    The BofA Subordination Agreement is approved in its entirety;

14    12.    The Comerica Compromise Agreement is approved in its entirety;

15    13.    The Trustee is authorized to take steps necessary to enter into and consummate the

16  BofA Subordination Agreement and the Comerica Compromise Agreement; and

17    14.    Such other further relief as the Court may deem just and proper.

18

19  DATED: July 20, 2021                MARSHACK HAYS LLP

20

21                By: */s/ Chad V. Haes*
                      D. EDWARD HAYS
22                    CHAD V. HAES
                      Attorneys for Chapter 7 Trustee,
23                    DAVID M. GOODRICH

24

25

26

27

28

# Declaration of David M. Goodrich

I, DAVID M. GOODRICH, say and declare as follows:

1.      I am the duly appointed, qualified, and acting Chapter 7 Trustee ("Trustee") for the bankruptcy estate ("Estate") of Benjamin W. Gonzales ("Debtor").

2.      Unless otherwise stated, the facts set forth in this declaration are personally known to me and if called as a witness, I could and would competently testify thereto.

3.      I make this declaration in support the motion for order: (a) approving subordination agreement between the Trustee and Bank of America ("BofA Subordination Agreement"); (b) approving compromise between Trustee and Comerica Bank ("Comerica Compromise Agreement"); and (c) authorizing sale of real property outside the ordinary course of business, free and clear of liens, claims and encumbrances, subject to overbid, and for good faith determination of good faith purchaser under 11 U.S.C. § 363(m) ("Motion").

4.      A true and correct copy of the BofA Subordination Agreement is attached hereto as Exhibit "1."

5.      A true and correct copy of the Comerica Compromise Agreement is attached hereto as Exhibit "2."

## Bankruptcy Filing, Schedules, and Statements

6.      On November 8, 2017, Debtor filed a voluntary petition under Chapter 7 of Title 11 the United States Code. On the same day, I was appointed as the Chapter 7 trustee of the Estate.

7.      In his Schedule A/B, Debtor lists a community property interest in the real property commonly known as 14930 Mar Vista St. Whittier, California 90605 ("Property").

8.      Debtor does not claim, and Debtor's counsel has agreed that Debtor will not claim, any exemption in the Property.

9.      Debtor's Schedule D reflects that the Property is encumbered by several secured claims. True and correct copies of Debtor's Schedules A/B and D are attached hereto as Exhibit "3."

MOTION FOR ORDER APPROVING: (1) SUBORDINATION AGREEMENT; (2) COMPROMISE; AND (3) SALE
4832-0355-6848,v.1

10.     On December 21, 2018, as Dk. No. 116, the Court entered an order granting the employment of BK Global Real Estate Services and listing agent, Rogelio Sanchez of Keller Williams Downey Realty ("Agent") to facilitate a sale of the Property and carve-outs from BofA.

### The Property

11.     My counsel and I have conducted a search of all known liens, claims, and interests in the Property. Pursuant to the Preliminary Title Report ("PTR"), title to the Property is held by Benjamin William Gonzalez and Gretel Arend Gonzales, Trustees of the Gonzales Family Trust of 1999 U/T/A Dated July 26, 1999 ("Trust"). A true and correct copy of the PTR is attached hereto as Exhibit "4."

12.     The PTR reflects that the Property is encumbered by the following secured claims (collectively, the "Liens"):

- A first-in-priority deed of trust in favor of BofA (doc #13-162626) ("First DoT");

- A second-in-priority deed of trust in favor of BofA (doc #13-1640892) ("Second DoT");

- A FLARPL in favor of Frank O. Fox ("Fox") (doc #15-779609) (signed only by Debtor's ex-spouse) to secure an original indebtedness of $150,000; and

- A FLARPL in favor of Fox (doc #16-940681) (signed only by Debtor's ex-spouse) to secure an original indebtedness of $250,000 (together with the above-described FLARPL, the "Fox Liens").

13.     An abstract of judgment (doc #2019-0095204) was recorded by Comerica to secure the amount of its claim ("Comerica Abstract"). After relief from stay, Comerica obtained entry of judgment liquidating its claim in the amount of $1,120,658.30. Although the PTR does not reflect recordation of the Comerica Abstract, I have received a recorded copy from Comerica, which contends that the Comerica Abstract and its resulting judgment lien will relate back to the date of the attachment lien pursuant to CCP § 488.510. A true and correct copy of the Comerica Abstract is attached hereto as Exhibit "5."

MOTION FOR ORDER APPROVING: (1) SUBORDINATION AGREEMENT; (2) COMPROMISE; AND (3) SALE
4832-0355-6848,v.1

14.     On September 4, 2018, I entered in to an agreement with Gretel Gonzales ("Ms. Gonzales") whereby Ms. Gonzales agreed to subordinate her priority domestic support obligation to allowed administrative expenses of the Estate pursuant to 11 U.S.C. §507(a)(1)(C) in exchange for the release of certain claims of the Estate ("DSO Agreement").

15.     On November 16, 2018 as Dk. No. 102, the Court entered an order granting the DSO Agreement.

### Comerica's Prepetition Lawsuit

16.     On September 28, 2018, Comerica obtained a judgment against Debtor, Ms. Gonzales and The Gonzales Family Trust of July 26, 1999 ("Trust") in the principal amount of $1,120,658.30 ("Comerica Claim") (*see* Exhibit 5).

17.     I am informed and believe that Comerica contends that it abstract and the resulting judgment lien would relate back to date of the attachment. The lien arising from the attachment and any subsequent judgment lien are collectively referred to as the "Comerica Liens."

### Carve-Out Agreement with Comerica, Debtor, and Ms. Gonzales

18.     On or around January 8, 2019, I entered into a carve-out agreement and release ("Comerica Carve-Out Agreement") with Comerica. A true and correct copy of the Comerica Carve-Out Agreement is attached hereto as Exhibit "6."

19.     On January 18, 2019 as Dk. No. 123, I caused to be filed a motion for approval of compromise with Comerica pursuant to FRBP 9019 ("Compromise Motion").

20.     On March 1, 2019 as Dk. No. 138, the Court entered an order granting the Compromise Motion and approving the Comerica Carve-Out Agreement.

### Fox Lien Litigation

21.     On March 22, 2019, Comerica filed an adversary complaint against The Law Firm of Fox and Fox ("Fox Firm"), commencing adversary case no. 2:17-bk-23812-BR.

22.     On May 14, 2020, the Court entered summary judgment in favor of Comerica and against the Fox Firm.

/ / /

/ / /

MOTION FOR ORDER APPROVING: (1) SUBORDINATION AGREEMENT; (2) COMPROMISE; AND (3) SALE
4832-0355-6848,v.1

## Ms. Gonzales Lien Litigation

23.     On June 25, 2019, I entered into a stipulation with Ms. Gonzales re: withdrawal of abstract of judgment and release of lien ("Withdrawal Stipulation") addressing the disposition of a prepetition abstract of judgment recorded by Fox on behalf of Ms. Gonzales ("Abstract"). The Withdrawal Stipulation provides "Gretel's liens, claims, and interests, if any, against the Carnell Property shall attach to the proceeds from the sale of the Carnell Property" and authorizes me to record the release of Abstract ("Release").

24.     On July 2, 2019, the Court entered an order approving the Withdrawal Stipulation.

25.     On July 5, 2019, my counsel recorded the Release on my behalf. A true and correct copy of the Release is attached hereto as Exhibit "7."

On or around October 31, 2019, Ms. Gonzales and Fox entered into a settlement, release, and indemnification agreement ("Fox/Gonzales Agreement"). A true and correct copy of the Fox/Gonzales Agreement is attached hereto as Exhibit "8."

26.     On March 17, 2020, Comerica filed an adversary complaint against the Fox Firm and Ms. Gonzales, commencing adversary case no. 2:20-bk-01065-BR ("Second Fox Adversary"). The Second Fox Adversary remains pending and is set for trial in August 2021.

## Offer to Purchase Property and Sale Terms

27.     On May 5, 2021, I received an offer to purchase the Property from Raul Ruiz and Blanca Ruiz ("Buyers") for $1,522,222. A true and correct copy of the proposed sale agreement and addendums (collectively, "PSA") is attached hereto as Exhibit "9."

28.     The Buyers have provided proof of funds and have submitted an initial deposit of $76,112, which escrow is holding in trust pending court approval and closing of the sale. The deposit shall be refundable only if certain conditions to the sale are not satisfied.

29.     The Motion also seeks an order determining that the Buyers are good faith purchasers entitled to the protections of Section 363(m). To the best of my knowledge, I do not have any connection or relationship with the Buyers.

30.     I believe the sale will generate $300,000 of net proceeds for the Estate pursuant to a subordination agreement described in more detail below.

MOTION FOR ORDER APPROVING: (1) SUBORDINATION AGREEMENT; (2) COMPROMISE; AND (3) SALE
4832-0355-6848,v.1

31.     To my knowledge, Buyers do not have any connection or relationship with the Debtor or me.

32.     My accountant, Sam Leslie, of LEA Accountancy, LLP has provided tax advice and conducted analysis regarding potential tax implications of the sale of the Property. Unfortunately, the Estate's exact tax liability cannot yet be determined, but I am also informed that such liability (if any) will be minimal, and will not preclude or have any material impact on the sale or the net proceeds to the Estate. In sum, I believe that the Estate will have sufficient funds to pay any such taxes.

33.     I believe that it is in the best interest of the Estate to proceed with the sale to the Buyers subject to overbid, for the sum of $1,522,222.

## The BofA Subordination Agreement

34.     In November 2018, to facilitate the sale of the Property, BofA agreed to a $100,000 carve-out in favor of the Estate ("First BofA Agreement"). Pursuant to the First BofA Agreement, BofA also agreed to pay 6% brokerage commissions and all standard costs of sale including title and escrow fees related to the sale of the Property ("Costs of Sale").

35.     On December 21, 2018, the Court entered an order approving the First BofA Agreement.

36.     Between the time that I initially sought to sell the Property to the present, substantial additional administrative fees have been incurred through no fault of mine or my professionals. These fees relate to the various litigation and disputes referenced above and to issues related to significant repairs needed to the Property.

37.     To address these additional administrative expenses, I have negotiated a new agreement with BofA which amends and supersedes the First BofA Agreement. Specifically, BofA's Claim secured by the Second DoT will be subordinated in the amount of $300,000 plus all Costs of Sale and treated as a general unsecured claim. The lien securing the subordinated amount will be transferred to the Estate pursuant to 11 U.S.C. § 510(c)(2).

38.     This Motion seeks approval of the settlement and subordination agreement with BofA ("BofA Subordination Agreement"), which is attached hereto as Exhibit "1."

31

## The Comerica Settlement Agreement

39.     Upon learning of the BofA Subordination Agreement described above, Comerica requested that the Estate relieve Comerica of its obligation to pay the $150,000 to the Estate ("Comerica Carve-Out Obligation") for the following reasons: (1) Comerica has incurred much higher than expected fees in prosecuting the two adversary cases that it was required to prosecute under the agreement with the Estate; (2) such substantial fees may be recoverable as an administrative claim against the Estate; (3) Comerica believed that BofA would substantially reduce the debt associated with the Second DoT, thus resulting in a payout to Comerica from the sale of the Property, rather than subordinate the debt for the exclusive benefit of the Estate; (4) given the amount owed to BofA and the value of the Property, Comerica's liens are out of the money and there would be no funds from which to pay a carve-out; (5) the Estate may not be able to sell the Property free and clear of Comerica's liens without its consent; and (6) it would be inequitable for the Estate to receive an additional $200,000 from BofA while Comerica continues to prosecute adversary cases that will not result in Comerica's liens being paid from the sale of the Property.

40.     Comerica has threatened to oppose any motion for approval of the PSA should the Estate continue to pursue the Comerica Carve-Out Obligation.

41.     To resolve the various disputes with Comerica regarding the sale, on July 14, 2021, I entered into a settlement agreement with Comerica ("Comerica Compromise Agreement").

42.     This Motion seeks approval of the settlement agreement with Comerica ("Comerica Compromise Agreement"), which is attached hereto as Exhibit "2."

43.     I seek to eliminate the need for costly and protracted administration of the bankruptcy case and believe the best interests of the Estate are served by the BofA Subordination Agreement and the Comerica Carve-Out Agreements (collectively, the "Agreements"). The cost of litigation associated with pursuing the Comerica Carve-Out could be substantial, would unnecessarily dilute any recovery obtained for the benefit of the Estate, and would place the sale of the Property at risk. Moreover, there is no certainty that the result from such efforts would be better than the Agreements.

44.     In evaluating the Agreements, I have taken into account the probability of success of litigation, the complexity of the litigation involved and the expenses, inconvenience, and delay

MOTION FOR ORDER APPROVING: (1) SUBORDINATION AGREEMENT; (2) COMPROMISE; AND (3) SALE
4832-0355-6848,v.1

1  necessarily resulting from such litigation, as well as the interests of creditors of the Estate. I have

2  determined that the fees and costs associated with further litigation would be extensive and could

3  outweigh any additional benefit that the Estate might achieve.

4         45.     I have evaluated the Agreements and, in my business judgment and experience as a

5  Trustee, I believe that the Agreements are fair and equitable and in the best interests of the Estate.

6         46.     The subordination and releases set forth in the Agreements are a sound business

7  decision because it will avoid litigation and the possibility that the Estate does not recover any funds

8  from the sale of the Property.

9         I declare under penalty of perjury under the laws of the United States of America and of the

10  State of California that the foregoing is true and correct, and that this declaration is executed on July

11  16, 2019, at Costa Mesa, California.

                                                    DAVID M. GOODRICH

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

34

MOTION FOR ORDER APPROVING: (1) SUBORDINATION AGREEMENT; (2) COMPROMISE; AND (3) SALE

4846-7990-2872, v. 1

## Declaration of Rogelio Sanchez

I, ROGELIO SANCHEZ, declare and state as follows:

1.      I am an individual over 18 years of age and competent to make this Declaration.

2.      If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.      The facts set forth below are true of my personal knowledge.

4.      I am a licensed real estate agent, license no. 01817403, and employed with Keller Williams Realty, telephone (323) 329-0483.

5.      I make this declaration in support the Chapter 7 trustee's ("Trustee") motion for order: (a) approving subordination agreement between the Trustee and Bank of America; (b) approving compromise between Trustee and Comerica Bank; and (c) authorizing sale of real property outside the ordinary course of business, free and clear of liens, claims and encumbrances, subject to overbid, and for good faith determination of good faith purchaser under 11 U.S.C. § 363(m).

6.      I have been retained to assist with selling the real property commonly known as 14930 Mar Vista St. Whittier, California 90605 ("Property").

7.      The Property has been listed on the CRMLS Matrix since February 9, 2021.

8.      I have received approximately 55 calls from interested parties, and the Property has been shown approximately 17 times.

9.      We received an offer from Raul Ruiz and Blanca Ruiz, which was accepted.

10.     We continue to actively market the Property and seek overbids.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed on July 16, 2021, at Perris, California.



DocuSigned by:

ROGELIO SANCHEZ

# Exhibit 1

<u>SETTLEMENT AND SUBORDINATION AGREEMENT</u>

THIS SETTLEMENT AND SUBORDINATION AGREEMENT ("Agreement") is entered into by and between David M. Goodrich, solely in his capacity as Chapter 7 trustee ("Trustee") for the bankruptcy estate of Benjamin W. Gonzales ("Debtor"), and secured creditor, Bank of America, N.A. ("BofA"). Trustee and BofA are collectively referred to as the "Parties."

## I.    RECITALS

A.    On November 8, 2017, Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code in the Central District of California, commencing Bankruptcy Case No. 2:17-bk-23812-BR.

B.    In his Schedule A/B, Debtor listed an ownership interest in the real property commonly known as 14930 Mar Vista St. Whittier, California 90605 ("Property"), with a scheduled value of $1,900,000. The Property is legally described as follows:

Real property in the City of Whittier, County of Los Angeles, State of California, described as follows:

THE NORTHWESTERLY 135 FEET OF LOT 13 OF TRACT 11571, IN THE CITY OF WHITTIER, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 243 PAGES 27 TO 29 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM THE SOUTHWESTERLY 185 FEET MEASURED ALONG THE NORTHWESTERLY LINE OF SAID LOT.

APN: 8149-030-005 and 8149-030-006

C.    On January 25, 2013, Debtor and his former spouse, Gretel Gonzales ("Ms. Gonzales"), signed a deed of trust ("First DoT") creating a lien against the Property in the amount of $550,750 in favor of BofA. On January 31, 2013, BofA recorded the First DoT at the Los Angeles County Recorder's Office as Instrument No. 13-162626.

D.    On November 5, 2013, Debtor and Ms. Gonzales signed a second deed of trust ("Second DoT") creating a lien against the Property in the amount of $719,500 in favor of BofA. On November 19, 2013, BofA recorded the Second DoT at the Los Angeles County Recorder's Office as Instrument No. 13-1640892.

E.    In November 2018, to facilitate Trustee's sale of the Property, BofA agreed to a $100,000 carve-out in favor of the Estate ("First Agreement"). Pursuant to the First Agreement, BofA also agreed to pay 6% brokerage commissions and all standard costs of sale including title and escrow fees related to the sale of the Property ("Costs of Sale"). On December 21, 2018, the Court entered an order approving the First Agreement.

F.    Currently, the amount owed to BofA that is secured by the First DoT and Second DoT is approximately $1.54 million ("BofA Claim").

G.    For various reasons, the Property has not yet been sold.

H.    Trustee now seeks to sell the Property for $1.5 million. Between the time that the Trustee initially sought to sell the Property to the present, substantial additional administrative fees have been incurred through no fault of the Trustee. To address these additional administrative expenses, Trustee has negotiated a new agreement with BofA which amends and supersedes the First Agreement. Specifically, BofA's Claim secured by the Second DoT will be subordinated in the amount of $300,000 plus all Costs of Sale and treated as a general unsecured claim. The lien securing the subordinated amount will be transferred to the Estate pursuant to 11 U.S.C. § 510(c)(2).

## II.    AGREEMENT

In consideration of the Recitals above and the mutual promises contained in this Agreement, and for other good and valuable consideration, the receipt and adequacy of which are acknowledged, the Parties agree, covenant, and represent as follows subject to approval by the Bankruptcy Court in Debtor's case:

1.    Incorporation of Recitals: The Parties incorporate the Recitals above as though fully set forth here, and the Recitals are made part of this Agreement.

2.    Consent to Sale. BofA consents to the sale of the Property by the Trustee free and clear of its liens, claims, and interests under 11 U.S.C. § 363(f). BofA further acknowledges that all taxes arising out of or related to the sale of the Property including *ad valorem* property taxes and documentary transfer taxes, but not any federal or state income tax owed by Debtor or Debtor's bankruptcy estate, has priority over the First DoT and the Second DoT.

3.    Subordination of Claim. BofA's Claim secured by the Second DoT will be subordinated in the amount of $300,000 plus all Costs of Sale and treated as a general unsecured claim under 11 U.S.C. § 510(c)(1). The lien securing the subordinated amount will be transferred to the Estate pursuant to 11 U.S.C. § 510(c)(2). Except for the lien securing the subordinated amount which will be paid to the Estate ("Estate Proceeds"), BofA shall retain its liens which shall attach to the proceeds of sale with the same validity, priority, and extent and shall be paid by escrow directly to BofA upon closing. All funds received by BofA upon closing will reduce its general unsecured claim which shall be deemed allowed.

4.    Net Payment to the Estate. After applicable property taxes, the First Deed, and Costs of Sale are paid from escrow, the Estate shall receive a total net payment of $300,000 (previously defined as the "Estate Proceeds") from escrow regardless of whether sufficient funds exist to pay the remaining balance due and owing to BofA on account of the Second Deed.

5.    Settlement Statement Approval. BofA will have final approval of the settlement statement prior to closing for the specific purpose of ensuring that the terms of this Agreement, and the disbursements contemplated herein (e.g. that the subordinated amount is indeed what BofA agreed to and that the closing costs are not altered to add unapproved fees), are strictly adhered to. Upon receipt of the final closing statement, BofA shall have five business days to

Exhibit "1"
Page 37

issue a written response either: (a) approving the closing statement; or (b) disputing the closing statement with a list of detailed and specific proposed corrections. Absent a written response by BofA within five business days, BofA shall be deemed to have consented to the closing statement. Approval by BofA shall not be unreasonably withheld.

6.    Allowance of the BofA Claim. The BofA Claim shall be deemed allowed and the First DoT and Second DoT deemed valid. The Trustee waives and releases all claims of the Estate, creditors, and other parties to object to the BofA Claim and its Liens.

7.    Effect on First Agreement. This Agreement supersedes and replaces in its entirety the First Agreement, which shall be void and of no force and effect after Court approval of this Agreement. If this Agreement is not approved by the Court, fails to become effective for any reason, or is otherwise not fully consummated, the First Agreement shall remain valid and enforceable.

8.    Trustee's Capacity. The Trustee is signing this Agreement in his capacity solely as Chapter 7 trustee of the bankruptcy estate of Debtor. Nothing contained in this Agreement shall in any way impute liability to the Trustee, personally or as a member of any professional organization or anyone acting on his behalf.

9.    Admissions. If this Agreement fails to become effective for any reason or is otherwise not fully consummated, nothing in this Agreement shall bind the Parties or constitute an admission by the Parties.

10.    Authority. The signatories to this Agreement acknowledge that they have the authority and have obtained the requisite approval to enter this Agreement and to act on behalf of and bind any entity on whose behalf they are signing.

11.    Representation by Counsel. The Parties further represent that they have been represented by legal counsel or have had the opportunity to seek advice of legal counsel during the course of the negotiations leading to the signing of this Agreement and that they have been advised by legal counsel with respect to the meaning of this Agreement and its legal effect.

12.    No Partnership or Joint Venture: Nothing in this Agreement is intended to be construed as or to create a partnership or joint venture between the parties.

13.    Brokerage Commissions and Expenses of Sale: The Parties acknowledge that brokerage commissions and costs of sale are administrative expenses subject to allowance by the court and to be paid before distributions are made to unsecured creditors. However, BofA has agreed to pay all brokerage commissions and costs of sale related to the sale of the Mar Vista Property.

14.    Integration. This Agreement constitutes an integrated written contract expressing the entire agreement of the Parties. Other than this Agreement there is no other agreement, written or oral, express or implied, between the Parties with respect to this subject matter.

15.    Modification or Amendment. This Agreement cannot be orally modified or amended. This Agreement may be modified or amended only by a written agreement signed by all Parties.

16.    Counterparts. This Agreement may be executed in counter-parts, including facsimile and email signatures, with the same effect as if all original signatures were placed on one document and all of which together shall be one and the same agreement.

Page 3 of 4

17.    Binding Agreement. This Agreement is and shall be binding upon and shall inure to the benefit of the heirs, assigns, principals, and successors of all of the Parties.

18.    Interpretive Law. This Agreement is made and entered into in the State of California and shall, in all respects be interpreted, enforced, and governed by and under the laws of the State of California and the United States Bankruptcy Code as applied in the Ninth Circuit.

19.    Ambiguities. This Agreement has been reviewed by the Parties and their respective counsel. Further, the Parties have had full opportunity to negotiate the terms and conditions of this Agreement. Accordingly, the Parties expressly waive any common-law or statutory rule of construction that ambiguities should be construed against the drafter, and agree, covenant, and represent that the language in all parts of this Agreement shall be in all cases construed as a whole, according to its fair meaning.

20.    Miscellaneous Provisions.

a    The Parties represent that they have read this Agreement and fully understand all of its terms; that they have conferred with or had the opportunity to confer with their attorneys about this Agreement; that they have executed this Agreement without coercion or duress of any kind; and that they understand any rights that they have or may have and sign this Agreement with full knowledge of any such rights.

b.    The Parties acknowledge that, other than as expressly set forth in this Agreement, no representations, statements or promises made by the other Party, or by their respective agents or attorneys, have been relied on in entering into this Agreement.

c.    Each Party understands that the facts with respect to which this Agreement is entered into may be materially different from those the Parties now believe to be true. Each Party accepts and assumes this risk and agrees that this Agreement and the release in it shall remain in full force and effect and legally binding, notwithstanding the discovery or existence of any additional or different facts, or any claims with respect to those facts.

The undersigned have read the foregoing and accept and agree to the provisions contained herein, and hereby execute it, knowingly, voluntarily, and with full understanding of its consequences.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the dates indicated below.

Dated: July 20, 2021    _____

DAVID M. GOODRICH, Chapter 7 Trustee for the Bankruptcy Estate of Benjamin Gonzales

Dated: July 16, 2021

Authorized Representative for Bank of America, _____, its. Senior Vice President

Page 4 of 4

# Exhibit 2

## <u>SETTLEMENT AGREEMENT AND RELEASE</u>

THIS SETTLEMENT AGREEMENT AND RELEASE ("Agreement") is entered into by and between David M. Goodrich, solely in his capacity as Chapter 7 trustee ("Trustee") for the bankruptcy estate of Benjamin W. Gonzales ("Debtor"), and secured creditor, Comerica Bank ("Comerica"). Trustee and Comerica are collectively referred to as the "Parties."

## I.    <u>RECITALS</u>

A.    On November 8, 2017, Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code in the Central District of California, commencing Bankruptcy Case No. 2:17-bk-23812-BR.

B.    In his Schedule A/B, Debtor listed an ownership interest in the real property commonly known as 14930 Mar Vista St. Whittier, California 90605 ("Property"), with a scheduled value of $1,900,000. The Property is legally described as follows:

> Real property in the City of Whittier, County of Los Angeles, State of California, described as follows:
>
> THE NORTHWESTERLY 135 FEET OF LOT 13 OF TRACT 11571, IN THE CITY OF WHITTIER, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 243 PAGES 27 TO 29 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.
>
> EXCEPT THEREFROM THE SOUTHWESTERLY 185 FEET MEASURED ALONG THE NORTHWESTERLY LINE OF SAID LOT.
>
> APN: 8149-030-005 and 8149-030-006

C.    On January 25, 2013, Debtor and his former spouse, Gretel Gonzales ("Ms. Gonzales"), signed a deed of trust ("First DoT") creating a lien against the Property in the amount of $550,750 in favor of Bank of America, N.A. ("BofA"). On January 31, 2013, BofA recorded the First DoT at the Los Angeles County Recorder's Office as Instrument No. 13-162626.

D.    On November 5, 2013, Debtor and Ms. Gonzales signed a second deed of trust ("Second DoT") creating a lien against the Property in the amount of $719,500 in favor of BofA. On November 19, 2013, BofA recorded the Second DoT at the Los Angeles County Recorder's Office as Instrument No. 13-1640892.

E.    On November 14, 2016, Comerica filed a complaint against Debtor, Ms. Gonzales, The Gonzales Family Trust of July 26, 1999 ("Trust"), and Debtor's affiliated business entities, commencing State Court case entitled *Comerica Bank v. C-Pak Sea Foods et al.*, Case No. BC640599.

F.    On April 11, 2017, the State Court issued a prejudgment writ of attachment ("Writ") in favor of Comerica and against all defendants.

Page 1 of 4

Exhibit "2"
Page 40

G.      On September 28, 2018, Comerica obtained a judgment against Debtor, Ms. Gonzales, and the Trust in the principal amount of $1,120,658.30 ("Comerica Claim"). Any abstract securing the amount of the Comerica Claim would relate back to date of the Writ. The liens created by recordation of the Writ and any such abstract are collectively referred to as the "Comerica Liens." Comerica contends that the Comerica Liens extend to the Property and to proceeds from the sale of the real property located at 14663 Carnell Street, Whittier, California 90603 ("Carnell Property").

H.      In November 2018, to facilitate Trustee's sale of the Property, BofA agreed to a $100,000 carve-out in favor of the Estate ("First BofA Agreement"). Pursuant to the First BofA Agreement, BofA also agreed to pay 6% brokerage commissions and all standard costs of sale including title and escrow fees related to the sale of the Property ("Costs of Sale"). On December 21, 2018, the Court entered an order approving the First BofA Agreement.

I.      On January 8, 2019, also to facilitate Trustee's sale of the Property, Comerica agreed, *inter alia*, to pay a $150,000 carve-out in favor of the Estate with respect to the Comerica Liens ("Comerica Agreement"). On March 1, 2019, the Court entered an order approving the Comerica Agreement.

J.      Pursuant to the First BofA Agreement and the Comerica Agreement, the Estate is entitled to receive carve-outs totaling $250,000.

K.      Pursuant to the Comerica Agreement, Comerica's counsel has spent considerable time and effort prosecuting two adversary cases seeking to invalidate alleged liens against the Property. The successful prosecution of the adversary cases would facilitate Comerica's performance under the Comerica Agreement, including the delivery of $150,000 in unencumbered funds to the Estate as set forth in the Comerica Agreement ("Comerica Carve-Out Obligation").

L.      Trustee has entered into a purchase and sale agreement to sell the Property for $1.5 million ("Sale Agreement"). Currently, the amount owed to BofA that is secured by the First DoT and Second DoT is approximately $1.54 million ("BofA Claim").

M.      Between the time that Trustee initially sought to sell the Property to the present, substantial additional administrative fees have been incurred through no fault of the Trustee. To address these additional administrative expenses, Trustee negotiated a new agreement with BofA ("Second BofA Agreement"), which amends and supersedes the First BofA Agreement. Specifically, BofA's Claim secured by the Second DoT will be subordinated in the amount of $300,000 plus all Costs of Sale and treated as a general unsecured claim. The lien securing the subordinated portion of BofA's claim will be transferred to the Estate pursuant to 11 U.S.C. § 510(c)(2).

N.      Comerica requested that the Parties enter into an agreement relieving Comerica of the Comerica Carve-Out Obligation for the following reasons: (1) Comerica has incurred much higher than expected attorney fees in prosecuting the two adversary cases; (2) such fees may be recoverable as an administrative claim against the Estate; (3) Comerica believed that BofA would substantially reduce the debt associated with the Second DoT, thus resulting in a payout to Comerica from the sale of the Property, rather than subordinate the debt for the exclusive benefit of

Exhibit "2"
Page 41

the Estate; (4) given the amount owed to BofA and the value of the Property, Comerica's liens against the Property are out of the money and there would be no funds from which to pay a carve-out; (5) the Estate may not be able to sell the Property free and clear of Comerica's liens without its consent; and (6) it would be inequitable for the Estate to receive an additional $200,000 while Comerica continues to prosecute adversary cases that will not result in Comerica being paid from the sale of the Property.

O.    Comerica has threatened to oppose any motion for approval of the Sale Agreement should the Trustee continue to pursue the Comerica Carve-Out Obligation.

## II.    <u>AGREEMENT</u>

In consideration of the Recitals above and the mutual promises contained in this Agreement, and for other good and valuable consideration, the receipt and adequacy of which are acknowledged, the Parties agree, covenant, and represent as follows subject to approval by the Bankruptcy Court in Debtor's case:

1.    <u>Incorporation of Recitals</u>: The Parties incorporate the Recitals above as though fully set forth here, and the Recitals are made part of this Agreement.

