Christopher D. Crowell (SBN 253103)
HEMAR, ROUSSO & HEALD, LLP
15910 Ventura Boulevard, 12th Floor
Encino, California 91436
Telephone: (818) 501-3800
Facsimile: (818) 501-2985
E-mail: ccrowell@hrhlaw.com

Attorneys for Secured Creditor
COMERICA BANK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>BENJAMIN W. GONZALES,<br><br>        Debtor. | Case No. 2:17-bk-23812-BR<br><br>Chapter 7<br><br>SECURED CREDITOR COMERICA BANK'S REPLY MEMORANDUM IN SUPPORT OF TRUSTEE'S MOTION FOR ORDER: (1) APPROVING SUBORDINATION AGREEMENT BETWEEN TRUSTEE AND BANK OF AMERICA; (2) APPROVING COMPROMISE BETWEEN TRUSTEE AND COMERICA BANK; AND (3) AUTHORIZING SALE OF REAL PROPERTY (A) OUTSIDE THE ORDINARY COURSE OF BUSINESS; (B) FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES; (C) SUBJECT TO OVERBID; AND (D) WITH A DETERMINATION OF GOOD FAITH PURCHASER UNDER 11 U.S.C. § 363(M); SUPPORTING DECLARATION OF CHRISTOPHER D. CROWELL<br><br>Hearing<br>Date: August 10, 2021<br>Time: 2:00 p.m.<br>Place: Courtroom 1668 (Hon. Barry Russell)<br>      255 East Temple Street<br>      Los Angeles, CA 90012 |

Secured creditor Comerica Bank ("Comerica") submits this Reply Memorandum in Support of Chapter 7 Trustee David M. Goodrich's ("Trustee's") Motion for Order: (1) Approving Subordination Agreement Between Trustee and Bank of America; (2) Approving Compromise Between Trustee and Comerica; and (3) Authorizing Sale of Real Property (A) Outside the Ordinary Course of Business; (B) Free and Clear of Liens, Claims, and Encumbrances; (C) Subject to Overbid; and (D) With a Determination of Good Faith Purchaser Under 11 U.S.C. § 363(m) (Dkt. No. 263) ("Motion").

This Reply Memorandum responds to the Opposition to the Motion filed by The Law Firm of Fox and Fox ("Fox") (Dkt. No 268), the only filed opposition to the Motion.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Trustee seeks Court approval of a compromise releasing Comerica from its obligation to carve-out $150,000 from its secured claim in exchange for Comerica's waiver of its administrative expense claim for attorney fees incurred in bankruptcy litigation with Fox and related activities. The Court should overrule Fox's objection to the compromise, which was negotiated in good faith; is reasonable, fair, and equitable; and relieves the estate of liability for a substantial administrative claim.

## RELEVANT FACTUAL BACKGROUND

A. The Carve-Out Agreement

The Trustee, Comerica, Benjamin Gonzales, and Gretel Gonzales entered into a Carve-Out Agreement and Release dated January 8, 2019 ("Carve-Out Agreement"), whereby Comerica agreed to a $150,000 "carve-out and assignment to the Estate of funds otherwise subject to its Liens" to facilitate the Trustee's sale of real property in Whittier, California, at 14663 Carnell Street ("Carnell Property") and 14930 Mar Vista Street ("Mar Vista Property," and with the Carnell Property, "Whittier Properties"). [Dkt. No. 123.] In exchange, Comerica's secured claim was deemed valid and allowed. [Id.] The Carve-Out Agreement required Comerica to "challenge, litigate, and attempt to fully liquidate" Fox's claim against Gretel Gonzales ("Fox Claim") and Fox's alleged liens on the Whittier Properties allegedly securing those claims ("Fox Liens"). [Id.] In exchange, Ms. Gonzales waived and released her alleged liens on the Whittier Properties ("Gretel Liens"). [Id.]

The Court indicated it would approve the Carve-Out Agreement at a hearing held on February 12, 2019, and entered the corresponding Order on March 1, 2019. [Dkt. No. 138.]