2.    <u>Consent to Sale.</u> Comerica consents to the sale of the Property by the Trustee pursuant to the Sale Agreement free and clear of all its liens, claims, and interests under 11 U.S.C. § 363(f).

3.    <u>Waiver and Release of Administrative Claim</u>. Comerica waives and releases any and all potential administrative expense claims against the Estate, including under 11 U.S.C. §§ 105 and 503(b).

4.    <u>Waiver and Release of Comerica Carve-Out Obligation</u>. Trustee, on behalf of the Estate, waives and releases the Estate's rights in the Comerica Carve-Out Obligation, and Comerica shall be released of any liability arising from the Comerica Carve-Out Obligation. For the avoidance of doubt, this waiver and release extends to the Comerica Liens on the Property, the Carnell Property, and any proceeds from the sale of the Property and/or the Carnell Property. The waivers and releases contained herein shall not be deemed a breach of the Comerica Agreement, which shall otherwise remain in full force and effect.

5.    <u>Effect on Comerica Agreement</u>. If this Agreement is approved by the Court, all rights and obligations under the Comerica Agreement as modified by this Agreement remains in full force and effect. If this Agreement is not approved by the Court, fails to become effective for any reason, or is otherwise not fully consummated, the Comerica Agreement shall remain valid and enforceable.

6.    <u>Trustee's Capacity</u>. Trustee is signing this Agreement in his capacity solely as Chapter 7 trustee of the bankruptcy estate of Debtor. Nothing contained in this Agreement shall in any way impute liability to the Trustee, personally or as a member of any professional organization or anyone acting on his behalf.

7.    <u>Admissions</u>. If this Agreement fails to become effective for any reason or is otherwise not fully consummated, nothing in this Agreement shall bind the Parties or constitute an admission by the Parties.

Page 3 of 5

8.    Authority. The signatories to this Agreement acknowledge that they have the authority and have obtained the requisite approval to enter this Agreement and to act on behalf of and bind any entity on whose behalf they are signing.

9.    Representation by Counsel. The Parties further represent that they have been represented by legal counsel or have had the opportunity to seek advice of legal counsel during the course of the negotiations leading to the signing of this Agreement and that they have been advised by legal counsel with respect to the meaning of this Agreement and its legal effect.

10.    No Partnership or Joint Venture: Nothing in this Agreement is intended to be construed as or to create a partnership or joint venture between the parties.

11.    Integration. This Agreement constitutes an integrated written contract expressing the entire agreement of the Parties. Other than this Agreement and the Comerica Agreement, as modified by this Agreement, there are no other agreements, written or oral, express or implied, between the Parties with respect to this subject matter.

12.    Modification or Amendment. This Agreement cannot be orally modified or amended. This Agreement may be modified or amended only by a written agreement signed by all Parties.

13.    Counterparts. This Agreement may be executed in counter-parts, including facsimile and email signatures, with the same effect as if all original signatures were placed on one document and all of which together shall be one and the same agreement.

14.    Binding Agreement. This Agreement is and shall be binding upon and shall inure to the benefit of the heirs, assigns, principals, and successors of all of the Parties.

15.    Interpretive Law. This Agreement is made and entered into in the State of California and shall, in all respects be interpreted, enforced, and governed by and under the laws of the State of California and the United States Bankruptcy Code as applied in the Ninth Circuit.

16.    Ambiguities. This Agreement has been reviewed by the Parties and their respective counsel. Further, the Parties have had full opportunity to negotiate the terms and conditions of this Agreement. Accordingly, the Parties expressly waive any common-law or statutory rule of construction that ambiguities should be construed against the drafter, and agree, covenant, and represent that the language in all parts of this Agreement shall be in all cases construed as a whole, according to its fair meaning.

17.    Miscellaneous Provisions.

a    The Parties represent that they have read this Agreement and fully understand all of its terms; that they have conferred with or had the opportunity to confer with their attorneys about this Agreement; that they have executed this Agreement without coercion or duress of any kind; and that they understand any rights that they have or may have and sign this Agreement with full knowledge of any such rights.

b.    The Parties acknowledge that, other than as expressly set forth in this Agreement, no representations, statements or promises made by the other Party, or by their respective agents or attorneys, have been relied on in entering into this Agreement.

c.    Each Party understands that the facts with respect to which this

Page 4 of 5

Agreement is entered into may be materially different from those the Parties now believe to be true. Each Party accepts and assumes this risk and agrees that this Agreement and the release in it shall remain in full force and effect and legally binding, notwithstanding the discovery or existence of any additional or different facts, or any claims with respect to those facts.

The undersigned have read the foregoing and accept and agree to the provisions contained herein, and hereby execute it, knowingly, voluntarily, and with full understanding of its consequences.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the dates indicated below.

DATED: July __, 2021

By:        DAVID M. GOODRICH, Chapter 7
           Trustee for the Bankruptcy Estate of Benjamin
           Gonzales

DATED: July _14_, 2021

By:        BARRY COHEN, as Senior Vice
           President Of COMERICA BANK

Page 5 of 5

Agreement is entered into may be materially different from those the Parties now believe to be true. Each Party accepts and assumes this risk and agrees that this Agreement and the release in it shall remain in full force and effect and legally binding, notwithstanding the discovery or existence of any additional or different facts, or any claims with respect to those facts.

      The undersigned have read the foregoing and accept and agree to the provisions contained herein, and hereby execute it, knowingly, voluntarily, and with full understanding of its consequences.

      IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the dates indicated below.

DATED: July 14, 2021

      By:     DAVID M. GOODRICH, Chapter 7 Trustee for the Bankruptcy Estate of Benjamin Gonzales

DATED: July 14, 2021

      By:     BARRY COHEN, as Senior Vice President Of COMERICA BANK

# Exhibit 3

Case 2:17-bk-23812-BR    Doc 29    Filed 01/22/18    Entered 01/22/18 13:59:23    Desc
Main Document        Page 2 of 26

**Fill in this information to identify your case and this filing:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Benjamin W Gonzales** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | **2:17-bk-23812-BR** | | |

■ Check if this is an
amended filing

## Official Form 106A/B
## Schedule A/B: Property                                                12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.

■ Yes. Where is the property?

---

1.1

**14930 Mar Vista St.**
Street address, if available, or other description

**What is the property?** Check all that apply

■ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other

| **Whittier** | **CA** | **90605-0000** |
|---|---|---|
| City | State | ZIP Code |

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$1,900,000.00** | **$1,900,000.00** |

**Describe the nature of your ownership interest** (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Fee simple**

**Los Angeles**
County

**Who has an interest in the property?** Check one

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another

■ Check if this is community property
(see instructions)

Other information you wish to add about this item, such as local property identification number:

---

Exhibit "3"
Page 46

Debtor 1    **Benjamin W Gonzales**                                        Case number (if known)    **2:17-bk-23812-BR**

### 1.2 If you own or have more than one, list here:

**14663 Carnell St.**
Street address, if available, or other description

**Whittier**          **CA**    **90603-0000**
City                  State    ZIP Code

**Los Angeles**
County

**What is the property?** Check all that apply

- ■ Single-family home
- ☐ Duplex or multi-unit building
- ☐ Condominium or cooperative

- ☐ Manufactured or mobile home
- ☐ Land
- ☐ Investment property
- ☐ Timeshare
- ☐ Other

**Who has an Interest in the property?** Check one

- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ■ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property? | Current value of the portion you own?
**$700,000.00** | **$700,000.00**

Describe the nature of your ownership Interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Fee Simple**

- ☐ Check if this is community property (see instructions)

### 1.3 If you own or have more than one, list here:

**"Red House" on 7 acres**
**Playas de San Francisco, Costa Rica**
Street address, if available, or other description

City                  State    ZIP Code

County

**What is the property?** Check all that apply

- ■ Single-family home
- ☐ Duplex or multi-unit building
- ☐ Condominium or cooperative

- ☐ Manufactured or mobile home
- ☐ Land
- ☐ Investment property
- ☐ Timeshare
- ☐ Other

**Who has an Interest in the property?** Check one

- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ■ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**Title to property in name of separated nondebtor spouse**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property? | Current value of the portion you own?
**$500,000.00** | **$500,000.00**

Describe the nature of your ownership Interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

- ☐ Check if this is community property (see instructions)

Exhibit "3"
Page 47

Case 2:17-bk-23812-BR    Doc 29    Filed 01/22/18    Entered 01/22/18 13:59:23    Desc
Main Document         Page 4 of 26

| Debtor 1 | Benjamin W Gonzales | Case number *(if known)*  **2:17-bk-23812-BR** |

**If you own or have more than one, list here:**

**1.4**

**5 acre parcel of land**
**adjacent to "Red House"**
**Playas de San Francisco, Costa Rica**
Street address, if available, or other description

| | | |
|---|---|---|
| City | State | ZIP Code |

County

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative

☐ Manufactured or mobile home
■ Land
☐ Investment property
☐ Timeshare
☐ Other _____

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property? **$140,000.00**

Current value of the portion you own? **$140,000.00**

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Who has an interest in the property?** Check one

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Other information you wish to add about this item, such as local property identification number:

**Title to property in name of separated nondebtor spouse**

---

**If you own or have more than one, list here:**

**1.5**

**Small house**
**Playas de San Francisco, Costa Rica**
Street address, if available, or other description

| | | |
|---|---|---|
| City | State | ZIP Code |

County

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative

☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property? **$85,000.00**

Current value of the portion you own? **$85,000.00**

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Who has an interest in the property?** Check one

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Other information you wish to add about this item, such as local property identification number:

**Title to property in name of separated nondebtor spouse (may have been sold)**

---

2.  Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.................................................=>    **$3,325,000.00**

**Part 2:   Describe Your Vehicles**

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

Exhibit "3"
Page 48

Case 2:17-bk-23812-BR    Doc 29    Filed 01/22/18    Entered 01/22/18 13:59:23    Desc
Main Document        Page 5 of 26

Debtor 1    **Benjamin W Gonzales**                                          Case number *(if known)*    **2:17-bk-23812-BR**

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No

☑ Yes

| 3.1 | Make: | **Toyota** | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|---|

3.1   Make:    **Toyota**
      Model:   **Hilux truck**
      Year:    **2012**
      Approximate mileage:    **20,000 (est.)**
      Other information:
      **Vehicle is in Costa Rica in name of separated nondebtor spouse**

Who has an interest in the property? Check one
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☑ At least one of the debtors and another

☑ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?    **$30,000.00**
Current value of the portion you own?    **$30,000.00**

3.2   Make:    **Volkswagen**
      Model:   **Bus**
      Year:    **1971**
      Approximate mileage:    **unknown**
      Other information:
      **Believed in possession of separated nondebtor spouse (may have been sold)**

Who has an interest in the property? Check one
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☑ At least one of the debtors and another

☑ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?    **$20,000.00**
Current value of the portion you own?    **$20,000.00**

3.3   Make:    **Volkswagen**
      Model:   **Bug**
      Year:    **1964**
      Approximate mileage:    **unknown**
      Other information:
      **Believed in possession of separated nondebtor spouse**

Who has an interest in the property? Check one
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☑ At least one of the debtors and another

☑ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?    **$10,000.00**
Current value of the portion you own?    **$10,000.00**

3.4   Make:    **BMW**
      Model:   **650i**
      Year:    **2013**
      Approximate mileage:    **unknown**
      Other information:
      **Vehicle co-owned by Debtor's corporation C-PAK Seafoods, Inc., which is co-borrower on loan and has made all payments since the down payment in October 2012. Vehicle is in possession of separated nondebtor spouse. Valuation is an estimate as mileage is unknown.**

Who has an interest in the property? Check one
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?    **$24,000.00**
Current value of the portion you own?    **$24,000.00**

Exhibit "3"
Page 49

Case 2:17-bk-23812-BR    Doc 29    Filed 01/22/18    Entered 01/22/18 13:59:23    Desc
Main Document        Page 6 of 26

| Debtor 1 | Benjamin W Gonzales | | Case number (if known) | 2:17-bk-23812-BR |
|---|---|---|---|---|

**4. Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☐ No
☒ Yes

| | | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* | |
|---|---|---|---|---|
| 4.1 Make: | **Highland Ridge** | ☒ Debtor 1 only | | |
| Model: | **Open Range Ultra Light** | ☐ Debtor 2 only | Current value of the entire property? | Current value of the portion you own? |
| Year: | **2017** | ☐ Debtor 1 and Debtor 2 only | | |
| | | ☐ At least one of the debtors and another | | |
| Other information: | | ☐ Check if this is community property (see instructions) | **$15,000.00** | **$15,000.00** |
| | **Camper trailer** | | | |

| | | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* | |
|---|---|---|---|---|
| 4.2 Make: | **Pacer** | ☐ Debtor 1 only | | |
| Model: | **Airstream** | ☐ Debtor 2 only | Current value of the entire property? | Current value of the portion you own? |
| Year: | **1960** | ☐ Debtor 1 and Debtor 2 only | | |
| | | ☐ At least one of the debtors and another | | |
| Other information: | | ☒ Check if this is community property (see instructions) | **$40,000.00** | **$40,000.00** |
| | **Believed in possession of separated nondebtor spouse** | | | |

| | | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* | |
|---|---|---|---|---|
| 4.3 Make: | **Aristocrat** | ☐ Debtor 1 only | | |
| Model: | **Trailer** | ☐ Debtor 2 only | Current value of the entire property? | Current value of the portion you own? |
| Year: | **1967** | ☐ Debtor 1 and Debtor 2 only | | |
| | | ☐ At least one of the debtors and another | | |
| Other information: | | ☒ Check if this is community property (see instructions) | **$8,000.00** | **$8,000.00** |
| | **Believed in possession of separated nondebtor spouse** | | | |

5 Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here.............................................=>    **$147,000.00**

**Part 3:** Describe Your Personal and Household Items

Do you own or have any legal or equitable interest in any of the following items?    Current value of the portion you own?
Do not deduct secured claims or exemptions.

**6. Household goods and furnishings**
*Examples:* Major appliances, furniture, linens, china, kitchenware
☐ No
☒ Yes. Describe.....

| Household goods and furnishings in possession of separated nondebtor spouse at 14930 Mar Vista St., Whittier, CA 90605 | Unknown |
|---|---|
| Household goods and furnishings in possession of Debtor at 13929 Marquesas Way, Unit 201, Marina del Rey, CA 90292 | $2,000.00 |

**7. Electronics**
*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
☐ No
☒ Yes. Describe.....

| Television | $400.00 |
|---|---|

Exhibit "3"
Page 50

Case 2:17-bk-23812-BR    Doc 29    Filed 01/22/18    Entered 01/22/18 13:59:23    Desc
Main Document        Page 7 of 26

| Debtor 1 | **Benjamin W Gonzales** | Case number *(if known)* | **2:17-bk-23812-BR** |
|---|---|---|---|

**8.  Collectibles of value**
  *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections;
  other collections, memorabilia, collectibles

☐ No
■ Yes.  Describe.....

| Gold coins, 3 Laguna paintings, art collection; believed in possession of separated nondebtor spouse | $21,000.00 |
|---|---|

**9.  Equipment for sports and hobbies**
  *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools;
  musical instruments

☐ No
■ Yes.  Describe.....

| Piano believed in possession of separated nondebtor spouse | $7,000.00 |
|---|---|

| Golf clubs, bicycle | $350.00 |
|---|---|

**10.  Firearms**
  *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment

■ No
☐ Yes.  Describe.....

**11.  Clothes**
  *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories

☐ No
■ Yes.  Describe.....

| Clothing, purses, shoes in possession of separated nondebtor spouse | Unknown |
|---|---|

| Clothing in Debtor's possession | $400.00 |
|---|---|

**12.  Jewelry**
  *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver

☐ No
■ Yes.  Describe.....

| Jewelry believed in possesion of separated nondebtor spouse | Unknown |
|---|---|

| Men's Cartier watch | $1,000.00 |
|---|---|

**13.  Non-farm animals**
  *Examples:* Dogs, cats, birds, horses

■ No
☐ Yes.  Describe.....

**14.  Any other personal and household items you did not already list, including any health aids you did not list**

■ No
☐ Yes.  Give specific information.....

**15.  Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached
    for Part 3. Write that number here** ....................................................................................

| $32,150.00 |
|---|

Official Form 106A/B                    Schedule A/B: Property                    page 6

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com
Best Case Bankruptcy

Case 2:17-bk-23812-BR    Doc 29    Filed 01/22/18    Entered 01/22/18 13:59:23    Desc
Main Document    Page 8 of 26

| Debtor 1 | **Benjamin W Gonzales** | | Case number *(if known)* | **2:17-bk-23812-BR** |
|---|---|---|---|---|

**Part 4:** Describe Your Financial Assets

Do you own or have any legal or equitable interest in any of the following?

Current value of the portion you own?
Do not deduct secured claims or exemptions.

**16. Cash**
*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

☐ No
☑ Yes.................................................................

| | Cash | $5,000.00 |
|---|---|---|

**17. Deposits of money**
*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

☐ No
☑ Yes.......................

Institution name:

| 17.1. | Checking | Wells Fargo Bank; Acct. No. 3763 | $0.00 |
|---|---|---|---|

| 17.2. | Savings | Wells Fargo Bank; Acct. No. 1911 | $0.00 |
|---|---|---|---|

**18. Bonds, mutual funds, or publicly traded stocks**
*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

☐ No
☑ Yes.................

Institution or issuer name:

| | Merrill Lynch; Acct. No. xxx-x9678 | $39,201.61 |
|---|---|---|

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

☐ No
☑ Yes.  Give specific information about them....................

| Name of entity: | % of ownership: | | |
|---|---|---|---|
| C-PAK Sea Foods, Inc. | 90 | % | $0.00 |
| C-PAC Seafoods, a General Partnership | 90 | % | Unknown |

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**
*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

☑ No
☐ Yes. Give specific information about them

Issuer name:

**21. Retirement or pension accounts**
*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

☐ No
☑ Yes. List each account separately.

| Type of account: | Institution name: | |
|---|---|---|
| IRA | Merrill Lynch; Acct. No. xxx-x1x33 | $116,565.86 |
| 401(k) Profit-Sharing Plan | John Hancock; Acct. No. xx2892 | $82,852.19 |

| Official Form 106A/B | Schedule A/B: Property | page 7 |
|---|---|---|

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com

Exhibit "3"
Page 52

Debtor 1    **Benjamin W Gonzales**                                    Case number *(if known)*    **2:17-bk-23812-BR**

---

**22. Security deposits and prepayments**
Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others
☐ No
■ Yes. ....................                                Institution name or individual:

        Security Deposit          **Far West Management Corp.**                                    $700.00

---

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)
■ No
☐ Yes.............          Issuer name and description.

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).
■ No
☐ Yes.............          Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**
☐ No
■ Yes. Give specific information about them...

        Benjamin William Gonzales and Gretel Arend Gonzales Family
        Trust dated July 26, 1999.  Only assets in name of Trust are two
        properties in Whttier listed in Schedule A.                              $0.00

---

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
■ No
☐ Yes. Give specific information about them...

**27. Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
■ No
☐ Yes. Give specific information about them...

**Money or property owed to you?**                                    Current value of the
                                                                      portion you own?
                                                                      Do not deduct secured
                                                                      claims or exemptions.

**28. Tax refunds owed to you**
■ No
☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

**29. Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
■ No
☐ Yes. Give specific information......

**30. Other amounts someone owes you**
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security
benefits; unpaid loans you made to someone else
■ No
☐ Yes.  Give specific information..

**31. Interests in insurance policies**
*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
☐ No
■ Yes. Name the insurance company of each policy and list its value.
                            Company name:                    Beneficiary:              Surrender or refund

Exhibit "3"
Page 53

| Debtor 1 | Benjamin W Gonzales | | Case number (if known) | 2:17-bk-23812-BR |
|---|---|---|---|---|

value:

| | | |
|---|---|---:|
| | Lincoln Benefit; Policy No. xxxxxxE40544 | $60,889.17 |
| | Lincoln Benefit; Policy No. xxxxxx340544; believed no cash surrender value | $0.00 |
| | Farmers; Policy No. xxxxx0685T | Gretel Gonzales, Annlise Rosemary Diaz | $22,875.00 |
| | Northwestern Mutual Life; Policies No. xxxxx731, xxxxx728, xxxxx724; no cash surrender value | $0.00 |

**32. Any interest in property that is due you from someone who has died**

If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

☑ No
☐ Yes. Give specific information..

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**

*Examples:* Accidents, employment disputes, insurance claims, or rights to sue

☑ No
☐ Yes. Describe each claim.........

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**

☑ No
☐ Yes. Describe each claim.........

**35. Any financial assets you did not already list**

☑ No
☐ Yes. Give specific information..

**36. Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here........................................................................................**   | $328,083.83 |

**Part 5:**  Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.

**37. Do you own any legal or equitable interest in any business-related property?**

☑ No. Go to Part 6.
☐ Yes. Go to line 38.

**Part 6:**  Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.
If you own or have an interest in farmland, list it in Part 1.

**46. Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

☑ No. Go to Part 7.
☐ Yes. Go to line 47.

**Part 7:**  Describe All Property You Own or Have an Interest In That You Did Not List Above

Exhibit "3"
Page 54

Debtor 1    **Benjamin W Gonzales**                                                    Case number *(if known)*   **2:17-bk-23812-BR**

---

53.  **Do you have other property of any kind you did not already list?**
     *Examples:* Season tickets, country club membership
     ☐ No
     ☑ Yes. Give specific information.........

|  | |
|---|---|
| Membership in Los Angeles Athletic Club, not transferrable | $0.00 |

54.  Add the dollar value of all of your entries from Part 7. Write that number here ..................................    | $0.00 |

**Part 8:**    List the Totals of Each Part of this Form

| | | | |
|---|---|---|---|
| 55. | Part 1: Total real estate, line 2 ............................................................................ | | $3,325,000.00 |
| 56. | Part 2: Total vehicles, line 5 | $147,000.00 | |
| 57. | Part 3: Total personal and household items, line 15 | $32,150.00 | |
| 58. | Part 4: Total financial assets, line 36 | $328,083.83 | |
| 59. | Part 5: Total business-related property, line 45 | $0.00 | |
| 60. | Part 6: Total farm- and fishing-related property, line 52 | $0.00 | |
| 61. | Part 7: Total other property not listed, line 54                   + | $0.00 | |
| 62. | Total personal property. Add lines 56 through 61... | $507,233.83 | Copy personal property total    $507,233.83 |
| 63. | Total of all property on Schedule A/B. Add line 55 + line 62 | | $3,832,233.83 |

---

| Fill in this information to identify your case: | | | |
|---|---|---|---|
| Debtor 1 | **Benjamin W Gonzales** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | **2:17-bk-23812-BR** | | |
| (if known) | | | |

■ Check if this is an
amended filing

Official Form 106D
## Schedule D: Creditors Who Have Claims Secured by Property    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

2. List all secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A<br>Amount of claim<br>Do not deduct the<br>value of collateral. | Column B<br>Value of collateral<br>that supports this<br>claim | Column C<br>Unsecured<br>portion<br>If any |
|---|---|---|---|---|
| **2.1** Bank of America | Describe the property that secures the claim: | $455,802.40 | $1,900,000.00 | $0.00 |
| Creditor's Name | **14930 Mar Vista St. Whittier, CA 90605  Los Angeles County** | | | |

P.O. Box 31785
Tampa, FL 33631-3785
Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Nature of lien. Check all that apply.
■ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

Date debt was incurred  1/2013       Last 4 digits of account number   6786

| **2.2** Bank of America | Describe the property that secures the claim: | $715,744.94 | $1,900,000.00 | $0.00 |
|---|---|---|---|---|
| Creditor's Name | **14930 Mar Vista St. Whittier, CA 90605  Los Angeles County** | | | |

P.O. Box 31785
Tampa, FL 33631-3785
Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
■ Check if this claim relates to a community debt

Nature of lien. Check all that apply.
■ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **HELOC - proceeds used for Debtor's corporation, purchase of investment property**

Date debt was incurred  11/2013       Last 4 digits of account number   0036

Exhibit "3"
Page 56

| Debtor 1 | Benjamin W Gonzales | | Case number (if known) | 2:17-bk-23812-BR |
|---|---|---|---|---|
| | First Name    Middle Name    Last Name | | | |

---

| 2.3 | **BMW Financial Services** | Describe the property that secures the claim: | $15,112.00 | $24,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**2013 BMW 650i unknown miles Vehicle co-owned by Debtor's corporation C-PAK Seafoods, Inc., which is co-borrower on loan and has made all payments since the down payment in October 2012. Vehicle is in possession of separated nondebtor spou**

P.O. Box 3608
Dublin, OH 43016-0306

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☒ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Nature of lien. Check all that apply.
☒ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

Date debt was incurred   10/2012        Last 4 digits of account number   8276

---

| 2.4 | **Comerica Bank** | Describe the property that secures the claim: | $1,472,359.35 | $1,900,000.00 | Unknown |
|---|---|---|---|---|---|

Creditor's Name

**14930 Mar Vista St. Whittier, CA 90605 and
14663 Carnell St., Whittier, CA 90603**

35 North Lake Ave., Suite 120
Pasadena, CA 91101

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☒ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Nature of lien. Check all that apply.
☒ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☒ Other (including a right to offset)   **Attachment lien recorded 4/2017**

Date debt was incurred   1999, 2013        Last 4 digits of account number   7713

---

| 2.5 | **Frank O. Fox** | Describe the property that secures the claim: | $150,000.00 | $1,900,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

4262 Wilshire Blvd., 3rd Fl.
Los Angeles, CA 90010-3505

Number, Street, City, State & Zip Code

**14930 Mar Vista St. Whittier, CA 90605  Los Angeles County**

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☒ Unliquidated
☒ Disputed

**Who owes the debt?** Check one.
☒ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Nature of lien. Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☒ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit

---

Exhibit "3"
Page 57

Case 2:17-bk-23812-BR    Doc 30    Filed 01/22/18    Entered 01/22/18 14:12:12    Desc
Main Document        Page 4 of 20

| Debtor 1 | **Benjamin W Gonzales** | | Case number (if known) | **2:17-bk-23812-BR** |
| | First Name    Middle Name    Last Name | | | |

☐ Check if this claim relates to a
community debt

■ Other (including a right to offset)    **FLARPL lien of attorney for separated spouse**

Date debt was incurred  **6/2015**    Last 4 digits of account number

---

**2.6  Frank O. Fox**
Creditor's Name

4262 Wilshire Blvd., 3rd
Fl.
Los Angeles, CA
90010-3505
Number, Street, City, State & Zip Code

Describe the property that secures the claim:    $250,000.00    $1,900,000.00    $0.00

**14930 Mar Vista St. Whittier, CA 90605  Los Angeles County**

As of the date you file, the claim is: Check all that apply.
☐ Contingent
■ Unliquidated
■ Disputed

Nature of lien. Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
■ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **FLARPL lien of attorney for separated spouse**

Who owes the debt? Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Date debt was incurred  **8/2016**    Last 4 digits of account number

---

**2.7  Frank O. Fox**
Creditor's Name

4262 Wilshire Blvd., 3rd
Fl.
Los Angeles, CA
90010-3505
Number, Street, City, State & Zip Code

Describe the property that secures the claim:    $250,000.00    $1,900,000.00    $0.00

**14930 Mar Vista St. Whittier, CA 90605  Los Angeles County**

As of the date you file, the claim is: Check all that apply.
☐ Contingent
■ Unliquidated
■ Disputed

Nature of lien. Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
■ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **FLARPL lien of attorney for separated spouse**

Who owes the debt? Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Date debt was incurred  **2/2017**    Last 4 digits of account number

---

**2.8  Frank O. Fox**
Creditor's Name

4262 Wilshire Blvd., 3rd
Fl.
Los Angeles, CA
90010-3505
Number, Street, City, State & Zip Code

Describe the property that secures the claim:    $150,000.00    $700,000.00    $0.00

**14663 Carnell St. Whittier, CA 90603  Los Angeles County**

As of the date you file, the claim is: Check all that apply.
☐ Contingent
■ Unliquidated
■ Disputed

Nature of lien. Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
■ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit

Who owes the debt? Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

---

Official Form 106D    Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**    page 3 of 4

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

Exhibit "3"
Page 58

Case 2:17-bk-23812-BR    Doc 30    Filed 01/22/18    Entered 01/22/18 14:12:12    Desc
Main Document        Page 5 of 20

Debtor 1    **Benjamin W Gonzales**
    First Name    Middle Name    Last Name      Case number (if know)    **2:17-bk-23812-BR**

☐ Check if this claim relates to a community debt    ■ Other (including a right to offset)    FLARPL lien of attorney for separated spouse

Date debt was incurred    **8/2015**    Last 4 digits of account number _____

| 2.9 | **Merrick Bank** | Describe the property that secures the claim: | $26,308.55 | $15,000.00 | $11,308.55 |
|-----|------------------|-----------------------------------------------|-------------|-------------|-------------|

Creditor's Name

**2017 Highland Ridge Open Range Ultra Light Camper trailer**

P. O. Box 1500
Draper, UT 84020-1500
Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
■ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

Date debt was incurred    **4/2017**    Last 4 digits of account number    **8578**

| 2.10 | **PHH Mortgage** | Describe the property that secures the claim: | $126,813.00 | $700,000.00 | $0.00 |
|------|------------------|-----------------------------------------------|-------------|-------------|-------|

Creditor's Name

**14663 Carnell St. Whittier, CA 90603
Los Angeles County**

P.O. Box 5443
Mt. Laurel, NJ 08054-5443
Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
■ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

Date debt was incurred    **1/2013**    Last 4 digits of account number    **xxxx**

Add the dollar value of your entries in Column A on this page. Write that number here:    **$3,612,140.24**

If this is the last page of your form, add the dollar value totals from all pages. Write that number here:    **$3,612,140.24**

**Part 2:    List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

☐    Name, Number, Street, City, State & Zip Code
**Sandra I. Tiberi
Hemar, Rousso & Heald, LLP
15910 Ventura Blvd., 12th Fl.
Encino, CA 91436**

On which line in Part 1 did you enter the creditor?    **2.4**

Last 4 digits of account number ___

Official Form 106D    Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**    page 4 of 4

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

# Exhibit 4

**CLTA Preliminary Report Form**
(Rev. 11/06)

Order Number:  TOR-6532168
Page Number:  1



# First American Title Company

**3858 West Carson Street, Suite 100**
**Torrance, CA 90503**
California Department of Insurance License No. 151

Monica Castillo
Escrow Net
8635 Florence Avenue Suite 106
Downey, CA 90240-4045
Phone:
Fax:

| | |
|---|---|
| Customer Reference: | 11853-MC |
| Order Number: | TOR-6532168 (MPMC) |
| | |
| Title Officer: | Michelle Pascual / Mina Chin |
| Phone: | (818)550-2501 |
| Fax No.: | (866)878-7977 |
| E-Mail: | michelle.pascual@firstam.com |
| | |
| Buyer: | Salah M Dahdul and Susana I Dahdul |
| Owner: | Benjamin W Gonzales and David Goodrich Trs |
| Property: | 14930 Mar Vista Street |
| | Whittier, CA 90605 |

## PRELIMINARY REPORT

In response to the above referenced application for a policy of title insurance, this company hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Exhibit A attached. *The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties.* Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Exhibit A. Copies of the policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit A of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

Order Number: **TOR-6532168**
Page Number: 2

Dated as of March 12, 2021 at 7:30 A.M.