1

B.    The First Fox Adversary Proceeding

On March 22, 2019, Comerica filed Adversary Proceeding No. 2:19-ap-01081 against Fox ("First Fox Adversary Proceeding"). [Adv. Dkt. No. 1.] On May 14, 2020, the Court entered Summary Judgment in the First Fox Adversary Proceeding, finding that Fox does not hold and never held a lien against the Whittier Properties by virtue of the Fox Liens. [Adv. Dkt. No. 68.] The District Court affirmed the Judgment on appeal. [Adv. Dkt. No. 91.]

C.    The Second Fox Adversary Proceeding

Ms. Gonzales repudiated her obligation under the Carve-Out Agreement to waive and release the Gretel Liens and then assigned the Gretel Liens to Fox. Therefore, on March 17, 2020, Comerica filed Adversary Proceeding No. 2:20-ap-10165 against Fox ("Second Fox Adversary Proceeding"), seeking a determination that the Gretel Liens are not valid. [Adv. Dkt. No. 1.] Trial in the Second Fox Adversary Proceeding is set for August 17, 2021. [Adv. Dkt. No. 54.]

D.    Comerica's Attorney Fees

From February 12, 2019 (the date the Court indicated it would approve the Carve-Out Agreement), through July 30, 2021, Comerica incurred and paid more than $160,000 in attorney fees in this matter. [Declaration of Christopher D. Crowell filed herewith ¶ 3.] Substantially all these fees were incurred to represent Comerica in the First Fox Adversary Proceeding (including the related appeal) and the Second Fox Adversary Proceeding; to otherwise assist Gretel in resolving her disputes with Fox; and in working with the Trustee to facilitate the sale of the Whittier Properties. [Id.]

E.    The Sale of the Whittier Properties and the Instant Motion

The Trustee's sale of the Carnell Property in October 2019 generated $375,197.26 in net proceeds ("Carnell Proceeds"), which remain in the bankruptcy estate subject to the same liens on Carnell Property prior to the sale. [Declaration of David M. Goodrich filed June 2, 2020 (Dkt. No. 208) ¶ 2.] The Trustee now seeks to sell the Mar Vista Property, subject to overbid, for $1,522,222, with senior lienholder Bank of America to receive all net proceeds save $300,000, which sum will be transferred to the bankruptcy estate free and clear of liens. [Motion at 1:10-22.] The Trustee also seeks approval of a compromise relieving Comerica of its $150,000 carve-out obligation in exchange for Comerica's waiver of any administrative expense claim against the estate. [Id. at 1:23-2:2.]

2

ARGUMENT

A.  Legal Standard for Approval of Compromises

The "court's rule in approving any settlement under Rule 9019 is limited. Rather than an exhaustive investigation or a mini-trial on the merits, this court needs only find that the settlement was negotiated in good faith and is reasonable, fair and equitable." In re Pacific Gas and Elec. Co., 304 B.R. 395, 416-17 (Bankr. N.D. Cal. 2004) (citing In re A & C Props., 784 F.2d 1377, 1381 (9th Cir. 1986)). The court's "proper role is to canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness." Id. at 417 (internal quotations omitted).

Applying these general principles, the court must consider "(a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it: (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." Id. (citing A & C Props., 784 F.2d at 1381). "It is not necessary to satisfy each of these factors provided that the factors as a whole favor approving the settlement." Id.

B.  Legal Standard for Allowance of Substantial-Contribution Administrative Expense

Bankruptcy Code ("Code") 503(b) provides for allowance of administrative expenses

> including … (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by … (D) a creditor … in making a substantial contribution in a case under chapter 9 or 11 of this title [and] (4) reasonable compensation for professional services rendered by an attorney … of an entity whose [substantial-contribution] expense is allowable … based on the time, the nature, the extent, and the value of such services, and the cost of comparable services, other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney[.]