The form of Policy of title insurance contemplated by this report is:

ALTA/CLTA Homeowner's (EAGLE) Policy of Title Insurance (2013) and ALTA Ext Loan Policy 1056.06 (06-17-06) if the land described is an improved residential lot or condominium unit on which there is located a one-to-four family residence; or ALTA Standard Owner's Policy 2006 (WRE 06-17-06) and the ALTA Loan Policy 2006 (06-17-06) if the land described is an unimproved residential lot or condominium unit

A specific request should be made if another form or additional coverage is desired.

Title to said estate or interest at the date hereof is vested in:

Benjamin William Gonzales and Gretel Arend Gonzales, Trustees of The Gonzales Family Trust Dated July 26, 1999

The estate or interest in the land hereinafter described or referred to covered by this Report is:

FEE

The Land referred to herein is described as follows:

(See attached Legal Description)

At the date hereof exceptions to coverage in addition to the printed Exceptions and Exclusions in said policy form would be as follows:

1.   General and special taxes and assessments for the fiscal year 2021-2022, a lien not yet due or payable.

2.   General and special taxes and assessments for the fiscal year 2020-2021.

| First Installment: | $6,878.78, PAID |
|---|---|
| Penalty: | $0.00 |
| Second Installment: | $6,878.78, OPEN |
| Penalty: | $0.00 |
| Tax Rate Area: | 79-03561 |
| A. P. No.: | 8149-030-005 |

Exhibit "4"
Page 61

Order Number: **TOR-6532168**
Page Number:  3

3.    General and special taxes and assessments for the fiscal year 2020-2021.

| | |
|---|---|
| First Installment: | $377.29, PAID |
| Penalty: | $0.00 |
| Second Installment: | $377.29, OPEN |
| Penalty: | $0.00 |
| Tax Rate Area: | 79-03561 |
| A. P. No.: | 8149-030-006 |

4.    The lien of supplemental taxes, if any, assessed pursuant to Chapter 3.5 commencing with Section 75 of the California Revenue and Taxation Code.

5.    An easement for PIPE LINES and incidental purposes in the document recorded  as BOOK 18483, PAGE 225 of Official Records.

The location of the easement cannot be determined from record information.

6.    An easement for public utilities and incidental purposes in the document recorded  as BOOK 19507, PAGE 50 of Official Records.

7.    Covenants, conditions, restrictions and easements in the document recorded June 20, 1941 as BOOK 18491, PAGE 232 of Official Records, which provide that a violation thereof shall not defeat or render invalid the lien of any first mortgage or deed of trust made in good faith and for value, but deleting any covenant, condition, or restriction, if any, indicating a preference, limitation, or discrimination based on race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, handicap, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, to the extent that such covenants, conditions or restrictions violate applicable state or federal laws. Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

Document(s) declaring modifications thereof recorded July 30, 1941 as BOOK 18651, PAGE 101; DECEMBER 27, 1965 AS INSTRUMENT NO. 65-910; DECEMBER 31, 1975 AS INSTRUMENT NO. 75-6736; AND DECEMBER 11, 1986 AS INSTRUMENT NO. 86-1721260, ALL of Official Records.

8.    An easement for POWER LINES and incidental purposes in the document recorded  as BOOK 27590, PAGE 343 of Official Records.

9.    An easement for TELEPHONE LINES and incidental purposes in the document recorded  as BOOK 29063, PAGE 68 of Official Records.

10.    A deed of trust to secure an original indebtedness of $550,750.00 recorded January 31, 2013 as INSTRUMENT NO. 13-162626 OF OFFICIAL RECORDS.

| | |
|---|---|
| Dated: | January 25, 2013 |
| Trustor: | BENJAMIN WILLIAM GONZALES AND GRETEL AREND GONZALES, INDIVIDUALLY AND AS TRUSTEES OF THE GONZALES FAMILY TRUST DATED JULY 26, 1999 |
| Trustee: | FIRST AMERICAN TITLE |
| Beneficiary: | BANK OF AMERICA, N.A. |

Exhibit "4"
Page 62

11.    A deed of trust to secure an original indebtedness of $719,500.00 recorded November 19, 2013 as
       INSTRUMENT NO. 13-1640892 OF OFFICIAL RECORDS.
       Dated:                    November 05, 2013
       Trustor:                  BENJAMIN WILLIAM GONZALES AND GRETEL AREND
                                 GONZALES, INDIVIDUALLY AND AS TRUSTEES OF THE
                                 GONZALES FAMILY TRUST DATED JULY 26, 1999
       Trustee:                  FIRST AMERICAN TITLE
       Beneficiary:              BANK OF AMERICA, N.A.


       The above deed of trust states that it secures an equity line/revolving line of credit. Prior to the
       payment and suspension of the equity line/revolving line of credit, an instruction to suspend and
       close the equity line/revolving line of credit pursuant to CA Civil Code Section 2943.1 must be
       executed by the borrower.

12.    A deed of trust to secure an original indebtedness of $150,000.00 recorded June 30, 2015 as
       INSTRUMENT NO. 15-779609 OF OFFICIAL RECORDS.
       Dated:                    March 09, 2015
       Trustor:                  GRETEL A. GONZALES
       Trustee:                  COMMONWEALTH LAND TITLE COMPANY, A CALIFORNIA
                                 CORPORATION
       Beneficiary:              FRANK O. FOX


   a.   If this deed of trust is to be eliminated in the policy or policies contemplated by this
        report/commitment, the company will require the following for review prior to the recordation of any
        documents or the issuance of any policy of title insurance:
            i.    Original note and deed of trust.
            ii.   Payoff demand statement signed by all present beneficiaries.
            iii.  Request for reconveyance or substitution of trustee and full reconveyance must be
                  signed by all present beneficiaries and must be notarized by a First American approved
                  notary.

   b.   If the payoff demand statement or the request for reconveyance is to be signed by a servicer, we will
        also require a full copy of the loan servicing agreement executed by all present beneficiaries.

   c.   If any of the beneficial interest is presently held by trustees under a trust agreement, we will require
        a certification pursuant to Section 18100.5 of the California Probate Code in a form satisfactory to the
        Company.

13.    A deed of trust to secure an original indebtedness of $250,000.00 recorded August 09, 2016 as
       INSTRUMENT NO. 16-940681 OF OFFICIAL RECORDS.
       Dated:                    July 28, 2016
       Trustor:                  GRETEL A. GONZALES
       Trustee:                  COMMONWEALTH LAND TITLE COMPANY, A CALIFORNIA
                                 CORPORATION
       Beneficiary:              FRANK O. FOX


   a.   If this deed of trust is to be eliminated in the policy or policies contemplated by this
        report/commitment, the company will require the following for review prior to the recordation of any
        documents or the issuance of any policy of title insurance:
            i.    Original note and deed of trust.
            ii.   Payoff demand statement signed by all present beneficiaries.

Order Number: **TOR-6532168**
Page Number: 5

    iii.    Request for reconveyance or substitution of trustee and full reconveyance must be signed by all present beneficiaries and must be notarized by a First American approved notary.

    b.    If the payoff demand statement or the request for reconveyance is to be signed by a servicer, we will also require a full copy of the loan servicing agreement executed by all present beneficiaries.

    c.    If any of the beneficial interest is presently held by trustees under a trust agreement, we will require a certification pursuant to Section 18100.5 of the California Probate Code in a form satisfactory to the Company.

14.    Any defects, liens, encumbrances or other matters which name parties with the same or similar names as BENJAMIN WILLIAM GONZALES.  The name search necessary to ascertain the existence of such matters has not been completed.  In order to complete this preliminary report or commitment, we will require a statement of information.

15.    Any defects, liens, encumbrances or other matters which name parties with the same or similar names as GRETEL AREND GONZALES.  The name search necessary to ascertain the existence of such matters has not been completed.  In order to complete this preliminary report or commitment, we will require a statement of information.

16.    Water rights, claims or title to water, whether or not shown by the Public Records.

17.    This transaction may be subject to a Geographic Targeting Order ("GTO") issued pursuant to the Bank Secrecy Act. Information necessary to comply with the GTO must be provided prior to the closing. This transaction will not be insured until this information is submitted, reviewed and found to be complete.

**Prior to the issuance of any policy of title insurance, the Company will require:**

18.    With respect to the trust referred to in the vesting:
a. A certification pursuant to Section 18100.5 of the California Probate Code in a form satisfactory to the Company.
b. Copies of those excerpts from the original trust documents and amendments thereto which designate the trustee and confer upon the trustee the power to act in the pending transaction.
c. Other requirements which the Company may impose following its review of the material required herein and other information which the Company may require.

Order Number: **TOR-6532168**
Page Number: 6

---

### INFORMATIONAL NOTES

---

Note: The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than the certain dollar amount set forth in any applicable arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. If you desire to review the terms of the policy, including any arbitration clause that may be included, contact the office that issued this Commitment or Report to obtain a sample of the policy jacket for the policy that is to be issued in connection with your transaction.

1.  This report is preparatory to the issuance of an ALTA Loan Policy. We have no knowledge of any fact which would preclude the issuance of the policy with CLTA endorsement forms 100 and 116 and if applicable, 115 and 116.2 attached.

    When issued, the CLTA endorsement form 116 or 116.2, if applicable will reference a(n) Single Family Residence  known as 14930 MAR VISTA STREET, WHITTIER, CA.

    AFFECTS APN 8149-030-005

2.  The property covered by this report is vacant land.

    AFFECTS APN 8149-030-006

3.  According to the public records, there has been no conveyance of the land within a period of twenty-four months prior to the date of this report, except as follows:

    None

    NOTE to proposed insured lender only: No Private transfer fee covenant, as defined in Federal Housing Finance Agency Final Rule 12 CFR Part 1228, that was created and first appears in the Public Records on or after February 8, 2011, encumbers the Title except as follows: None

The map attached, if any, may or may not be a survey of the land depicted hereon. First American expressly disclaims any liability for loss or damage which may result from reliance on this map except to the extent coverage for such loss or damage is expressly provided by the terms and provisions of the title insurance policy, if any, to which this map is attached.

Order Number:  **TOR-6532168**
Page Number:  7

## LEGAL DESCRIPTION

Real property in the City of Whittier, County of Los Angeles, State of California, described as follows:

THE NORTHWESTERLY 135 FEET OF LOT 13 OF TRACT 11571, IN THE CITY OF WHITTIER, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 243 PAGES 27 TO 29 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM THE SOUTHWESTERLY 185 FEET MEASURED ALONG THE NORTHWESTERLY LINE OF SAID LOT.

APN: 8149-030-005 and 8149-030-006

Order Number: **TOR-6532168**
Page Number: 8



Exhibit "4"
Page 67

Order Number: **TOR-6532168**
Page Number: 9

## *NOTICE*

Section 12413.1 of the California Insurance Code, effective January 1, 1990, requires that any title insurance company, underwritten title company, or controlled escrow company handling funds in an escrow or sub-escrow capacity, wait a specified number of days after depositing funds, before recording any documents in connection with the transaction or disbursing funds. This statute allows for funds deposited by wire transfer to be disbursed the same day as deposit. In the case of cashier's checks or certified checks, funds may be disbursed the next day after deposit. In order to avoid unnecessary delays of three to seven days, or more, please use wire transfer, cashier's checks, or certified checks whenever possible.

Order Number: **TOR-6532168**
Page Number:  10

**EXHIBIT A**
**LIST OF PRINTED EXCEPTIONS AND EXCLUSIONS (BY POLICY TYPE)**

**CLTA STANDARD COVERAGE POLICY – 1990**
EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a)  Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

    (b)  Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3.  Defects, liens, encumbrances, adverse claims or other matters:

    (a)  whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;

    (b)  not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

    (c)  resulting in no loss or damage to the insured claimant;

    (d)  attaching or created subsequent to Date of Policy; or

    (e)  resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6.  Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public, records.

2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6.  Any lien or right to a lien for services, labor or material unless such lien is shown by the public records at Date of Policy.

**CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)**
EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1.  Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:

    a.  building;

    b.  zoning;

    c.  land use;

*First American Title*
Page 10 of 16

Order Number: **TOR-6532168**
Page Number:  11

  d.  improvements on the Land;
  e.  land division; and
  f.  environmental protection.
  This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.
2.  The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3.  The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.
4.  Risks:
  a.  that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
  b.  that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
  c.  that result in no loss to You; or
  d.  that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5.  Failure to pay value for Your Title.
6.  Lack of a right:
  a.  to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
  b.  in streets, alleys, or waterways that touch the Land.
  This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7.  The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.
8.  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
9.  Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1% of Policy Amount Shown in Schedule A or $2,500 (whichever is less) | $10,000 |
| Covered Risk 18: | 1% of Policy Amount Shown in Schedule A or $5,000 (whichever is less) | $25,000 |
| Covered Risk 19: | 1% of Policy Amount Shown in Schedule A or $5,000 (whichever is less) | $25,000 |
| Covered Risk 21: | 1% of Policy Amount Shown in Schedule A or $2,500 (whichever is less) | $5,000 |

## 2006 ALTA LOAN POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

         (i) the occupancy, use, or enjoyment of the Land;
         (ii) the character, dimensions, or location of any improvement erected on the Land;
         (iii) the subdivision of land; or
         (iv) environmental protection;

    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.  Defects, liens, encumbrances, adverse claims, or other matters
    (a) created, suffered, assumed, or agreed to by the Insured Claimant;
    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

Order Number: **TOR-6532168**
Page Number:  12

(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or
(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
(a) a fraudulent conveyance or fraudulent transfer, or
(b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).


The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

[Except as provided in Schedule B - Part II,[ t[or T]his policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

### [PART I

[The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:
1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency  that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by  persons in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor or material unless such lien is shown by the Public Records at Date of Policy.


### PART II

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss

or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:]


### 2006 ALTA OWNER'S POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

      (i) the occupancy, use, or enjoyment of the Land;
      (ii) the character, dimensions, or location of any improvement erected on the Land;
      (iii) the subdivision of land; or
      (iv) environmental protection;

   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

Order Number: **TOR-6532168**
Page Number: 13

(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 or 10); or
(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
    (a) a fraudulent conveyance or fraudulent transfer, or
    (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:
[The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency  that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by  persons in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor or material unless such lien is shown by the Public Records at Date of Policy.
7.  [Variable exceptions such as taxes, easements, CC&R's, etc. shown here.]

### ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (07-26-10)
EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

    (i) the occupancy, use, or enjoyment of the Land;
    (ii) the character, dimensions, or location of any improvement erected on the Land;
    (iii) the subdivision of land; or
    (iv) environmental protection;

    or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk  5, 6, 13(c), 13(d), 14 or 16.
    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.  Defects, liens, encumbrances, adverse claims, or other matters
    (a) created, suffered, assumed, or agreed to by the Insured Claimant;
    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c) resulting in no loss or damage to the Insured Claimant;
    (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
    (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.
6.  Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the

*First American Title*
Page 13 of 16

Order Number: **TOR-6532168**
Page Number:  14

Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.

7.   Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.

8.   The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes.  This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.

9.   Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

(a) a fraudulent conveyance or fraudulent transfer, or

(b) a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.

10.   Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

11.   Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

 *First American Title*™

**Privacy Notice**

**Effective:** October 1, 2019

**Notice Last Updated:** January 1, 2021

This Privacy Notice describes how First American Financial Corporation and its subsidiaries and affiliates (together referred to as "First American," "we," "us," or "our") collect, use, store, and share your information. This Privacy Notice applies to information we receive from you offline only, as well as from third parties, when you interact with us and/or use and access our services and products ("Products"). For more information about our privacy practices, including our online practices, please visit https://www.firstam.com/privacy-policy/. The practices described in this Privacy Notice are subject to applicable laws in the places in which we operate.

**What Type Of Information Do We Collect About You?** We collect a variety of categories of information about you. To learn more about the categories of information we collect, please visit https://www.firstam.com/privacy-policy/.

**How Do We Collect Your Information?** We collect your information: (1) directly from you; (2) automatically when you interact with us; and (3) from third parties, including business parties and affiliates.

**How Do We Use Your Information?** We may use your information in a variety of ways, including but not limited to providing the services you have requested, fulfilling your transactions, comply with relevant laws and our policies, and handling a claim. To learn more about how we may use your information, please visit https://www.firstam.com/privacy-policy/.

**How Do We Share Your Information?** We do not sell your personal information. We only share your information, including to subsidiaries, affiliates, and to unaffiliated third parties: (1) with your consent; (2) in a business transfer; (3) to service providers; and (4) for legal process and protection. To learn more about how we share your information, please visit https://www.firstam.com/privacy-policy/.

**How Do We Store and Protect Your Information?** The security of your information is important to us. That is why we take commercially reasonable steps to make sure your information is protected. We use our best efforts to maintain commercially reasonable technical, organizational, and physical safeguards, consistent with applicable law, to protect your information.

**How Long Do We Keep Your Information?** We keep your information for as long as necessary in accordance with the purpose for which it was collected, our business needs, and our legal and regulatory obligations.

**Your Choices** We provide you the ability to exercise certain controls and choices regarding our collection, use, storage, and sharing of your information. You can learn more about your choices by visiting https://www.firstam.com/privacy-policy/.

**International Jurisdictions**: Our Products are offered in the United States of America (US), and are subject to US federal, state, and local law. If you are accessing the Products from another country, please be advised that you may be transferring your information to us in the US, and you consent to that transfer and use of your information in accordance with this Privacy Notice. You also agree to abide by the applicable laws of applicable US federal, state, and local laws concerning your use of the Products, and your agreements with us.

We may change this Privacy Notice from time to time. Any and all changes to this Privacy Notice will be reflected on this page, and where appropriate provided in person or by another electronic method. **YOUR CONTINUED USE, ACCESS, OR INTERACTION WITH OUR PRODUCTS OR YOUR CONTINUED COMMUNICATIONS WITH US AFTER THIS NOTICE HAS BEEN PROVIDED TO YOU WILL REPRESENT THAT YOU HAVE READ AND UNDERSTOOD THIS PRIVACY NOTICE.**

**Contact Us** dataprivacy@firstam.com or toll free at 1-866-718-0097.

---

© 2020 First American Financial Corporation and/or its affiliates. All rights reserved. NYSE:FAF

| Form 10-PRIVACY20 (12-18-20) | Page 1 of 2 | Privacy Notice (2020 First American Financial Corporation) English |
|---|---|---|

 *First American Title*™

### For California Residents

If you are a California resident, you may have certain rights under California law, including but not limited to the California Consumer Privacy Act of 2018 ("CCPA"). All phrases used in this section shall have the same meaning as those phrases are used under California law, including the CCPA.

**Right to Know**. You have a right to request that we disclose the following information to you: (1) the categories of **personal information** we have collected about or from you; (2) the categories of sources from which the **personal information** was collected; (3) the business or commercial purpose for such collection and/or disclosure; (4) the categories of third parties with whom we have shared your **personal information**; and (5) the specific pieces of your **personal information** we have collected. To submit a verified request for this information, go to our online privacy policy at www.firstam.com/privacy-policy to submit your request or call toll-free at 1-866-718-0097. You may also designate an authorized agent to submit a request on your behalf by going to our online privacy policy at www.firstam.com/privacy-policy to submit your request or by calling toll-free at 1-866-718-0097.

**Right of Deletion**. You also have a right to request that we delete the **personal information** we have collected from and about you. This right is subject to certain exceptions available under the CCPA and other applicable law. To submit a verified request for deletion, go to our online privacy policy at www.firstam.com/privacy-policy to submit your request or call toll-free at 1-866-718-0097. You may also designate an authorized agent to submit a request on your behalf by going to our online privacy policy at www.firstam.com/privacy-policy to submit your request or by calling toll-free at 1-866-718-0097.

**Verification Process**. For either a request to know or delete, we will verify your identity before responding to your request. To verify your identity, we will generally match the identifying information provided in your request with the information we have on file about you. Depending on the sensitivity of the information requested, we may also utilize more stringent verification methods to verify your identity, including but not limited to requesting additional information from you and/or requiring you to sign a declaration under penalty of perjury.

**Notice of Sale**. We do not sell California resident information, nor have we sold California resident information in the past 12 months. We have no actual knowledge of selling the information of minors under the age of 16.

**Right of Non-Discrimination**. You have a right to exercise your rights under California law, including under the CCPA, without suffering discrimination. Accordingly, First American will not discriminate against you in any way if you choose to exercise your rights under the CCPA.

**Notice of Collection**. To learn more about the categories of **personal information** we have collected about California residents over the last 12 months, please see "What Information Do We Collect About You" in https://www.firstam.com/privacy-policy. To learn about the sources from which we have collected that information, the business and commercial purpose for its collection, and the categories of third parties with whom we have shared that information, please see "How Do We Collect Your Information", "How Do We Use Your Information", and "How Do We Share Your Information" in https://www.firstam.com/privacy-policy.

**Notice of Sale**. We have not sold the **personal information** of California residents in the past 12 months.

**Notice of Disclosure**. To learn more about the categories of **personal information** we may have disclosed about California residents in the past 12 months, please see "How Do We Use Your Information" and "How Do We Share Your Information" in https://www.firstam.com/privacy-policy.

© 2020 First American Financial Corporation and/or its affiliates. All rights reserved. NYSE:FAF

| Form 10-PRIVACY20 (12-18-20) | Page 2 of 2 | Privacy Notice (2020 First American Financial Corporation) English |
|---|---|---|

# Exhibit 5



**This page is part of your document - DO NOT DISCARD**



# 20190095204



Pages:
0004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**01/31/19 AT 12:48PM**

| | |
|---|---|
| FEES: | 37.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 112.00 |



**L E A D S H E E T**



201901311000076

**00016201298**



009593338

**SEQ:**
**01**

DAR - Courier (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

E643069

ORIGINAL

3

**EJ-001**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, address, and State Bar number):*
After recording, return to:
SANDRA I. TIBERI / BAR #192816
HEMAR, ROUSSO & HEALD, LLP
15910 Ventura Boulevard
12th Floor
Encino, CA 91436
TEL. NO. (818) 501-3800    FAX NO. (optional)  (818) 501-22985
E-MAIL ADDRESS *(Optional):*  sandra@hrhlaw.com

| | | |
|---|---|---|
| [X] ATTORNEY FOR | [X] JUDGMENT CREDITOR | [ ] ASSIGNEE OF RECORD |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES
STREET ADDRESS:  111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE:  Los Angeles, CA 90012
BRANCH NAME:  Central District - Unlimited

FOR RECORDER'S USE ONLY

PLAINTIFF:  COMERICA BANK

DEFENDANT:  C-PAK SEA FOODS, INC., et al.,

CASE NUMBER:
BC640599

**ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS**    [ ] Amended

FOR COURT USE ONLY

1. The [X] judgment creditor [ ] assignee of record
   applies for an abstract of judgment and represents the following:
   a. Judgment debtor's
      Name and last known address

   BENJAMIN WILLIAM GONZALES, individually and as Trustee
   of THE GONZALES FAMILY TRUST OF JULY 26, 1999
   13929 Marquesas Way, Unit 201
   Marina Del Rey, CA 90292

   b. Driver's license no. [last 4 digits] and state:                   [X] Unknown
   c. Social security no. [last 4 digits]: 1518                         [X] Unknown
   d. Summons or notice of entry of sister-state judgment was personally served or mailed to *(name and address):*
      BENJAMIN WILLIAM GONZALES, individually and as Trustee of THE GONZALES FAMILY TRUST OF
      JULY 26, 1999    14930 Mar Vista Street, Whittier, CA 90605

2. [X] Information on additional judgment debtors is shown on page 2.

4. [ ] Information on additional judgment creditors is shown on page 2.

3. Judgment creditor *(name and address):*
   COMERICA BANK   c/o  15910 Ventura
   Boulevard, 12th Floor, Encino, CA 91436
   Date:  October 9, 2018
   SANDRA I. TIBERI
   *(TYPE OR PRINT NAME)*

5. [ ] Original abstract recorded in this county:
   a. Date:
   b. Instrument No.

   ▶                                    *(SIGNATURE OF APPLICANT OR ATTORNEY)*

6. Total amount of judgment as entered or last renewed:
   $ 1,120,658.30

7. All judgment creditors and debtors are listed on this abstract.

8. a. Judgment entered on *(date):* September 28, 2018
   b. Renewal entered on *(date):*

9. [ ] This judgment is an installment judgment.

10. [ ] An [ ] execution lien [ ] attachment lien
    is endorsed on the judgment as follows:
    a. Amount: $ 0.00
    b. In favor of *(name and address):*

11. A stay of enforcement has
    a. [X] not been ordered by the court.
    b. [ ] been ordered by the court effective until *(date):*

12. a. [X] I certify that this is a true and correct abstract of the judgment entered in this action.
    b. [ ] A certified copy of the judgment is attached.

[SEAL]

SHERRI R. CARTER

This abstract issued on *(date):*
**DEC 2 0 2018**

Clerk, by _____ , Deputy
KELLY ENCINAS

Form Adopted for Mandatory Use
Judicial Council of California
EJ-001 [Rev. July 1, 2014]

**ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS**

Legal
Solutions
& Plus

Page 1 of 2
Code of Civil Procedure, §§ 488.480,
674, 700.190

4

| PLAINTIFF: COMERICA BANK | COURT CASE NO. |
|---|---|
| DEFENDANT: C-PAK SEA FOODS, INC., et al., | BC640599 |

**NAMES AND ADDRESSES OF ADDITIONAL JUDGMENT CREDITORS:**

13. Judgment creditor *(name and address)*:

14. Judgment creditor *(name and address)*:

15. ☐ Continued on Attachment 15.

**INFORMATION ON ADDITIONAL JUDGMENT DEBTORS:**

16.  Name and last known address

GRETEL AREND GONZALES, as Trustee of THE
GONZALES FAMILY TRUST OF JULY 26, 1999
28346 Camino Del Rio
San Juan Capistrano, CA 92675

Driver's license no. [last 4 digits] and state:  ☒ Unknown

Social security no. [last 4 digits]:  ☒ Unknown

Summons was personally served at or mailed to *(address)*:

GRETEL AREND GONZALES, as Trustee of THE
GONZALES FAMILY TRUST OF JULY 26, 1999

1900 Avenue of the Stars, #1800, Los Angeles, CA 90067

17.  Name and last known address

Driver's license no. [last 4 digits] and state:  ☐ Unknown

Social security no. [last 4 digits]:  ☐ Unknown

Summons was personally served at or mailed to *(address)*:

18.  Name and last known address

Driver's license no. [last 4 digits] and state:  ☐ Unknown

Social security no. [last 4 digits]:  ☐ Unknown

Summons was personally served at or mailed to *(address)*:

19.  Name and last known address

Driver's license no. [last 4 digits] and state:  ☐ Unknown

Social security no. [last 4 digits]:  ☐ Unknown

Summons was personally served at or mailed to *(address)*:

20. ☐ Continued on Attachment 20.

EJ-001 [Rev. July 1, 2014]

**ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS**

Page 2 of 2

# Exhibit 6

# Carve-Out Agreement and Release

THIS CARVE-OUT AGREEMENT AND RELEASE ("Agreement") is entered into on January  8 , 2019, ("Effective Date") by and between David M. Goodrich ("Trustee"), solely in his capacity as Chapter 7 trustee for the bankruptcy estate of Benjamin W. Gonzales ("Estate"), Comerica Bank ("Comerica"), Benjamin W. Gonzales ("Debtor"), and Gretel Gonzales ("Ms. Gonzales"), Debtor's ex-spouse. The Trustee, Comerica, the Debtor, and Ms. Gonzales are collectively referred to as the "Parties."

# I. Recitals

## The Fox Liens and Resulting Lawsuit

A.       On or about February 24, 2015, Ms. Gonzales retained The Law Firm of Fox and Fox ("Fox Firm") as her family law counsel to commence a dissolution action against Debtor in the Los Angeles Superior Court ("State Court").

B.       On February 27, 2015, the Fox Firm commenced State Court Case No. BD616423 ("Divorce Case") on Ms. Gonzales' behalf.

C.       Between February 24, 2015, and October 26, 2017, Ms. Gonzales incurred alleged attorneys' fees related to the Divorce Case.

D.       On June 30, 2015, the Fox Firm recorded a deed of trust ("First DoT") against the real property located at 14930 Mar Vista Street, Whittier, California 90605 ("Mar Vista Property") at the Los Angeles County Recorder's Office as instrument no.15-0779609 to secure an alleged debt of Ms. Gonzales in the amount of $150,000. On August 10, 2015, the Fox Firm recorded the deed of trust ("Second DoT") against the real property located at 14663 Carnell Street, Whittier, California 90603 ("Carnell Property") at the Los Angeles County Recorder's Office as instrument no. 15-973660. Collectively, the First DoT and Second DoT are referred to herein as the "First FLARPL."

E.       On February 19, 2016, the Fox Firm, on behalf Ms. Gonzales, filed an abstract of judgment at the Los Angeles County Recorder's Office as instrument no. 16-0183748 reflecting a spousal support judgment against Debtor entered on January 12, 2016 ("Gretel Abstract").

F.       On August 9, 2016, the Fox Firm recorded a deed of trust against the Mar Vista Property at the Los Angeles County Recorder's Office as instrument no. 16-940681 to secure an alleged debt of Ms. Gonzales in the amount of $250,000 ("Second FLARPL").

G.       On February 27, 2017, the Fox Firm recorded a deed of trust against the Carnell Property at the Los Angeles County Recorder's Office as instrument no. 17-0231102 to secure an alleged debt of Ms. Gonzales in the amount of $250,000 ("Third FLARPL").

H.       The First FLARPL, Second FLARPL, and Third FLARPL are collectively referred to herein as the "Fox Liens."

I.       On November 9, 2017, the Fox Firm filed a civil lawsuit against Ms. Gonzales commencing Civil Case No. BC682953 ("Fox Case"). The complaint commencing the Fox Case asserts claims for breach of contract arising from Ms. Gonzales' alleged failure to pay attorneys' fees in the Divorce Case and seeks damages in the amount of $763,330.48 ("Fox Damages").

4822-2707-9810, v. 1

J.        On January 5, 2018, Ms. Gonzales filed an answer disputing the Fox Damages and a cross-complaint against the Fox Firm ("Cross-Claims"). The trial in the Fox Case is currently set for March 2019.

K.        As of October 9, 2018, the Fox Firm alleges that it is owed attorneys' fees and interest in the total amount of $837,783.23 ("Fox Claim"). The Fox Claim is allegedly secured by the Properties pursuant to the Fox Liens.