While Code section 503(b)(3)(D) refers to Chapter 9 and Chapter 11 cases, "where a creditor has made a substantial contribution to a Chapter 7 case, the Bankruptcy Court has discretion to allow an administrative expense in accordance with the equities of the case." In re Maqsoudi, 566 B.R. 40, 45 (Bankr. C.D. Cal. 2017). This is because the use of the word "including" in Code section 503(b) is not a limiting term and applies to the six non-exclusive examples of administrative expenses listed in Code section 503(b)(3). Id. (citing and quoting In re Mark Anthony Const., Inc., 886 F.2d 1101, 1106 (9th Cir. 1989)); accord In re Connolly North America, LLC, 802 F.3d 810, 816 (6th Cir. 2015); In re Maust Transport, Inc., 589 B.R. 887, 888 (Bankr. W.D. Wash. 2018).

"[W]here a creditor makes a substantial contribution in a case, reasonable fees and costs may be awarded under § 503(b)(4) regardless of whether the creditor has an independent allowable expense under § 503(b)(3)." In re Sedona Institute, 220 B.R. 74, 81 (9th Cir. B.A.P. 1998); accord In re Wind N' Wave, 328 B.R. 176, 182-183 (9th Cir. B.A.P. 2005) ("we conclude that on a strict reading the plain text of § 503(b)(3) and (4) does not require the petitioning creditor to have [had] allowed expenses. The statute's criterion is that the creditor's expense be 'allowable,' not 'allowed.' The argument that the § 503(b)(3) entity must actually have an expense would be more plausible if the pertinent statutory phrase read 'an entity whose expense is allowed under § 503(b)(3).' Indeed, the concession by the Sedona Institute majority that it was taking liberties with the language of the statute … appears, in retrospect, to have been improvident.").[1]

The "principal test of substantial contribution is the extent of benefit to the estate." In re Cellular 101, Inc., 377 F.3d 1092, 1096-97 (9th Cir. 2004) (internal quotation omitted) (declining to decide "whether a creditor's motivation may ever be relevant or dispositive" to allowance of a substantial-contribution expense because any "concern we have about evidence that [the creditors] benefitted from their own efforts is outweighed by the extent of the benefit those efforts conferred on the estate[.] Most activities of an interested party that contribute to the estate will also … benefit that party to some degree, and the existence of a self-interest cannot in and of itself preclude reimbursement.") (internal quotations and citations omitted).

C. The Court Should Approve the Trustee's Compromise With Comerica

Comerica holds a substantial-contribution administrative expense claim, for at least $150,000, for the attorney fees Comerica incurred in the First Fox Adversary Proceeding (and the related appeal); for the attorney fees Comerica has incurred and will incur in the Second Fox Adversary Proceeding (and any related appeal); and for the other attorney fees Comerica incurred to assist Gretel in resolving her disputes with Fox.

---

[1] Cf. Sedona Institute, 220 B.R. at 84 (Russell, J., dissenting) ("It is clear to me that the line drawn in Section 503(b) is a very reasonable attempt by Congress to limit administrative expenses under Section 503(b)(4) to attorneys for creditors with claims under Section 503(b)(3)."). But see In re Sierra Pacific Broadcasters, 185 B.R. 575, 578 n.7 (9th Cir. B.A.P. 1995) (Russell, J.) (citing cases for the proposition that Ninth Circuit Bankruptcy Appellate Panel decisions bind all Ninth Circuit bankruptcy courts).

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

Comerica holds a substantial-contribution claim because these attorney fees (absent approval of Comerica's present compromise with the Trustee) directly benefitted and will continue to benefit the bankruptcy estate, by ensuring the economic viability of Comerica's $150,000 carve-out.

Neither Fox nor Gretel has ever offered to carve-out any sum from their alleged secured claims. Either the Fox Liens or the Gretel Liens, if valid, would be senior in priority to Comerica's liens and would exhaust any equity in the Whittier Properties otherwise available for the bankruptcy estate. By obtaining a judgment invalidating the Fox Liens in the First Fox Adversary Proceeding, by assisting Gretel in exchange for her release of the Gretel Liens, and by working to confirm the validity and effectiveness of Gretel's lien release in the Second Fox Adversary Proceeding, Comerica has ensured and will ensure that the Carnell Proceeds are available to satisfy Comerica's lien.[2] While Comerica will benefit from these efforts, the bankruptcy estate (absent approval of the proposed compromise) would too, because this result would ensure the availability of Comerica's $150,000 carve-out for the estate.