## Comerica Claim

L.        On November 14, 2016, Comerica Bank ("Plaintiff") filed a complaint against Debtor, Ms. Gonzales, The Gonzales Family Trust of July 26, 1999 ("Trust"), and Debtor's affiliated business entities, commencing State Court case entitled *Comerica Bank v. C-Pak Sea Foods et al.*, Case No. BC640599 ("Comerica Case"). The complaint demanded $1,458,573.49 and alleged causes of action for breach of contract and breach of guaranty.

M.        On April 11, 2017, the State Court issued a prejudgment writ of attachment ("Writ") against all defendants.

N.        On September 28, 2018, Comerica secured a judgment against Debtor, Ms. Gonzales and the Trust in the amount of $1,120,658.30 ("Comerica Claim"). The judgment relates back to the date of the Writ. The recording of an abstract of judgment against the Properties in the amount of the Comerica Claim will result in a lien against the Properties in the amount of the Comerica Claim ("Comerica Liens").

## Bankruptcy Case

O.        On November 8, 2017, Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code in the Central District of California, commencing Bankruptcy Case No. 2:17-bk-23812-BR. David M. Goodrich, was appointed the Chapter 7 Trustee of the Estate.

P.        In his Schedule A/B, Debtor lists an ownership interest in: (1) the Mar Vista Property with a scheduled value of $1,900,000; and (2) the Carnell Property with a scheduled value of $700,000. According to Ms. Gonzales, a Schafer & Sons piano was located at the Mar Vista Property ("Piano") when she moved out. Recently, police reported that the Piano was stolen from the Mar Vista Property. The Piano holds substantial sentimental value to the Gonzales family. The approximate fair market value of the Piano is $3,000.

Q.        Title to the Mar Vista Property and the Carnell Property is held in the name of the Trust. Debtor and Ms. Gonzales are the sole trustees of the Trust.

R.        The Trustee seeks to sell the Properties for the benefit of creditors. To that end, the Trustee has negotiated a $100,000 carve-out from Bank of America ("BofA"), the first and second priority lienholder on the Mar Vista Property. Pursuant to the carve-out ("BofA Agreement"), BofA has also agreed to pay the 6% broker commission and all standard costs of sale, including title and escrow fees, related to the sale of the Mar Vista Property. The Trustee has sought Court-approval of the BofA Agreement.

S.        On September 4, 2018, the Trustee and Ms. Gonzales entered into a settlement agreement whereby Ms. Gonzales agreed to subordinate her priority domestic support obligation to allowed administrative expenses of the Estate pursuant to 11 U.S.C. §507(a)(1)(C) in exchange for

the release of certain claims of the Estate ("Subordination Agreement"). On November 16, 2018, the Court entered an order granting the Subordination Agreement.

      T.      The Trustee recently retained Clarence Yoshikane of Pacific / Sotheby's International Realty ("Mr. Yoshikane") as real estate broker to market and sell the Carnell Property. Mr. Yoshikane has agreed to a reduced broker commission of 5%.

      U.      The Trustee believes the fair market value of the Mar Vista Property is approximately $1,800,000. The Trustee believes the fair market value of the Carnell Property is approximately $600,000. The following charts reflect that the proceeds available to the various junior lienholders do not change as a result of issues of cross-collateralization. As such, there are no marshaling issues that arise based on which property sells first. Based on the above facts, the equity available to pay the Fox Firm Claim and the other secured claims are as follows:

| Total Sales Proceeds | |
|---|---|
| Mar Vista Property value | $1,800,000 |
| Carnell Property value | $  600,000 |
| **Total** | **$2,400,000** |

| Total Equity to Pay Other Liens | |
|---|---|
| Total Sales Proceeds | $2,400,000 |
| BofA First Priority Lien on Mar Vista | ($ 455,802) |
| BofA Second Priority Lien on Mar Vista | ($ 715,745) |
| PHH First Priority Lien on Carnell | ($ 126,813) |
| Costs of Sale related to Mar Vista | ($        0) – To be paid by BofA |
| 5% Commission to Carnell Broker | ($ 30,000) |
| 1% Costs of Carnell Sale | ($  6,000) |
| **Total to Left to Pay Other Liens** | **$1,065,640** |

      V.      To facilitate the sale of the Properties, and to ensure the Estate receives a benefit from such sales, Comerica agrees to carve-out $150,000 from the Comerica Liens for the benefit of the Estate.

      W.      Comerica disputes the validity, priority, and extent of the Fox Liens. As such, Comerica has agreed to challenge, litigate, and attempt to fully liquidate the Fox Claim and alleged Fox Liens resulting therefrom. The Trustee will retain settlement authority with respect to such litigation, but the litigation must result in dismissal or resolution of Fox Case (which may include some payment on the Fox Claim) that does not result in any monetary obligations of Ms. Gonzales to the Fox Firm.

X.    Taking into account the carveout set forth in the BofA Agreement, the Estate will net $250,000 from the sale of the Properties.

Y.    To ensure that the Estate receives funds from sales of the Properties, the Parties enter into this global settlement providing for, *inter alia*: (1) allowance of the Comerica Claim; (2) a carve-out and assignment to the Estate of funds otherwise subject to the Comerica Liens; (3) full liquidation of the Fox Claim; (4) waiver of the Gretel Abstract; (5) consent to sales free and clear of alleged liens and encumbrances; and (6) Debtor's and Ms. Gonzales' waiver and release of their right, if any, to claim an exemption in the Properties and/or the proceeds from the sales of the Properties.

## II. SETTLEMENT TERMS

In consideration of the Recitals above and the mutual promises contained in this Agreement, and for other good and valuable consideration, the receipt and adequacy of which are acknowledged, the Parties agree, covenant, and represent as follows subject to approval by the Bankruptcy Court in Debtor's case:

1.    Incorporation of Recitals. The Parties incorporate the Recitals above as though fully set forth here, and the Recitals are made part of this Agreement.

2.    Trust Revocation. With respect to the Properties, the Trust is revoked and all real properties owned or held by the Trust constitute property of the Estate.

3.    Carve-Out by Comerica. Comerica has agreed to a carve-out and assignment to the Estate of funds otherwise subject to its Liens as follows:

    a.    The carve-out is only for the benefit of allowed administrative claims and unsecured creditors of the Estate; and

    b.    Comerica agrees to a $150,000 carve-out for the benefit of creditors of the Estate. From the carved-out funds, the Trustee will pay claims according to the priorities set forth in 11 U.S.C. § 726 and pursuant to the Subordination Agreement.

3.    Allowance of Comerica Claim. For purposes of this Agreement, the Comerica Claim shall be deemed allowed and the Comerica Liens deemed valid.

4.    Sale Free and Clear of Comerica Liens. Comerica consents to the sale of the Properties free and clear of the Comerica Liens, with such liens to attach to the sales proceeds to the extent applicable and as set forth in this Agreement.

5.    Sale Free and Clear of Disputed Liens. To the extent the Fox Liens and FH Abstract (collectively, the "Disputed Liens") are not fully liquidated and/or resolved prior to the sale of the Properties, the Trustee shall seek a sale free and clear of the Disputed Liens, with such liens to attach to the sales proceeds to the extent applicable.

6.    Abandonment of Piano. The Trustee, on behalf of the Estate, abandons the Estate's interest, if any, in the Piano pursuant to 11 U.S.C. § 554(a).

7.    Waiver and Release of Gretel Abstract and any Resulting Lien. Ms. Gonzales waives and releases any and all liens in her favor against the Properties including, but not limited to, any liens resulting from the Gretel Abstract. Concurrent with execution of this Agreement, Ms.

Gonzales shall sign and notarize the Withdrawal of Abstract of Judgment and Release of Lien ("Release"). The Trustee is authorized to cause the Release to be recorded upon both: (a) entry of an order granting this Agreement; *and* (b) dismissal or resolution of the Fox Case that results in no out of pocket costs to Ms. Gonzales.

8.    <u>Defense of Fox Case and Liquidation of Fox Claim</u>. Comerica shall challenge, litigate, and attempt to fully liquidate the Fox Claim and the Fox Liens allegedly resulting therefrom ("Comerica/Fox Litigation"). Comerica shall either intervene in the Fox Case as a party in interest or have its counsel associate into the Fox Case as counsel for Ms. Gonzales. The Comerica/Fox Litigation will occur in any forum required to fully liquidate the Fox Claim and Fox Liens, including the State Court. The Comerica/Fox Litigation must result in dismissal or a complete resolution of the Fox Case that does not result in any monetary obligations owed to the Fox Firm by Ms. Gonzales. The Fox Claim must be fully liquidated, which may include some payment on the Fox Claim.

9.    <u>Trustee Cooperation</u>. The Trustee will cooperate and provide strategic assistance to Comerica in furtherance of the Comerica/Fox Litigation. To the extent necessary or substantially beneficial, the Trustee will join Comerica's pleadings and appear at hearings related to the Comerica/Fox Litigation.

10.   <u>Settlement Authority</u>. The Trustee shall retain all settlement authority with respect to the Comerica/Fox Litigation. If the Trustee and Comerica reach an impasse regarding settlement, then the Trustee may file a compromise motion and Comerica may oppose the motion.

11.   <u>Consent to Sale and Waiver of Claim of Exemption</u>. Debtor and Ms. Gonzales, in their individual capacities and as trustees of the Trust (collectively, the Gonzales Parties"), consent to the sale of the Properties under the terms set forth herein. The Gonzales Parties waive and release their respective rights, if any, to claim exemptions in the Properties, the proceeds from the sales of the Properties, or the carve-outs.

12.   <u>Payment from Escrow</u>: The Parties shall provide a copy of this Agreement to the escrow companies assisting with the sales of the Properties and shall instruct each respective escrow to pay all net proceeds to the Trustee directly from the escrow account opened for each respective sale. No funds shall be disbursed on account of the proposed carve-out, the Comerica Claim, or the Disputed Liens until the sales of both Properties close, the Disputed Liens are resolved, and the Trustee determines that sufficient funds are available for the proposed carve-outs to provide a net benefit to the Estate.

13.   <u>Trustee's Capacity</u>. The Trustee is signing this Agreement in his capacity solely as Chapter 7 trustee of the bankruptcy estate of Debtor. Nothing contained in this Agreement shall in any way impute liability to the Trustee, personally or as a member of any professional organization or anyone acting on his behalf.

14.   <u>Admissions</u>. If this Agreement fails to become effective for any reason or is otherwise not fully consummated, nothing in this Agreement shall bind the Parties or constitute an admission by the Parties.

15.   <u>Authority</u>. The signatories to this Agreement acknowledge that they have the authority and have obtained the requisite approval to enter this Agreement and to act on behalf of and bind any

entity on whose behalf they are signing.

16.     Representation by Counsel. The Parties further represent that they have been represented by legal counsel or have had the opportunity to seek advice of legal counsel during the course of the negotiations leading to the signing of this Agreement and that they have been advised by legal counsel with respect to the meaning of this Agreement and its legal effect.

17.     No Partnership or Joint Venture: Nothing in this Agreement is intended to be construed as or to create a partnership or joint venture between the parties.

18.     Brokerage Commissions and Expenses of Sale: The Parties acknowledge that brokerage commissions and costs of sale are administrative expenses subject to allowance by the court and to be paid before distributions are made to unsecured creditors. However, BofA has agreed to pay all brokerage commissions and costs of sale related to the sale of the Mar Vista Property.

19.     Integration. This Agreement constitutes an integrated written contract expressing the entire agreement of the Parties. Other than this Agreement there is no other agreement, written or oral, express or implied, between the Parties with respect to this subject matter.

20.     Modification or Amendment. This Agreement cannot be orally modified or amended. This Agreement may be modified or amended only by a written agreement signed by all Parties.

21.     Counterparts. This Agreement may be executed in counter-parts, including facsimile and email signatures, with the same effect as if all original signatures were placed on one document and all of which together shall be one and the same agreement.

22.     Binding Agreement. This Agreement is and shall be binding upon and shall inure to the benefit of the heirs, assigns, principals, and successors of all of the Parties.

23.     Interpretive Law. This Agreement is made and entered into in the State of California and shall, in all respects be interpreted, enforced, and governed by and under the laws of the State of California and the United States Bankruptcy Code as applied in the Ninth Circuit.

24.     Ambiguities. This Agreement has been reviewed by the Parties and their respective counsel. Further, the Parties have had full opportunity to negotiate the terms and conditions of this Agreement. Accordingly, the Parties expressly waive any common-law or statutory rule of construction that ambiguities should be construed against the drafter, and agree, covenant, and represent that the language in all parts of this Agreement shall be in all cases construed as a whole, according to its fair meaning.

25.     Miscellaneous Provisions.

a.     The Parties represent that they have read this Agreement and fully understand all of its terms; that they have conferred with or had the opportunity to confer with their attorneys about this Agreement; that they have executed this Agreement without coercion or duress of any kind; and that they understand any rights that they have or may have and sign this Agreement with full knowledge of any such rights.

b.    The Parties acknowledge that, other than as expressly set forth in this Agreement, no representations, statements or promises made by the other Party, or by their respective agents or attorneys, have been relied on in entering into this Agreement.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

c.      Each Party understands that the facts with respect to which this Agreement is entered into may be materially different from those the Parties now believe to be true. Each Party accepts and assumes this risk and agrees that this Agreement and the release in it shall remain in full force and effect and legally binding, notwithstanding the discovery or existence of any additional or different facts, or any claims with respect to those facts.

THE UNDERSIGNED HAVE READ THE FOREGOING AND ACCEPT AND AGREE TO THE PROVISIONS CONTAINED HEREIN, AND HEREBY EXECUTE IT, KNOWINGLY, VOLUNTARILY, AND WITH FULL UNDERSTANDING OF ITS CONSEQUENCES.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the dates indicated below.

DATED: January 2, 2019

By:_____
CHAPTER 7 TRUSTEE,
DAVID GOODRICH

DATED: January __, 2019

By: *(See next page for signature)*
BARRY COHEN, as Senior Vice President
Of COMERICA BANK

DATED: January __, 2019

By: *(See next page for signature)*
BENJAMIN GONZALES, as an
individual

DATED: January __, 2019

By: *(See next page for signature)*
GRETEL GONZALES, as an
individual

4822-2707-9810, v. 1

     c.    Each Party understands that the facts with respect to which this Agreement is entered into may be materially different from those the Parties now believe to be true. Each Party accepts and assumes this risk and agrees that this Agreement and the release in it shall remain in full force and effect and legally binding, notwithstanding the discovery or existence of any additional or different facts, or any claims with respect to those facts.

THE UNDERSIGNED HAVE READ THE FOREGOING AND ACCEPT AND AGREE TO THE PROVISIONS CONTAINED HEREIN, AND HEREBY EXECUTE IT, KNOWINGLY, VOLUNTARILY, AND WITH FULL UNDERSTANDING OF ITS CONSEQUENCES.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the dates indicated below.

DATED: January ___, 2019

By: _(Please see previous page for signature)_
    CHAPTER 7 TRUSTEE,
    DAVID GOODRICH

DATED: January 7, 2019

By: _____
    BARRY COHEN, as Senior Vice President
    Of COMERICA BANK

DATED: January ___, 2019

By: _(Please see next page for signature)_
    BENJAMIN GONZALES, as an
    individual

DATED: January ___, 2019

By: _(Please see next page for signature)_
    GRETEL GONZALES, as an
    individual

4822-2707-9810, v. 1

c.      Each Party understands that the facts with respect to which this Agreement is entered into may be materially different from those the Parties now believe to be true. Each Party accepts and assumes this risk and agrees that this Agreement and the release in it shall remain in full force and effect and legally binding, notwithstanding the discovery or existence of any additional or different facts, or any claims with respect to those facts.

THE UNDERSIGNED HAVE READ THE FOREGOING AND ACCEPT AND AGREE TO THE PROVISIONS CONTAINED HEREIN, AND HEREBY EXECUTE IT, KNOWINGLY, VOLUNTARILY, AND WITH FULL UNDERSTANDING OF ITS CONSEQUENCES.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the dates indicated below.

DATED:  January __, 2019

By: _____ *(See previous page for signature)*
CHAPTER 7 TRUSTEE,
DAVID GOODRICH

DATED:  January __, 2019

By: _____ *(See previous page for signature)*
BARRY COHEN, as Senior Vice President
Of COMERICA BANK

DATED:  January 3 , 2019

By: _____
BENJAMIN GONZALES, as an
individual

DATED:  January __, 2019

By: _____ *(Please see next page for signature)*
GRETEL GONZALES, as an
individual

4822-2707-9810, v. 1

     c.    Each Party understands that the facts with respect to which this Agreement is entered into may be materially different from those the Parties now believe to be true. Each Party accepts and assumes this risk and agrees that this Agreement and the release in it shall remain in full force and effect and legally binding, notwithstanding the discovery or existence of any additional or different facts, or any claims with respect to those facts.

     THE UNDERSIGNED HAVE READ THE FOREGOING AND ACCEPT AND AGREE TO THE PROVISIONS CONTAINED HEREIN, AND HEREBY EXECUTE IT, KNOWINGLY, VOLUNTARILY, AND WITH FULL UNDERSTANDING OF ITS CONSEQUENCES.

     IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the dates indicated below.

DATED: January ___, 2019

By: *(Please see previous page for signature)*
    CHAPTER 7 TRUSTEE,
    DAVID GOODRICH

DATED: January ___, 2019

By: *(Please see previous page for signature)*
    BARRY COHEN, as Senior Vice President
    Of COMERICA BANK

DATED: January ___, 2019

By: *(Please see previous page for signature)*
    BENJAMIN GONZALES, as an
    individual

DATED: January 3, 2019

By: _____
    GRETEL GONZALES, as an
    individual

4822-2707-9810, v. 1

DATED:  January 3, 2019

By: _____
BENJAMIN GONZALES, as Trustee of the The
Gonzales Family Trust of July 26, 1999

DATED:  January __, 2019

By: *(See next page for signature)*
_____
GRETEL GONZALES, as Trustee of the The
Gonzales Family Trust of July 26, 1999

APPROVED AS TO FORM:

MARSHACK HAYS LLP

By: _____
D. EDWARD HAYS
CHAD V. HAES
Attorneys for DAVID GOODRICH,
Chapter 7 Trustee for the bankruptcy estate of Benjamin Gonzales

HEMAR, ROUSSO & HEALD, LLP

By: *(See next page for signature)*
_____
JENNIFER WITHERELL CRASTZ
Attorneys for COMERICA BANK

LEWIS BRISBOIS BISGAARD & SMITH LLP

By: *(See next page for signature)*
_____
JASMIN YANG
Attorney for GRETEL GONZALES

WEINTRAUB & SELTH

By: _____
JAMES R. SELTH
Attorney for BENJAMIN GONZALES

4822-2707-9810, v. 1

DATED: January ___, 2019

By:_____
*(See previous page for signature)*
BENJAMIN GONZALES, as Trustee of the The
Gonzales Family Trust of July 26, 1999

DATED: January 3, 2019

By:_____
GRETEL GONZALES, as Trustee of the The
Gonzales Family Trust of July 26, 1999

APPROVED AS TO FORM:

MARSHACK HAYS LLP

By:_____
*(See previous page for signature)*
D. EDWARD HAYS
CHAD V. HAES
Attorneys for DAVID GOODRICH,
Chapter 7 Trustee for the bankruptcy estate of Benjamin Gonzales

HEMAR, ROUSSO & HEALD, LLP

By:_____
*(See next page for signature)*
JENNIFER WITHERELL CRASTZ
Attorneys for COMERICA BANK

LEWIS BRISBOIS BISGAARD & SMITH LLP

By:_____
JASMIN YANG
Attorney for GRETEL GONZALES

WEINTRAUB & SELTH

By:_____
*(See previous page for signature)*
JAMES R. SELTH
Attorney for BENJAMIN GONZALES

4822-2707-9810, v. 1

DATED:  January __, 2019

By: _(Please see previous page for signature)_
BENJAMIN GONZALES, as Trustee of the The
Gonzales Family Trust of July 26, 1999


DATED:  January __, 2019

By: _(Please see previous page for signature)_
GRETEL GONZALES, as Trustee of the The
Gonzales Family Trust of July 26, 1999


APPROVED AS TO FORM:

MARSHACK HAYS LLP

By: _(Please see previous page for signature)_
D. EDWARD HAYS
CHAD V. HAES
Attorneys for DAVID GOODRICH,
Chapter 7 Trustee for the bankruptcy estate of Benjamin Gonzales


HEMAR, ROUSSO & HEALD, LLP
By: _____
JENNIFER WITHERELL CRASTZ
Attorneys for COMERICA BANK


LEWIS BRISBOIS BISGAARD & SMITH LLP

By: _(Please see previous page for signature)_
JASMIN YANG
Attorney for GRETEL GONZALES


WEINTRAUB & SELTH

By: _(Please see previous page for signature)_
JAMES R. SELTH
Attorney for BENJAMIN GONZALES


4822-2707-9810, v. 1

# Exhibit 7

Dean C. Logan
Los Angeles County Registrar / Recorder
12400 Imperial Highway, Norwalk, CA
(800)201-8999

DOC ANALYSIS & RECORDING

NORWALK DEPARTMENT HEADQUARTER

Cashier: M. SIGUR



\* 2 0 1 9 0 7 0 5 3 2 7 0 1 4 1 \*

Friday, July 05, 2019 4:16 PM

Item(s)

| Fee | Qty | Total |
|-----|-----|-------|

Recorded Document Count = 1

20190651272

| | | |
|---|---|---|
| BASIC RECORDING FEE | 1 | $10.00 |
| D.A. SURCHARGE | 1 | $5.00 |
| SB2 Housing Fee | 1 | $75.00 |
| AB 1168 REDACTION FEE | 1 | $1.00 |
| Electronic Recording Fee | 1 | $1.00 |
| Micrographics Fee | 1 | $1.00 |
| Days of Operation Fee | 1 | $1.00 |
| Indexing | 1 | $1.00 |
| ADDITIONAL PAGE FEE (REVE | 13 | $13.00 |
| ADDITIONAL PAGE FEE (STAT | 13 | $13.00 |
| ADDITIONAL PAGE FEE (IMPR | 13 | $13.00 |

| Subtotal | = | $134.00 |
|----------|---|---------|

| Total | $134.00 |
|-------|---------|

Customer payment(s):

Check                              $134.00

Check List:
#146958                            $134.00

RECORDING REQUESTED BY

NAME: **MARSHACK HAYS LLP**

WHEN RECORDED MAIL TO:

NAME:   **CHANEL MENDOZA**

ADDRESS:   **870 ROOSEVELT AVENUE**

CITY / STATE / ZIP:   **IRVINE CA 92620**

(DOCUMENT WILL ONLY BE RETURNED TO NAME & ADDRESS IDENTIFIED ABOVE)

**COP'**   07/05/2019

Has not beer
Originals will ~~~~
has been completed.
*20190651272*
LOS ANGELES COUNTY REGISTRAR-RECORDER

(SPACE ABOVE FOR RECORDER'S USE)

## WITHDRAWAL OF ABSTRACT OF JUDGEMENT AND RELEASE OF LIEN
### (DOCUMENT TITLE)

SEPARATE PAGE, PURSUANT TO CA. GOV'T. CODE 27361.6

Exhibit "7"
Page 94

UNITED STATES BANKRUPTCY COURT - CENTRAL DISTRICT OF CALIFORNIA



NKRUPTCY COURT - CENTRAL DISTRICT OF CALIFORNIA

# UNITED STATES BANKRUPTCY COURT
## Central District of California

I hereby attest and certify that on **July 3, 2019** the attached reproduction(s), containing ___12___ pages, is a full, true and correct copy of the complete document entitled: **WITHDRAWAL OF ADSTRACT OF JUDGMENT AND RELEASE OF LIEN..**

Case #:    **2:17-BK-23812-BR**                Doc #:    167

which includes:   ☐ Exhibits   ☒ Attachments

on file in my office and in my legal custody at the marked location:

☒ 255 E. Temple Street, Suite 100       ☐ 3420 Twelfth Street, Suite 125
   Los Angeles, CA 90012                    Riverside, CA 92501-3819

☐ 411 West 4th Street, Suite 2074       ☐ 1415 State Street
   Santa Ana, CA 92701-4593                Santa Barbara, CA 93101-2511

☐ 21041 Burbank Boulevard
   Woodland Hills, CA 91367

                          **KATHLEEN J. CAMPBELL**
                          **Clerk of Court**

                          By: _____
                                    Deputy Clerk

## THIS <u>CERTIFICATION</u> IS VALID ONLY WITH THE UNITED STATES BANKRUPTCY COURT SEAL.

UNITED STATES BANKRUPTCY COURT - CENTRAL DISTRICT OF CALIFORNIA

Revised August 2010

1  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
2  CHAD V. HAES, #267221
   chaes@marshackhays.com
3  MARSHACK HAYS LLP
   870 Roosevelt
4  Irvine, California 92620
   Telephone: (949) 333-7777
5  Facsimile: (949) 333-7778

6  Attorneys for Chapter 7 Trustee,
   DAVID M. GOODRICH
7

8            UNITED STATES BANKRUPTCY COURT

9      CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

10  In re                            Case No. 2:17-bk-23812-BR

11  BENJAMIN W. GONZALES,            Chapter 7

12            Debtor.                WITHDRAWAL OF ABSTRACT OF
                                     JUDGMENT AND RELEASE OF LIEN
13
                                     [NO HEARING REQUIRED]
14

15      Gretel Gonzales ("Ms. Gonzales") recorded an abstract of judgment on February 19, 2016, as

16  Document Number 20160183748 ("Abstract"). The Abstract allegedly results in liens ("Liens") against

17  the real properties commonly known as:

18      • 14930 Mar Vista Street, Whittier, California 90605 (APN 8149-030-005); and

19      • 14663 Carnell Street, Whittier, California 90603 (APN 8150-017-016),

20  and legally described in the legal descriptions attached as **Exhibit 1.**

21      The Abstract was recorded pursuant to a spousal support judgment against Chapter 7 debtor,

22  Benjamin W. Gonzales, entered on January 12, 2016. A true and correct copy of the Abstract is attached

23  as **Exhibit 2.**

24      On January 3, 2019, Ms. Gonzales and David M. Goodrich, in his capacity as Chapter 7 Trustee

25  for the bankruptcy estate of Benjamin W. Gonzales, among others, entered into a carve-out agreement

26  and release ("Agreement") whereby Ms. Gonzales agreed to, *inter alia*, withdraw the Abstract and

27  release the Liens in their entirety.

28  ///

1      12.     On August 9, 2016, the Fox Firm recorded a deed of trust against the Mar Vista Property

2    at the Los Angeles County Recorder's Office as instrument no. 16-940681 to secure an alleged debt in the

3    amount of $250,000.

4      13.     On February 27, 2017, the Fox Firm recorded a deed of trust against the Carnell Property

5    at the Los Angeles County Recorder's Office as instrument no. 17-0231102 to secure an alleged debt of

6    Ms. Gonzales in the amount of $250,000.

7      14.     On November 9, 2017, the Fox Firm filed a civil lawsuit against me commencing Civil

8    Case No. BC682953 ("Fox Case"). The complaint commencing the Fox Case seeks damages in the

9    amount of $763,330.48 ("Fox Damages").

10     15.     On January 5, 2018, I filed an answer disputing the Fox Damages and a cross-complaint

11   against the Fox Firm. The trial in the Fox Case is currently set for March 2019.

12     16.     As of October 9, 2018, the Fox Firm alleges that it is owed attorneys' fees and interest

13   in the total amount of $837,783.23 ("Fox Claim"). The Fox Claim is allegedly secured by the

14   Properties pursuant to the Fox Liens.

15     17.     A Schafer & Sons piano was located at the Mar Vista Property ("Piano") when I

16   moved out. Recently, police reported that the Piano was stolen from the Mar Vista Property. The

17   Piano holds substantial sentimental value to my family. The approximate fair market value of the

18   Piano is $3,000.

19        I declare under penalty of perjury that the foregoing is true and correct. Executed on

20   01·15·19

21                                                              GRETEL GONZALES

22

23

24

25

26

27

28

1        Pursuant to the Agreement, Ms. Gonzales hereby withdraws the Abstract and releases the Liens

2    in their entirety.

3

4    Dated: January 15th, 2019

5

6                                          GRETEL GONZALES

7

8    A notary public or other officer completing this certificate verifies only the identity of the

9    individual who signed the document to which this certificate is attached, and not the

10    truthfulness, accuracy, or validity of that document.

11

12    STATE OF CALIFORNIA        )

13    COUNTY OF LOS ANGELES   )

14    On January 15th, 2019, before me, _John Restrepo_, Notary Public, personally appeared
15    _Gretel Gonzales_, who proved to me on the basis of satisfactory evidence to be the
     person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she/they
16    executed the same in his/her/their authorized capacity, and that by his/her/their signature on the
     instrument the person, or the entity upon behalf of which the person acted, executed the instrument.
17

18    I certify UNDER PENALTY OF PERJURY under the laws of the State of California that the foregoing
     paragraph is true and correct.

19

20    WITNESS my hand and official seal.

21                                 Signature

22    (seal)

23

24

25

26

27

28

# Exhibit "1"

Order Number: O-SA-5647521
Page Number: 7

### LEGAL DESCRIPTION

Real property in the City of Whittier, County of Los Angeles, State of California, described as follows:

THE NORTHWESTERLY 135 FEET OF LOT 13 OF TRACT 11571, IN THE CITY OF WHITTIER, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 243 PAGES 27 TO 29 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM THE SOUTHWESTERLY 185 FEET MEASURED ALONG THE NORTHWESTERLY LINE OF SAID LOT.