The Trustee's compromise with Comerica reflects his determination that Comerica may have a large substantial-contribution administrative expense claim, and that Comerica's waiver of that claim warrants waiver of Comerica's carve-out obligation. To approve the compromise the Court of course need not determine whether Comerica actually holds an administrative expense claim or for how much. Instead, as noted, the Court need only find that the compromise was negotiated in good faith and is reasonable, fair and equitable. There are ample grounds to make that finding and the Court should overrule the opposition to the compromise by lone dissenting creditor Fox.

## CONCLUSION

For the foregoing reasons, Comerica requests that the Court approve the Trustee's compromise with Comerica as set forth in the Motion.

Dated: July 30, 2021

HEMAR, ROUSSO & HEALD, LLP

By: /s/ Christopher D. Crowell
    Christopher D. Crowell
Attorneys for Secured Creditor
COMERICA BANK

---

[2] Absent a very substantial overbid, it does not appear that the sale of the Mar Vista Property will generate any recovery for any lienholder other than Bank of America.

## DECLARATION OF CHRISTOPHER D. CROWELL

I, Christopher D. Crowell, declare:

1.     I am an attorney licensed and admitted to practice before this Court and am employed by Hemar, Rousso & Heald, LLP ("HRH"), counsel of record for secured creditor Comerica Bank ("Comerica") in this bankruptcy case and in related Adversary Proceeding Nos. 2:19-ap-01081 ("First Fox Adversary Proceeding") and 2:20-ap-10165 ("Second Fox Adversary Proceeding"). I am and have been actively involved in representing Comerica in this matter at all relevant times. Except as to matters stated on information and belief (which I believe to be true), I have personal knowledge of the matters set forth in this declaration or I have gained such knowledge from HRH's business records, as set forth below. I would testify competently to all such matters if asked to do so. All capitalized terms not defined in this declaration have the meanings the accompanying Reply Memorandum ascribes to such terms.

2.     HRH requires its attorneys to create billing records at or near the time they render the corresponding services as a regular practice of HRH's business activity. HRH attorneys create billing records (which include the date services are rendered, the attorney rendering the services, a narrative describing the services, the time spent rendering the services, and the value of the services at the attorney's hourly rate) using HRH's billing software, and the billing records are then kept in the course of HRH's regularly conducted business activity. Those practices were followed with respect to the billing records for this matter.

3.     HRH's billing records reflect that from February 12, 2019, through July 30, 2021, Comerica incurred and paid more than $160,000 in attorney fees in this matter. I am informed and believe that substantially all these fees were incurred to represent Comerica in the First Fox Adversary Proceeding (including the related appeal) and the Second Fox Adversary Proceeding; to otherwise assist Gretel Gonzales in resolving her disputes with The Law Firm of Fox and Fox; and in working with the Trustee to facilitate the sale of the Whittier Properties.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on July 30, 2021, at Los Angeles, California.

/s/ Christopher D. Crowell
CHRISTOPHER D. CROWELL

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 15910 Ventura Boulevard, 12th Floor, Encino, California 91436.

A true and correct copy of the foregoing document entitled (*specify*): <u>SECURED CREDITOR COMERICA BANK'S REPLY MEMORANDUM IN SUPPORT OF TRUSTEE'S MOTION FOR ORDER: (1) APPROVING SUBORDINATION AGREEMENT BETWEEN TRUSTEE AND BANK OF AMERICA; (2) APPROVING COMPROMISE BETWEEN TRUSTEE AND COMERICA BANK ETC.</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>7/30/21</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that he following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Trustee's Counsel Chad V Haes (chaes@marshackhays.com, chaes@ecf.courtdrive.com; cmendoza@ecf.courtdrive.com; cmendoza@ecf.courtdrive.com; cmendoza@marshackhays.com; kfrederick@ecf.courtdrive.com)
Frank O Fox (frank@foxandfox.com)
United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) <u>7/1/21</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 730/21 | Sanaz Adnani | /s/ Sanaz Adnani |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012    **F 9013-3.1.PROOF.SERVICE**

F901331