APN: 8149-030-005

*First American Title*
Page 7 of 15

**Exhibit "1"**
**Page 4**

Order Number: O-SA-5665854
Page Number: 6

## LEGAL DESCRIPTION

Real property in the City of Whittier, County of Los Angeles, State of California, described as follows:

LOT 151 OF TRACT NO. 16722, IN THE CITY OF WHITTIER, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 389, PAGE(S) 29 TO 31 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 8150-017-016

*First American Title*
Page 6 of 14

**Exhibit "1"**
**Page 5**

# Exhibit "2"



**This page is part of your document - DO NOT DISCARD**





# 20160183748



**Pages:**
**0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**02/19/16 AT 01:36PM**

| | |
|---|---|
| FEES: | 30.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 30.00 |



**L E A D S H E E T**



201602193310025

00011735724



007391539

**SEQ:**
**01**

DAR - Counter (Upfront Scan)



**THIS FORM IS NOT TO BE DUPLICATED**

Description: Los Angeles,CA Document - Year.DocID 2016.183748 Page: 1 of 3
Order: CA0310-18015973 Comment:

**Exhibit "2"**
**Page 6**

RECORDING REQUESTED BY
The Law Firm Of Fox & Fox
WHEN RECORDED MAIL TO
NAME   Frank O. Fox
   C/O Law Firm Of Fox & Fox
MAILING
   4262 Wilshire Bl. 3rd Fln, LA, Ca
                              90010
CITY, STATE, ZIP CODE
   LA, CA  90010

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

**TITLE**

Abstract Of Support Judgement

Description: Los Angeles,CA Document - Year.DocID 2016.183748 Page: 2 of 3
Order: CA0310-18015973 Comment:

**FL-480**

ATTORNEY OR PARTY WITHOUT ATTORNEY (name, address, and State Bar number):
After recording, return to:

THE LAW FIRM OF FOX AND FOX
FRANK O. FOX - STATE BAR NO. 117780
4262 WILSHIRE BOULEVARD, THIRD FLOOR
LOS ANGELES, CA 90010-3505

TEL NO.: (323) 937-4422   FAX NO. (optional): (323) 937-
E-MAIL ADDRESS (optional): FRANK@FOXANDFOX.COM

[X] ATTORNEY   [ ] JUDGMENT   [ ] ASSIGNEE
FOR GRETEL      CREDITOR         OF RECORD

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 NORTH HILL STREET
MAILING ADDRESS:
CITY AND ZIP CODE: LOS ANGELES, 90012
BRANCH NAME: CENTRAL DISTRICT

**RECEIVED – CENTRAL
FAMILY LAW CLERK'S OFFICE**

**FEB 02 2016**

*(stamped text overlay)* Sherri R. Carter, Executive Officer/Clerk
By: Irma Labry, Deputy

FOR RECORDER'S USE ONLY

PETITIONER/PLAINTIFF: GRETEL A. GONZALES

RESPONDENT/DEFENDANT: BENJAMIN GONZALES

CASE NUMBER:
BD 616 423
FOR COURT USE ONLY

**ABSTRACT OF SUPPORT JUDGMENT**

1. The [X] original judgment creditor   [ ] assignee of record
applies for an abstract of a support judgment and represents the following:
   a. Judgment debtor's
      name and last known address
      ┌─────────────────────────────┐
      WILLIAM BENJAMIN GONZALES
      14930 MAR VISTA STREET
      WHITTIER, CA 90605
      └─────────────────────────────┘

   b. Driver's license no. and state:                    [X] Unknown
   c. Social security number [last four digits]: 1518    [ ] Unknown
   d. Birthdate: FEBRUARY 20, 1962                        [ ] Unknown
   Date: JANUARY 29, 2016

   FRANK O. FOX-THE LAW FIRM OF FOX AND FOX
   (TYPE OR PRINT NAME)                    (SIGNATURE OF APPLICANT OR ATTORNEY)

2. I CERTIFY that the judgment entered in this action contains an order for payment of spousal, family, or child support.
3. Judgment creditor (name): GRETEL GONZALES
   whose address appears on this form above the court's name.
4. [ ] The support is ordered to be paid to the following county officer (name and address):

5. Judgment debtor (full name as it appears in judgment):
   WILLIAM BENJAMIN GONZALES
6. a. A judgment was entered on (date): JANUARY 12, 2016
   b. Renewal was entered on (date):
   c. Renewal was entered on (date):
7. [ ] An execution lien is endorsed on the judgment as follows:
   a. Amount: $
   b. In favor of (name and address):

8. A stay of enforcement has
   a. [X] not been ordered by the court.
   b. [ ] been ordered by the court effective until (date):
9. [ ] This is an installment judgment.

*(SEAL)*
This abstract issued on (date): FEB 02 2016
Clerk, by _____ SHERRI R. CARTER, Deputy

**ABSTRACT OF SUPPORT JUDGMENT**
Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
FL-480 [Rev. January 1, 2015]

Code of Civil Procedure, §§ 488.480, 674, 697.320, 700.190
www.courts.ca.gov

Description: Los Angeles,CA Document - Year.DocID 2016.183748 Page: 3 of 3
Order: CA0310-18015973 Comment:

**Exhibit "2"
Page 8**

Exhibit "7"
Page 105

Case 2:17-bk-23812-BR   Doc 167   Filed 07/02/19   Entered 07/02/19 19:09:53   Desc
Main Document    Page 11 of 12

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled (*specify*): **WITHDRAWAL OF ABSTRACT OF JUDGMENT
AND RELEASE OF LIEN** will be served or was served (a) on the judge in chambers in the form and manner required by
LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
**July 2, 2019**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

### 2. SERVED BY UNITED STATES MAIL:

On **July 2, 2019**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or
adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class,
postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will
be completed no later than 24 hours after the document is filed.

**DEBTOR**
BENJAMIN W GONZALES
P.O. BOX 1530
LOS ANGELES, CA 90001-0530

**ATTORNEYS FOR CREDITOR THE LAW
FIRM OF FOX AND FOX**
FRANK O. FOX
THE LAW FIRM OF FOX AND FOX
4262 WILSHIRE BLVD., THIRD FLOOR
LOS ANGELES, CA 90010-3505

☐ Service information continued on attached page

### 3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method
for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **July 2, 2019**, I served the following
persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service
method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal
delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
**VIA PERSONAL DELIVERY**
PRESIDING JUDGE'S COPY, Bankruptcy Judge Barry Russell
United States Bankruptcy Court, Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1660 / Courtroom 1668, Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 2, 2019 | Chanel Mendoza | /s/ Chanel Mendoza |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

June 2012
4843-0409-8694, v. 1

Exhibit "7"
Page 106

1. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>: CONT:
- CREDITOR BMW BANK OF NORTH AMERICA, C/O AIS PORTFOLIO SERVICES, LP: Bhagwati Barot   bbarot@aissolution.com
- **ATTORNEY FOR COMERICA BANK:** Jennifer Witherell Crastz   jcrastz@hrhlaw.com
- **CREDITOR COMERICA BANK:** Christopher D Crowell   ccrowell@hrhlaw.com
- INTERESTED PARTY: Howard M Ehrenberg   hehrenberg@sulmeyerlaw.com, hehrenberg@ecf.inforuptcy.com;mviramontes@ecf.inforuptcy.com
- INTERESTED PARTY: Andy J Epstein   taxcpaesq@gmail.com
- TRUSTEE: David M Goodrich (TR)   dgoodrich@wgllp.com, c143@ecfcbis.com;dgoodrich11@ecf.epiqsystems.com;lrobles@wgllp.com
- **ATTORNEY FOR TRUSTEE:** Chad V Haes   chaes@marshackhays.com, 8649808420@filings.docketbird.com
- **ATTORNEY FOR TRUSTEE:** D Edward Hays   ehays@marshackhays.com, 8649808420@filings.docketbird.com
- Sam S Leslie   admin@leaaccountancy.com
- **ATTORNEY FOR TRUSTEE:** Laila Masud   lmasud@marshackhays.com, 8649808420@filings.docketbird.com
- **ATTORNEY FOR DEBTOR AND INTERESTED PARTY:** James R Selth   jim@wsrlaw.net, jselth@yahoo.com;brian@wsrlaw.net;vinnet@ecf.inforuptcy.com
- INTERESTED PARTY: Valerie Smith   claims@recoverycorp.com
- **U.S. TRUSTEE:** United States Trustee (LA)   ustpregion16.la.ecf@usdoj.gov
- **DEBTOR BENJAMIN W. GONZALES:** Daniel J Weintraub   dan@wsrlaw.net, vinnet@ecf.inforuptcy.com;brian@wsrlaw.net
- **INTERESTED PARTY AND CREDITOR BONIAL & ASSOCIATES, P.C.:** Gilbert R Yabes   ecfcacb@aldridgepite.com, GRY@ecf.inforuptcy.com;gyabes@aldridgepite.com
- **CREDITOR GRETEL GONZALES:** Jasmin Yang   Jasmin.Yang@lewisbrisbois.com, Cheryl.Scranton@lewisbrisbois.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

June 2012
4843-0409-8894, v. 1

**This page is part of your document - DO NOT DISCARD**



# 20190651272



**Pages:
0015**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**07/05/19 AT 04:16PM**

| | |
|---|---:|
| **FEES:** | 59.00 |
| **TAXES:** | 0.00 |
| **OTHER:** | 0.00 |
| **SB2:** | 75.00 |
| **PAID:** | 134.00 |



**LEADSHEET**



**201907053270141**

**00016831120**



**009945389**

**SEQ:
01**

**DAR - Courier (Upfront Scan)**

**THIS FORM IS NOT TO BE DUPLICATED**

RECORDING REQUESTED BY

NAME: **MARSHACK HAYS LLP**

WHEN RECORDED MAIL TO:

NAME:    **CHANEL MENDOZA**

ADDRESS:    **870 ROOSEVELT AVENUE**

CITY / STATE / ZIP:    **IRVINE CA 92620**

(DOCUMENT WILL ONLY BE RETURNED TO NAME & ADDRESS IDENTIFIED ABOVE)


07/05/2019
*20190651272*

(SPACE ABOVE FOR RECORDER'S USE)

### WITHDRAWAL OF ABSTRACT OF JUDGEMENT AND RELEASE OF LIEN
### (DOCUMENT TITLE)

SEPARATE PAGE, PURSUANT TO CA. GOV'T. CODE 27361.6



# UNITED STATES BANKRUPTCY COURT
## Central District of California

I hereby attest and certify that on **July 3, 2019** the attached reproduction(s),
containing ___12___ pages, is a full, true and correct copy of the complete document
entitled:**WITHDRAWAL OF ADSTRACT OF JUDGMENT AND RELEASE OF
LIEN..**

Case #: **2:17-BK-23812-BR**          Doc #: **167**

which includes:  ☐ Exhibits   ☐ Attachments

on file in my office and in my legal custody at the marked location:

☑ 255 E. Temple Street, Suite 100          ☐ 3420 Twelfth Street, Suite 125
    Los Angeles, CA  90012              Riverside, CA  92501-3819

☐ 411 West 4th Street, Suite 2074          ☐ 1415 State Street
    Santa Ana, CA 92701-4593              Santa Barbara, CA  93101-2511

☐ 21041 Burbank Boulevard
    Woodland Hills, CA  91367

                    **KATHLEEN J. CAMPBELL**
                    **Clerk of Court**

                    By: _____
                                   Deputy Clerk

## THIS <u>CERTIFICATION</u> IS VALID ONLY WITH THE UNITED STATES BANKRUPTCY COURT SEAL.

*Revised August 2010*

1   D. EDWARD HAYS, #162507
ehays@marshackhays.com
2   CHAD V. HAES, #267221
chaes@marshackhays.com
3   MARSHACK HAYS LLP
870 Roosevelt
4   Irvine, California 92620
Telephone: (949) 333-7777
5   Facsimile: (949) 333-7778

6   Attorneys for Chapter 7 Trustee,
DAVID M. GOODRICH

7

8                    UNITED STATES BANKRUPTCY COURT

9           CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| 10 | In re | Case No. 2:17-bk-23812-BR |
|---|---|---|
| 11 | BENJAMIN W. GONZALES, | Chapter 7 |
| 12 | Debtor. | WITHDRAWAL OF ABSTRACT OF JUDGMENT AND RELEASE OF LIEN |
| 13 | | [NO HEARING REQUIRED] |
| 14 | | |

15       Gretel Gonzales ("Ms. Gonzales") recorded an abstract of judgment on February 19, 2016, as

16   Document Number 20160183748 ("Abstract"). The Abstract allegedly results in liens ("Liens") against

17   the real properties commonly known as:

18     • 14930 Mar Vista Street, Whittier, California 90605 (APN 8149-030-005); and

19     • 14663 Carnell Street, Whittier, California 90603 (APN 8150-017-016),

20   and legally described in the legal descriptions attached as **Exhibit 1**.

21       The Abstract was recorded pursuant to a spousal support judgment against Chapter 7 debtor,

22   Benjamin W. Gonzales, entered on January 12, 2016. A true and correct copy of the Abstract is attached

23   as **Exhibit 2**.

24       On January 3, 2019, Ms. Gonzales and David M. Goodrich, in his capacity as Chapter 7 Trustee

25   for the bankruptcy estate of Benjamin W. Gonzales, among others, entered into a carve-out agreement

26   and release ("Agreement") whereby Ms. Gonzales agreed to, *inter alia*, withdraw the Abstract and

27   release the Liens in their entirety.

28   / / /

1    12.    On August 9, 2016, the Fox Firm recorded a deed of trust against the Mar Vista Property

2    at the Los Angeles County Recorder's Office as instrument no. 16-940681 to secure an alleged debt in the

3    amount of $250,000.

4    13.    On February 27, 2017, the Fox Firm recorded a deed of trust against the Carnell Property

5    at the Los Angeles County Recorder's Office as instrument no. 17-0231102 to secure an alleged debt of

6    Ms. Gonzales in the amount of $250,000.

7    14.    On November 9, 2017, the Fox Firm filed a civil lawsuit against me commencing Civil

8    Case No. BC682953 ("Fox Case"). The complaint commencing the Fox Case seeks damages in the

9    amount of $763,330.48 ("Fox Damages").

10    15.    On January 5, 2018, I filed an answer disputing the Fox Damages and a cross-complaint

11    against the Fox Firm. The trial in the Fox Case is currently set for March 2019.

12    16.    As of October 9, 2018, the Fox Firm alleges that it is owed attorneys' fees and interest

13    in the total amount of $837,783.23 ("Fox Claim"). The Fox Claim is allegedly secured by the

14    Properties pursuant to the Fox Liens.

15    17.    A Schafer & Sons piano was located at the Mar Vista Property ("Piano") when I

16    moved out. Recently, police reported that the Piano was stolen from the Mar Vista Property. The

17    Piano holds substantial sentimental value to my family. The approximate fair market value of the

18    Piano is $3,000.

19    I declare under penalty of perjury that the foregoing is true and correct. Executed on

20    01.15.19

21    GRETEL GONZALES

22

23

24

25

26

27

28

1    Pursuant to the Agreement, Ms. Gonzales hereby withdraws the Abstract and releases the Liens

2    in their entirety.

3

4    Dated: January 15th, 2019

5

6                            GRETEL GONZALES

7

8    A notary public or other officer completing this certificate verifies only the identity of the

9    individual who signed the document to which this certificate is attached, and not the

10    truthfulness, accuracy, or validity of that document.

11

12    STATE OF CALIFORNIA      )

13    COUNTY OF LOS ANGELES  )

14    On January 15th, 2019, before me, John Restrepo , Notary Public, personally appeared

15    Gretel Gonzales , who proved to me on the basis of satisfactory evidence to be the
person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she/they

16    executed the same in his/her/their authorized capacity, and that by his/her/their signature on the
instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

17

18    I certify UNDER PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

19

20    WITNESS my hand and official seal.

21                       Signature

22    (seal)

23

24

25

26

27

28

# Exhibit "1"

Case 2:17-bk-23812-BR   Doc 167   Filed 07/02/19   Entered 07/02/19 19:09:53   Desc
Main Document   Page 5 of 12

Order Number: **O-SA-5647521**
Page Number: 7

### LEGAL DESCRIPTION

Real property in the City of Whittier, County of Los Angeles, State of California, described as follows:

THE NORTHWESTERLY 135 FEET OF LOT 13 OF TRACT 11571, IN THE CITY OF WHITTIER, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 243 PAGES 27 TO 29 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM THE SOUTHWESTERLY 185 FEET MEASURED ALONG THE NORTHWESTERLY LINE OF SAID LOT.

APN: 8149-030-005

*First American Title*
Page 7 of 15

Exhibit "1"
Page 4

Order Number: **O-SA-5665854**
Page Number: 6

### LEGAL DESCRIPTION

Real property in the City of Whittier, County of Los Angeles, State of California, described as follows:

LOT 151 OF TRACT NO. 16722, IN THE CITY OF WHITTIER, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 389, PAGE(S) 29 TO 31 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 8150-017-016

*First American Title*
Page 6 of 14

**Exhibit "1"**
**Page 5**

# Exhibit "2"

Case 2:17-bk-23812-BR   Doc 167   Filed 07/02/19   Entered 07/02/19 19:09:53   Desc
Main Document   Page 8 of 12

**This page is part of your document - DO NOT DISCARD**



# 20160183748



Pages:
0003

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**02/19/16 AT 01:36PM**

| | |
|---|---|
| FEES: | 30.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 30.00 |



**LEADSHEET**



201602193310025

00011735724



007391539

**SEQ:
01**

**DAR - Counter (Upfront Scan)**



**THIS FORM IS NOT TO BE DUPLICATED**

*Description: Los Angeles,CA Document - Year.DocID 2016.183748 Page: 1 of 3
Order: CA0310-18015973 Comment:*

Exhibit "2"
Page 6

**RECORDING REQUESTED BY**
The Law Firm Of Fox & Fox
**WHEN RECORDED MAIL TO**
NAME Frank O. Fox
C/O Law Firm Of Fox & Fox
MAILING 9262 Wilshire Bl. 3rd Fln, LA, Ca
90010
**CITY, STATE, ZIP CODE**
LA., CA. 90010

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

**TITLE**

Abstract Of Support Judgement

Description: Los Angeles,CA Document - Year.DocID 2016.183748 Page: 2 of 3
Order: CA0310-18015973 Comment:

Case 2:17-bk-23812-BR    Doc 167    Filed 07/02/19    Entered 07/02/19 19:09:53    Desc
Main Document    Page 10 of 12

**FL-480**

ATTORNEY OR PARTY WITHOUT ATTORNEY (name, address, and State Bar number):
After recording, return to:

THE LAW FIRM OF FOX AND FOX
FRANK O. FOX - STATE BAR NO. 117780
4262 WILSHIRE BOULEVARD, THIRD FLOOR
LOS ANGELES, CA 90010-3505

TEL NO: (323) 937-4422 FAX NO. (optional): (323) 937
E-MAIL ADDRESS (optional): FRANK@FOXANDFOX.COM

[X] ATTORNEY  [ ] JUDGMENT  [ ] ASSIGNEE
FOR GRETEL    CREDITOR    OF RECORD

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 NORTH HILL STREET
MAILING ADDRESS:
CITY AND ZIP CODE: LOS ANGELES, 90012
BRANCH NAME: CENTRAL DISTRICT

RECEIVED – CENTRAL
FAMILY LAW CLERK'S OFFICE

FEB 02 2016

FOR RECORDER'S USE ONLY

PETITIONER/PLAINTIFF: GRETEL A. GONZALES

RESPONDENT/DEFENDANT: BENJAMIN GONZALES

CASE NUMBER:
BD 616 423
FOR COURT USE ONLY

**ABSTRACT OF SUPPORT JUDGMENT**

1. The [X] original judgment creditor    [ ] assignee of record
   applies for an abstract of a support judgment and represents the following:
   a. Judgment debtor's
      name and last known address
      [ WILLIAM BENJAMIN GONZALES
        14930 MAR VISTA STREET
        WHITTIER, CA 90605 ]

   b. Driver's license no. and state:                      [X] Unknown
   c. Social security number [last four digits]: 1518      [ ] Unknown
   d. Birthdate: FEBRUARY 20, 1962                         [ ] Unknown
   Date: JANUARY 28, 2016
   FRANK O. FOX-THE LAW FIRM OF FOX AND FOX
   (TYPE OR PRINT NAME)                                    (SIGNATURE OF APPLICANT OR ATTORNEY)

2. I CERTIFY that the judgment entered in this action contains
   an order for payment of spousal, family, or child support.

3. Judgment creditor (name): GRETEL GONZALES

   whose address appears on this form above the court's name.

4. [ ] The support is ordered to be paid to the following county
       officer (name and address):

5. Judgment debtor (full name as it appears in judgment):
   WILLIAM BENJAMIN GONZALES

6. a. A judgment was entered on (date): JANUARY 12, 2016
   b. Renewal was entered on (date):
   c. Renewal was entered on (date):

7. [ ] An execution lien is endorsed on the judgment as follows:
   a. Amount: $
   b. In favor of (name and address):

8. A stay of enforcement has
   a. [X] not been ordered by the court.
   b. [ ] been ordered by the court effective until
          (date):

9. [ ] This is an installment judgment.
   SHERRI R. CARTER
   Clerk, by _____, Deputy

This abstract issued on
(date): FEB 02 2016

**ABSTRACT OF SUPPORT JUDGMENT**

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
FL-480 [Rev. January 1, 2016]

Code of Civil Procedure, §§ 488.480, 674,
697.320, 700.190
www.courts.ca.gov

Description: Los Angeles,CA Document - Year.DocID 2016.183748 Page: 3 of 3
Order: CA0310-18015973 Comment:

Exhibit "2"
Page 8

Case 2:17-bk-23812-BR    Doc 167    Filed 07/02/19    Entered 07/02/19 19:09:53    Desc
Main Document    Page 11 of 12

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled (specify): **WITHDRAWAL OF ABSTRACT OF JUDGMENT AND RELEASE OF LIEN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) **July 2, 2019**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On **July 2, 2019**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| | |
|---|---|
| **DEBTOR** | **ATTORNEYS FOR CREDITOR THE LAW** |
| BENJAMIN W GONZALES | **FIRM OF FOX AND FOX** |
| P.O. BOX 1530 | FRANK O. FOX |
| LOS ANGELES, CA 90001-0530 | THE LAW FIRM OF FOX AND FOX |
| | 4262 WILSHIRE BLVD., THIRD FLOOR |
| | LOS ANGELES, CA 90010--3505 |

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **July 2, 2019**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
**VIA PERSONAL DELIVERY**
PRESIDING JUDGE'S COPY, Bankruptcy Judge Barry Russell
United States Bankruptcy Court, Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1660 / Courtroom 1668, Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| July 2, 2019 | Chanel Mendoza | /s/ Chanel Mendoza |
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

June 2012
4843-0409-8694, v. 1

Case 2:17-bk-23812-BR   Doc 167   Filed 07/02/19   Entered 07/02/19 19:09:53   Desc
Main Document    Page 12 of 12

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  CON'T:
- CREDITOR BMW BANK OF NORTH AMERICA, C/O AIS PORTFOLIO SERVICES, LP: Bhagwati Barot   bbarot@aissolution.com
- **ATTORNEY FOR COMERICA BANK:** Jennifer Witherell Crastz   jcrastz@hrhlaw.com
- CREDITOR COMERICA BANK: Christopher D Crowell   ccrowell@hrhlaw.com
- INTERESTED PARTY: Howard M Ehrenberg   hehrenberg@sulmeyerlaw.com, hehrenberg@ecf.inforuptcy.com;mviramontes@ecf.inforuptcy.com
- INTERESTED PARTY: Andy J Epstein   taxcpaesq@gmail.com
- **TRUSTEE:** David M Goodrich (TR)   dgoodrich@wgllp.com, c143@ecfcbis.com;dgoodrich11@ecf.epiqsystems.com;lrobles@wgllp.com
- **ATTORNEY FOR TRUSTEE:** Chad V Haes   chaes@marshackhays.com, 8649808420@filings.docketbird.com
- **ATTORNEY FOR TRUSTEE:** D Edward Hays   ehays@marshackhays.com, 8649808420@filings.docketbird.com
- Sam S Leslie   admin@leaaccountancy.com
- **ATTORNEY FOR TRUSTEE:** Laila Masud   lmasud@marshackhays.com, 8649808420@filings.docketbird.com
- **ATTORNEY FOR DEBTOR AND INTERESTED PARTY:** James R Selth   jim@wsrlaw.net, jselth@yahoo.com;brian@wsrlaw.net;vinnet@ecf.inforuptcy.com
- INTERESTED PARTY: Valerie Smith   claims@recoverycorp.com
- **U.S. TRUSTEE:** United States Trustee (LA)   ustpregion16.la.ecf@usdoj.gov
- **DEBTOR BENJAMIN W. GONZALES:** Daniel J Weintraub   dan@wsrlaw.net, vinnet@ecf.inforuptcy.com;brian@wsrlaw.net
- **INTERESTED PARTY AND CREDITOR BONIAL & ASSOCIATES, P.C.:** Gilbert R Yabes   ecfcacb@aldridgepite.com, GRY@ecf.inforuptcy.com;gyabes@aldridgepite.com
- **CREDITOR GRETEL GONZALES:** Jasmin Yang   Jasmin.Yang@lewisbrisbois.com, Cheryl.Scranton@lewisbrisbois.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

June 2012
4843-0409-8694, v. 1

Exhibit "7"
Page 122

Exhibit 8

(            (

## SETTLEMENT, RELEASE AND INDEMNIFICATION AGREEMENT

IT IS HEREBY STIPULATED by and between THE LAW FIRM OF
FOX AND FOX, A GENERAL PARTNERSHIP COMPOSED OF FRANK O. FOX AND
CLAIRE S. FOX ("FOX") and GRETEL GONZALES ("GRETEL") as both an
individual and co-trustee of the Gonzales Family Trust, and
their respective counsel in consideration of the promises made
herein, as hereinafter set forth, effective as of October 3 1,
2019.

### NATURE AND EFFECT OF AGREEMENT

1.    This agreement consists of a compromise and
settlement by each party of that party's claims against the other
party or parties.  This facts herein set forth are for purposes of
Settlement and may be used as evidence in the pending bankruptcy
proceeding, filed by William Benjamin Gonzales in the United
States Bankruptcy Court proceeding, in Central District of
California, case number 2:17-bk-23812-BR

### NATURE AND STATUS OF DISPUTE

The following facts, set forth in paragraphs 2 through 20,
inclusive, below, are acknowledged to be accurate,:

(                              (

2.    On February 24, 2015, FOX and GRETEL willingly
and voluntarily entered into a Retainer Agreement, pursuant to
which FOX agreed to represent GRETEL in <u>Los Angeles Superior
Court</u> case number.BD 616 423 (<u>Gretel Gonzales v. William
Benjamin Gonzales</u>);

3.    On March 9, 2015, GRETEL willingly and voluntarily
signed a Note, letter, and two Deeds Of Trust, payable to FOX,
in the sum of $150,000.00, which were secured by the real
properties, located at 14930 Mar Vista Street, Whittier,
California 90605 and 14663 Carnell Street, Whittier, CA 90603,
after having been advised to contact an independent attorney and
after having had sufficient time to consider and read the
documents.  The Deed Of Trust was recorded on the real property,
located at 14930 Mar Vista Street, Whittier, California 90605,
on June 30, 2015.  The Deed Of Trust was recorded on the real
property, located at 14663 Carnell Street, Whittier, CA 90603,
on August 10, 2015.  Notice of a Family Law Attorney Real
Property Lien was given to William Benjamin Gonzales, on March
25, 2015.

4.    On February 19, 2016, an Abstract Of Support was
recorded in Los Angeles County, reflecting the spousal support
ordered payable to GRETEL from her spouse, W. Benjamin Gonzales.

foxvgonzales/letters/2010/settlement-1of1

(                                    (

5.   On July 25, 2016, GRETEL willingly and voluntarily signed a Note, letter, and Deed Of Trust, payable to FOX, in the additional sum of $250,000.00, which was secured by the real property, located at 14930 Mar Vista Street, Whittier, California 90605, after having been advised to contact an independent attorney and after having had sufficient time to consider and read the documents.  The Deed Of Trust was recorded on August 9, 2016, after Notice of a Family Law Attorney Real Property Lien was given to Michael L. Whitmarsh, the attorney for W. Benjamin Gonzales, on July 26, 2016.

6.   On October 6, 2016, FOX and GRETEL entered into a Retainer Agreement, pursuant to which FOX agreed to represent GRETEL in Los Angeles Superior Court case number BC 635 532 (Gretel Gonzales v. C-PAK Seafoods, Inc.);

7.   On January 5, 2017, FOX and GRETEL entered into a Retainer Agreement, pursuant to which FOX agreed to represent GRETEL in Los Angeles Superior Court case number BC 645 400 (Gretel Gonzales v. CPAK Seafoods, Inc.);

8.   On January 5, 2017, FOX and GRETEL entered into a Retainer Agreement, pursuant to which FOX agreed to represent GRETEL in Los Angeles Superior Court case number BC 640 599

(                                        (

(Comerica Bank vs. C-PAK Seafoods, Inc.);

       9.   On January 5, 2017, GRETEL willingly and
voluntarily signed a Note, letter, and Deed Of Trust, payable to
FOX, in the additional sum of $250,000.00, which was secured by
the real property, located at 14930 Mar Vista Street, Whittier,
California 90605, after having been advised to contact an
independent attorney and after having had sufficient time to
consider and read the documents.  The Deed Of Trust was recorded
on February 27, 2017, after Notice of a Family Law Attorney Real
Property Lien was given to Michael L. Whitmarsh, the attorney
for W. Benjamin Gonzales, on January 6, 2017.

      10.  GRETEL's husband, W. Benjamin Gonzales, is the
Bankruptcy Debtor in the United States Bankruptcy Court
proceeding, filed in Central District of California, case number
2:17-bk-23812-BR (hereinafter "the Bankruptcy Proceeding").
Both FOX and GRETEL are creditors in the Bankruptcy Proceeding.

      11.  Monthly billing statements, which reflected the
accurate amount of fees and costs, incurred by GRETEL, in Los
Angeles Superior Court case numbers BD 616 423, BC 645 400, BC
640 599 and BC 635 532 by FOX were sent to and received by
GRETEL and accurately reflected the fees and costs incurred on

Exhibit "8"
Page 126

(                                                  (

her behalf in said proceedings.

12.  As of November 20, 2017, GRETEL owed FOX the sum
of $625,790.06 for the attorney's fees and costs, incurred on
her behalf, related to the matters involved in the action filed
in Los Angeles Superior Court case number BD 616 423.  As of
September 17, 2019, the amount owed by GRETEL to FOX in this
matter was equal to $739,975.31.

13.  As of November 20, 2017, GRETEL owed FOX the sum
of $13,981.00 for the attorney's fees and costs, incurred on her
behalf, related to the matters involved in the action filed in
Los Angeles Superior Court case number BC 645 400.  As of
September 17, 2019, the amount owed by GRETEL to FOX in this
matter was equal to $16,532.05.

14.  As of November 20, 2017, GRETEL owed FOX the sum
of $25,421.25 for the attorney's fees and costs, incurred on her
behalf, related to the matters involved in the action filed in
Los Angeles Superior Court case number BC 640 599.  As of
September 17, 2019, the amount owed by GRETEL to FOX in this
matter was equal to $30,059.76.

15.  As of November 20, 2017, GRETEL owed FOX the sum

(                                                    (

of $12,732.60 for the attorney's fees and costs, incurred on her behalf, related to the matters involved in the action filed in Los Angeles Superior Court case number BC 635 532.  As of September 17, 2019, the amount owed by GRETEL to FOX in this matter was equal to $15,088.86.

16.  As of September 17, 2019, the total amount owed by GRETEL to FOX in all of the aforementioned matters was equal to the sum of $801,665.98.

17.  On November 9, 2017, FOX filed a Complaint ' against GRETEL, alleging causes of action for breach of contract and common counts, in Los Angeles Superior Court, case number BC 682 953.

18.  On December 18, 2017, GRETEL filed a Cross-Complaint against FOX, alleging breach of contract, breach of good faith and fair dealing, breach of fiduciary duty by attorney, legal malpractice, promissory fraud, intentional infliction of emotional distress and negligent infliction of emotional distress, in Los Angeles Superior Court, case number BC 682 953.

19.  The Parties have previously attended mediation

S:\myaccounts\settlers\2018\settlement.1e/1

(                                           (

wherein GRETEL and FOX have each paid the sum of $2,800 in
mediation fees to ADR.

20.   GRETEL and FOX have both incurred significant
attorney's fees and costs, out of pocket, in pursuing and
defending the Complaint and Cross-Complaint.

### TERMS AND CONDITIONS

21.   All parties, in consideration of the promises and
concessions made by the others, hereby compromise and settle any
and all past, present, or future claims, demands, obligations, or
causes of action, whether based on tort, contract, or other
theories of recovery, which that party has or which may later
accrue to or be acquired by that party against any other party and
the other party's predecessors and successors in interest, heirs,
and assigns, arising from the subject matter of the matters
described in Paragraphs 2 through 20, inclusive, of this
Agreement, and any other matter that is not related to paragraphs
2 through 20, and are not limited by the recitals contained in
this Agreement, on the following terms and conditions:

22.   GRETEL shall execute an Assignment, along with
any other document, required to assign the entirety of her

interest and rights in W. Benjamin Gonzales' Bankruptcy
Proceeding, including but not limited to, spousal support,
spousal support liens resulting from the Abstract of Judgment,
recorded February 19, 2016, and assets, to FOX, forthwith.

23. GRETEL shall take no action contrary to FOX' or
GRETEL's claims and rights in W. Benjamin Gonzales' Bankruptcy
Proceeding.

24. In support of his claims in W. Benjamin Gonzales'
Bankruptcy Proceeding, FOX may submit evidence of his billing
statements, costs incurred, fees incurred, fees and costs paid,
correspondence between FOX and GRETEL, Notes signed by GRETEL,
Deeds Of Trust signed by GRETEL, information letters sent to
and/or signed by GRETEL, Retainer Agreements entered into by
GRETEL, Family Law Attorney Real Property Liens signed by
GRETEL, Preliminary and Final Disclosures signed by GRETEL,
Notices or other documents, related to the matters filed in Los
Angeles Superior Court, case numbers BD 616 423, BC 645 400, BC
640 599, BC 635 532 and BC 682 953; the use of which will be
deemed with GRETEL's full knowledge and consent and which shall
not be deemed to be a violation of the attorney / client
privilege between FOX and GRETEL.

foxvgonzales/letters/2019/settlement-1a/1

Exhibit "8"
Page 130

(                                    (

25.   FOX' total recovery from GRETEL, for matters
arising from the matters described in Paragraphs 2 through 20,
above, of this Agreement, is limited to the entirety of GRETEL's
rights in W. Benjamin Gonzales' Bankruptcy Proceeding, the value
of which has not yet been determined.  FOX shall be entitled to
receive up to the total amount owed, including interest,
calculated as $801,665.98 as of September 17, 2019, and if any
amounts are received from the Bankruptcy Proceeding over and
above what is owed to FOX, said overage will be paid to GRETEL.

26.   FOX shall also be entitled to collect and keep
any funds from the pending orders issued against W. Benjamin
Gonzales, payable to FOX, in the family law proceeding, filed in
Los Angeles Superior Court, case number BD 616 423, up to the
total amount owed by GRETEL, including interest, and if any
amounts are received over and above what is owed to FOX, said
overage will be paid to GRETEL.

27.   Insofar as COMERICA BANK seeks to collect against
any interest of GRETEL's that is turned over to FOX, FOX shall
defend against this.

28.   FOX and GRETEL shall execute and file a Request
For Dismissal of the entire action, filed in Los Angeles

foxvgonzales\letters\2019\settlement-1e/1

Superior Court, case number BC 682 953, including the Complaint and Cross-Complaint, with prejudice, forthwith, but no later than five business days from the date of execution of this Agreement and any necessary Assignments to effectuate the terms of this Agreement, however, the Court shall retain jurisdiction to enforce the provisions herein set forth, pursuant to Code Of Civil Procedure §664.6.

## MUTUAL GENERAL RELEASE

29.  All of the parties and, without limitation, FOX and GRETEL, on behalf of themselves, their descendants, ancestors, dependents, heirs, executors, administrators, assigns hereby fully release and discharge each other and without limitation, FOX and GRETEL, and the descendants, ancestors, dependents, heirs, executors, administrators, and assigns of each, from all rights, claims, and actions which each party and the above-mentioned successors now have against the other parties and the above-mentioned successors, including, without limitation, those rights, claims, and actions stemming from the dispute regarding attorney's fees owed to Fox & Fox by Gretel Gonzales and the subject of litigation in LASC Case No. BC 682 953."

(                                          (

30.   By executing this Settlement Agreement, FOX and
GRETEL, or either of them, are not acknowledging or admitting to
fault or liability of any kind.

UNKNOWN CLAIMS

31.   The parties, and each of them, agree that this
compromise and settlement shall constitute a bar to all past,
present, and future claims, herein or any other matter between
the parties.

32.   The parties, and each of them, agree that the
release which he or she gives to the other party upon executing
this Agreement applies to all claims for injuries, damages, or
losses to her own person or entity and property, real or
personal, whether those injuries, damages, or losses are known
or unknown, foreseen or unforeseen, patent or latent which he or
she may have against the other party.

33.   All parties, and each of them, waive application
of California Civil Code §1542.

34.   All parties, and each of them, certify that they
have read the following provisions of California Civil Code

§1542:

"A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party", and indicates that fact by signing his or her initials here:

_____ (FRANK O. FOX' initials)

_____ (GRETEL GONZALES' initials)

35.    The parties, and each of them, understand and acknowledge that the significance and consequence of this waiver of California Civil Code §1542 is that, even if he or she should eventually suffer additional damages arising out of the facts referred to herein, or any other matter, he or she will not be able to make any claim for those damages.  Furthermore, each party acknowledges that he or she consciously intends these consequences even as to claims for damages that may exist as of the date of this release but which it does not know exist, and which, if known, would materially affect his or her decision to execute this release, regardless of whether his or her lack of knowledge is the result of ignorance, oversight, error, negligence, or any other cause.

lawgpw:sales/judass/20150settlement-1of1

-12-

(                                    (

36. All of the terms and provisions hereof shall be binding upon the heirs, successors, assigns and legal representatives of the parties hereto and shall inure to the benefit of said heirs, successors, assigns and legal representatives.

37. In the event that any covenant, condition or other provision herein contained is held to be invalid, void or illegal by any court of competent jurisdiction, it shall be deemed severable from the remainder of this Agreement and shall in no way effect, impair or invalidate any other covenant, condition or other provision contained herein, if such condition, covenant or other provision shall be deemed valid to the extent of the scope or breadth, such covenant, condition or other provision shall be deemed valid to the extent of the scope or breadth permitted by law.

38. No waiver, express or implied, by one party of any breach by the other of any provision of this Agreement shall be effective unless in writing and signed by all parties. The waiver of one provision shall not be a waiver of any other provision and one waiver shall not be a waiver of a subsequent breach of the same provision.

(                                    (

## ADVICE OF ATTORNEY

39.   The parties, and each of them, warrant and
represent that in executing this Agreement, he or she has relied
upon legal advice from the attorney of his or her choice or has
been told to retain an attorney and chosen not to do so; that the
terms of this Agreement have been read and its consequences
(including risks, complications, and costs) have been completely
explained to him or her; and that he or she fully understands the
terms of this Agreement.   Each party further acknowledges and
represents that, in executing this release, he or she has not
relied on any inducements, promises, or representations made by
the other party or anyone representing or serving the other party.

## CONDITIONS OF EXECUTION

40.   The parties, and each of them, acknowledge and
warrant that his or her execution of this release is free and
voluntary and that he or she has the authority to execute this
Agreement.

## EXECUTION OF OTHER DOCUMENTS

41.   The parties, and each of them, shall cooperate

lonygonzz/es/letters/2019/settlement-1e/1

(                                                     (

fully in the execution of any and all other documents and in the
completion of any additional actions that may be necessary or
appropriate to give full force and effect to the terms and intent
of this Agreement.

### ATTORNEY'S FEES

42.   Except as set forth in this Agreement, the parties,
and each of them, shall bear all attorneys' fees and costs arising
from each party's own counsel (if any) in connection with this
Agreement and the matters referred to herein.

43.   If any action or proceeding at law or in equity
is instituted to enforce or interpret the terms of this
Agreement, the undersigned parties agree that the prevailing
party or parties therein shall be entitled to reasonable
attorneys' fees, costs and necessary disbursements, in addition
to any other relief to which said party may be entitled.

### GOVERNING LAW; VENUE

44.   This Agreement is entered into, and shall be
construed and interpreted in accordance with the laws of the State
of California.  Any action brought to enforce the terms of this

(                                               (

Settlement Agreement or regarding its subject matter shall be
filed in the Los Angeles Superior Court, Central District.

45.   This Agreement may be signed in counterparts and
fax signatures shall be deemed equivalent to original signatures.

APPROVED AS TO FORM AND CONTENT:

Dated _____, 2019

THE LAW FIRM OF FOX AND FOX

By_____
   FRANK O. FOX

Dated: _10·31·_____, 2019        _10·31_____, 2019

_____        _____
GRETEL GONZALES, an individual   GRETEL GONZALES, as co-Trustee
                                 of the Gonzales Family Trust

APPROVED AS TO FORM ONLY:

Dated _____, 2019

KERMISCH & PALETZ LLP

By_____
   MARY LU,
   Attorneys for GRETEL GONZALES

fox:gonzales:letters/2019/settlement-1of1

Exhibit "8"
Page 138

Settlement Agreement or regarding its subject matter shall be
filed in the Los Angeles Superior Court, Central District.

45.    This Agreement may be signed in counterparts and
fax signatures shall be deemed equivalent to original signatures.

APPROVED AS TO FORM AND CONTENT:

Dated November 5, 2019

THE LAW FIRM OF FOX AND FOX

By _____
FRANK O. FOX

Dated: 10-31-, 2019          10-31, 2019

_____     _____
GRETEL GONZALES, an individual    GRETEL GONZALES, as co-Trustee
                                  of the Gonzales Family Trust

APPROVED AS TO FORM ONLY:

Dated 11-14, 2019

KERNISCH & PALETZ LLP

By _____
MARY LU,
Attorneys for GRETEL GONZALES

(                                        (

A notary public or other officer completing this certificate verifies only the identity of the individual(s) who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA }  S.S.

COUNTY OF ORANGE

On this 31st. day of OCTOBER 2019, before me John Restrepo, Notary Public, personally appeared GONZALES, GRETEL who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____ (Notary Seal)
Signature of Notary Public

*GONZALES, GRETEL – SETTLEMENT, RELEASE AND INDEMNIFICATION AGREEMENT DOC.*

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**          CIVIL CODE § 1189

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California            )
County of _Los Angeles_        )

On _November 12, 2019_ before me, _Matt Henderson, Notary Public_,
   *Date*                              *Here Insert Name and Title of the Officer*
personally appeared _Frank O Fox_
                          *Name(s) of Signer(s)*

---

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
            *Signature of Notary Public*

MATT HENDERSON
Notary Public - California
Los Angeles County
Commission # 2304801
My Comm. Expires Sep 19, 2023

*Place Notary Seal Above*

---

———————— **OPTIONAL** ————————
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _____ Document Date: _____
Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| | |
|---|---|
| Signer's Name: _____ | Signer's Name: _____ |
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Partner — ☐ Limited  ☐ General | ☐ Partner — ☐ Limited  ☐ General |
| ☐ Individual     ☐ Attorney in Fact | ☐ Individual     ☐ Attorney in Fact |
| ☐ Trustee     ☐ Guardian or Conservator | ☐ Trustee     ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

---

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

Exhibit 9

Authentisign ID: 1E00B6A2-7497-4FAD-AA64-77661475443C 1C-98F77124A079



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

**SELLER COUNTER OFFER No. 1**
May not be used as a multiple counter offer.
(C.A.R. Form SCO, Revised 11/14)

Date _May 5, 2021_

This is a counter offer to the: ☒ Purchase Agreement, ☐ Buyer Counter Offer No.___ , or ☐ Other _____ ("Offer"),
dated ___April 27, 2021___ , on property known as ___14930 MAR VISTA ST, WHITTIER, CA 90605___ ("Property"),
between _____Raul Ruiz, Blanca Lorena Ruiz_____ ("Buyer")
and _____David Goodrich, BK Trustee for the estate of Benjamin Gonzalez_____ ("Seller").

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   A. Paragraphs in the Offer that require initials by all parties, but are not initialed by all parties, are excluded from the final agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer or an addendum.
   B. Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer, but deposit amount(s) shall remain unchanged from the original Offer.

   C. **OTHER TERMS:** _Selling price shall be $1,522,222. 3,I. Buyer shall remove all on section 2a thru 2b now on CAR Form_
   _CR1. And after short sale approval remove C (all contingencies) so that we can request a hearing on approval of sale._
   _Initial deposit is $20,000, remaining $56,112.00 to be deposited after short sale approval. 8B Only existing affixed_
   _appliances included. Property is selling in as-is condition, seller will do no repairs, retrofits, or repairs whatsoever. 7b2_
   _(i),(ii) Seller will NOT repair or commit to government required retrofits or compliance. 12c Seller does not guarantee_
   _utilities and pilots to be on. 2 Lots included in sale (apn 8149-030-005 and 8149-030-006). CAR Form SSA Time Periods_
   _and Buyer's Deposit shall be 2(ii) & 3(ii) as specified in the agreement, as specified in this counter._

   D. The following attached addenda are incorporated into this Seller Counter offer: ☐ Addendum No. _____
   ☒ Sales Agreement Addendum By David M. Goodrich Chapter 7 Trustee ☐

2. **EXPIRATION:** This Seller Counter Offer shall be deemed revoked and the deposits, if any, shall be returned:
   A. Unless by 5:00pm on the third Day After the date it is signed in paragraph 4 (if more than one signature then, the last signature date)(or by _5:00_ ☐ AM ☒ PM on _5/6/21_ (date)) (i) it is signed in paragraph 5 by Buyer and (ii) a copy of the signed Seller Counter Offer is personally received by Seller or _Rogelio Sanchez_ , who is authorized to receive it.
   B. OR If Seller withdraws it anytime prior to Acceptance (CAR Form WOO may be used).
   C. OR If Seller accepts another offer prior to Buyer's Acceptance of this counter offer.

3. **MARKETING TO OTHER BUYERS:** Seller has the right to continue to offer the Property for sale. Seller has the right to accept any other offer received, prior to Acceptance of this Counter Offer by Buyer as specified in 2A and 5. In such event, Seller is advised to withdraw this Seller Counter Offer before accepting another offer.

4. **OFFER/SELLER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY.**
   Seller _____ David Goodrich, BK Trustee for the estate of Date _5/5/21_
   Seller _____ Date _____

5. **ACCEPTANCE:** I/WE accept the above Seller Counter Offer (If checked ☐ SUBJECT TO THE ATTACHED COUNTER OFFER) and acknowledge receipt of a Copy.
   Buyer _____ _Raul Ruiz_ Date _____ Time _____ ☐ AM/ ☐ PM
   Buyer _5/6/2021 5:34:21 AM GMT_ _Blanca Lorena Ruiz_ Date _____ Time _____ ☐ AM/ ☐ PM

   **CONFIRMATION OF ACCEPTANCE:** 5:24:01 AM GMT
   _____( ) (Initials) Confirmation of Acceptance: A Copy of Signed Acceptance was personally received by Seller, or Seller's authorized agent as specified in paragraph 2A on (date) _5/6/2021_ at _____ ☐ AM/ ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by Seller or Seller's authorized agent whether or not confirmed in this document.

© 2019, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**SCO Revised 11/14 (PAGE 1 OF 1)**

**SELLER COUNTER OFFER (SCO PAGE 1 OF 1)**

Keller Williams Downey Market Ctr., 8255 Firestone Blvd., Suite #100 Downey, CA 90241    Phone: 323.329.0483    Fax: 562.862.8801    2ndBuyerRule_14
Rogelio Sanchez    Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5  www.lwolf.com

Exhibit "9"
Page 142

Authentisign ID: 1E00B6A2-7497-4FAD-AA64-77661475443C

1C-98F77124A079



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

**CONTINGENCY REMOVAL No.   1**
(C.A.R. Form CR, Revised, 12/20)

In accordance with the terms and conditions of the: ☒ Purchase Agreement, OR ☐ Request For Repair (C.A.R. Form RR), ☐ Response And Reply To Request For Repair (C.A.R. Form RRRR), ☐ Amendment of Existing Agreement (C.A.R. Form AEA) or ☐ Other _____ ("Agreement"),

dated _04/27/2021_ , on property known as _____ _14930 MAR VISTA ST, WHITTIER, CA 90605_ _____ ("Property"),
between _____ _Raul Ruiz, Blanca Lorena Ruiz_ _____ ("Buyer")
and _____ _David Goodrich, BK Trustee for the estate of Benjamin Gonzalez_ _____ ("Seller").

**I.   BUYER REMOVAL OF BUYER CONTINGENCIES:**

1.   With respect to any contingency and cancellation right that Buyer removes, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations and review of reports and other applicable information and disclosures; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and, expense, **if any,** for Repairs, corrections, or for the inability to obtain financing. Waiver of statutory disclosures is prohibited by Law.

2.   Buyer removes those contingencies specified below.
 **A.   ONLY the following individually checked Buyer contingencies are removed:** (Paragraph numbers refer to the California Residential Purchase Agreement (C.A.R. Form RPA-CA) unless a different form is specified.)
  1.  ☐ Loan (Paragraph 3J)
  2.  ☐ Appraisal (Paragraph 3I)
  3.  Buyer's Investigation Contingency (Paragraph 12)
    a.  ☐ Only the physical inspection portion of Buyer's Investigation (Paragraph 12)
    b.  ☐ All Buyer Investigations other than a physical inspection (Paragraph 12)
    c.  ☐ Entire Buyer's Investigation Contingency (Paragraph 12)
  4.  ☐ Condominium/Planned Development (HOA or OA) Disclosures (Paragraph 10F)
  5.  ☐ Reports/Disclosures (Paragraphs 7 and 10)
  6.  ☐ Title: Preliminary Report (Paragraph 13)
  7.  Sale of Buyer's Property (Paragraph 4B)
    a.  ☐ Entering into contract for Buyer's Property (COP, Paragraph 2)
    b.  ☐ Close of escrow for Buyer's Property (COP, Paragraph 4)
  8.  ☐ Review of documentation for leased or liened items (Paragraph 8B(5))
  9.  ☐ Other: _____
  10. ☐ Other: _____
 **OR B.** ☒ **ALL Buyer contingencies are removed, EXCEPT:** ☐ Loan Contingency (Paragraph 3J); ☐ Appraisal Contingency (Paragraph 3I); ☐ Contingency for the Sale of Buyer's Property (Paragraph 4B); ☐ Condominium/Planned Development (HOA) Disclosures (Paragraph 10F); ☒ Other _Short Sale Approval_ _____
 **OR C.** ☐ **BUYER HEREBY REMOVES ANY AND ALL BUYER CONTINGENCIES.**
3.   Once all contingencies are removed, whether or not Buyer has satisfied him/her/itself regarding all contingencies or received any information relating to those contingencies, Buyer may not be entitled to a return of Buyer's deposit if Buyer does not close escrow. This could happen even if, for example, Buyer does not approve of some aspect of the Property or lender does not approve Buyer's loan.

NOTE: Paragraph numbers refer to the California Residential Purchase Agreement (C.A.R. Form RPA-CA) unless a different form is specified. Applicable paragraph numbers for each contingency in other C.A.R. forms may be different.

| Buyer | | _Raul Ruiz_ | Date _____ |
|---|---|---|---|
| | 5/6/2021 5:34:24 AM GMT | Authentisign | |
| Buyer | | _Blanca Lorena Ruiz_ | _Blanca Lorena Ruiz_  Date _____ |
| | 5/6/2021 5:24:03 AM GMT | | |

**II.   SELLER REMOVAL OF SELLER CONTINGENCIES:** Seller hereby removes the following Seller contingencies: ☐ Finding of replacement property (C.A.R. Form SPRP); ☐ Closing on replacement property (C.A.R. Form SPRP) ☐ Other _____

| Seller x | _____ | Date _____ |
|---|---|---|
| Seller | _____ | Date _____ |

© 2020 California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**CR REVISED 12/20 (PAGE 1 OF 1)**

**CONTINGENCY REMOVAL (CR PAGE 1 OF 1)**

Exhibit "9"
Page 143

Authentisign ID: 1E00B6A2-7497-4FAD-AA64-77661475443C    IC-98F77124A079

Authentisign ID: D6F9F098-0321-44E8-8D74-91388D92F17F



CALIFORNIA
ASSOCIATION
OF REALTORS®

**CALIFORNIA
RESIDENTIAL PURCHASE AGREEMENT
AND JOINT ESCROW INSTRUCTIONS**
(C.A.R. Form RPA-CA, Revised 12/18)

Date Prepared: _04/27/2021_
1. OFFER:
   A. THIS IS AN OFFER FROM _____ _Raul Ruiz, Blanca Lorena Ruiz_ _____ ("Buyer").
   B. THE REAL PROPERTY to be acquired is _____ _14930 Mar Vista Street, Whittier, CA 90605_ _____ , situated in
      _Whittier_ (City), _Los Angeles_ (County), California, _90605_ (Zip Code), Assessor's Parcel No. _8149030005_ ("Property").
   C. THE PURCHASE PRICE offered is _One Million, Five Hundred Twenty-Two Thousand, Two Hundred Twenty-Two_
                                                        Dollars $ _1,522,222.00_ .
   D. CLOSE OF ESCROW shall occur on |_____| (date)(or ☒ _30_ Days After Acceptance).
   E. Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.
2. AGENCY:
   A. DISCLOSURE: The Parties each acknowledge receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R.
      Form AD).
   B. CONFIRMATION: The following agency relationships are confirmed for this transaction:
      Seller's Brokerage Firm _____ _Keller Williams SELA_ _____ License Number _01978349_
      Is the broker of (check one): ☒ the seller; or ☐ both the buyer and seller. (dual agent)
      Seller's Agent _____ _Rogelio Sanchez_ _____ License Number _01817403_
      Is (check one): ☒ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
      Buyer's Brokerage Firm _____ _Popular Real Estate_ _____ License Number _01329713_
      Is the broker of (check one): ☒ the buyer; or ☐ both the buyer and seller. (dual agent)
      Buyer's Agent _____ _David Morales_ _____ License Number _01893696_
      Is (check one): ☒ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
   C. POTENTIALLY COMPETING BUYERS AND SELLERS: The Parties each acknowledge receipt of a ☒ "Possible
      Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).
3. FINANCE TERMS: Buyer represents that funds will be good when deposited with Escrow Holder.
   A. INITIAL DEPOSIT: Deposit shall be in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _20,000.00_
      (1) Buyer Direct Deposit: Buyer shall deliver deposit directly to Escrow Holder by electronic funds
      transfer, ☐ cashier's check, ☐ personal check, ☐ other _____ within 3 business days
      after Acceptance (or _____ );
      OR (2) ☐ Buyer Deposit with Agent: Buyer has given the deposit by personal check (or _____ )
      to the agent submitting the offer (or to _____ ), made payable to
      _____ . The deposit shall be held uncashed until Acceptance and then deposited
      with Escrow Holder within 3 business days after Acceptance (or _____ ).
      Deposit checks given to agent shall be an original signed check and not a copy.
      (Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)
   B. INCREASED DEPOSIT: Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . . . . . . $ _56,112.00_
      within ____ Days After Acceptance (or _____ _after receipt of short sale approval_ ).
      If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased
      deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form
      RID) at the time the increased deposit is delivered to Escrow Holder.
   C. ☐ ALL CASH OFFER: No loan is needed to purchase the Property. This offer is NOT contingent on Buyer
      obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or
      ☐ Buyer shall, within 3 (or _____ ) Days After Acceptance, Deliver to Seller such verification.
   D. LOAN(S):
      (1) FIRST LOAN: in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _989,444.00_
      This loan will be conventional financing OR ☐ FHA, ☐ VA, ☐ Seller financing (C.A.R. Form SFA),
      ☐ assumed financing (C.A.R. Form AFA), ☐ Other _____ . This loan shall be at a fixed
      rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %.
      Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      (2) ☐ SECOND LOAN in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
      This loan will be conventional financing OR ☐ Seller financing (C.A.R. Form SFA), ☐ assumed
      financing (C.A.R. Form AFA), ☐ Other _____ . This loan shall be at a fixed rate not to
      exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %.
      Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      (3) FHA/VA: For any FHA or VA loan specified in 3D(1), Buyer has 17 (or _____ ) Days After Acceptance
      to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that
      Buyer requests Seller to pay for or otherwise correct. Seller has no obligation to pay or satisfy lender
      requirements unless agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be a
      part of this Agreement.
   E. ADDITIONAL FINANCING TERMS: _____

   F. BALANCE OF DOWN PAYMENT OR PURCHASE PRICE in the amount of . . . . . . . . . . . . . . . . . . . . . . . . $ _456,666.00_
      to be deposited with Escrow Holder pursuant to Escrow Holder instructions.
   G. PURCHASE PRICE (TOTAL) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _1,522,222.00_

Buyer's Initials ( _____ ) ( _BLR_ )                                      Seller's Initials ( _____ ) ( _____ )
© 1991-2018, California Association of REALTORS®, Inc.

RPA-CA REVISED 12/18 (PAGE 1 OF 10)
CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 10)

Popular Real Estate, 7340 firestone blvd Downey CA 90241                Phone: (562)818-3304   Fax:        Ruiz
David Morales                  Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Authentisign ID: 1E00B6A2-7497-4FAD-AA64-77661475443C   IC-98F77124A079

AuthentiSign ID: D6F9F008-0321-44E8-4D74-91380D92F17F

Property Address: **14930 Mar Vista Street, Whittier, CA 90605**     Date: **April 27, 2021**

**H. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1)) shall, within 3 (or ____ ) Days After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. ( ☐ Verification attached.)

**I. APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or ☐ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 14B(3), in writing, remove the appraisal contingency or cancel this Agreement within 17 (or ____ ) Days After Acceptance.

**J. LOAN TERMS:**
**(1) LOAN APPLICATIONS:** Within 3 (or ___ ) Days After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. ( ☐ Letter attached.)

**(2) LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above **is a contingency** of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement.

**(3) LOAN CONTINGENCY REMOVAL:**
Within 21 (or ____ ) Days After Acceptance, Buyer shall, as specified in paragraph 14, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

**(4)** ☐ **NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

**(5) LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**K. BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing. Buyer shall pursue the financing specified in this Agreement. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**4. SALE OF BUYER'S PROPERTY:**
**A.** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.
**OR B.** ☐ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).

**5. ADDENDA AND ADVISORIES:**
**A. ADDENDA:**

| | |
|---|---|
| | ☐ Addendum # _____ (C.A.R. Form ADM) |
| ☐ Back Up Offer Addendum (C.A.R. Form BUO) | ☐ Court Confirmation Addendum (C.A.R. Form CCA) |
| ☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI) | |
| ☐ Short Sale Addendum (C.A.R. Form SSA) | ☐ Other |

**B. BUYER AND SELLER ADVISORIES:**

| | |
|---|---|
| | ☒ Buyer's Inspection Advisory (C.A.R. Form BIA) |
| ☐ Probate Advisory (C.A.R. Form PA) | ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) |
| ☐ Trust Advisory (C.A.R. Form TA) | ☐ REO Advisory (C.A.R. Form REO) |
| ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) | ☐ Other |

**6. OTHER TERMS:** **adjacent lot apn# 8149-030-006 to be included in sale. physical inspection contingency to be automatically removed.**

**7. ALLOCATION OF COSTS**
**A. INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; it **does not determine who is to pay for any work** recommended or identified in the Report.
(1) ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report, including tax ☒ environmental ☐ Other: _____ prepared by **\*MyNHD \*\***.
(2) ☐ Buyer ☐ Seller shall pay for the following Report _____ prepared by _____.
(3) ☐ Buyer ☐ Seller shall pay for the following Report _____ prepared by _____.

**B. GOVERNMENT REQUIREMENTS AND RETROFIT:**
(1) ☐ Buyer ☐ Seller shall pay for smoke alarm and carbon monoxide device installation and water heater bracing, if required by Law. Prior to Close Of Escrow ("COE"), Seller shall provide Buyer written statement(s) of compliance in accordance with state and local law, unless Seller is exempt.

Buyer's Initials ( _____ ) ( **BLR** )          Seller's Initials ( _____ ) ( _____ )

RPA-CA REVISED 12/18 (PAGE 2 OF 10)
CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 2 OF 10)

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com     Ruiz

Exhibit "9"
Page 145

Authentisign ID: 1E00B6A2-7497-4FAD-AA64-77661475443C   1C-98F77124A079

Authentisign ID: D6F9F098-0321-44E8-8D74-91388D92F17F
Property Address: _14930 Mar Vista Street, Whittier, CA 90605_ _____ Date: _April 27, 2021_ _____

(2) (i) ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government inspections and reports if required as a condition of closing escrow under any Law.
(ii) ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards required as a condition of closing escrow under any Law, whether the work is required to be completed before or after COE.
(iii) Buyer shall be provided, within the time specified in paragraph 14A, a copy of any required government conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

**C. ESCROW AND TITLE:**
(1) (a) ☒ Buyer ☒ Seller shall pay escrow fee _EACH TO PAY THEIR OWN_ _____ .
(b) Escrow Holder shall be _sellers choice of service provider_ _____ .
(c) The Parties shall, within 5 (or ___ ) Days After receipt, sign and return Escrow Holder's general provisions.
(2) (a) ☐ Buyer ☒ Seller shall pay for owner's title insurance policy specified in paragraph 13E _____
(b) Owner's title policy to be issued by _seller choice_ _____ .
(Buyer shall pay for any title insurance policy insuring Buyer's lender, unless otherwise agreed in writing.)

**D. OTHER COSTS:**
(1) ☐ Buyer ☒ Seller shall pay County transfer tax or fee _____ .
(2) ☐ Buyer ☒ Seller shall pay City transfer tax or fee _____ .
(3) ☐ Buyer ☐ Seller shall pay Homeowners' Association ("HOA") transfer fee _____ .
(4) Seller shall pay HOA fees for preparing documents required to be delivered by Civil Code §4525.
(5) ☐ Buyer ☐ Seller shall pay HOA fees for preparing all documents other than those required by Civil Code §4525.
(6) Buyer to pay for any HOA certification fee.
(7) ☐ Buyer ☒ Seller shall pay for any private transfer fee _____ .
(8) ☐ Buyer ☐ Seller shall pay for _____ .
(9) ☐ Buyer ☐ Seller shall pay for _____ .
(10) ☐ Buyer ☐ Seller shall pay for the cost, not to exceed $ _____ , of a standard (or ☐ upgraded) one-year home warranty plan, issued by _____ , with the following optional coverages: ☐ Air Conditioner ☐ Pool/Spa ☐ Other: _____ .
Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.
OR ☒ Buyer waives the purchase of a home warranty plan. Nothing in this paragraph precludes Buyer's purchasing a home warranty plan during the term of this Agreement.

**8. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**
**A. NOTE TO BUYER AND SELLER:** Items listed are included or excluded in the MLS, flyers or marketing materials are **not** included in the purchase price or excluded from the sale unless specified in paragraph 8 B or C.
**B. ITEMS INCLUDED IN SALE:** Except as otherwise specified or disclosed,
(1) All EXISTING fixtures and fittings that are attached to the Property;
(2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water features and fountains, water softeners, water purifiers, security systems/alarms and the following if checked: ☒ all stove(s), except _____ ; ☒ all refrigerator(s) except _____ ; ☒ all washer(s) and dryer(s), except _____ ;
(3) The following additional items: _____ :
(4) Existing integrated phone and home automation systems, including necessary components such as intranet and Internet-connected hardware or devices, control units (other than non-dedicated mobile devices, electronics and computers) and applicable software, permissions, passwords, codes and access information, are (☐ are NOT) included in the sale.
(5) **LEASED OR LIENED ITEMS AND SYSTEMS:** Seller shall, within the time specified in paragraph 14A, (i) disclose to Buyer if any item or system specified in paragraph 8B or otherwise included in the sale is leased, or not owned by Seller, or specifically subject to a lien or other encumbrance, and (ii) Deliver to Buyer all written materials (such as lease, warranty, etc.) concerning any such item. Buyer's ability to assume any such lease, or willingness to accept the Property subject to any such lien or encumbrance, is a contingency in favor of Buyer and Seller as specified in paragraph 14B and C.
(6) Seller represents that all items included in the purchase price, unless otherwise specified, (i) are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to 8B(5) and _____ , and (ii) are transferred without Seller warranty regardless of value.
**C. ITEMS EXCLUDED FROM SALE:** Unless otherwise specified, the following items are excluded from sale: (i) audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; (ii) furniture and other items secured to the Property for earthquake purposes; and (iii) _____ _____ . Brackets attached to walls, floors or ceilings for any such component, furniture or item shall remain with the Property (or ☐ will be removed and holes or other damage shall be repaired, but not painted).

**9. CLOSING AND POSSESSION:**
A. Buyer intends (or ☐ does not intend) to occupy the Property as Buyer's primary residence.
B. Seller-occupied or vacant property: Possession shall be delivered to Buyer (i) at 6 PM or (___ ☐ AM/☐ PM) on the date of Close Of Escrow; (ii) ☐ no later than ___ calendar days after Close Of Escrow; or (iii) ☐ at ____ ☐ AM/☐ PM on _____ .

Buyer's Initials ( ___ ) ( _BLR_ )      Seller's Initials ( ___ ) ( ___ )

RPA-CA REVISED 12/18 (PAGE 3 OF 10)
CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 3 OF 10)
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com     Ruiz

Authentisign ID: 1E00B6A2-7497-4FAD-AA64-77661475443C
IC-98F77124A079

Authentisign ID: D6F9F096-0321-44E6-8D74-91380D92F17F
Property Address: 14930 Mar Vista Street, Whittier, CA 90605                                    Date: April 27, 2021

C. **Seller remaining in possession After Close Of Escrow:** If Seller has the right to remain in possession after Close Of Escrow, (i) the Parties are advised to sign a separate occupancy agreement such as ☐ C.A.R. Form SIP, for Seller continued occupancy of less than 30 days, ☐ C.A.R. Form RLAS for Seller continued occupancy of 30 days or more; and (ii) the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and (iii) Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

D. **Tenant-occupied property:** Property shall be vacant at least 5 (or ____ ) Days Prior to Close Of Escrow, unless otherwise agreed in writing. **Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.**
OR ☐ Tenant to remain in possession (C.A.R. Form TIP).

E. **At Close Of Escrow:** Seller assigns to Buyer any assignable warranty rights for items included in the sale; and Seller shall Deliver to Buyer available Copies of any such warranties. Brokers cannot and will not determine the assignability of any warranties.

F. **At Close Of Escrow,** unless otherwise agreed in writing, Seller shall provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems and intranet and Internet-connected devices included in the purchase price, and garage door openers. If the Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

10. **STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

A. (1) Seller shall, within the time specified in paragraph 14A, Deliver to Buyer: (i) if required by Law, a fully completed: Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and (ii) unless exempt, fully completed disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD).

(2) Any Statutory Disclosure required by this paragraph is considered fully completed if Seller has answered all questions and completed and signed the Seller section(s) and the Seller's Agent, if any, has completed and signed the Seller's Brokerage Firm section(s), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Nothing stated herein relieves a Buyer's Brokerage Firm, if any, from the obligation to (i) conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or (ii) complete any sections on all disclosures required to be completed by Buyer's Brokerage Firm.

(3) **Note to Buyer and Seller:** Waiver of Statutory and Lead Disclosures is prohibited by Law.

(4) Within the time specified in paragraph 14A, (i) Seller, unless exempt from the obligation to provide a TDS, shall, complete and provide Buyer with a Seller Property Questionnaire (C.A.R. Form SPQ); (ii) if Seller is not required to provide a TDS, Seller shall complete and provide Buyer with an Exempt Seller Disclosure (C.A.R. Form ESD).

(5) Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory, Lead and other disclosures to Seller.

(6) In the event Seller or Seller's Brokerage Firm, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.

(7) If any disclosure or notice specified in paragraph 10A(1), or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within 3 Days After Delivery in person, or 5 Days After Delivery by deposit in the mail, or by an electronic record satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of cancellation to Seller or Seller's agent.

B. **NATURAL AND ENVIRONMENTAL HAZARD DISCLOSURES AND OTHER BOOKLETS:** Within the time specified in paragraph 14A, Seller shall, if required by Law: (i) Deliver to Buyer earthquake guide(s) (and questionnaire), environmental hazards booklet, and home energy rating pamphlet; (ii) disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; and Seismic Hazard Zone; and (iii) disclose any other zone as required by Law and provide any other information required for those zones.

C. **WITHHOLDING TAXES:** Within the time specified in paragraph 14A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).

D. **MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

E. **NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at http://www.npms.phmsa.dot.gov/. To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.

F. **CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
(1) SELLER HAS: 7 (or ____ ) Days After Acceptance to disclose to Buyer if the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or ESD).

Buyer's Initials ( RR ) ( BLR )                          Seller's Initials ( ZB ) ( ____ )                          🏠

RPA-CA REVISED 12/18 (PAGE 4 OF 10)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 4 OF 10)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                          Rain

Exhibit "9"
Page 147

Authentisign ID: 1E00B6A2-7497-4FAD-AA64-77661475443C    1C-98F77124A079

AuthentiSign ID: D6F9F098-0321-44E8-8D74-9138BD02F17F

Property Address: _14930 Mar Vista Street, Whittier, CA  90605_                                    Date: _April 27, 2021_

(2) If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has 3 (or ___ ) Days After Acceptance to request from the HOA (C.A.R. Form HOA1): (i) Copies of any documents required by Law; (ii) disclosure of any pending or anticipated claim or litigation by or against the HOA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of HOA minutes for regular and special meetings; and (v) the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). (vi) private transfer fees; (vii) Pet fee restrictions; and (viii) smoking restrictions. Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3). The Party specified in paragraph 7, as directed by escrow, shall deposit funds into escrow or direct to HOA or management company to pay for any of the above.

11. CONDITION OF PROPERTY: Unless otherwise agreed in writing: (i) the Property is sold (a) "AS-IS" in its PRESENT physical condition as the date of Acceptance and (b) subject to Buyer's Investigation rights; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Close Of Escrow.
   A. Seller shall, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.
   B. Buyer has the right to conduct Buyer Investigations of the Property and, as specified in paragraph 14B, based upon information discovered in those investigations: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.
   C. Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.

12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:
   A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to: (i) a general physical inspection; (ii) an inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2); (iii) inspect for lead-based paint and other lead-based paint hazards; (iv) satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA); (v) review the registered sex offender database; (vi) confirm the insurability of Buyer and the Property including the availability and cost of flood and fire insurance; and (vii) review and seek approval of leases that may need to be assumed by Buyer. Without Seller's prior written consent, Buyer shall neither make nor cause to be made: invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report; or inspections by any governmental building or zoning inspector or government employee, unless required by Law.
   B. Seller shall make the Property available for all Buyer Investigations. Buyer shall (i) as specified in paragraph 14B, complete Buyer Investigations and either remove the contingency or cancel this Agreement, and (ii) give Seller, at no cost, complete Copies of all such Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.
   C. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.
   D. Buyer indemnity and seller protection for entry upon property: Buyer shall: (i) keep the Property free and clear of liens; (ii) repair all damage arising from Buyer Investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

13. TITLE AND VESTING:
   A. Within the time specified in paragraph 14, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.
   B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record (which Seller is obligated to pay off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.
   C. Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.
   D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.
   E. Buyer shall receive a CLTA/ALTA "Homeowner's Policy of Title Insurance", if applicable to the type of property and buyer. If not, Escrow Holder shall notify Buyer. A title company can provide information about the availability, coverage, and cost of other title policies and endorsements. If the Homeowner's Policy is not available, Buyer shall choose another policy, instruct Escrow Holder in writing and shall pay any increase in cost.

Buyer's Initials ( BER ) ( )                                        Seller's Initials ( ) ( )

RPA-CA REVISED 12/18 (PAGE 5 OF 10)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 5 OF 10)**

Exhibit "9"
Page 148

Authentisign ID: 1E00B6A2-7497-4FAD-AA64-77661475443C   IC-98F77124A079

Authentisign ID: D6F9F098-0321-44E8-8D74-81388D92F17F

Property Address: _14930 Mar Vista Street, Whittier, CA  90605_____   Date: _April 27, 2021_____

14. **TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:** The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).

A. **SELLER HAS:** 7 (or _____ ) Days After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 5, 6, 7, 8B(5), 10A, B, C, and F, 11A and 13A. If, by the time specified, Seller has not Delivered any such item, Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement.

B. **(1) BUYER HAS:** 17 (or _____ ) Days After Acceptance, unless otherwise agreed in writing, to:
   (i) complete all Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 8B(5), and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and (ii) Deliver to Seller Signed Copies of Statutory and Lead Disclosures and other disclosures Delivered by Seller in accordance with paragraph 10A.
   (2) Within the time specified in paragraph 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.
   (3) By the end of the time specified in paragraph 14B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 14A, then Buyer has 5 (or _____ ) Days After Delivery of any such items, or the time specified in paragraph 14B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.
   (4) Continuation of Contingency: Even after the end of the time specified in paragraph 14B(1) and before Seller cancels, if at all, pursuant to paragraph 14D, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 14D(1).
   (5) Access to Property: Buyer shall have access to the Property to conduct inspections and investigations for 17 (or _____ ) Days After Acceptance, whether or not any part of the Buyer's Investigation Contingency has been waived or removed.

C. ☒ **REMOVAL OF CONTINGENCIES WITH OFFER:** Buyer removes the contingencies specified in the attached Contingency Removal form (C.A.R. Form CR). If Buyer removes any contingency without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Broker.

D. **SELLER RIGHT TO CANCEL:**
   (1) Seller right to Cancel; Buyer Contingencies: If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.
   (2) Seller right to Cancel; Buyer Contract Obligations: Seller, after first delivering to Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): (i) Deposit funds as required by paragraph 3A, or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; (ii) Deliver a notice of FHA or VA costs or terms as required by paragraph 3D(3) (C.A.R. Form FVA); (iii) Deliver a letter as required by paragraph 3J(1); (iv) Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by paragraph 3C or 3H; (v) In writing assume or accept leases or liens specified in 8B5; (vi) Return Statutory and Lead Disclosures as required by paragraph 10A(5); or (vii) Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 21B; or (viii) Provide evidence of authority to sign in a representative capacity as specified in paragraph 19. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

E. **NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: (i) be in writing; (ii) be signed by the applicable Buyer or Seller; and (iii) give the other Party at least 2 (or _____ ) Days After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than 2 Days Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 14.

F. **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

G. **CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: (i) be signed by the applicable Buyer or Seller; and (ii) give the other Party at least 3 (or _____ ) Days After Delivery to close escrow. A DCE may not be Delivered any earlier than 3 Days Prior to the scheduled close of escrow.

H. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award. If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit. (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).

Buyer's Initials ( RR ) ( BLR )                    Seller's Initials ( ✗ ) ( _____ )

**RPA-CA REVISED 12/18 (PAGE 6 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 6 OF 10)**

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com        Ruiz

Authentisign ID: 1E00B6A2-7497-4FAD-AA64-77661475443C          1C-98F77124A079

Authentisign ID: D6F5F098-0321-44E8-8D74-91388D92F17F

Property Address: *14930 Mar Vista Street, Whittier, CA  90605*                Date: *April 27, 2021*

**15. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within 5 (or ____ ) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 11; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**16. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain invoices and paid receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**18. BROKERS:**
   A. **COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.
   B. **SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: (i) Does not decide what price Buyer should pay or Seller should accept; (ii) Does not guarantee the condition of the Property; (iii) Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; (iv) Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; (v) Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; (vi) Shall not be responsible for inspecting public records or permits concerning the title or use of Property; (vii) Shall not be responsible for identifying the location of boundary lines or other items affecting title; (viii) Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; (ix) Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; (x) Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and (xi) Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**19. REPRESENTATIVE CAPACITY:** If one or more Parties is signing this Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 31 or 32 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within 3 Days After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code §18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**20. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**
   A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 10C, 13, 14G, 17, 18A, 19, 20, 26, 29, 30, 31, 32 and paragraph D of the section titled Real Estate Brokers on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 18A, or paragraph D of the section titled Real Estate Brokers on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within 3 (or ____ ) Days, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 7, 10 or elsewhere in this Agreement.
   B. A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within 3 Days After Acceptance (or _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 10C, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.

Buyer's Initials (  RR  ) (  BER  )                              Seller's Initials (  ___  ) (  ___  )

RPA-CA REVISED 12/18 (PAGE 7 OF 10)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 7 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                    Ruiz

Exhibit "9"
Page 150

Authentisign ID: 1E00B6A2-7497-4FAD-AA64-77661475443C    1C-98F77124A079

Authentisign ID: D6F9F998-0321-44E8-8D74-91388D92F17F

Property Address: **14930 Mar Vista Street, Whittier, CA  90605**                    Date: **April 27, 2021**

C. Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 18A and paragraph D of the section titled Real Estate Brokers on page 10. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 18A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

D. Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: (i) if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

E. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 3 Days after mutual execution of the amendment.

**21. REMEDIES FOR BUYER'S BREACH OF CONTRACT:**

A. **Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.**

B. **LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Except as provided in paragraph 14H, release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM RID).**

Buyer's Initials [RR] / [BLR]                    Seller's Initials [S] / _____

**22. DISPUTE RESOLUTION:**

A. **MEDIATION:** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Real Estate Mediation Center for Consumers (www.consumermediation.org) or through any other mediation provider or service mutually agreed to by the Parties. The Parties also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 22C.

B. **ARBITRATION OF DISPUTES:**

**The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 22C.**

**"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

**"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

Buyer's Initials [RR] / [BLR]                    Seller's Initials _____ / _____

C. ADDITIONAL MEDIATION AND ARBITRATION TERMS:

(1) EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.

Buyer's Initials [RR] [BLR]                    Seller's Initials [S] ( )
RPA-CA REVISED 12/18 (PAGE 8 OF 10)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 8 OF 10)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                    Ruiz

Exhibit "9"
Page 151

Authentisign ID: 1E00B6A2-7497-4FAD-AA64-77661475443C  1C-98F77124A079

Authentisign ID: D6F9FD98-0321-44E8-8D74-91388D92F17F
Property Address: _14930 Mar Vista Street, Whittier, CA  90605_           Date: _April 27, 2021_

    (2) **PRESERVATION OF ACTIONS:** The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.

    (3) **BROKERS:** Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.

23. **SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

24. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

25. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 22A.

26. **ASSIGNMENT:** Buyer may not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller. (C.A.R. Form AOAA).

27. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

28. **TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

29. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

30. **DEFINITIONS:** As used in this Agreement:
    A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.
    B. **"Agreement"** means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.
    C. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the parties.
    D. **"Close Of Escrow"**, including **"COE"**, means the date the grant deed, or other evidence of transfer of title, is recorded.
    E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.
    F. **"Days"** means calendar days. However, after Acceptance, the last Day for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.
    G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.
    H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
    I. **"Deliver"**, **"Delivered"** or **"Delivery"**, unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 10, regardless of the method used (i.e., messenger, mail, email, fax, other).
    J. **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.
    K. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
    L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
    M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.

31. **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____ , who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by ☐ _____ ☐ AM/☐ PM, on _____ (date)).

☐ One or more Buyers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

Date _04/27/2021_      BUYER _____
(Print name) _Raul Ruiz_      _4/27/2021 7:30:20 PM GMT_
Date _04/27/2021_      BUYER — Authentisign _____
(Print name) _Blanca Lorena Ruiz_      _Blanca Lorena Ruiz_
     _4/27/2021 7:26:27 PM GMT_
☐ Additional Signature Addendum attached (C.A.R. Form ASA).      Seller's Initials ( ⌖ ) ( _____ )

RPA-CA REVISED 12/18 (PAGE 9 OF 10)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 9 OF 10)**
Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com     Ruiz

Authentisign ID: 1E00B6A2-7497-4FAD-AA64-77661475443C    IC-98F77124A079

AuthentiSign ID: D6F9F098-0321-44E8-8D74-91388D92F17F

Property Address: _14930 Mar Vista Street, Whittier, CA 90605_ _____ Date: _April 27, 2021_

32. **ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☒ (If checked) SELLER'S ACCEPTANCE IS SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form SCO or SMCO) DATED:
_Counter offer And Addendum_

☐ One or more Sellers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S) for additional terms.

Date _5/5/21_ SELLER _____

(Print name) _____

Date _____ SELLER _____

(Print name) _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

( ____ / ____ ) (Do not initial if making a counter offer.) **CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was
(Initials)    personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
☐ AM/ ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by
Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation
is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that
Confirmation of Acceptance has occurred.

---

**REAL ESTATE BROKERS:**
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 2.
C. If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. **COOPERATING (BUYER'S) BROKER COMPENSATION:** Seller's Broker agrees to pay Buyer's Broker and Buyer's Broker agrees to accept, out of Seller's Broker's proceeds in escrow, the amount specified in the MLS, provided Buyer's Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Seller's Broker and Buyer's Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.
E. **PRESENTATION OF OFFER:** Pursuant to Standard of Practice 1-7, if Buyer's Broker makes a written request, Seller's Broker shall confirm in writing that this offer has been presented to Seller.

Buyer _David Morales_ Popular Real Estate _____ DRE Lic. # _01329713_
By _David Morales_ 4/27/2021 7:33:39 PM GMT ___ _David Morales_ DRE Lic. # _01893696_ Date _____
By _____ DRE Lic. # _____ Date _____
Address _7340 Firestone Blvd Ste 216_ _____ City _Downey_ _____ State _CA_ Zip _90241-4155_
Telephone _____ Fax _(562)928-7110_ ___ E-mail _talk2davidmorales@gmail.com_

Rogelio Sanchez · Williams SELA _____ DRE Lic. # _01978349_
_Rogelio Sanchez_ DRE Lic. # _01817403_ Date _5/5/2021_
D026B48690094DC... ___ DRE Lic. # _____ Date _____
Address _8255 Firestone Blvd #100_ _____ City _Downey_ _____ State _CA_ Zip _90241_
Telephone _(562)244-7755_ ___ Fax _(562)334-1501_ ___ E-mail _rogelios7888@sbcglobal.net_

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☒ a deposit in the amount of $ _20,000.00_ ),
counter offer numbers _SCO#1_ _____ ☐ Seller's Statement of Information and _____,
and agrees to act as Escrow Holder subject to paragraph 20 of this Agreement, any
supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _5/6/2021_

Escrow Holder _EscrowNet_ _____ Escrow # _11901-MC_
By _Monica Castillo_ _____ Date _5/10/2021_
Address _8635 Florence Ave Suite 106, Downey, CA 90240_
Phone/Fax/E-mail _562-382-1201 | 562-382-1321 | team@escrownet.net_
Escrow Holder has the following license number # _9631902_
☒ Department of Business Oversight, ☐ Department of Insurance, ☐ Department of Real Estate.

---

**PRESENTATION OF OFFER:** ( _____ ) Seller's Broker presented this offer to Seller on _____ (date).
Broker or Designee Initials

**REJECTION OF OFFER:** ( _____ ) ( _____ ) No counter offer is being made. This offer was rejected by Seller on _____ (date).
Seller's Initials

©1991- 2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Buyer Acknowledges that page 10 is part of this Agreement ( _RR_ ) ( _SLR_ )
Buyer's Initials

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

RPA-CA REVISED 12/18 (PAGE 10 of 10)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 10 OF 10)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    Ruiz

Exhibit "9"
Page 153

Authentisign ID: 1E00B6A2-7497-4FAD-AA64-77661475443C    IC-98F77124A079

Authentisign ID: D6F9F098-0321-44E8-8D74-91388D92F17F



CALIFORNIA
ASSOCIATION
OF REALTORS®

## DISCLOSURE REGARDING
## REAL ESTATE AGENCY RELATIONSHIP
(Buyer's Brokerage Firm to Buyer)
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/18)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(j), (k) and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:

To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.

To the Buyer and the Seller:
  (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
  (b) A duty of honest and fair dealing and good faith.
  (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:

To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.

To the Buyer and the Seller:
  (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
  (b) A duty of honest and fair dealing and good faith.
  (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.

In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
  (a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
  (b) Other duties to the Seller and the Buyer as stated above in their respective sections.

In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).

| | | | Date | 04/27/2021 |
|---|---|---|---|---|
| ☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant | — *Raul Ruiz* 4/27/2021 1:29:50 PM GMT | | | |
| ☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant | *Blanca Lorena Ruiz* 4/27/2021 1:25:45 PM GMT | | Date | 04/27/2021 |

Agent *Popular Real Estate*    DRE Lic. # 01329713

By *David Morales*   Real Estate Broker (Firm)   DRE Lic. # 01893696   Date 04/27/2021

4/27/2021 7:33:19 Salesperson or Broker-Associate, if any)   David Morales

© 1991-2018, California Association of REALTORS®, Inc.

**AD REVISED 12/18 (PAGE 1 OF 2)**

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

Popular Real Estate, 7340 firestone blvd Downey CA 90241    Phone: (563)816-3304    Fax:    Ruiz
David Morales    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Authentisign ID: 1E00B6A2-7497-4FAD-AA64-77661475443C    IC-98F77124A079

Authentisign ID: D6F9F098-0321-44E8-8D74-91388D92F17F

## CIVIL CODE SECTIONS 2079.13 – 2079.24 (2079.16 APPEARS ON THE FRONT)

2079.13. As used in Sections 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings:
(a) "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions.
(b) "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. (c) "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. (d) "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. (e) "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. (f) "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. (g) "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. (h) "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. (i) "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of real property upon acceptance by the seller. (j) "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. (k) "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. (l) "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. (m) "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. (n) "Seller's agent" means an agent who represents a buyer in a real property transaction.
2079.14. A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgment of receipt from that seller and buyer, except as provided in Section 2079.15, as follows: (a) The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. (b) The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.
2079.15. In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.
2079.16 Reproduced on Page 1 of this AD form.
2079.17(a) As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. (b) As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.
CONFIRMATION: The following agency relationships are confirmed for this transaction:

| Seller's Brokerage Firm | DO NOT COMPLETE. SAMPLE ONLY | License Number _____ |
|---|---|---|

Is the broker of (check one): ☐ the seller; or ☐ both the seller and seller. (dual agent)

| Seller's Agent | DO NOT COMPLETE. SAMPLE ONLY | License Number _____ |
|---|---|---|

Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

| Buyer's Brokerage Firm | DO NOT COMPLETE. SAMPLE ONLY | License Number _____ |
|---|---|---|

Is the broker of (check one): ☐ the buyer; or ☐ both the seller and seller. (dual agent)

| Buyer's Agent | DO NOT COMPLETE. SAMPLE ONLY | License Number _____ |
|---|---|---|

Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

(d) The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.
2079.18 (Repealed pursuant to AB-1289)
2079.19 The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.
2079.20 Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.
2079.21 (a) A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. (b) A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. (c) "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. (d) This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.
2079.22 Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.
2079.23 A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.
2079.24 Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

© 1991-2018, California Association of REALTORS®, Inc.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



AD REVISED 12/18 (PAGE 2 OF 2)
### DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com    Rufa

Exhibit "9"
Page 155

Authentisign ID: 1E00B6A2-7497-4FAD-AA64-77661475443C   IC-98F77124A079

Authentisign ID: D6F9F098-0321-44E8-8D74-91388D92F17F

**CALIFORNIA ASSOCIATION OF REALTORS®**

## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER - DISCLOSURE AND CONSENT
### (C.A.R. Form PRBS, Revised 12/18)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

Seller _____ Date 5/5/21
Seller _____ Date _____

Buyer _____ *Raul Ruiz* Date 04/27/2021
Buyer _____ *Blanca Lorena Ruiz* Date 04/27/2021

Buyer _____ Broker Popular Real Estate  DRE Lic # 01329713  Date 04/09/2021
By *David Morales*    DRE Lic # 01893696  Date _____
David Morales

Seller _____ *Rogelio Sanchez* Williams SELA  DRE Lic # 01978349  Date _____
By _____    DRE Lic # 01817403  Date 5/7/2021
D026B49690094DC

© 2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

PRBS REVISED 12/18 (PAGE 1 OF 1)



**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)**

Popular Real Estate, 7340 Firestone Blvd Downey CA 90241                    Phone: (562)818-3304    Fax:                    Ruiz
David Morales                   Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Authentisign ID: 1E00B6A2-7497-4FAD-AA64-77661475443C    IC-98F77124A079

Authentisign ID: D6F9F098-0321-44E8-8D74-91388D92F17F

 **CALIFORNIA
ASSOCIATION
OF REALTORS®**

**WIRE FRAUD AND ELECTRONIC FUNDS
TRANSFER ADVISORY**
(C.A.R. Form WFA, Revised 12/17)

Property Address: _14930 Mar Vista Street, Whittier, CA 90605_ ("Property").

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

## ACCORDINGLY, YOU ARE ADVISED:

1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Landlords at the beginning of the transaction.**
2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.**
3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4. **Avoid sending personal information in emails or texts. Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Landlord.**
5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Landlord, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks. By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory.**

| | | | |
|---|---|---|---|
| Buyer/Tenant | Authentisign | _Raul Ruiz_ Date | 04/27/2021 |
| Buyer/Tenant | _Blanca Lorena Ruiz_ | _Blanca Lorena Ruiz_ Date | 04/27/2021 |
| Seller/Landlord | 4/27/2021 7:25:50 PM GMT | Date | |
| Seller/Landlord | | _Daniel Gordaiel_ Date | 5/5/21 |

©2016-2017, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**WFA REVISED 12/17 (PAGE 1 OF 1)**

**WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY (WFA PAGE 1 OF 1)**

| | | |
|---|---|---|
| Popstar Real Estate, 7340 firestone blvd Downey CA 90241 | Phone: (562)818-3304    Fax: | Ruiz |
| David Morales | Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com | |

Authentisign ID: 1E00B6A2-7497-4FAD-AA64-77661475443C     1C-98F77124A079



Authentisign ID: D1F3F833-4321-44E3-4974-631380D92F17F

**CALIFORNIA**
**ASSOCIATION**
**OF REALTORS®**

### BUYER'S INSPECTION ADVISORY
(C.A.R. Form BIA, Revised 11/14)

Property Address *14930 Mar Vista Street, Whittier, CA  90605*

1. **IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

2. **BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to professionals, Broker does not guarantee their performance.

3. **YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

   A. **GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and nonstructural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.

   B. **SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.

   C. **WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.

   D. **SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.

   E. **WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS; WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.

   F. **ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).

   G. **EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.

   H. **FIRE, HAZARD AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies.

   I. **BUILDING PERMITS, ZONING AND GOVERNMENTAL REQUIREMENTS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size.

   J. **RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.

   K. **SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

   L. **NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

By signing below, Buyers acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyers are encouraged to read it carefully.

| Buyer | 04/27/2021 | Buyer | *Blanca Lorena Ruiz* | 04/27/2021 |
|---|---|---|---|---|

Ron 4/27/2021 7:30:37 PM GMT

Blanca Lorena Ruiz 4/27/2021 8:33 PM GMT

©1991-2004, California Association of REALTORS®, Inc. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**BIA REVISED 11/14 (PAGE 1 OF 1)**

### BUYER'S INSPECTION ADVISORY (BIA PAGE 1 OF 1)

Papeler Real Estate, 7340 firestone Blvd Downey CA 90241     Phone: (562)818-3384     Fax:     Ruiz
David Morales     Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Authentisign ID: 1E00B6A2-7497-4FAD-AA64-77661475443C    IC-98F77124A079

Authentisign ID: D6F9F096-0321-44E8-8D74-91388D92F17F

**CALIFORNIA
ASSOCIATION
OF REALTORS®**

### CALIFORNIA CONSUMER PRIVACY ACT ADVISORY
(C.A.R. Form CCPA, 12/19)

As of January 1, 2020, the California Consumer Privacy Act (commencing with Civil Code § 1798.100) ("CCPA") grants to California residents certain rights in their private, personal information that is collected by companies with whom they do business. Under the CCPA, "personal information" is defined broadly to encompass non-public records information that could reasonably be linked directly or indirectly to you, including, potentially, photographs of or sales information about your property. Some of your personal information will be collected and likely shared with others during the process of buying and selling real estate. Depending on the situation, you may have the right to "opt out" or stop the transfer of your personal information to others and request that certain businesses delete your personal information altogether. Not all businesses you interact with are required to comply with the law, primarily just those who meet the criteria of a covered "Business" as set forth in Section 1798.140 (c)]. For more information, you may ask your Broker for a copy of the C.A.R. Legal Q&A on the subject.

A real estate broker is likely to submit personal information to a Multiple Listing Service ("MLS") in order to help find a buyer for a seller's property. Through the MLS, the information is made available to real estate brokers and salespeople, and others. Even after a sale is complete, the MLS distributes sales information to the real estate community. Brokers, agents and MLSs may also share your personal information with others who post the personal information on websites or elsewhere, or otherwise use it. Thus, there are various service providers and companies in a real estate transaction who may be engaged in using or sharing data involving your personal information.

If your broker is a covered Business, it should have a privacy policy explaining your rights on its website and giving you an opportunity to request that personal information not be shared, used and even deleted. Even if your real estate brokerage is a covered Business, it needs, and is allowed, to keep your information to effectuate a sale and, by law, is required to maintain such information for three years to comply with regulatory requirements. Not all brokers are covered Businesses, however, and those that are not, do not have to comply with the CCPA.

Similarly, most MLSs will not be considered a covered Business. Instead, the MLS may be considered a Third Party in the event a covered Business (ex: brokerages, real estate listing aggregation or advertising internet sites or other outlets who meet the criteria of covered Businesses) exchanges personal information with the MLS. You do not have the right under the CCPA to require a Third Party to delete your personal information. And like real estate brokerages, even if an MLS is a covered Business, MLSs are also required by law to retain and make accessible in its computer system any and all listing and other information for three years.

Whether an MLS is a covered Business or a Third Party, you have a right to be notified about the sharing of your personal information and your right to contact a covered Business to opt out of your personal information being used, or shared with Third Parties. Since the MLSs and/or other entities receiving your personal information do not have direct contact with buyers and sellers and also may not be aware of which entities exchanging personal information are covered Businesses, this form is being used to notify you of your rights under the CCPA and your ability to direct requests to covered Businesses not to share personal information with Third Parties. One way to limit access to your personal information, is to inform your broker or salesperson you want to opt-out of the MLS, and if so, you will be asked to sign a document (Form SELM) confirming your request to keep your listing off the MLS. However, if you do so, it may be more difficult to sell your property or obtain the highest price for it because your property will not be exposed to the greatest number of real estate licensees and others.

I/we acknowledge receipt of a copy of this California Consumer Privacy Act Advisory.

| | | |
|---|---|---|
| Buyer/Seller/Landlord/Tenant | ___ Authentisign ___ | Date ___ 04/27/2021 ___ |
| | *Raul Reis* 7:30:38 PM GMT | |
| Buyer/Seller/Landlord/Tenant | *Blanca Lorena Ruiz* | Date ___ 04/27/2021 ___ |
| | *Blanca Lorena Ruiz* GMT | |

© 2019, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

CCPA 12/19 (PAGE 1 OF 1)



### CALIFORNIA CONSUMER PRIVACY ACT ADVISORY (CCPA PAGE 1 OF 1)

Popular Real Estate, 7340 firestone blvd Downey CA 90241    Phone: (562)818-3304    Fax:    Reis
David Morales    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Authentisign ID: 1E00B6A2-7497-4FAD-AA64-77661475443C

1C-98F77124A079

Authentisign ID: D6F9F098-0321-44E8-8D74-91388D92F17F



**SHORT SALE ADDENDUM**
(C.A.R. Form SSA, Revised 4/12)

This is an addendum to the ☒ California Residential Purchase Agreement, ☐ Counter Offer, ☐ Other
_____ ("Agreement"), dated **March 7, 2021** ,
on property known as _____ 14930 Mar Vista Street, Whittier, CA 90605 _____
("Property"), between _____ Raul Ruiz, Blanca Lorena Ruiz _____
("Buyer") and _____
("Seller").

**1. SHORT SALE APPROVAL:**

**A.** This Agreement is contingent upon Seller's receipt of and delivery to Buyer of written consent ("Short Sale Lenders' Consent") to the Agreement from all existing secured lenders and lienholders ("Short Sale Lenders"), by 5:00 P.M. no later than **45** (or ☒ **120** ) Days After Acceptance (or ☐ on _____ (date) ("Short Sale Contingency Date"). If Buyer or Seller cancels this Agreement prior to the Short Sale Contingency Date, that party may be in breach of the Agreement unless the cancellation is made pursuant to some other paragraph in this addendum or in the Agreement, whether or not time periods in the Agreement have commenced.

**B.** Short Sale Lenders' Consent means that all Short Sale Lenders shall collectively agree to reduce their respective loan balances by an amount sufficient to permit the proceeds from the sale of the Property to pay the existing balances on loans secured by the Property, real property taxes, brokerage commissions, closing costs, and other monetary obligations the Agreement requires Seller to pay at Close Of Escrow (including, but not limited to, escrow charges, title charges, documentary transfer taxes, prorations, retrofit costs, Homeowners Association Fees and Repairs) without requiring Seller to place any funds into escrow or have any continuing obligation to Short Sale Lenders.

**C. (i)** Seller shall Deliver to Buyer a copy of Short Sale Lenders' Consent or term sheet(s) within 3 (or ☐ _____ ) Days After receipt by Seller. **(ii)** Seller's presentation to Buyer of Short Sale Lender's Consent satisfying 1B removes the contingency in 1A.

**D.** If by the Short Sale Contingency Date, **(i)** Seller has not received Short Sale Lenders' Consent satisfying 1B, Seller may in writing cancel this Agreement, or **(ii)** Buyer has not received a copy of Short Sale Lenders' Consent satisfying 1B, Buyer may cancel this Agreement in writing. In either case, Buyer shall be entitled to return of any remaining deposit delivered to escrow.

**E.** Seller shall reasonably cooperate with existing Short Sale Lenders in the short sale process, but neither Seller nor Buyer is obligated to change the terms of their Agreement to satisfy Short Sale Lenders' consent or term sheet(s).

**F.** If Short Sale Lenders' written consent or term sheet(s) provided to Seller require changes to the Agreement in order to satisfy the terms of 1B, **(i)** neither Buyer nor Seller shall be obligated to continue negotiations to satisfy any of the requirements of the term sheet(s) **(ii)** either party may in writing cancel this Agreement and **(iii)** Seller is advised to seek legal, accounting and tax advice regarding any such changes. If the Agreement is cancelled pursuant to this paragraph, Buyer shall be entitled to return of any remaining deposit delivered to escrow.

**2. TIME PERIODS.** Time periods in the Agreement for inspections, contingencies, covenants, and other obligations: **(i)** shall begin the Day After Seller delivers to Buyer Short Sale Lenders' Consent satisfying 1B. However, time periods for providing pre-approval/pre-qualification letters and verification of down payment and closing costs shall nonetheless begin as otherwise specified in the Agreement; or **(ii)** (if checked) ☐ shall begin as specified in the Agreement.

Buyer's Initials (RR) (JLRR)        Seller's Initials (____) (____)

© 2007-2012, California Association of REALTORS®, Inc.

SSA 4/12 (PAGE 1 OF 2)

**SHORT SALE ADDENDUM (SSA PAGE 1 OF 2)**

Exhibit "9"
Page 160

Authentisign ID: 1E00B6A2-7497-4FAD-AA64-77661475443C      1C-98F77124A079

Authentisign ID: D6F9F098-0321-44E8-8D74-91388D92F17F

Property Address: _14930 Mar Vista Street, Whittier, CA  90605_____    Date: _March 7, 2021_____

3. **BUYER'S DEPOSIT CHECK.** Buyer's deposit check shall be delivered to escrow within:
  (i) 3 business Days After Seller delivers to Buyer Short Sale Lenders' Consent satisfying 1B, or (ii) (if checked) ☐ as specified in the Agreement.

4. **NO ASSURANCE OF LENDER APPROVAL.** Buyer and Seller understand that Short Sale Lenders: **(i)** are not obligated to give consent to a short sale; **(ii)** may require Seller to forward any other offer received; and **(iii)** may give consent to other offers. Additionally, Short Sale Lenders may require that, in order to obtain their approval for a short sale, some terms of the Agreement, such as the Close of Escrow, be amended or that Seller sign a personal note or some other obligation for all or a portion of the amount of the secured debt reduction. Buyer and Seller do not have to agree to any of Short Sale Lenders' proposed terms. Buyer, Seller and Brokers do not have control over whether Short Sale Lenders will consent to a short sale, or control over any act, omission, or decision by any Short Sale Lender in the short sale process.

5. **BUYER AND SELLER COSTS.** Buyer and Seller acknowledge that each of them may incur costs in connection with rights or obligations under the Agreement. These costs may include, but are not limited to, payments for loan applications, inspections, appraisals, and other reports. Such costs will be the sole responsibility of the party incurring them if Short Sale Lenders do not consent to the transaction or either party cancels the transaction pursuant to the Agreement.

6. **OTHER OFFERS.** Unless otherwise agreed in writing, after Buyer's offer has been accepted by Seller, **(i)** Seller has the right to continue to market the Property for back-up offers; **(ii)** Seller has the right to accept back-up offers (C.A.R. Form PAA, Paragraph 1), and subject to Short Sale Lender(s) requirements present to Short Sale Lender(s) any accepted back-up offers that are received; and **(iii)** Seller shall notify buyer when any accepted back-up offers, are presented to Short Sale Lender(s).

7. **CREDIT, LEGAL AND TAX ADVICE.** Seller is informed that a short sale may have credit or legal consequences and may result in taxable income to **Seller. Seller is advised to seek advice from an attorney, certified public accountant or other expert regarding such potential consequences of a short sale.**

**By signing below, Buyer and Seller each acknowledge that they have read, understand, accept and have received a copy of this Short Sale Addendum.**

Date ___04/27/2021_____    Date ___5/5/21_____

Buyer _____    Seller _____
Apr 27 2021 7:50:47 PM GMT

Buyer _Blanca Lorena Ruiz_____    Seller _____
Blanca Lorena Ruiz

© 2007-2012, California Association of REALTORS®, Inc.  United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



**SHORT SALE ADDENDUM (SSA PAGE 2 OF 2)**
Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com      Ruiz

Authentisign ID: 1E00B6A2-7497-4FAD-AA64-77661475443C    IC-98F77124A079

## SALES AGREEMENT ADDENDUM

This Sales Agreement Addendum ("Addendum") is intended to supplement or where indicated, replace the terms and conditions of that certain California Residential Purchase Agreement and Joint Escrow Instructions ("Sale Agreement") between Raul Ruiz and Blanca Lorena Ruiz ("Buyers")  and David M. Goodrich ("Seller"), solely in his capacity as the Chapter 7 Trustee for the bankruptcy estate of Benjamin W. Gonzales ("Estate"), to purchase real property at 14930 Mar Vista Street, Whittier, California 90605 ("Property').

### Section 1.    Controlling Provisions.

1.01.    The terms of this Addendum modify and supersede any conflicting or inconsistent terms in the Sale Agreement.  The Sale Agreement, modified by this Addendum, is collectively referred to as the "Agreement."

### Section 2.    Closing Date.

2.01.    Escrow shall close on the first business day after 14 calendar days following the date the Bankruptcy Court enters a written order approving the Sale to the Buyers (or overbidder, if applicable). Any provision in the Agreement contrary to the foregoing is null and void and is not part of the Agreement.

### Section 3.    Brokers' Fee.

3.01    The Seller shall not pay (or be liable for) the fee of any broker unless and until (a) the sale to the Buyers are approved by the Bankruptcy Court, (b) the broker fee is approved by the Bankruptcy Court and (c) the Property is sold and escrow closes. No commission or compensation shall be due or payable to Broker in connection with this Agreement or sale except from the cash proceeds of an actual Sale of the Property that closes to Buyers.  Buyers hereby represent and warrant that, other than the Broker, Buyer has not dealt with any broker, finder or other person entitled to any fee, commission or other compensation in connection with the Sale, and Buyers shall indemnify, defend and protect the hold Seller and the related bankruptcy estate harmless of, from and against any claims, demands, actions, causes of action, losses, liabilities and cost and expenses (including, without limitation, all court cost and reasonable attorneys' fees) as Seller may suffer or incur in the event that any claims for any such fees, commissions or other compensation of any kind are hereafter asserted. Any provisions in the offer contrary to the foregoing are null and void and are not part of the Agreement.

### Section 4.    Approval by the United States Bankruptcy Court.

4.01.    The Agreement is contingent on (a) obtaining the approval of the Bankruptcy Court, and (b) entry of an order, in from and substance acceptable to the Seller in the Seller's sole and absolute discretion, approving the Agreement. If the Bankruptcy Court declines to approve the Agreement, the Seller shall not be required to complete the sale contemplated by the Agreement.

4.02.    Buyers acknowledge that the approval of the Bankruptcy Court of the sale contemplated in the Agreement shall be subject to overbidding in accordance with bankruptcy law and other applicable statues, regulations and rules of the Bankruptcy Court. Buyers acknowledge that overbidders may be

Authentisign ID: 1E00B6A2-7497-4FAD-AA64-77661475443C   IC-98F77124A079

present at the hearing regarding the motion to approve the sale of the Property and the Seller has a duty to (a) attempt to obtain overbids and (b) to sell the Property to the bidder who submits the best bid.

4.03.   Buyers shall have the right to be present at the hearing regarding the motion to approve the sale to the Buyers and to participate in any bidding that may occur. Buyers acknowledge and agree, however, that the Bankruptcy Court will require the Seller to sell the Property to the bidder who submits the best bid.

4.04.   If the Buyers are the successful purchasers and the Buyers have not breached the Agreement, the deposit of the Buyers shall be fully credited toward the final purchase price. If an overbidder is the successful purchaser, the Seller shall return to the Buyers all funds tendered by the Buyers in connection with the sale contemplated by the Agreement including, but not limited to, the deposit; provided_that the Buyers have not breached any provisions of the agreement.

4.05   If any liens, claims of co-owners, tax consequences, claims of parties to executory contracts or other encumbrances against or interest in the Property, whether or not previously known to the Seller, make the sale of the Property infeasible, unprofitable or insufficiently profitable for the Estate then the Seller may, at his option, at any time on or before the close of escrow and in his sole discretion, refuse to complete the transaction contemplated by the Agreement. Likewise, if any party makes an offer involving or related in any fashion to the Property which would provide a greater benefit to the Estate or its creditors (or enable the seller to avoid or resolve exiting or future litigation) then the Seller may, at his option, at any time on or before the close of escrow and in his sole discretion, refuse to complete the transactions contemplated by the Agreement. In such event, the Buyers' sole recourse against the Estate shall be to recover all funds tendered by the Buyers' to the Seller in connection with the sale completed by the Agreement including but not limited to any deposit.

## Section 4.A     Short Sale Lender Approval

4A.01   Buyers acknowledge that the Property is subject to Short Sale Lender or Servicer Approval as applicable.

4A.02   If the applicable Short Sale Approval(s) is/are not issued within 120 days after the Seller's contract acceptance date, Buyers may cancel the Sale Agreement without penalty. If a Short Sale Approval is granted, even after 120 days and if the Buyers have not canceled, then the Buyers may not cancel for this reason.

4A.03   Buyers understand that most lenders and/or servicers or investors require an Arm's Length Disclosure to be signed by the parties as a condition of the short sale approval, and some lenders and/or servicers or investors will not allow a family member or relative to purchase a property in which a debtor or seller related to the buyers has or may have interest.

4A.04   Offers in the name of a corporation, trust, LLC or partnership will need to show proof of all entity owners and shall provide a copy of the articles of organization (and operating agreement when applicable) which must provide for who is authorized to sign on behalf of the entity. Buyers understand and acknowledge that once Addendum is executed, the name of the buyer cannot be changed for title, closing or any other purpose due to the Short Sale Approval(s).

Authentisign ID: 1E00B6A2-7497-4FAD-AA64-77661475443C  IC-98F77124A079

**Section 5.      Representations And Covenants Of The Buyers Accepting The  Property "As Is  Where Is, With All Faults".**

5.01    The interest of the Estate, if any in the Property is being sold "AS IS, WHERE IS, WITH ALL FAULTS" present conditions, without representations or warranties of any kind or nature whatsoever whether express or implied.

5.02    The Seller is a bankruptcy trustee and any interest acquired by the Estate in the Property was acquired for a short period of time due to the bankruptcy case. Neither the Estate nor the Seller has acquired any interest in the Property for the purpose of maintaining the Property, but rather for the sale purpose of liquidating the Property for the benefit of the creditors of the Estate.

5.03    Due to the unique nature of the bankruptcy case, the Seller has not personally audited, investigated or inspected the Property and has not personally used the Property. The Buyers and the Seller further agree that it is not economical or reasonable for  the Seller to  audit investigate or inspect the Property under these circumstances because neither the Estate nor the Seller acquired an interest in the Property, if any, for the purpose of using the Property.

5.04    The sale of the Property is entirely "as is, where is" and the Seller shall not make any disclosures set forth in the offer. Buyers agree that the Seller is exempt from all disclosure  requirements  described in the offer and any and all disclosure  requirements under non-bankruptcy law.  Buyers acknowledge that the Buyers is acting under the Agreement in all respects as a bankruptcy trustee and not in the Seller's personal capacity.

5.05    Buyers have been given extensive opportunity to inspect and investigate the Property, independently and through agents of the Buyers' choosing.  The Buyers shall continue to  have the right to  inspect  the Property (but the Seller shall have no obligation to  maintain utilities, if  any, at the Property, the Buyers are not relying in any manner on the Seller, the Seller's real estate broker, the Seller's attorney or any other agents of the Seller or the Estate regarding the characteristics or conditions of the Property or any other aspect of the Property. Buyers acknowledge that the Buyers are not relying in any manner upon any information regarding the Property provided in any manner by the Seller, the Seller's real estate broker, the Seller's attorney or any other agent of the Seller, including, but not limited to, any listing in multiple listing service,  any advertisement  for the  Property, oral statements of the Seller's real estate broker or any other communication. Buyers acknowledge  that the Buyers are not relying on the Seller, the Seller's real estate broker, the Seller's attorney or any other agent of the Seller or the Estate regarding whether the Property is in compliance with any statutes, code, regulations, ordinances or other law of any city, county, state, federal government or any other governmental agency. Any reports, repairs or work acquired by the Buyers shall be the sole responsibility of the Buyers. Buyers assume all responsibility to check with the appropriate governmental agencies for the intended use of the Property and Buyers hold harmless the Seller, the Seller's real estate broker, the Seller's attorney, the Estate, the United State Bankruptcy Court, and the Seller's agents as to  suitability of the Property for the Buyers' intended use.

5.06    Although there could be defects in and on the Property, including, but no limited to, title defects and defect in physical attributes of the Property, Buyers relieve the Seller, the Seller's real estate broker, the Seller's attorneys and the Seller's agents of any and all obligations to inspect the Property or investigate any matter involving the Property, including but not limited to , the history of the Property,

Authentisign ID: 1E00B6A2-7497-4FAD-AA64-77661475443C      IC-98F77124A079

its condition, and Property defects, its potential value to the Buyers or the public and any aspects of title to the Property.

5.07    Buyers represent and warrant that the Buyers are relying solely upon inspection(s) of the Property by the Buyers and not upon any representation made by any person whomsoever, and that the Buyers are purchasing the Property in the condition in which it now is, without any obligation on the part of the Seller to make changes, alterations or repairs to the Property or maintain or clean the Property or to remove any debris from the Property. Any and all provisions in the offer that purport to require the Seller to maintain, clean, change, alter or repair the Property are hereby abrogated. Those provisions are null and void and not included in the Agreement. In summary, the sale is completely "AS IS, WHERE IS, WITH ALL FAULTS". The consummation of this transaction shall constitute an acknowledgement by Buyers that the Property has been accepted without representation or warranty of any kind or nature an in its present "AS IS, WHEREIS, WITH ALL FAULTS" conditions.

5.08    Buyers shall be responsible for connecting any utilities necessary to perform inspections requested and any related costs as part of any due diligence period or inspecti on.

5.09    Any provision in the offer contrary to subsection 5.01 through 5.08 above is null and void and is not part of the Agreement.

### Section 6.    Title to The Property.

6.01    The Agreement is contingent upon the Buyers receiving an owner's title insurance policy insuring title to the Property. The Seller will deliver title to the Buyers free and clear of all financial liens and encumbrances. Except as set forth in this section 6.01, the Seller makes no representations or warranties whatsoever regarding the state of title to the Property. In particular, but without limitation, the Seller makes no representations or warranties regarding (a) the existence, nature, scope, amount of status of any liens, claims of co-owners or other interest or encumbrances against the Property. Buyers acknowledge and agree that nothing in the Agreement, including but not limited to the recitals in this Addendum shall constitute any type of representation or warranty by the Seller that (b) the Estate has any interest in the Property, or (c) any lien, encumbrances, claim of a co-owner or other interest in the Property does or does not exist. Buyers further acknowledge and agree that Buyers are not relying on any representation or statement by the Seller or any agent of the Seller in entering into the Agreement.

6.02    Title to the Property shall be transferred to the Buyers by quitclaim deed without warranties, representation or recourse of any kind.

6.03    Any provision in the offer contrary to subsections 6.01and 6.02 above is null and void and is not part of the Agreement.

### Section 7.    Capacity of The Seller.

7.01    Buyers acknowledge and agree that the Seller is acting in all respects in connection with the Agreement solely as a bankruptcy trustee, the representative of the Estate, and not in the Seller's personal or individual capacity. Buyers acknowledge and agree that the Seller does not have and shall not have any personal liability of any kind under any provision of the Agreement. With respect to any and all disputes arising from or in any manner connected with the Agreement, Buyers hereby waive any and all rights to (a) sue the Seller in his personal capacity (b) to recover judgment against Seller

Authentisign ID: 1E00B6A2-7497-4FAD-AA64-77661475443C    IC-98F77124A079
DocuSign Envelope ID: 7A346394-92B5-4BB9-AA2C-6BD40761386A

personally or (c) to obtain any other form of relief against the Seller in his personal capacity. In the event of any breach of the Agreement by the Seller or the occurrence of any other dispute arising from or in any manner related to the Agreement, Buyers acknowledge and agree that the Seller shall have no personal liability of any kind and that any claims arising from or in any manner related to such breach or dispute shall be asserted against the Estate only and not the Seller. Any provision in the offer contrary to the foregoing is null and void and is not part of the Agreement.

### Section 8      Remedy for Buyers' or Seller's Failure To Close.

8.01      Buyers' sole remedy in the event that the sale fails to close as a result of Seller's inability or failure to close for any reason, including but not limited to the reason of failure to obtain approval of the sale by the Bankruptcy Court, shall be the mutual release of Buyers' and Seller's obligation to buy or sell and a full refund of the deposit (plus any increase thereof by Buyers). In the event Buyers fail to close the sale for any reason other than Seller's default, after Buyers' contingencies have been removed, Buyers' deposit (plus an increase, thereof by Buyers) shall be paid over to Seller and retained by Seller as liquidated damages without further legal action. If the Property is a dwelling with no more than four units, one of which Buyers intend to occupy, then the amount retained shall be no more than three percent of the Purchase Price. This provision shall apply equally to the deposit (and any increase, thereof by Buyers).

### Section 9.      Dispute Resolution/Jurisdiction.

9.01      Paragraph 22 of the Agreement is deleted in it's entirely. The Seller and the Buyers hereby consent to the sole jurisdiction of the United States Bankruptcy Court for the Central District of California, Los Angeles Division to resolve any dispute, claims or controversy between the parties arising out of or relating to the Property, the Agreement, or any matter that is the subject of the Agreement. All parties agree that such a dispute would constitute a core proceeding and all parties waive their right, if any to a jury in such a proceeding. The Bankruptcy Court retain exclusive jurisdiction to resolve any dispute, claim or controversy between the parties arising out of or relating to the Property, the Agreement or any matter that is the subject of the Agreement. Any provision in the offer contrary to the foregoing including but not limited to any provision requiring mediation or arbitration is null and **void** and is not part of the Agreement.

4815-1357-7440

Exhibit "9"
Page 166

Authentisign ID: 1E00B6A2-7497-4FAD-AA64-77661475443C
IC-98F77124A079

## Section 10.     Choice of Law.

10.01 The Agreement shall be governed by and construed in accordance with the federal law of the United States of America including, but not limited to, the Bankruptcy Code. To the extent that any state law applies (and which is not superseded by federal law), the Agreement shall be governed by and construed in accordance with laws of the State of California, without giving effect to any choice of law or conflict of law provision or rule of the state California or any other non-federal jurisdiction that would cause the application of the laws of any on-federal jurisdiction other than the State of California. The Agreement has been entered into the State of California.

IN WITNESS WHERE OF, the parties here to have caused this Addendum to be signed on the dates indicated below.

Dated:

7/11/2021 12:59:18 AM GMT

Raul Ruiz, Buyer

Dated:

*Blanca Lorena Ruiz*

7/11/2021 12:57:16 AM GMT

Blanca Lorena Ruiz, Buyer

Dated: 5/5/21

David M. Goodrich, Chapter 7 Trustee for the
Bankruptcy of Benjamin W. Gonzales

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled: **TRUSTEE'S MOTION FOR ORDER: 1. APPROVING SUBORDINATION AGREEMENT BETWEEN THE TRUSTEE AND BANK OF AMERICA; 2. APPROVING COMPROMISE BETWEEN TRUSTEE AND COMERICA BANK; AND 3. AUTHORIZING SALE OF REAL PROPERTY (A) OUTSIDE THE ORDINARY COURSE OF BUSINESS; (B) FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES; (C) SUBJECT TO OVERBID; AND (D) FOR DETERMINATION OF GOOD FAITH PURCHASER UNDER 11 U.S.C. §363(M); MEMORANDUM OF POINTS OF AUTHORITIES; DECLARATIONS OF DAVID M. GOODRICH AND ROGELIO SANCHEZ IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 16, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On **July 16, 2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| **DEBTOR** | **U.S. TRUSTEE** | **BUYERS** |
|---|---|---|
| BENJAMIN W GONZALES | UNITED STATES TRUSTEE (LA) | RAUL RUIZ AND BLANCA RUIZ |
| P.O. BOX 1530 | 915 WILSHIRE BLVD, SUITE 1850 | 7130 HOGEE DR |
| LOS ANGELES, CA 90001 | LOS ANGELES, CA 90017 | PARAMOUNT, CA 90723 |

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **July 16, 2021**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA OVERNIGHT MAIL: PRESIDING JUDGE'S COPY**
HONORABLE BARRY RUSSELL
UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
EDWARD R. ROYBAL FEDERAL BUILDING AND COURTHOUSE
255 E. TEMPLE STREET, SUITE 1660 / COURTROOM 1668
LOS ANGELES, CA 90012

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 16, 2021 | Chanel Mendoza | /s/ Chanel Mendoza |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

*June 2012*

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:
- **ATTORNEY FOR CREDITOR BMW BANK OF NORTH AMERICA, C/O AIS PORTFOLIO SERVICES, LP:** Bhagwati Barot    bbarot@aissolution.com
- **ATTORNEY FOR CREDITOR/PLAINTIFF COMERICA BANK:** Jennifer Witherell Crastz    jcrastz@hrhlaw.com
- **ATTORNEY FOR CREDITOR/PLAINTIFF COMERICA BANK:** Christopher D Crowell    ccrowell@hrhlaw.com
- **CREDITOR BANK OF AMERICA, N.A.:** Joseph C Delmotte    ecfcacb@aldridgepite.com, JCD@ecf.inforuptcy.com; jdelmotte@aldridgepite.com
- **INTERESTED PARTY COURTESY NEF:** Howard M Ehrenberg    hehrenberg@sulmeyerlaw.com, hehrenberg@ecf.inforuptcy.com; mviramontes@ecf.inforuptcy.com
- **INTERESTED PARTY ANDY EPSTEIN:** Andy J Epstein    taxcpaesq@gmail.com
- **CREDITOR FRANK O FOX AND DEFENDANT THE LAW FIRM OF FOX AND FOX:** Frank O Fox frank@foxandfox.com
- **TRUSTEE DAVID M GOODRICH (TR):** David M Goodrich (TR) dgoodrich@wgllp.com, c143@ecfcbis.com; dgoodrich11@ecf.axosfs.com; lrobles@wgllp.com
- **ATTORNEY FOR TRUSTEE DAVID M GOODRICH (TR):** Chad V Haes chaes@marshackhays.com, chaes@ecf.courtdrive.com; cmendoza@ecf.courtdrive.com; cmendoza@marshackhays.com; kfrederick@ecf.courtdrive.com
- **ATTORNEY FOR TRUSTEE DAVID M GOODRICH (TR):** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
- **ACCOUNTANT SAM S LESLIE:** Sam S Leslie admin@leaaccountancy.com
- **ATTORNEY FOR TRUSTEE DAVID M GOODRICH (TR):** Laila Masud lmasud@marshackhays.com, lmasud@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com
- **ATTORNEY FOR DEBTOR BENJAMIN W GONZALES:** James R Selth jim@wsrlaw.net, jselth@yahoo.com; brian@wsrlaw.net; vinnet@ecf.inforuptcy.com
- **INTERESTED PARTY COURTESY NEF:** Valerie Smith    claims@recoverycorp.com
- **UNITED STATES TRUSTEE (LA):** United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
- **ATTORNEY FOR DEBTOR BENJAMIN W GONZALES:** Daniel J Weintraub dan@wsrlaw.net, vinnet@ecf.inforuptcy.com; gabby@wsrlaw.net; eduardo@wsrlaw.net
- **ATTORNEY FOR CREDITOR BONIAL & ASSOCIATES, P.C. – PHH:** Gilbert R Yabes    ecfcacb@aldridgepite.com, GRY@ecf.inforuptcy.com; gyabes@aldridgepite.com
- **ATTORNEY FOR CREDITOR GRETEL GONZALES:** Jasmin Yang jasmin.yang@usdoj.gov, USACAC.CIVIL@usdoj.gov

2. **SERVED BY UNITED STATES MAIL**:  CONTINUED:

| | | |
|---|---|---|
| **RTD 01/18/18 UTF** | **SECURED CREDITOR** | **SECURED CREDITOR** |
| **SECURED CREDITOR** | BANK OF AMERICA | COMERICA BANK |
| BANK OF AMERICA | P.O. BOX 31785 | 35 NORTH LAKE AVE., SUITE 120 |
| ~~P.O. BOX 15184~~ | TAMPA, FL 33631-3785 | PASADENA, CA 91101-1892 |
| ~~WILMINGTON, DE 19850-5184~~ | | |
| | | |
| **SECURED CREDITOR / POC ADDRESS** | **SECURED CREDITOR / POC ADDRESS** | **INTERESTED PARTY** |
| COMERICA BANK | LAW FIRM OF FOX AND FOX | ALL OCCUPANTS OF 14930 MAR VISTA ST |
| JENNIFER WITHERELL CRASTZ, ESQ. / HEMAR, ROUSSO & HEALD, LLP | 4262 WILSHIRE BLVD, THIRD FLOOR | 14930 MAR VISTA ST |
| 15910 VENTURA BLVD., 12TH FLOOR | LOS ANGELES, CA 90010 | WHITTIER, CA 90605 |
| ENCINO, CA 91436-2802 | | |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

*June 2012*

| **CREDITOR** | **CREDITOR / POC ADDRESS** |
|---|---|
| GRETEL GONZALES | GRETEL GONZALES |
| WILLIAM T. KERMISCH | 28346 CAMILE DEL RIO |
| 12711 VENTURA BLVD., SUITE 200 | SAN JUAN CAPISTRANO, CA 92675 |
| STUDIO CITY, CA 91604-2434 | |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

*June 2012*